IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )          CR No. 21-28
                                   )          Washington, D.C.
          vs.                      )          September 8, 2021
                                   )          2:00 p.m.
THOMAS E. CALDWELL, ET AL.,        )
                                   )
          Defendants.              )
_____)


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Jeffrey S. Nestler
                             Kathryn Leigh Rakoczy
                             U.S. ATTORNEY'S OFFICE
                             FOR THE DISTRICT OF COLUMBIA
                             555 Fourth Street, NW
                             Washington, D.C. 20530
                             (202) 252-6928
                             Email:
                             jeffrey.nestler@usdoj.gov
                             Email:
                             kathryn.rakoczy@usdoj.gov

APPEARANCES CONTINUED:

For Defendant
Thomas E. Caldwell:                 David William Fischer, Sr.
                                    FISCHER & PUTZI, P.A.
                                    7310 Governor Ritchie Highway
                                    Empire Towers, Suite 300
                                    Glen Burnie, MD 21061-3065
                                    (410) 787-0826
                                    Email:
                                    fischerandputzi@hotmail.com

For Defendant
Donovan Ray Crowl:                  Carmen D. Hernandez
                                    7166 Mink Hollow Road
                                    Highland, MD 20777
                                    (240) 472-3391
                                    Email: chernan7@aol.com

For Defendant
Jessica M. Watkins:                 Michelle M. Peterson
                                    FEDERAL PUBLIC DEFENDER
                                    FOR THE DISTRICT OF COLUMBIA
                                    625 Indiana Avenue, NW
                                    Suite 550
                                    Washington, D.C. 20004
                                    (202) 208-7500
                                    Email: Shelli_peterson@fd.org

For Defendant
Sandra R. Parker:                   John L. Machado
                                    LAW OFFICE OF JOHN MACHADO
                                    503 D Street, NW
                                    Suite 310
                                    Washington, D.C. 20001
                                    (703) 989-0840
                                    Email: johnlmachado@gmail.com

For Defendant
Bennie A. Parker:                   Stephen F. Brennwald
                                    BRENNWALD & ROBERTSON, LLP
                                    922 Pennsylvania Avenue, SE
                                    Washington, D.C. 20003
                                    (301) 928-7727
                                    Email: sfbrennwald@cs.com

APPEARANCES CONTINUED:

For Defendant
Laura Steele:                     Peter A. Cooper
                                  PETER A. COOPER
                                  400 5th Street, NW
                                  Suite 350
                                  Washington, D.C. 20001
                                  (202) 400-1431
                                  Email:
                                  pcooper@petercooperlaw.com


For Defendant
Connie Meggs:                     Juli Zsuzsa Haller
                                  LAW OFFICES OF JULIA HALLER
                                  601 Pennsylvania Avenue, NW
                                  Suite 900
                                  S. Building
                                  Washington, D.C. 20036
                                  (202) 352-2615
                                  Email: hallerjulia@outlook.com

                                  Stanley Edmund Woodward, Jr.
                                  BRAND WOODWARD LAW
                                  1808 Park Road NW
                                  Washington, D.C. 20010
                                  (202) 996-7447
                                  Email:
                                  stanley@brandwoodwardlaw.com

APPEARANCES CONTINUED:

For Defendant
Kelly Meggs:                    David A. Wilson
                                LAW OFFICE OF DAVID A. WILSON
                                201 SW 2nd Street
                                Suite 101
                                Ocala, FL 34471
                                (352) 629-4466
                                Email: david@dwilsonlaw.com

For Defendant
Kenneth Harrelson:              Jonathon Alden Moseley
                                JONATHAN MOSELEY
                                ATTORNEY AT LAW
                                5765-F Burke Centre Parkway
                                #337
                                Burke, VA 22015
                                (703) 656-1230
                                Email: contact@jonmoseley.com

                                Bradford L. Geyer
                                FormerFeds LLC
                                2006 Berwick Drive
                                (856) 607-5708
                                Cinnaminson, NJ 08077
                                Email:
                                Bradford@formerfedsgroup.com

For Defendant
Roberto A. Minuta:              Jenifer Wicks
                                BLIND JUSTICE
                                LEGAL SERVICES CORPORATION
                                PO Box 60585
                                Washington, D.C. 20039
                                (202) 839-5102
                                Email:
                                jenifer@blindjusticedc.org

APPEARANCES CONTINUED:

For Defendant
Joshua A. James:                Joan C. Robin
                                LAW OFFICE OF JONI C. ROBIN
                                114 North Alfred Street
                                Alexandria, VA 22314
                                (703) 349-1111
                                Email: joni@jonirobinlaw.com

                                Christopher R. K. Leibig
                                LAW OFFICES
                                OF CHRISTOPHER LEIBIG
                                114 N. Alfred Street
                                Alexandria, VA 22314
                                (703) 683-4310
                                Email:
                                chris@chrisleibiglaw.com


For Defendant
Jonathan Walden:                Thomas J. Spina
                                1330 21st Way South
                                Suite 200
                                Birmingham, AL 35205
                                (205) 939-1330
                                Email: tommy@tommyspina.com

                                Edward B. MacMahon, Jr.
                                EDWARD B. MACMAHON, JR., PLC
                                P.O. Box 25
                                107 East Washington Street
                                Middleburg, VA 20118
                                (540) 687-3902
                                Email: ebmjr@macmahon-law.com


For Defendant
Joseph Hackett:                 Angela Halim
                                FEDERAL COMMUNITY
                                DEFENDER OFFICE
                                601 Walnut Street
                                Suite 501 West
                                Philadelphia, PA 19106
                                (215) 928-1100
                                Email: angie_halim@fd.org

```
APPEARANCES CONTINUED:

For Defendant
Jason Dolan:                    Michael T. Van Der Veen
                                VAN DER VEEN,
                                O NEILL, HARTSHORN & LEVIN
                                1219 Spruce Street
                                Philadelphia, PA 19107
                                (215) 546-1000
                                Email: mtv@mtvlaw.com


For Defendant
William Isaacs:                 Eugene Rossi
                                CARLTON FIELDS P.A.
                                1025 Thomas Jeferson St., NW
                                Suite 400 West
                                Washington, D.C. 20007
                                (202) 965-8100
                                Email:
                                grossi@carltonfields.com


For Defendant
David Moerschel:                Scott Weinberg
                                BROWN, SUAREZ, RIOS & WEINBERG
                                265 E Marion Avenue
                                Suite 114
                                Punta Gorda, FL 33950
                                (941) 575-8000
                                Email: scott@bsrlegal.com


For Defendant
Brian Ulrich:                   Attilio Joseph Balbo
                                BALBO & GREGG,
                                ATTORNEYS AT LAW, P.C.
                                P.O. Box 1297
                                Richmond Hill, GA 31324
                                (912) 459-1776
                                Email: aj@balbogregg.com
```

APPEARANCES CONTINUED:

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   E. Barrett Prettyman CH
                                   333 Constitution Avenue, NW
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon, everyone.  Please be

3    seated.

4              DEPUTY CLERK:  Your Honor, this is Criminal Case

5    No. 21-28, United States of America versus Defendant No. 1,

6    Thomas Edward Caldwell; Defendant No. 2, Donovan Ray Crowl;

7    Defendant No. 3, Jessica Marie Watkins; Defendant No. 4,

8    Sandra Ruth Parker; Defendant No. 5, Bennie Alvin Parker;

9    Defendant 7, Laura Steele; Defendant 8, Kelly Meggs;

10   Defendant 9, Connie Meggs; Defendant 10, Kenneth Harrelson;

11   Defendant 11, Roberto Minuta; Defendant 12, Joshua James;

12   Defendant 13, Jonathan Walden; Defendant 14, Joseph Hackett;

13   Defendant 15, Jason Dolan; Defendant 16, William Isaacs; and

14   Defendant 17, David Moerschel; Defendant 18, Brian Ulrich.

15             Jeffrey Nestler and Kathryn Rakoczy on behalf of

16   the government.

17             David Fischer on behalf of Mr. Caldwell;

18   Carmen Hernandez on behalf of Mr. Crowl, Shelli Peterson on

19   behalf of Ms. Watkins; John Machado on behalf of Ms. Parker;

20   Stephen Brennwald for Mr. Parker; Peter Cooper for

21   Ms. Steele; David Wilson for Mr. Meggs; Juli Haller and

22   Stanley Woodward for Defendant Connie Meggs, Bradford Geyer

23   and John Moseley for Defendant Harrelson; Jenifer Wicks for

24   Defendant Minuta; Joni Robin and Chris Leibig for Defendant

25   James; Thomas Spina and Ed MacMahon for Defendant Walden,

1    Angie Halim for Defendant Hackett; Michael Van Der Veen for

2    Defendant Dolan; Eugene Rossi for Defendant Isaacs; Scott

3    Weinberg for Defendant Moerschel; and Attilio Joseph Balbo

4    for Defendant Ulrich.

5            Defendants Jessica Watkins, Kelly Meggs,

6    Kenneth Harrelson, Roberto Minuta, and Joshua James are

7    appearing in person for this matter.

8            Defendant Moerschel's presence has been waived by

9    counsel for this hearing.

10           And all other defendants are appearing remotely.

11           THE COURT:  Okay, Counsel, good afternoon.

12           To all of the defense, good afternoon.

13           To all of those who are here physically, welcome

14    to the courtroom.

15           For those of you who are here remotely, welcome.

16           Just a couple of housekeeping matters before we

17    get started:

18           For those of you who are here, it looks like

19    everybody is already on board, but please keep your masks on

20    unless you're addressing the Court, in which case if you're

21    comfortable, you can remove your mask while you're at the

22    lectern, that's fine by me.  But otherwise, you should keep

23    your mask on at all times.

24           Secondly, the -- we have at least three

25    defendants, Mr. Meggs, Mr. Harrelson, and Ms. Watkins, they

1   are, I believe, in the courthouse, but they are in a

2   separate overflow room and able to watch the hearing.

3   I just want to make sure their lawyers were all aware of

4   that; that that's how we've accommodated those three

5   defendants, because we were unable to link them up with the

6   Department of Corrections, okay?

7           Thirdly, Mr. Harrelson, is Mr. Geyer either

8   present or --

9           MR. GEYER:  Yes, Your Honor.  Present.

10          THE COURT:  How are you doing, Mr. Geyer?

11          MR. GEYER:  Good afternoon.

12          THE COURT:  Why don't you just come on up here

13  quickly so we can just address your client's situation.

14          So just so the record reflects what's going on

15  with Mr. Harrelson, he originally had two counsel, which,

16  I believe, he had retained, he removed those counsel and

17  hired Mr. Pierce, John Pierce.  Mr. Pierce has been

18  unavailable at least the last couple weeks, I don't know

19  what his current health situation is, but Mr. Harrelson, we

20  got word, I think it was late last week, that he intended to

21  replace Mr. Pierce, and you've entered your appearance.

22          Mr. Harrelson's first set of counsel did file a

23  fairly substantive motion in this case, and, in fact, there

24  are a couple of pending motions as well.

25          So I don't know where you find yourself in terms

1    of your ability to present argument today or if you intend

2    to present argument or you wish to at least consider the

3    possibility of delaying it to another date with respect to

4    those arguments that are raised in Mr. Harrelson's brief.

5         MR. GEYER:  So I spoke with the defendant's wife,

6    who is the -- has power of attorney, on, I believe, Friday.

7    I came on to the case technically sometime Friday night.

8    Since that time, I've kind of reoriented my activities

9    around this case.

10        I came here today to ask for an additional

11   30 days.  I briefly discussed that with Mr. Nestler.

12   I agree with your characterization, sir, of the motion to

13   dismiss that was prepared by the initial law firm, but,

14   again, that's on a first glance.  I'd really like to dig

15   into it and make sure that it's -- everything is

16   comprehensively presented as it should be.

17        I've noticed in some of the responses by the

18   government, the brevity of them makes me wonder if maybe

19   there was some information or evidence that was left on the

20   table and didn't make it into a motion.

21        I've never met Mr. Pierce.

22        Thank you, by the way, to Mr. Nestler who reached

23   out to me while I was meeting my client for the first time

24   for one minute, Mr. Harrelson, and he told me about

25   Mr. Pierce.  I'm very relieved that his health has improved.

1          I have no way of -- I've never spoken to him, I've

2     never spoken to any of his people who work with him, I have

3     no way to evaluate that situation.

4          I briefly called -- I spoke to the client.

5     He said muddle forward as best you can.  And I called the --

6     his wife, and she said, we'd like you to stay on.  And I

7     said, well, it's like an impossible situation for me here.

8          THE COURT:  If I can just interrupt, Mr. Geyer.

9          I mean, look, I think the bottom line here is --

10    what I'm hearing you say is that you're not prepared to --

11         MR. GEYER:  Yes.

12         THE COURT:  -- make argument today, and that's

13    completely understandable.

14         In terms of a 30-day continuance, I think what

15    I'll do is as follows:  Let's just see where we are at the

16    end of today.  I mean, I've read -- I've spent a lot of time

17    with these motions and the government's opposition and

18    planned to sort of go through the waterfront of all of the

19    arguments regardless of which particular counsel and

20    defendant raise them.  And so at the end of the day, I may

21    not need a Harrelson-specific argument; I mean, the motion

22    is fairly comprehensive.

23         But why don't we just see where we are at the end

24    of the day and then we can figure out whether we need to

25    schedule another hearing just on Mr. Harrelson's motion or

```
1    not, if that's acceptable to you.
2              MR. GEYER:  Yes, that is.
3              I'll mention real quick that I did speak with some
4    of the other counsel about the possibility of them at least
5    being supportive of some additional time.
6              There's been no coordination among defense
7    counsel.  Something that we lost and are rescheduling now
8    might be regained with better coordination among the group.
9    I'll just tender that for your consideration, sir.
10             THE COURT:  All right.
11             Well, you know, with a case involving, I think
12   we're up to 16 defendants, there's a lot of moving parts --
13             MR. GEYER:  Yes, I understand.
14             THE COURT:  -- and we're just trying to corral
15   everybody here and keep everybody moving in the right
16   direction, so...
17             MR. GEYER:  All right.
18             THE COURT:  All right.
19             Terrific.
20             MR. GEYER:  Thank you, sir.
21             THE COURT:  Thank you, Mr. Geyer, I appreciate
22   that.
23             In terms of -- just so that the record is clear,
24   the motions that we're going to deal with today are as
25   follows:  There is the motion to dismiss that Mr. Caldwell
```

1    filed at ECF 240.  That motion has been joined, I think, by

2    all defendants.

3                Mr. James has a couple of motions filed at ECF 269

4    and 270.  Those motions have been joined by some defendants.

5                Mr. Harrelson's motion, which I just mentioned at

6    ECF 278, and then there's Mr. Crowl's motion at 288.

7                There's also a motion to transfer venue at 273.

8    That motion has been joined, I think, by nearly everybody,

9    maybe with the exception of one or two defendants.

10               There are a number of other outstanding motions

11   that were filed more recently, and let me just be clear on

12   what those are:  There's a motion to sever and a motion to

13   suppress identification testimony.  Those were filed by

14   Mr. Meggs at ECF 1 -- excuse me, 315, 316.

15               Mr. Harrelson has a motion to sever at 342, as

16   well as a bond review motion.

17               Mr. Meggs also has a bond review motion.

18               Mr. Crowl filed a motion to dismiss Counts 1 and 2

19   and a request for Grand Jury minutes at 382, also a motion

20   to dismiss Count 3 at 384.

21               Ms. Meggs, Connie Meggs, has recently filed a

22   motion to dismiss Count 1 through 4 at 386.

23               And Mr. Minuta also filed a motion that seemingly

24   is particular to him at 389 to dismiss the case.

25               None of those motions are before me today, they're

1   not ripe or at least -- I shouldn't say they're not all

2   ripe, but certainly the more recent motions that go to the

3   indictment are not ripe, and so those aren't going to be

4   argued today.  If they need argument, we'll schedule

5   something.  But for now, we're going to focus on the motions

6   that are before me and that I've just identified.

7          In terms how we're going to proceed today, what I

8   would propose is as follows, is that we would simply just do

9   this by count.  Counts 1 and 2 are the counts that are

10  most -- as to which the arguments -- the most substantive

11  arguments have been directed; that is, the conspiracy count

12  and the obstruction count, the substantive standalone

13  obstruction count.

14         There are additional arguments concerning Count 4,

15  that's the entry into a restricted area count, we can turn

16  to that next.

17         And then Mr. James has some arguments, as well as

18  a motion for bill of particulars with respect to Count 8,

19  and, I believe, one other count that relates to him.

20         One of the arguments is essentially now moot by

21  virtue of the fifth superseding indictment.  An argument was

22  made, I think, by multiple counsel, about either sort of

23  duplicity concerns about -- I can't remember which count it

24  was, but there were duplicity concerns with a particular

25  count that -- I think it was the destruction of evidence

1    counts, the tampering with documents or proceedings, those

2    counts that involved certain defendants and the destruction

3    of Facebook postings or other material.

4         The fourth superseding indictment originally had

5    identified the official proceeding as the FBI investigation

6    or a Grand Jury investigation, at least two of the

7    defendants noted that there's case law to the effect that

8    the law enforcement investigation such as that alleged in

9    this indictment is not an official proceeding for purposes

10   of 1512(c)(1).

11        And then the fifth superseding indictment which

12   followed those contentions dropped the FBI from those

13   tampering counts, and so that it's only the Grand Jury

14   investigation that is the official proceeding that is the

15   subject of those counts.  And so I think that argument is

16   now moot for our present purposes.  If anybody disagrees

17   with me, you'll let me know when you stand up.

18        So with that, why don't we go ahead and turn to

19   Count 1 and Count 2.  And we'll start with Mr. Caldwell's

20   counsel, Mr. Fischer.  And then we've got Ms. Hernandez, who

21   also has made a motion with respect to Count 1 and Count 2.

22        MR. MACHADO:  Your Honor, prior to that --

23   I apologize, this is Mr. Machado, on behalf of actually

24   Bennie and Sandra Parker.

25        My clients have an issue with regard to a family

1    member, their daughter, and they are wondering if they could

2    be excused from this hearing, with the understanding that

3    we will provide them with the next court date, and they have

4    no problems waiving any -- tolling any time, wondering if

5    they might be able to be excused and I'll inform them of the

6    results of this hearing.

7              THE COURT:  I mean, if they do not wish to be

8    present, they don't have to be present.

9              And so if they want to be excused from the

10   hearing, they are certainly free to not be present remotely.

11             MR. FISCHER:  Thank you very much, Your Honor.

12   I apologize for interrupting.

13             THE COURT:  No problem.

14             Mr. Fischer.

15             MR. FISCHER:  Thank you, Your Honor.

16             If the Court would please.

17             Your Honor, as to Counts 1 and 2, there are two

18   issues that the Court needs to deal with as far as the

19   motions -- the motion that I filed.

20             Number one is the definition of "official

21   proceeding," and number two is the reach of the residual

22   clause, 1512(c)(2), which is what Mr. Caldwell is charged

23   under, as well as a number of other defendants as well.

24             Our position is that the term "official

25   proceeding" applies to congressional hearings, or it could

1    apply to impeachment, but it applies to a hearing context, a

2    judicial or quasi-judicial type proceeding.

3          As to 1512(c)(2), there are two issues; number one

4    is -- our position is that the residual clause applies to

5    conduct that is aimed exclusively at Congress's legislative

6    power of inquiry and not other things, but aimed exclusively

7    at the legislative power of inquiry.

8          And, third, as to 1512(c)(2), our position is that

9    that statute applies to conduct that's intended to thwart

10   justice or to cause a miscarriage of justice.

11         In short, Your Honor, we believe that the statute

12   that Mr. Caldwell is charged under prosecutes -- its intent

13   to prosecute obstruction of justice, and that's not

14   something ordinarily one would consider, interrupting an

15   Electoral College certification.

16         Your Honor, the legislative history that I cited

17   in detail that I discovered and I put in my reply brief is,

18   I believe, is pretty compelling.  On three different

19   occasions, Congress attempted to pass the residual clause:

20   1979, which appears to be the first time Congress tried to

21   pass what is now 1512, 1981, and also 1982.  And the three

22   times that they -- Congress put these bills forward, the

23   language specifically laid out that the conduct in question

24   only applied to Congress's power of legislative inquiry; in

25   other words, it was clear Congress was --

1          THE COURT:  Doesn't the fact that the current

2    statute doesn't reflect -- that limitation suggests that

3    Congress didn't intend for the residual clause to be so

4    limited?

5          MR. FISCHER:  Not at all, because I think,

6    Your Honor, what happened, Congress, when they put 1515

7    forward, 18 U.S.C. 1515 forward, and they spelled out the

8    various types of proceedings that are considered official

9    proceedings, they were simply restating everything that they

10   had stated in those prior proposed statutes.

11         THE COURT:  I mean, 1515 defines "official

12   proceeding" to be simply a proceeding before Congress,

13   right?

14         I mean, Congress didn't include any qualification

15   as to the type of proceeding before Congress, and so why

16   would there need to be some judicial gloss that limits the

17   type of proceeding before Congress that has to be the object

18   of the conduct?

19         MR. FISCHER:  Because the word "proceeding,"

20   Your Honor, means a court-like activity, a hearing.  That's

21   what "proceeding" means.

22         So when the Congress passed the statute --

23         THE COURT:  So what else -- I mean, what other

24   proceeding before Congress other than impeachment would fall

25   within that definition of yours?

1          MR. FISCHER:  Congressional hearings.

2          THE COURT:  But that's not a judicial-like or

3    quasi-judicial -- I mean, an ordinary congressional hearing

4    in which witnesses appear to testify about consideration of

5    legislation, that's not quasi-judicial in any sense.

6    They're not taking evidence.  They're not -- nobody's --

7    I mean, there's a chairman, but there's no presiding

8    officer.  They're not dealing with objections, for example.

9    I mean, I'm not sure how anything other than impeachment

10   would qualify under your narrow definition.

11         MR. FISCHER:  Well, Your Honor, apparently,

12   Congress at one point intended my definition in the 1979,

13   1981, and 1982 proposals that were put forward.

14         And I suspect it's much easier -- it would seem

15   much more logical that Congress simply tightened the

16   language when it constructed 1515 than it would be to think

17   that Congress radically changed its intent, because it

18   clearly intended, under these statutes, the 1979, '81, and

19   '82 legislation, it clearly limited --

20         THE COURT:  So then how do I deal with the fact

21   that Congress used very different language, in terms of

22   defining the type of proceeding before Congress, just a few

23   sections earlier in 1505, right?

24         1505 speaks to obstruction with respect to any --

25   the very -- what you suggested:  The power of inquiry under

```
1    which any inquiry or investigation is being had by either
2    house.
3              So, I mean, you know, one could sort of conclude
4    that if Congress intends to limit the type of proceeding
5    before it, it knows very well how to do that and did that in
6    a neighboring provision but chose to leave it relatively
7    broad here.
8              MR. FISCHER:  Well, Your Honor, I believe, first
9    of all, the other parts of 1515 regarding court hearings,
10   administrative hearings, they would be covered by the exact
11   same language that were used in these proposed bills.
12             Your Honor, the reality is, what Congress was
13   getting at was when they use the term "before Congress,"
14   "before" is a term that implies it's before a hearing, it's
15   before a congressional committee.
16             And, Your Honor, a committee, they take testimony
17   under oath.
18             And logically, this is an obstruction-of-justice
19   statute.
20             THE COURT:  I guess I don't understand that.
21             It seems odd to me that your argument is that a
22   committee hearing would qualify as an official proceeding,
23   but when both houses of Congress convene to carry out its
24   constitutional and statutory duty in a fairly regimented --
25   when I mean regimented, I mean sort of a statutorily laid
```

1    out process, that that would not qualify.  It seems backward

2    to me, if anything.

3            MR. FISCHER:  Your Honor, if you look at it from

4    the point of view is of which is a more serious undertaking,

5    obviously, Electoral College certification is a

6    once-every-four-year event, and it's a very important event

7    for our country.  And legislative hearings are things that

8    happen every other day in Congress.

9            But the difference is, at a legislative hearing,

10   those hearings require -- they need truthful testimony; they

11   need to be able to take -- to have witnesses come to

12   hearings and not be intimidated out of testifying.  They

13   can't have a situation where Congress is trying to obtain

14   documents for very important legislation or investigatory

15   hearings and somebody is destroying the documents.

16           So it all comes back to this is an

17   obstruction-of-justice statute, and there's absolutely

18   nothing about an Electoral College certification that

19   says -- that the average person would believe is justice

20   related.  There was no testimony being taken, there were no

21   witnesses being called, there were no documents to produce.

22           So, Your Honor, if you look at it from the point

23   of view which is a more serious type of event, obviously,

24   I mean, it would just be like if somebody interrupted

25   Congress voting on a declaration of war.  That's a very

1    serious event, but it's not obstruction of justice.

2            So, Your Honor, if I can move along now, I'd also

3    point out that in the -- I cited also legislative history,

4    extensive legislative history, which pointed out that

5    section -- that these proposed statutes were designed to

6    incorporate the residual clauses in 1503 and 1505.  And

7    I did point out, the government, the DOJ's prosecution

8    manual, did state -- and it's still out there, it's been out

9    there for many, many years, and it states that the purpose

10   of the term "proceeding" is the same proceeding that is

11   under 1503 and 1505.

12            I mean, the reality is, Congress should engage in

13   legislative tightening and did not intend to expand the

14   reach of the statute beyond that.

15            THE COURT:  But I mean -- I'm sorry, but -- well,

16   I mean, 1515 is pretty clear that the definition of

17   "official proceeding" that's set forth in 1515 is as it's

18   used in 1512 and 1513.  So it's not the same meaning of

19   "proceeding" that Congress intended, perhaps, in 1503 or

20   1505.  In fact, it's quite explicitly limited to two other

21   sections, right?

22            MR. FISCHER:  Well, Your Honor, it's impossible to

23   say with 100 percent Congress's intent on anything.

24            THE COURT:  I try to figure that out every day.

25            MR. FISCHER:  What we do know is there was an

1  obvious intent -- I'll just put it this way:  The

2  government's position in the DOJ manual was that the purpose

3  of this statute was to basically incorporate 1503 and 1505,

4  the word "proceedings," and to eliminate the pending

5  proceeding requirement.  That's how the government

6  interpreted the statute.

7         Your Honor, there's also the issue of what conduct

8  does -- assuming that the contact reaches something outside

9  of legislative inquiry matters, what conduct then

10  constitutes a violation of the statute.

11         Now, I cited *Yates*, I know Ms. Hernandez cited the

12  *Yates* case as well.  At least in the *Yates* case, one could

13  see that throwing fish overboard, contraband fish overboard,

14  would be obstruction of justice, one could envision that

15  being obstruction of justice.  It's much more difficult to

16  envision interrupting an Electoral College proceeding as

17  obstruction of justice.

18         The statute, I think, should be read in light of

19  1512(c)(1), which is -- which deals with documents.  This

20  whole statute was under the -- or this provision was put

21  into place by -- with the Sarbanes-Oxley legislation.  And

22  so the purpose of this statute would seem to be limited to

23  obstructive acts that deal with document shredding or

24  something of similar behavior.  So it should be limited in

25  that respect as well.

1          So, Your Honor, unless the Court has any other

2     questions, those were the points.

3          THE COURT:  Okay.

4          Thank you, Counsel.  I'll give you an opportunity

5     if you'd like some rebuttal after I hear from the

6     government.

7          MR. FISCHER:  Thank you, Your Honor.

8          THE COURT:  All right.

9          Ms. Hernandez.

10          MS. HERNANDEZ:  Good afternoon, Your Honor.

11          THE COURT:  Good afternoon.

12          MS. HERNANDEZ:  Your Honor, initially I just want

13     to say, in case we don't cover any points, I think whatever

14     was stated in the briefs and the motions and in the reply

15     memo, including Mr. Harrelson's original motion, I would ask

16     if we don't mention it at the hearing or if I don't mention

17     it at the hearing, I don't mean to waive any statements

18     made, which are probably more articulate than anything

19     I will say to the Court today.

20          So, Your Honor, I think I would submit to the

21     Court that it's fairly clear that this statute, in two

22     respects, fails the due-process clause, because it's

23     overly -- at least as applied by the government to the facts

24     of this case, it is unconstitutionally vague.

25          And, of course, the Court is not ruling -- it's

1    not being asked to rule on a clean slate.  You've got the

2    *Poindexter* opinion out of the D.C. Circuit, which has not

3    been overruled, which has been applied by the Circuit and by

4    other judges in this district.

5            And you've got the *Yates* opinion out of the

6    Supreme Court, which interpreted a separate obstruction

7    provision, but an obstruction provision that was enacted

8    under Sarbanes-Oxley, so at the same time, and had a similar

9    "otherwise" term.

10           And the Court there, I think, Justice Ginsburg,

11   was clear that she said, you have to interpret that term,

12   whatever comes after "otherwise," with reference to what the

13   statute is about.  I believe what the Court -- the term that

14   the Justice Ginsberg used was the term "spoliation of

15   evidence," which really goes to the notion that -- and goes

16   hand in hand with obstruction statutes; it goes hand in hand

17   with the notion that the action, the actus reus involved

18   some attempt to falsify -- to attack the integrity of the

19   evidence.  People lie, suborn perjury, destroy documents.

20           THE COURT:  Can I interrupt you, Ms. Hernandez.

21           I want to unpack the arguments that, I think, are

22   in your brief and make sure I understand them.

23           I understand you to be making three arguments, and

24   you tell me if I'm wrong.  The first is the statute on its

25   face -- let me do it in sort of reverse order, if you will.

1         The first is that the terms of the statute, in

2    particular the word "corruptly," is facially vague.

3         MS. HERNANDEZ:  Correct.

4         THE COURT:  That is, it's vague in all of its

5    applications, in any application.

6         The second argument you seem to make, that it is

7    vague as applied to your client and the other defendants in

8    this case.

9         The third argument you seem to make is that the

10   statute itself does not reach the conduct, okay?

11        MS. HERNANDEZ:  Okay.

12        THE COURT:  And those are three different

13   arguments, they're informed by different cases in different

14   sets of analytical frameworks.

15        The first argument about facially invalid seems

16   problematic to me, because even in *Poindexter* the Court said

17   that there is some core activity that is corrupt, right?

18   So -- in bribes, et cetera.  And so facially invalid, at

19   least as I understand it, means that a statute or a word in

20   a statute is so vague that no one in any circumstance could

21   understand what it means.

22        MS. HERNANDEZ:  Correct.

23        And I don't -- I mean, I think the statute in this

24   case relying on *Poindexter*, an argument could be made that

25   it's facially unconstitutional, the term "corruptly," and

```
1    the Court, the Poindexter court says several times corruptly
2    is --
3              THE COURT:  Well, that wasn't what the Court held
4    in Poindexter.
5              MS. HERNANDEZ:  Well -- right.  But --
6              THE COURT:  In fact, the holding is inconsistent
7    with that.
8              MS. HERNANDEZ:  It's facially unconstitutional so
9    we're going to see if we can find some way that it's not --
10   as applied, that it's constitutional.
11             But the bottom line is, whether it's facially or
12   as applied, I'm happy to live with as applied.
13             THE COURT:  Oh, I know, but I want to make sure
14   that we're talking about the arguments you're actually
15   making.
16             So the second argument about facial- -- excuse me,
17   vague as applied, tell me whether you think Arthur Andersen
18   affects -- the Supreme Court decision in Arthur Andersen
19   affects the consideration of that argument.  And
20   specifically, as you know, the Court in Arthur Andersen
21   found there to be a definition or held that there was a
22   definition of knowingly corruptly in, I think, it's
23   1512(b) --
24             MS. HERNANDEZ:  Right.
25             THE COURT:  That was -- was not problematic.
```

1          MS. HERNANDEZ:  That would be dicta, because the

2     Court -- first of all, the Court never uses the term

3     "vagueness" anyplace in the statute.

4          And it overturns the conviction because the

5     instruction, which was --

6          THE COURT:  Right.

7          I mean, but you're relying on dicta in *Poindexter*,

8     so it's kind of --

9          MS. HERNANDEZ:  Well, I don't think I'm relying on

10    dicta.

11         But the point is that I think it's hard to argue

12    that if found, that there's some definition that is

13    constitutional; and if found, that the definition that was

14    given to the jury in *Arthur Andersen* was deficient, and,

15    therefore, I think -- I mean, I think it --

16         THE COURT:  But the deficiency in *Arthur Andersen*

17    had nothing to do with -- it had everything to do with

18    corruptly, in the sense that the jury instruction didn't

19    require two things; one, it didn't require a guilty mind;

20    that is, the jury was actually instructed that an innocent

21    mind could still result in a conviction; and two, the jury

22    instruction did not require that there be a nexus between

23    the conduct and the proceeding --

24         MS. HERNANDEZ:  I don't --

25         THE COURT:  -- right?

```
1              MS. HERNANDEZ:  No.

2              THE COURT:  I mean, those were the two flaws with

3     the jury instructions in Arthur Andersen.

4              MS. HERNANDEZ:  Well, Your Honor, I don't want to

5     concede that in this sense.

6              THE COURT:  Okay.

7              MS. HERNANDEZ:  When the Court says that the Court

8     found that the jury was allowed to find that non- -- or

9     legal conduct would be -- would violate the statute, that's

10    not exactly, I don't think, what the Arthur Andersen court

11    says, because the Arthur Andersen court talks about the

12    problem with -- one of the big problems with the instruction

13    is that the government persuaded the District Court to take

14    out the word "dishonest" and instead just used "impede."

15             THE COURT:  Right.

16             MS. HERNANDEZ:  And so -- which is exactly what

17    the government is doing here, because our statute, our

18    statute, 1512(c)(2), one of the ways you can violate it is

19    by impeding.  So the Court --

20             THE COURT:  Right, but the government is not

21    asking to drop "corruptly" from any --

22             MS. HERNANDEZ:  Yeah, but they're asking -- the

23    key in Arthur Andersen was that dropping the "dishonest" --

24             THE COURT:  Let me just read --

25             MS. HERNANDEZ:  -- definition.
```

1          THE COURT:  -- what the Court said in

2   *Arthur Andersen*.

3          They were referring to 1512, I think it's (b)(1):

4   You know, "The parties have not pointed us to any

5   interpretation of 'knowingly ... corruptly' to guide us

6   here.  In any event, the natural meaning of these terms

7   provides a clear answer.  'Knowledge' and 'knowingly' are

8   normally associated with awareness, understanding, or

9   consciousness.  'Corrupt' and 'corruptly' are normally

10  associated with wrongful, immoral, depraved, or evil.

11  Joining these meanings together here makes sense both

12  linguistically and in the statutory scheme.  Only persons

13  conscious of wrongdoing can be said to 'knowingly ...

14  corruptly persuade.'  And limiting criminality to persuaders

15  conscious of their wrongdoing sensibly allows 1512(b) to

16  reach only those with the level of 'culpability ... we

17  usually require in order to impose criminal liability.'"

18          MS. HERNANDEZ:  So I'll --

19          THE COURT:  Now, I'll admit to you that the

20  current -- you know, 1512(c) doesn't have the word

21  "knowingly" in it, but --

22          MS. HERNANDEZ:  I don't want to.

23          THE COURT:  -- let me assure you that if there's a

24  jury trial in this case, they will be instructed that the

25  actions have to be knowing, including the state of mind.

1          MS. HERNANDEZ:  So I would argue to the Court that

2     that passage is dicta, because it is some broad statement

3     that is not what they held and was not the instruction that

4     was produced -- that was submitted to the jury, so that was

5     not the instruction that was before the Court.

6          And, frankly, the *Poindexter* court says very

7     clearly that moral, depraved, evil -- and it's not just

8     *Poindexter*, there's other Circuits who have said moral,

9     deprived people are unconstitutionally vague.

10         And interesting, one of the cases the government

11    cites, the Seventh Circuit case where Justice Posner --

12    I mean, Judge Posner, for some reason, draws some value from

13    the fact that the Supreme Court failed to imply something.

14    But in that case, the District Court said, nobody knows what

15    "corruptly" means.

16         But I would say to the Court --

17         THE COURT:  So would you -- is it your position

18    then that all of the -- I mean, if I accepted your position,

19    which is that "corruptly" is vague --

20         MS. HERNANDEZ:  It's vague as applied.

21         THE COURT:  -- as applied.  Okay.

22         MS. HERNANDEZ:  It's absolutely vague as applied.

23         There are -- Justice Scalia --

24         THE COURT:  So why is it vague as applied in this

25    case?

```
1              MS. HERNANDEZ:  Because --

2              THE COURT:  In -- hang on.

3         In other words --

4              MS. HERNANDEZ:  Because my client didn't bribe

5    anybody, he didn't pay off anybody, he didn't seek to gain

6    any personal --

7              THE COURT:  No, but he's alleged to have -- to

8    cross barriers, rush past police officers --

9              MS. HERNANDEZ:  That's not accurate.

10             THE COURT:  -- entered the Capitol with the intent

11   to obstruct an official proceeding.

12             MS. HERNANDEZ:  Okay.  So --

13             THE COURT:  No.  Hang on.  You've got to let me

14   finish.

15             MS. HERNANDEZ:  But that's not accurate.

16             THE COURT:  I don't interrupt you, Ms. Hernandez.

17             MS. HERNANDEZ:  Excuse me, Your Honor?

18             THE COURT:  I said, I don't interrupt you.  So let

19   me just finish.

20             MS. HERNANDEZ:  Sorry, Your Honor.

21             THE COURT:  You know --

22             MS. HERNANDEZ:  I'm not sure that's true, though.

23        But, nonetheless, Your Honor, the Court has its --

24   the Court deserves all my respect, and I'll just keep my

25   mouth shut.
```

34

1          THE COURT:  In any event, it just seems to me that

2    if you were to ask anybody, the average person, whether that

3    kind of activity -- and I'm not saying they're guilty of

4    anything, but that's what's alleged -- that that would meet

5    the definition of "corrupt."

6          MS. HERNANDEZ:  That's abs- -- first -- I think

7    the average person -- and it's -- the D.C. Circuit several

8    times in *Poindexter*, in *North*, Judge Silberman in *North*,

9    Scalia several times, said all --

10         THE COURT:  Yeah, but --

11         MS. HERNANDEZ:  -- I'm sorry -- they all cite

12   dictionary definitions of "corrupt," which would bring in

13   this notion of paying off, bribing, trying to get something

14   for yourself that's not -- you know, I think the average

15   person, that's their notion.  A corrupt -- a corrupt

16   politician.  What does a corrupt politician do?  He's taking

17   money under the table to do something.

18         "Corruption" for most people is doing something --

19   paying off somebody, doing something that gives yourself

20   person gain.  And all the cases, including some of the cases

21   that the government cites is, oh, look this case upheld this

22   and this case -- they all -- this notion of dishonesty, this

23   notion of putting money in our pocket that doesn't belong to

24   you, no case -- and two things, Your Honor, about going back

25   to *Arthur Andersen*.  I don't think *Arthur Andersen*, whatever

1    it said about the jury instruction in that case that the

2    Court read, that's dicta, that's not what was before the

3    Court; two, it is -- and the D.C. Circuit is very clear on

4    that and other Circuits are very clear on that -- it is

5    different to say if you try to impede a witness from

6    testifying in a court hearing or if you try to impede or

7    prevent some document from being presented at a court

8    hearing, most people would say that's wrong, that's corrupt.

9    Influencing Congress, going to Congress and shouting and

10   making a fool of yourself?  That's what we Americans do.

11   And we do -- that is done every day.

12             THE COURT:  Well, that may be.

13             MS. HERNANDEZ:  And it's done every day.

14             THE COURT:  Hang on.

15             MS. HERNANDEZ:  Let me finish this thought,

16   please.

17             And the Circuit is very clear that when you're

18   dealing with attempts to "obstruct Congress," you've got a

19   different analysis, because there's a lot of innocent

20   conduct that falls within this notion of "attempt" -- it is

21   impossible -- I think the Court says it's an absurd reading

22   of 1505 and *Poindexter* to think that Congress intended to

23   make illegal attempts to influence it.  That's the

24   First Amendment.  So I don't think the cases that uphold --

25   and, again --

1          THE COURT:  All right.

2          MS. HERNANDEZ:  -- *Arthur Andersen* involved --

3          THE COURT:  I'm going to interrupt you now because

4    I haven't done so in a while.

5          But, look, you're right, people do stand up in

6    Congress all the time, and this is a question I have for the

7    government, but that's not what your clients -- or your

8    defendant is accused of doing, okay?  It's a different kind

9    of action than -- and we can have a discussion about the

10   last of your arguments in a moment, but you cannot compare

11   standing up necessarily in a committee room with what these

12   defendants are being accused of, at least in terms of state

13   of mind.

14         MS. HERNANDEZ:  Absolutely not, Your Honor.

15         Those defendants, including the defendants in the

16   case that went to the Supreme Court where they got up and

17   interfered -- you know, interrupted the -- a Supreme Court

18   hearing time and time again.  One would get pulled out and

19   the next one.  Those defendants had the specific intent to

20   interrupt that hearing.

21         My client, there is -- the government -- the

22   indictment is --

23         THE COURT:  They weren't charged with obstruction.

24         MS. HERNANDEZ:  Again, that's because of the

25   ability to arbitrarily apply the statute.

1              They absolutely could have been charged under

2    1512(c)(2).  They had the specific purpose to interfere,

3    impede that hearing, and that was an official proceeding,

4    and they were charged with misdemeanors.

5              THE COURT:  So let's talk about that argument.

6              MS. HERNANDEZ:  But, Your Honor, I mean --

7              THE COURT:  Hang on.

8              MS. HERNANDEZ:  -- I dispute the way you --

9              THE COURT:  You know, Ms. Hernandez, it's better

10   not to interrupt me, okay?

11             MS. HERNANDEZ:  Excuse me?

12             THE COURT:  It's better not to interrupt me when I

13   want to move on to something else, okay?

14             MS. HERNANDEZ:  Yes, sir.

15             THE COURT:  Let's talk about the argument that,

16   I think, actually has given me a great deal of pause and is

17   one I want to spend a fair amount of time with when the

18   government gets up, and that is this *Yates* argument and

19   whether the statute actually reaches the conduct that's

20   alleged in this case, okay?

21             Tell me why, in your view and in your estimate,

22   the plain text of this statute doesn't reach this conduct.

23   The conduct that is outlawed by 1512 is as follows:  Someone

24   who corruptly "otherwise obstructs, influences, or impedes

25   any official proceeding, or attempts to do so."

1          Why doesn't --

2          MS. HERNANDEZ:  If I --

3          THE COURT:  Hang on.

4          Why doesn't someone, with the intent, as they've

5     been alleged to have done in this case, to interfere with,

6     to halt, to stop, hinder, those are the words used in the

7     conspiracy count, why doesn't that meet the definition of

8     "obstructs, influences, or impedes" corruptly?

9          MS. HERNANDEZ:  First of all, that may be what's

10    in the count, but what the statute says is "obstruct,

11    impede, and influence."

12          If you add "otherwise" and you add "evade,

13    corrupt," you've got nothing.  Anybody could -- and not only

14    that, every person who goes before Congress -- I mean, a

15    couple of years ago, about two years ago, there were some

16    handicapped persons who went before Congress, Congress was

17    hearing a Medicaid bill, and they were there and they tried

18    to -- they were in the hallway, it was a ghastly scene

19    because they were dragged -- unceremoniously dragged out of

20    the halls of Congress.

21          During the confirmation of Justice Kavanaugh, that

22    would be --

23          THE COURT:  Ms. Hernandez, you're not answering my

24    question.

25          MS. HERNANDEZ:  Okay.  So I'm sorry.

1            THE COURT:  My question is:  Why doesn't this

2    conduct fall within the plain terms that Congress used in

3    this statute?

4            MS. HERNANDEZ:  So --

5            THE COURT:  Otherwise -- hang on -- otherwise

6    obstructs, influences, or impedes any official proceeding.

7            You're making arguments about arbitrary

8    enforcement, selective enforcement.  That may be part of

9    this, but I've asked you --

10           MS. HERNANDEZ:  For the reasons --

11           THE COURT:  Why doesn't the conduct that's alleged

12    satisfy the statute on its face?

13           MS. HERNANDEZ:  For the reasons -- it doesn't

14    satisfy the statute on its face, because the term

15    "otherwise" cannot be read as broadly as the government

16    wants it.  And *Yates* makes that very clear.  Justice

17    Ginsburg said, we may want there to be some general

18    spoliation statute, but that's not how we -- it's not our

19    job, by that, meaning the Court's job, to broaden what

20    Congress did.

21           It is impossible to believe that the term

22    "otherwise" -- it has never been applied to a demonstration

23    in the manner that -- there's not one case in 20 years that

24    has charged that kind of conduct.  It doesn't reach that.

25           THE COURT:  You're making a different argument,

1    I understand that.

2              MS. HERNANDEZ:  Well, the answer is --

3              THE COURT:  You're making a different argument,

4    but that's okay.

5              MS. HERNANDEZ:  Okay, the answer is what

6    Justice Ginsburg said.  You have to look at the --

7              THE COURT:  So otherwise -- so, *Yates*, the statute

8    at issue, involved a single sentence, document, something --

9    I can't remember -- document, record, or tangible object, it

10   was in a serial -- series of terms.

11             This section, this "otherwise" is separated in a

12   separate subsection in 15(c) -- 1512(c).  There's

13   1512(c)(1), which talks about document destruction, and then

14   otherwise.

15             Why is that not better read as a catch-all

16   provision that is divorced from the preceding section, which

17   is (c)(1), and focuses strictly on document destruction?

18             MS. HERNANDEZ:  As the D.C. Circuit said -- I know

19   that's the argument the government makes, that the

20   concept -- the principle ejusdem generis doesn't apply.

21             But the D.C. Circuit, in *TransUnion*, used, again,

22   a nearly identical statute.  The case is *TransUnion*

23   *Corporation versus FTC*, cited at page 26 of my reply,

24   81 F.3d 228 at 234, D.C. Circuit 1996, it is a statute

25   almost identical.  It has several subsections, full

1    sentence -- or full phrases, with a semicolon separating the

2    two, sort of like our (c)(1) and (c)(2).

3            And the government -- the D.C. Circuit in that

4    case applied the Latin term, which is when a general term

5    follows the specific one, the general term should be

6    understood as a reference to subjects akin to the one with

7    specific enumeration.

8            The D.C. Circuit said it applies in this case.

9    There's no difference between that formulation, that is, a

10   phrase, semicolon, another phrase.  That's exactly what

11   (c)(2) does.  It has a (c)(1), semicolon, and a (c)(2).

12           You can't just -- it is a statute that was enacted

13   to attack corporate fraud.  I cite the legislative history.

14   It is a statute that was to attack corporate fraud.  It has

15   never been used to prosecute demonstrators.  It is

16   impossible to believe that this passes due process

17   constitutional fair notice to my client, that if he enters

18   the Capitol, he will be -- he will expose himself to

19   20 years in prison.

20           There are -- we have thousands of criminal

21   statutes in the United States Code.  The government is free

22   to prosecute each defendant in this case with whatever

23   statute they feel applies to the facts, but they're not

24   allowed to twist these words into a fashion that just

25   eliminates any meaning that Congress intended or that these

1   words mean.

2          If the term "otherwise" is as broad as the

3   government proposes, then that's the only statute you would

4   need -- obstruction would have to be otherwise, and that

5   covers everything.  Whereas, that's not it; that -- if

6   (c)(2) is read as the government wants it to, you don't need

7   anything else in 1512, because it covers everything.

8          And, again, as I say, particularly in a case where

9   you're talking about a congressional hearing with all the

10  legitimate and First Amendment protected rights that

11  Americans have to shout at and impede and try to influence

12  and do all these things to get their legislators to do what

13  they want, it just -- it boggles the mind that this statute

14  would be applied to these defendants or to my client.

15  I mean, if it falls over to others, fine, but my client is

16  not alleged to have beaten anybody up.  And if he had --

17          THE COURT:  Okay.

18          MS. HERNANDEZ:  -- 1512(a) would cover it --

19  I mean, it wouldn't even cover it.

20          THE COURT:  All right.

21          Anything further, Ms. Hernandez?  I want to move

22  to the government.

23          MS. HERNANDEZ:  I'm sorry?

24          THE COURT:  I said, anything further?  I want to

25  move to the government now, unless you have anything

1    additional to add.

2              MS. HERNANDEZ:  With the Court's indulgence.

3              Every case that the government cites is

4    distinguishable or doesn't even say what the government

5    claims it says.

6              I mean, it throws out these cases because it

7    upheld prosecutions under 1512.  And when you look at the

8    instruction that was given to the jury, the instruction that

9    was given to the jury includes the term "dishonest."  And

10   all the cases involve this notion of spoliation of evidence,

11   and that's it.

12             If these defendants had gone in there and stolen

13   the votes or done something to prevent -- somebody from

14   test- -- that would be one thing.  But the notion that this

15   statute applies, it just -- and, again, I think the Court is

16   not writing on a clean slate.  *Poindexter* controls and so

17   does *Yates*, I would argue to the Court.

18             Thank you, Your Honor.

19             THE COURT:  Thank you, Ms. Hernandez.

20             Okay.  On behalf of -- before I do that, I ought

21   to at least -- does anybody else, on behalf of the

22   defendants, wish to add anything at this point?  None of you

23   have written anything, but if there's anybody that wants to

24   add anything orally, I'll open the floor for a minute to do

25   that.

1          Okay.  Hearing no takers, we'll hear from the

2    government.

3          Oh.  Yes.

4          MS. HALLER:  Your Honor, we filed our motion on

5    September 2nd, so it's not ripe yet.  I represent Connie

6    Meggs, who still has argument.  We do have argument on this

7    and we do have another point to raise on this issue.

8    I would respectfully request that I can --

9          THE COURT:  Well, I guess -- the only issue with

10   Ms. Meggs's more recent motion as that it's not ripe and I

11   sort of said at the beginning --

12         MS. HALLER:  That's true.

13         THE COURT:  -- that we wouldn't be dealing with

14   it.  The government hasn't had an opportunity to respond to

15   it so --

16         MS. HALLER:  Thank you, Your Honor.

17         THE COURT:  Okay?

18         MR. FISCHER:  Thank you, Your Honor.

19         THE COURT:  All right.

20         Mr. Nestler.

21         MR. NESTLER:  Yes, Your Honor.

22         So Mr. Fischer started with legislative history,

23   which we believe to be very telling.  The Supreme Court has

24   counseled time and again that the Court should not look to

25   legislative history, should not try to discern Congress's

1    intent, which Mr. Fischer acknowledged we can never know

2    with 100 percent certainty, when the text of the statute is

3    unambiguous.  And here, the text of the statute is

4    unambiguous.

5            And so the government's position, Your Honor, is

6    that 1512(c)(2) is unambiguous, 1515(a)(1)(B) is

7    unambiguous, and that ends the inquiry, there's no need to

8    resort to looking at legislative history.

9            THE COURT:  So I wish it were that simple.  And if

10   it were, I would agree with you and this would be a very

11   short hearing.

12           But the Supreme Court has said something very

13   different in *Yates*, and that's the case I want to focus on.

14   And what the Court has said quite clearly is that "the

15   dictionary definitions of terms in a criminal statute may

16   not necessarily be the end-all in terms of determining what

17   the meaning of the statute is."  And the Court in that case

18   goes through a number of different factors, looks at the

19   title, looks at the placement of the provision, it looks at

20   statutory canons of construction, and comes up with a

21   definition of "tangible object" that is narrower than

22   tangible object is ordinarily understood, okay?

23           It seems to me -- and I don't want to -- it seems

24   to me -- and I say this after having thought about this a

25   fair amount -- that this statute potentially suffers from

```
1    the same problems, at least as applied to this case, and I
2    want to get your reaction as to why that's not so.
3              We have a statute here that was borne out of
4    Sarbanes-Oxley that was focused on corporate crime and the
5    destruction of property -- excuse me, destruction of
6    evidence coming out of Enron.  So context provides us one
7    clue.
8              Secondly, it's put in a statutory provision that
9    concerns interference of evidence and the destruction of
10   evidence or the presentation of evidence.  That's 1512
11   generally, tampering with witnesses, et cetera.
12             Thirdly, the statutory provision you're beginning
13   with starts with "otherwise," a term that arguably links it
14   to, in some way, the preceding section, which is limited to
15   document shredding.  It seems to me a fairly far leap to go
16   from document shredding to the conduct that is at issue
17   here.
18             And fourth, in Yates when it was all said and
19   done, the Court relied on the Rule of Lenity to say, we're
20   going to give this a more narrow interpretation.
21             So I could follow the Yates analysis here and
22   follow that path and get to the position Ms. Hernandez has
23   tried to articulate and it wouldn't be that hard.  So tell
24   me why that's wrong.
25             MR. NESTLER:  Yes, Your Honor, several reasons.
```

1          We'll start with the fact that *Yates* is a

2    plurality decision.  And so the decision that Your Honor is

3    citing is the plurality.  Justice Alito provided the fifth

4    vote in a concurrence.  And he didn't just concur in the

5    judgment, that he concurred and wrote separately.  And so we

6    want to start with recognizing that limitation of *Yates*.

7          Secondly, 1519 and 1512 are different

8    structurally.  1519, which *Yates* considered, is one long

9    paragraph.  And the Court resorted to the statutory

10   construction canon of ejusdem generis because the phrase

11   "tangible object" there was in the end of a sentence or a

12   clause of a sentence following several other words, like

13   "record" and "document," which is why the Court looked at

14   the phrase there.

15         1512(c) is structured far differently.  And so

16   Congress -- the government submits that ejusdem generis is

17   not an applicable canon when interpreting 1512(c) because of

18   the structure.

19         And we'll go to -- I'll start, Your Honor, with

20   the *Aguilar* decision where Justice Scalia --

21         THE COURT:  Well, before you go to *Aguilar* --

22         MR. NESTLER:  Yes.

23         THE COURT:  So in *Begay* -- you're familiar with

24   *U.S. versus Begay*, right?

25         MR. NESTLER:  Yes, Your Honor.

1          THE COURT:  It's another case that involved the

2    word "otherwise."  And it was the armed career criminal

3    offender provision.

4          And I will concede to you from the get-go that

5    that provision is structured differently in two important

6    respects; one, it sort of provides examples and then says

7    "otherwise."  And, two, like you've suggested, it's sort of

8    in a string of words, as opposed to here, we've got two

9    separate sections.

10          I'll agree with you that it's structurally a

11    different statute.  But at a minimum, what the Court does at

12    least recognize and seems to recognize and Circuits have

13    said this, actually, in some of the cases that you've cited,

14    that that "otherwise" word actually means, at a minimum,

15    that the conduct is -- and I'm just sort of reading what the

16    Court said in *Begay*, "these considerations taken together

17    convince us that to give effect to every word and clause of

18    this statute, we should read the examples as limiting the

19    crimes that clause covers to the crimes that are roughly

20    similar in kind, as well as the degree of risk posed to the

21    examples themselves."

22          The Court suggested that otherwise while it can be

23    a different type of conduct, at least it ought to have some

24    connectivity with the conduct that precedes it.  And in this

25    case, the conduct that precedes it is the shredding of

1    documents.

2             This resembles nothing like the shredding of

3    documents.

4             MR. NESTLER:  That's correct.

5             So in some statutes, the word "otherwise" is

6    tethered to a list that precedes it.  And in 1519, the word

7    "otherwise" wasn't used, but it's similar, which is -- and

8    that's where we go back to the canon of ejusdem generis,

9    which is, when the word "otherwise" is following a list,

10   then the Court -- the Supreme Court has said we ought to

11   look to what precedes the words after "otherwise" to help

12   limit or give construction or definition to what comes after

13   "otherwise."

14            There are other statutes.

15            THE COURT:  So do you think I should just ignore

16   what (c)(1) prohibits --

17            MR. NESTLER:  In this situation?

18            THE COURT:  -- and that "otherwise" is essentially

19   a catch-all that covers every other conceivable form of

20   obstructive conduct?

21            MR. NESTLER:  Yes, Your Honor.

22            THE COURT:  So there's no limitation on the

23   conduct that (c)(2) can capture?

24            MR. NESTLER:  That's not what I said --

25            THE COURT:  Okay.

1          MR. NESTLER:  -- but that is correct that we do

2     not believe that (c)(2) needs to be read in conjunction with

3     (c)(1).

4          THE COURT:  Okay.

5          MR. NESTLER:  They share a prefatory clause, which

6     is "whoever," and they share a penalty; otherwise, they

7     don't share any common attributes.

8          In fact, (c)(1) has an additional and separate

9     mens rea requirement --

10          THE COURT:  Right.

11          MR. NESTLER:  -- which is an intent to impair the

12     availability of a document for the proceeding.

13          (c)(2) does not have that separate mens rea

14     requirement.

15          THE COURT:  So what's -- I mean, this is, I think,

16     the million-dollar question in many respects:  What's the

17     limiting principle of how the government -- the Department

18     of Justice, United States, applies (c)(2)?  What does the

19     work -- because I think even you would concede, or at least

20     I hope you would concede, that (c)(2) on its face clearly

21     brings in innocent conduct, somebody intends to influence

22     Congress, that -- there's nothing inherently unlawful about

23     that.

24          MR. NESTLER:  So --

25          THE COURT:  I'm sorry?

1          MR. NESTLER:  I'm sorry, I didn't realize

2   Your Honor wasn't done.

3          THE COURT:  No, no, I just want -- I take it you

4   agree with that?

5          MR. NESTLER:  Correct.

6          THE COURT:  Right.

7          So what is it about (c)(1) then -- or, excuse me,

8   1215 -- 1512(c) that provides the limiting principle that

9   distinguishes between unlawful conduct and lawful conduct?

10  Is it "corruptly"?

11         MR. NESTLER:  There are two limiting principles.

12  The first is "corruptly."

13         THE COURT:  Okay.

14         MR. NESTLER:  The word "corruptly" does provide a

15  limiting principle.

16         So calling one's legislator and asking them to

17  vote or not vote on a bill is not corrupt.  And so the

18  government submits that "corruptly" does a lot of the work

19  in terms of limiting (c)(2).

20         The other limiting principle comes from *Aguilar*

21  and *Arthur Andersen*.  *Aguilar*, looking at 1503, and *Arthur*

22  *Andersen* looking at 1512(b), which is the nexus requirement.

23         And so both of those things, the government

24  submits, and when it comes time to talk about jury

25  instructions, Your Honor, we're prepared to talk about that,

1    there are limiting principles there tied to the nexus

2    requirement that the Supreme Court has said are appropriate.

3    We agree.

4              THE COURT:  So how much work does that really do,

5    in the following sense?

6              I mean, take the hypothetical that that is the

7    obvious one.  Somebody stands up at a Senate confirmation

8    hearing for a Supreme Court justices and yells, "stop these

9    proceedings."  Is that a 20-year felony?

10             MR. NESTLER:  Likely not.

11             And there are a couple of reasons:  Well, we have

12   to look at the person's intent.  What were they -- was their

13   intent corrupt and what did they intend to actually

14   accomplish?  Did they intend to have their voice heard by

15   Congress and have their position known and to have a

16   momentary second or minutes?

17             THE COURT:  So what if the person stands up and

18   says, "Stop these proceedings now,"  "These proceedings have

19   to come to a stop now," because that's what you've alleged

20   the object of the conspiracy here is, was to halt these

21   proceedings, right?  Would that be a 20-year felony?

22             MR. NESTLER:  No.

23             But the object here was not just to halt the

24   proceedings, the object here was to scare Congress into

25   halting the proceedings.

1              And so if a person stands up in a congressional

2    proceeding and says, "There is a bomb under all of your

3    chairs, stop the proceeding now," their actions might be

4    corrupt.

5              THE COURT:  I mean, that's not what --

6              MR. NESTLER:  If they just say, "I want you to

7    stop" --

8              THE COURT:  Where do I look in the indictment for

9    that?

10             I mean, now you've suggested that this bordered on

11   threatening conduct.  You didn't use the word "threatening

12   conduct," but, I mean -- you know, the purpose of the

13   conspiracy was to stop, delay, and hinder the certification

14   of the Electoral College vote.

15             MR. NESTLER:  Correct.

16             THE COURT:  That was the purpose of the

17   conspiracy.

18             MR. NESTLER:  That was the purpose of the

19   conspiracy.

20             THE COURT:  Right.

21             MR. NESTLER:  But one of the means by which the

22   defendants evidenced their intent to act corruptly in doing

23   so was by their show of force; their numbers, their weapons

24   that they had stashed in Virginia, in this particular case;

25   mostly their numbers here and their use of force with the

1   police officers.

2        The other important limiting factor, Your Honor,

3   for the congressional proceeding hypothetical or the

4   confirmation proceeding, is that those individuals were

5   lawfully present at the time they made those statements.

6   So a person who attends a judge's confirmation hearing

7   before the Senate Judiciary Committee, has a ticket,

8   is there, is seated, is peaceful, and causes some sort of

9   outburst or disruption.  And so there are other statutes,

10  obviously, that the government has used in the past in order

11  to prosecute that conduct.

12       Here's, there's no allegation that any of the

13  defendants here were lawfully present at the Capitol

14  Grounds.

15       THE COURT:  I mean, doesn't the concern that's

16  raised in Supreme Court cases about -- I mean, essentially

17  what you've said is, trust us, we know the difference

18  between obstruction under (c)(2) -- we know what's

19  obstructive under (c)(2) when we see it.

20       I mean, it has that feel to it.  And that is a

21  real problem when it comes to criminal statutes, to suggest

22  that we know it when we see it and we'll pick and choose

23  when we think it's an appropriate exercise of prosecutorial

24  discretion.

25       MR. NESTLER:  That is not what we are saying,

1    Your Honor.

2         We are saying when the defendants -- the putative

3    defendants' actions evidence their corrupt intent, and we

4    understand the -- whether something is corrupt is ultimately

5    a jury question and ought not to be decided on a Rule 12

6    motion, whether the defendants' actions here were corrupt.

7    I understood Ms. Hernandez to be arguing that her client was

8    not corrupt, he didn't have the correct mens rea.  And the

9    government submits that's a jury question, ultimately the

10   jury should decide that based on the instructions the

11   parties and the Court formulate.

12        But it's not a trust-us situation.  It's a -- if

13   the defendants' conduct could fall within this statute that

14   they were acting corruptly and that their conduct had a

15   nexus in order to -- related to the official proceeding.

16        THE COURT:  So if you're right that Congress

17   intended 1512(c)(2) to reach as broadly as you've suggested,

18   what then is left of the other obstruction statutes?  Why do

19   we need them?  Why do we need 1505?  Why do we need 1503?

20   I mean, doesn't the very broad construction that you've

21   suggested essentially swallow those other provisions?

22        MR. NESTLER:  No.

23        And that's because this is how Congress typically

24   does legislate.  They give specific examples and specific

25   statutes, and then sometimes Congress sees fit to include a

1    residual or a catch-all, either a statute or a subsection or

2    a part of a subsection, and Congress includes catch-alls.

3              And so we have several examples we cite in our

4    briefs, and I can provide with the Court with others, where

5    Congress provides a catch-all that, under the line of

6    thinking Your Honor just said, might encompass and swallow

7    up everything else that Congress brought before.  But

8    Congress wants to give examples and give specificity, and

9    sometimes then will provide a catch-all provision.

10             THE COURT:  But what evidence is there -- what do

11   you think the best evidence is that Congress intended for

12   this catch-all -- and I'll concede to you it has a catch-all

13   quality to it -- was intended to reach as far as you

14   suggest; that is, to be completely unmoored from the other

15   aspects of 1512, right?

16             1512 addresses witness tampering, destruction of

17   documents.  This is conduct that is arguably different in

18   kind and, in a sense, different in its object.  Those other

19   portions -- those other portions of the statute has an

20   object, a witness, a piece of evidence, and the destruction

21   or influencing of testimony.

22             This is not that.  This is an effort to stop a

23   proceeding, whether temporarily or permanently.

24             MR. NESTLER:  A couple of answers to that,

25   Your Honor.

1          First, we submit that it's not appropriate to look

2   at Congress's intent, because Congress's intent is diffuse.

3   Congress is a large, multi-hundred-person body.  And so the

4   intent of Congress is hard to discern, as we just talked

5   about, by looking at legislative history.

6          THE COURT:  When I use that term, I mean through

7   the statutory text and other clues of meaning.  I don't mean

8   what was in the head of particular Congressmen and women.

9          MR. NESTLER:  Right.

10          And so the clearest example of that is the

11   language that Congress settled on and negotiated and

12   compromised on, and this is -- we believe that is clear.

13          Secondly, Your Honor, court after court has looked

14   at this exact question about whether (c)(2) is tethered or

15   moored to (c)(1) and found that it's not, both before and

16   after *Yates*.

17          And so we can point the Court to *Volpendesto*,

18   which was divided before *Yates* by the Seventh Circuit, but

19   also the *Petruk* case, P-e-t-r-u-k, decided after *Yates* was

20   decided.

21          There is also a District Court decision in Texas

22   from last year, *De Bruhl-Daniels*, it's at 491 F.Supp.3d 237,

23   and it rejected this exact argument that otherwise limits

24   (c)(2) to being tethered to (c)(1).

25          THE COURT:  I mean, what's interesting to me, is

1   that, for example, the Seventh Circuit in *Burge*, which is

2   sort of a series of these cases that you've cited, agreed

3   with you, but not so far as what you've suggested.

4           I mean, they say Sections 1512(c)(1) and (2) are

5   linked with the word "otherwise," so we can safely infer

6   that Congress intended to target the same type of pretrial

7   misconduct that might otherwise obstruct a proceeding beyond

8   simple document destruction.

9           So, you know, at least the Seventh Circuit, for

10  lack of a better term, seems to at least suggest there has

11  to be some similarity in the type of conduct that is at

12  issue and being charged under (c)(2), as made unlawful under

13  (c)(1).

14          MR. NESTLER:  Well, the type of conduct is...

15          The type of conduct is the corrupt conduct.  So

16  the type of conduct is the person committing the corrupt act

17  in order to obstruct the proceeding, whether it involves a

18  document or not a document, "otherwise."

19          THE COURT:  But the conduct here is being done

20  corruptly.  That's the state of mind.

21          But the conduct is unlawfully entering the Capitol

22  building and Capitol Grounds, pushing through police

23  officers, moving into the Rotunda, and, you know, at a

24  minimum, scaring the daylights out of everybody who was in

25  either the House or the Senate when people entered the

1    Rotunda.

2            That, it seems to me, is conduct that's very

3    different than destroying a document, intimidating a

4    witness, convincing somebody not to testify.

5            MR. NESTLER:  In this situation, it's intimidating

6    Congress.  That is what the government intends to prove at

7    trial; that the defendants here were corrupt because they

8    intended to intimidate Congress, obstruct Congress,

9    interfere with Congress.  And they were corrupt because they

10   were intending to intimidate Congress into stopping what

11   Congress was doing.

12           One person standing outside of the Capitol

13   building yelling "don't certify the Electoral College vote"

14   is not going to accomplish their ends.  So what they did was

15   they broke through the doors and made Congress literally

16   flee from their seats so they couldn't do what they were

17   doing.  The government's position is that's what evidences

18   their corrupt state of mind.

19           THE COURT:  And so to take a hypothetical, if

20   somebody were to bust through the front doors, say a group

21   of people bust through the front doors of C Street with the

22   intent to halt these proceedings, that, in your view, would

23   be a violation of 1512(c)(2) potentially?

24           MR. NESTLER:  Potentially a violation of

25   1512(c)(2), yes.

1          And if a person came into the courtroom in order

2   to convince Your Honor to leave the bench, to not rule on

3   this motion, that could be a violation of 1512(c)(2),

4   depending on what's inside of that person's mind, whether we

5   would -- the government submits that they were acting

6   corruptly.

7          THE COURT:  And how, in your view, would the

8   ordinary person have notice that (c)(2) reaches that

9   conduct?  I mean, it's a different argument than whether the

10  statute actually reaches it; the question of notice is a

11  separate question.

12         And so what's your position on what it is about

13  the statute that -- and anything else?  And it would

14  include, for example, prior prosecutions, legislative

15  history.  I mean, what could the ordinary person look to, in

16  your view, beyond the words of the statute, if there's

17  anything else?

18         Let me put the question differently, which is:

19  What is the government relying upon to support the position

20  that a person of ordinary understanding would know that this

21  statute reaches the conduct that's alleged in this

22  indictment?

23         MR. NESTLER:  Two things, Your Honor.

24         One is the plain meaning -- I'm sorry, the plain

25  text of the statute.  A person of ordinary intelligence who

1    were to read this statute would or should know that it would

2    criminalize or proscribe actually corruptly breaking into

3    the Senate chamber to stop the Senate from meeting.

4          Second is, court decisions.  As I just indicated,

5    *Petruk* and, we believe, the *Volpendesto* decision.  But even

6    the *De Bruhl-Daniels* decision says, when it's interpreting

7    the same statute, the Court there said that (c)(2) is an

8    unlimited prohibition on obstructive behavior that extends

9    beyond merely tampering with tangible items.

10         THE COURT:  I'm sorry, which case is that?

11         MR. NESTLER:  That's *De Bruhl-Daniels*,

12   D-e B-r-u-h-l-Daniels.  And that's the case from the

13   Southern District of Texas last year.

14         THE COURT:  But do any of those cases involve

15   conduct like -- that's at issue here?

16         I mean, a lot of those cases involve false

17   statements in civil proceedings, they involve -- there's a

18   recent decision, I think somebody cited, about the burning

19   of bodies following a murder.

20         I mean, any case that you're aware of that has

21   comparable facts; that is, a crowd of people or even a

22   single person attempting to halt a legislative or judicial

23   proceeding that's been prosecuted under (c)(2)?

24         MR. NESTLER:  No.

25         And there's an easy answer for that:  It's because

1    it doesn't frequently come up.

2              THE COURT:  Right.

3              MR. NESTLER:  Firstly, the act of trying to

4    obstruct a proceeding by halting it is oftentimes

5    criminalized by other specific provisions without the need

6    to resort to a catch-all.  So trying to prevent a juror from

7    showing up in the courtroom, or, more often, trying to

8    prevent a witness from showing up, there's a specific

9    statutory provision on that, so the government can more

10   easily and more acutely rely on those specific statutes.

11             It's rare that the government is forced to rely on

12   the catch-all, but the catch-alls exist for a reason.  And

13   the Supreme Court has said this time and again:  There's a

14   catch-all there, because we don't -- and Congress doesn't

15   always -- know what it is that some inventive criminal mind

16   is going to come up with.

17             And that is actually -- we cited that, and so did

18   Mr. Fischer, from the Senate Report from the early '80s when

19   1512 was initially passed, before it included 1512(c)(2);

20   that Congress, the Senate specifically, was concerned with

21   "the inventive criminal mind."  Congress at that point was

22   considering a residual or a catch-all and wanted to make

23   sure that it could capture whatever some future criminal

24   came up with.

25             THE COURT:  Right.

1           But we have no comparable legislative history with

2     respect to this provision.

3           MR. NESTLER:  That's correct.

4           And when we talk about the catch-alls, though, the

5     government will point the Court to the *Iraq versus Beaty*

6     case, the 2009 Supreme Court case, it's at 556 US 848.

7           And there, the Supreme Court said that the whole

8     value of a generally phrased residual clause is that it

9     serves as a catch-all for matters not specifically

10    contemplated, what are known as known unknowns, and it cites

11    Donald Rumsfeld's statement about known unknowns.

12          The Supreme Court in the *Beaty* case actually

13    overruled the D.C. Circuit in that decision.  And the

14    Supreme Court talked about how it was not appropriate to

15    look at Congress's intent in passing this provision of the

16    Foreign Sovereign Immunities Act, because one could not

17    ultimately know what Congress was intending.  And so the

18    Supreme Court said, let's look at what the language Congress

19    used.  Congress used a broad residual clause or a broad

20    catch-all.  And so courts should be wary about overriding

21    clear, statutory texts with speculation about a law's true

22    purpose.

23          That's the government's position here, Your Honor,

24    that we should all be wary about overruling what Congress

25    said by trying to interpret what it meant.

1          Congress means what it says, and it said here very

2     clearly, the phrase in 1512(c)(2), corruptly obstructs,

3     interferes with an official proceeding.  And it also defined

4     official proceeding very clearly as any proceeding before

5     the Congress.

6          THE COURT:  So what's your position on -- I mean,

7     there's a lot riding on my understanding of "corruptly" in

8     *Poindexter*.  What's the government's response to whether

9     "corruptly" in this case is a word that has sufficiently

10    definite meaning that it can be understood and employed in a

11    criminal statute?

12         MR. NESTLER:  It does.

13         So as Your Honor indicated, *Poindexter* was an

14    as-applied challenge case, not a facial challenge to the

15    word "corruptly."

16         The D.C. Circuit, after *Poindexter*, has upheld

17    convictions and talked about the word "corruptly."  The

18    *Morrison* case from 1996 was a challenge to the word

19    "corruptly" in 1512(b), and the D.C. Circuit in that case

20    said that the word --

21         THE COURT:  But that was a case that involved sort

22    of core corrupt conduct.

23         MR. NESTLER:  Correct.

24         But the D.C. Circuit said that the word

25    "corruptly" was not itself vague and could be given a

65

1   definition.

2           As Your Honor already indicated, the Supreme Court

3   in *Arthur Andersen* provided some definition of the word

4   "corruptly."

5           THE COURT:  Would the government agree -- and

6   maybe I'm asking something earlier than I need to.  Would

7   the government agree that "corruptly," as an element in this

8   case, under 1512(c)(2), also has a knowing component to it,

9   such that someone has to act knowingly corruptly?

10          MR. NESTLER:  I think Your Honor's preface to that

11  question is correct.  I'm not prepared to answer whether, at

12  the time we talk about jury instructions, we ought to

13  include the word "knowing."

14          If we look at the footnote in *Arthur Andersen* that

15  Your Honor was talking about a quote to Ms. Hernandez, the

16  Supreme Court actually indicated that the word "knowing" was

17  before the word "corruptly" in a couple of those statutes,

18  but not in 1512.

19          THE COURT:  Right.

20          1512(c).  It's not in 1512(c).

21          MR. NESTLER:  Not in 1512(c).

22          THE COURT:  Right.

23          MR. NESTLER:  The word "knowingly" is in some

24  other provisions of 1512.

25          And so the government would have to consider

1   whether we would agree that the word "knowingly" would need

2   to be present.

3          THE COURT:  I mean, I'll say this, that, you know,

4   if you agree it includes the word "knowingly," then you're

5   sort of all on -- you're sort of on -- at least you're more

6   in line with *Arthur Andersen* and the Supreme Court's

7   position that "knowingly corruptly" actually is a

8   definite -- has sort of a definite meaning that can be used

9   to prosecute and a phrase that has common understanding.

10         MR. NESTLER:  The government believes that the

11   word "corruptly" itself has a phrase that has knowing

12   understandings -- or has -- not to use the word "knowing"

13   twice in the same sentence differently, but has a common

14   understanding that the Seventh Circuit actually has a jury

15   instruction for 1512(c) on the word "corruptly."  The word

16   "corruptly" is defined elsewhere in the U.S. Code, including

17   in 1515, not with reference to 1512, with reference to other

18   statutes.

19         And court case after court case, including

20   *Arthur Andersen*, have provided definitions of the word

21   "corruptly."  The government submits that it's not a word

22   that is not susceptible to some sort of concrete definition

23   that jurors would be able to look at the word "corruptly"

24   and look at the definition the Court ultimately provides

25   them with the jury instructions and render a decision about

1    whether these defendants' actions were done with the

2    appropriate mens rea.

3            THE COURT:  So let me ask you, Mr. Nestler.

4    I mean, in all candor, your opposition brief didn't really

5    address this argument, but we spent a lot of time doing it

6    orally, and my intention here at the start was to suggest

7    that maybe it ought to be briefed and addressed.  And I

8    mean, I think you and I have spent a fair amount of time,

9    and I wonder whether you still think something like that

10   would be useful.

11           I mean, the extent to which the government

12   addressed *Yates* in its opposition only had to do with sort

13   of the ambiguity argument in connection with the word

14   "otherwise."  It didn't address this question of, does the

15   statute reach the conduct that's alleged in the sense that

16   *Yates* looked at the question.

17           MR. NESTLER:  The government submits, Your Honor,

18   that the -- every court to have looked at this question that

19   I've cited back to Your Honor about the breadth of (c)(2)

20   has said that (c)(2) was not tethered to (c)(1) and so the

21   government believes that that would be appropriate.

22           If the Court believes that additional briefing on

23   this topic would be helpful for the Court's consideration,

24   the government would be happy to put some of its thoughts in

25   writing in order to drill down on the specific point about

1    the word "otherwise" and the concept of ejusdem generis and

2    why it does not apply in this particular context because we

3    are not here dealing with a list.

4              THE COURT:  Okay.

5              I mean, I've seen -- I know there was a -- I think

6    it may have been a surreply brief filed in one of

7    Judge Kelly's cases that addressed some of these issues.

8              But, all right, why don't we put a pin on that for

9    a moment and then we'll figure out how we'll proceed at the

10   end of all this.

11             MR. NESTLER:  Yes, Judge.

12             THE COURT:  Okay.

13             I'll give defense counsel a brief opportunity for

14   rebuttal, if you'd like it.

15             MR. FISCHER:  Your Honor, if the Court would

16   please, I just wanted to make one point based on

17   Mr. Nestler's comments regarding -- about legislative

18   history regarding the 1512.

19             There was the -- in the government's reply -- and

20   I've cited this in my filing -- the government cited a

21   Senate Judiciary Committee Report regarding Section 1512

22   from 1982.  And what it said, the government said, and I

23   quote, "But the Senate Judiciary Committee Report that

24   supported Section 1512 justified the inclusion of a 'broad

25   residual clause' by noting that the 'purpose of preventing

1    an obstruction or miscarriage of justice cannot be fully

2    carried out by a simple enumeration of the commonly

3    prosecuted obstruction offenses.  There must be protection

4    against the rare type of conduct that is the product of the

5    inventive criminal mind and which also thwarts justice."

6             So, Your Honor, I would point out right there,

7    that lays out in a nutshell how the Court should interpret

8    or put the brakes on 15(c)(2).  It has to be conduct that's

9    intended to thwart justice.  Not only that, it has to also

10   involve documents as well, we would argue, but it has to be

11   something that's aimed --

12            THE COURT:  If I could interrupt you, Mr. Fischer.

13            I mean, look, there's a lot to think about here.

14   I will say the following:  That legislative history from

15   1982 regarding a statute that was then actually promulgated

16   some decade -- two-plus decades later and whether it's cited

17   by you or cited by the government, I don't know how terribly

18   helpful that is in terms of divining the meaning of the

19   statute that's before me.

20            But I take your point that there's an argument to

21   be made here that the statute, as it's written even, and it

22   was adopted, requires some linkage between, you know,

23   15(c)(1) and the conduct that's actually unlawful under

24   17(c)(2).

25            MR. FISCHER:  Understood, Your Honor.

1          Your Honor, there's also the point of the novel

2    construction principle, I wanted to raise that as well.  The

3    Court is aware, this would be the ultimate novel

4    construction, because the government has never prosecuted

5    anyone for this type of conduct under this statute.

6          With that said, Your Honor, thank you.

7          THE COURT:  Thank you, Mr. Fischer.

8          Ms. Hernandez.

9          MS. HERNANDEZ:  Thank you, Your Honor.

10         Some of the questions that the Court asked about

11   if someone came in here and tried to force their way in and

12   interrupt, there is actually an obstruction statute, 1507,

13   that applies to judicial proceedings.  Again, going back to

14   the difference between congressional and judicial

15   proceedings, Congress enacted a statute that says if you

16   picket, if you interrupt, if you do this, that's a

17   violation.  It could have added, Congress, it could have

18   added "official proceedings."  No, it specifically said

19   "judicial proceedings."

20         With respect to the government's citation of

21   *Morrison*, *Morrison*, as the Court said, is core corrupt.  The

22   person offered to buy a witness's furniture in return for

23   her lying and providing an alibi.  Yes, as applied in

24   *Morrison*, "corruptly" has a definition.  As applied in

25   *Arthur Andersen*, which involved shredding documents, the

1    Supreme Court could come up with a definition of "corrupt."

2            But every day -- but there's nothing -- and the

3    government's adding terms -- as the Court pointed out,

4    adding terms that are not in the indictment, what they claim

5    they're going to say.  And what they claim, you know, the

6    reason these facts or these allegations fall within 1512.

7            "Otherwise" has to refer back to something.  You

8    have to -- it has to refer back to something.  What does it

9    refer back -- if you didn't need to refer back, if it was an

10   open statement, then all you had to -- take the word

11   "otherwise" out and just say "corruptly" this, this, that.

12   But you put "otherwise" in there, it has to refer to

13   something.  What is it?  It's in thin air, it's in the

14   government's mind.  That's just not the way the due process

15   law works.

16           And bottom line, Your Honor, the due process

17   clause requires statutes to give a fair meaning so that a

18   defendant can say, I'm not going to do that because that's a

19   20-year violation.

20           How many lawyers are in this room?  I would say

21   we're at least of normal intelligence.  Some of us more

22   intelligent than others.  But bottom line is, I don't think

23   we've come up with a single definition of what the term

24   "corruptly" is.

25           The judge in the *Edwards* case, the District Court

1  Judge in the *Edwards* case out of the Seventh Circuit, which

2  the government cited, said on the record "nobody knows what

3  the term 'corruptly' means."  The D.C. Circuit said "this

4  word is vague."  And as applied here, it's still vague.

5          THE COURT:  But it's a term that finds itself, it

6  appears, in countless criminal statutes --

7          MR. NESTLER:  As applied.

8          THE COURT:  -- countless.

9          MS. HERNANDEZ:  As applied.

10          No question.

11          Of course, I agree, if you give a bribe to

12  somebody, that's corrupt.

13          If you vote in one way in order to help your --

14          THE COURT:  So if you rush into a courthouse with

15  the intention of --

16          MS. HERNANDEZ:  1507 covers that, Your Honor.

17          THE COURT:  Well, it doesn't only have to be

18  covered by one statute.

19          You rush into a courthouse intending to cause the

20  judge and the jury to scamper and run for cover, that's not

21  corrupt?

22          MS. HERNANDEZ:  As the D.C. Circuit, the

23  Supreme Court, multiple courts have said, there is no way

24  that one could look at conduct of that nature that

25  interrupts the judicial proceeding and not see it as

1   corrupt; however --

2           THE COURT:  So why would it violate the other --

3           MS. HERNANDEZ:  Because --

4           THE COURT:  Hang on.

5           Why would it violate the other statute, which

6   I think is actually 1505 --

7           MS. HERNANDEZ:  Because --

8           THE COURT:  -- let me finish -- which also uses

9   "corruptly"?

10          MS. HERNANDEZ:  Because all those statutes have

11  been upheld as applied.

12          Every case that the government has cited -- as

13  applied -- yes, I will admit to the Court that the "as

14  applied" term is not unconstitutionally vague in every case

15  that the government has cited, because every case that the

16  government has cited involved attempts to mess up -- mess

17  with the evidence, with the integrity of evidence in a

18  judicial proceeding; to get somebody to lie; to suborn

19  perjury; to destroy -- to false alibi.

20          So, yes, in those as applied --

21          THE COURT:  So I guess I don't understand your

22  argument.

23          MS. HERNANDEZ:  As applied --

24          THE COURT:  Which is -- hang on.

25          You've conceded that the conduct that I just

1  described, which is bum rushing into a courthouse -- hang

2  on -- entering a courthouse with the intention of disrupting

3  a court proceeding, causing a judge to leave the bench, the

4  marshals to come in, the jurors to scamper, that would be a

5  violation of 1503?

6          MS. HERNANDEZ:  The Court has said that; the

7  D.C. Circuit has said that.

8          THE COURT:  Okay.  Hang on.

9          That same statute uses the term "corruptly," okay?

10         So how is "corruptly" ambiguous when applied to

11  1503 for the same conduct when the same word appears in

12  1512(c)(2)?

13         MS. HERNANDEZ:  As applied, multiple courts,

14  including the *Poindexter* court, and, I believe, the *North*

15  court --

16         THE COURT:  You're missing my point.

17         MS. HERNANDEZ:  I'm going to answer you.

18         THE COURT:  You're not answering my question --

19         MS. HERNANDEZ:  I am, because --

20         THE COURT:  -- which is:  I don't understand how

21  the word can be --

22         MS. HERNANDEZ:  -- because --

23         THE COURT:  -- differently as applied across

24  different statutes when you've conceded to me that the very

25  same conduct that uses the term "corruptly" can violate

1    another statute that uses the word "corruptly."

2              MS. HERNANDEZ:  The language that the D.C. Circuit

3    has used, and that other courts have used, including,

4    I believe, some justices have used, is that, as applied,

5    conduct that seeks to interrupt a proceeding that is based

6    on facts and logic and that type of thing, that could be

7    viewed as corrupt.  There's no way not to view it.

8              But conduct that seeks to interrupt the political

9    wing of the government, it cannot be viewed -- by its

10   nature, that's what the First Amendment protects explicitly,

11   for us to go and seek to influence Congress, that's what the

12   First Amendment protects.

13             THE COURT:  So you think --

14             MS. HERNANDEZ:  But those statutes --

15             THE COURT:  You think these defendants were

16   exercising their First Amendment rights?

17             MS. HERNANDEZ:  Yes.

18             I am saying the following, Your Honor:  These

19   defendants --

20             THE COURT:  By rushing past police, rushing past

21   barriers?

22             MS. HERNANDEZ:  So my client -- you're asking me a

23   question?

24             THE COURT:  I'm just asking.  Yeah.

25             MS. HERNANDEZ:  Okay.

1          THE COURT:  That's protected by the

2    First Amendment?

3          MS. HERNANDEZ:  Their conduct implicated the

4    First Amendment.

5          It may violate time, place, and manner, I'm not

6    suggesting that it may not.

7          But was the First Amendment implicated?  Yes.

8    My client did not attack any police officer and there's no

9    allegation -- I'm not making a factual argument.  There's no

10   allegation in the indictment that he attacked anyone.

11   He entered a door that was opened by others.

12         THE COURT:  I didn't say -- I never said he

13   attacked anybody.

14         MS. HERNANDEZ:  Well, he didn't rush by.  He

15   didn't -- there's no -- there's nothing in the indictment

16   that says he moved over barricades or anything.

17         But the bottom line is, there is a distinction

18   that the Courts have drawn --

19         THE COURT:  Let's --

20         MS. HERNANDEZ:  -- I agree with it --

21         THE COURT:  -- not pretend that this was --

22         MS. HERNANDEZ:  Excuse me?

23         THE COURT:  Let's not pretend that this was simple

24   parading or picketting.

25         MS. HERNANDEZ:  It's --

1              THE COURT:  Let's at least acknowledge that the

2    nature of the conduct was different.

3              MS. HERNANDEZ:  Your Honor, here's the thing,

4    Your Honor:  There were people at the Congress that day who

5    acted clearly illegally.

6              And I'm not saying that there may not be

7    statutes --

8              THE COURT:  So ultimately, isn't this a jury

9    question?

10             MS. HERNANDEZ:  Well, no.

11             I'm not saying that there may not be statutes that

12   reach the conduct that is alleged against my client.

13   I'm just saying this statute is unconstitutionally vague.

14             And, again, I just want to go back to the

15   question.  What is the key question in a vagueness argument?

16   Does a person of ordinary intelligence know?  I still don't

17   know what the definition of "corruptly," as applied in this

18   case, means, because there's not a single statement, there's

19   not a single case that they have cited that would reach --

20   that would explain this.

21             And in -- I want to say, in *Poindexter*, which

22   involved Poindexter lying, the Court found "corruptly" to be

23   unconstitutionally vague.  They upheld the 1001 charge.  It

24   wasn't that they were protecting Poindexter from all his

25   conduct.  The false statement charge was not vague.  The

1    15 -- the 1503 -- 1505 charge was unconstitutionally vague.

2            But, again, a person of ordinary intelligence,

3    corrupt, maybe they were jerks, maybe some people were

4    violent, and that's illegal for some other reason.  But the

5    nature of the inquiry is, does a person -- the Court

6    asked -- and the government's response is insufficient.

7            THE COURT:  All right.

8            MS. HERNANDEZ:  I'm sorry, Your Honor, just one --

9            THE COURT:  Ms. Hernandez, I've got to move on

10   here.

11           MS. HERNANDEZ:  And just one last thing here.

12           Again, the ejusdem -- you're supposed to review,

13   you're supposed to decide -- there's a D.C. Circuit case --

14           THE COURT:  I know.  I'll take a look at it.

15           MS. HERNANDEZ:  Explicitly covers this.

16           THE COURT:  I'll take a look at it.

17           All right.

18           Why don't we, in the time we have remaining, why

19   don't we move to Count 4.  This is the count that concerns

20   entering a restricted area and remaining in a restricted

21   area, and I'll hear if there's additional argument that

22   you'd like to make on that count.

23           And, I guess, Mr. Fischer, before you even begin,

24   let me just ask why you think Judge McFadden is wrong.

25   I mean, look, he's done the work.  And tell me what is

1   flawed about his reasoning and his conclusion?

2           MR. FISCHER:  Well, Your Honor, his reasoning

3   basically lays the door open for chaos when it comes to how

4   law enforcement protects Secret Service protectees.  Under

5   Judge McFadden's ruling, anybody could do the restricting of

6   the grounds.  That would be -- that would lead to a

7   situation where local --

8           THE COURT:  But why do I need to be worried about

9   that in this case?

10          I mean, unless -- I mean, I know part of your

11  argument is that the statute requires the Secret Service to

12  cordon it off.  But this isn't a case that involves, for

13  example, whether a local law enforcement -- this was a

14  federally protected area.  There's no question -- even under

15  the Fourth Circuit case, there's not a question raised about

16  whether there's a federally -- whether federal agents can

17  cordon off an area.

18          MR. FISCHER:  Well, Your Honor, certainly, it's

19  illegal to trespass on the grounds of the Capitol, our

20  Capitol buildings, at any time.  You can't trespass, but

21  that's a separate statute.

22          In order to violate this statute, the grounds, we

23  would argue, have to specifically be restricted for the

24  purpose of the visit by the Secret Service protectee; in

25  this case, the Vice President or the Vice President-elect.

1          So, Your Honor, I think --

2          THE COURT:  If I can interrupt you.

3          Why isn't that a jury question ultimately?

4    I mean, why isn't -- for example, won't it be incumbent upon

5    the government to prove that the area was cordoned off

6    because the Vice President and the Vice President-elect were

7    going to be there that day?  I mean, that seems to me a jury

8    question.  It certainly isn't alleged in the indictment.

9          MR. FISCHER:  Well, Your Honor, I think it could

10   become a question of law if the government would answer

11   whether they have knowledge if the Secret Service did.

12         THE COURT:  But that's a different question --

13         MR. FISCHER:  Sure.

14         THE COURT:  -- as to whether the Secret Service is

15   to be the agency that cordons the area off.

16         I'm just talking about why the area was cordoned

17   off generally, even if it was done by Capitol Police.

18         MR. FISCHER:  And, quite frankly, Your Honor, if

19   the Court would be leaning in that direction, we would have

20   no objection to having a question for the jury on that

21   issue.

22         I'd also point out, Your Honor, in Mr. Caldwell's

23   case, he never entered the Capitol building, and the statute

24   differentiates between Capitol buildings and Capitol

25   Grounds.

81

1            THE COURT:  So here's a question for you:
2    Why isn't he part of the Capitol building?  He was on the
3    balcony.
4            Yes, he didn't physically enter the building, but
5    isn't the balcony as much a part of the Capitol building as
6    being inside the Rotunda?
7            MR. FISCHER:  It's not, Your Honor.
8            In fact, I put that in my filing.  I set that out
9    as far as the statutory definition of "Capitol buildings."
10           THE COURT:  I mean, I looked at those and I looked
11   at the -- there's a map that's associated with one of the
12   statutes you cited.  And if you look at that map, which is
13   an old -- I have it here somewhere printed out -- but it
14   shows the Capitol building to be part of the Capitol
15   Grounds.
16           MR. FISCHER:  Well, Your Honor, I'm not sure
17   that -- I don't believe -- there are statutes, not just the
18   1752, but there are also numerous statutes in Title 40 that
19   differentiate between Capitol buildings and Capitol Grounds.
20           THE COURT:  Yeah, that's what I was referring to.
21           I'm talking about those statutes that you cited in
22   your brief from Title 40.
23           MR. FISCHER:  It would seem to me that if they're
24   differentiating, if Congress is differentiating between the
25   two, in this case, it would have a major implication because

1    Mr. Caldwell and the Vice President were never

2    contemporaneously on the grounds.

3            Now, as far as the building, Your Honor, the

4    allegation is that he went on the balcony.  The balcony is

5    not covered, it's not an interior of anyplace.  I believe

6    the balcony in question is the balcony where the

7    Inauguration -- the President speaks during the

8    Inauguration.

9            THE COURT:  Right.

10            MR. FISCHER:  But I don't believe that constitutes

11    a building under the statute.

12            THE COURT:  Okay.

13            MR. FISCHER:  And so, Your Honor, we'll submit on

14    the papers besides that, unless the Court has any questions.

15            THE COURT:  No, nothing further.

16            MR. FISCHER:  Thank you, Your Honor.

17            THE COURT:  Thank you, Counsel.

18            Any response with respect to Count 4, Mr. Nestler?

19            MR. NESTLER:  Yes, Your Honor, just briefly.

20            One is, Mr. Fischer cited Title 50 of the U.S.

21    Code.  That is not applicable here.  So the government

22    charged 18 U.S.C. 1752.  And if we just walk through the

23    statute, it's very plain in the language.

24            So 1752(a)(1) criminalizes knowingly entering or

25    remaining in a restricted building or grounds.  (c)(1) then

1    defines "restricted builds or grounds."

2              (c)(1)(B) has one of those definitions as any

3    grounds that are posted, cordoned off or otherwise

4    restricted in an area where a protectee will be visiting.

5              And then (c)(2) says that Secret Service

6    protectees are defined elsewhere at 18 U.S.C. 3056.  And at

7    3056(a)(1), the statute says the Vice President is a Secret

8    Service protectee.

9              That's the end of the analysis in terms of the

10   sufficiency of the indictment charging 1752.

11             THE COURT:  Does it matter, in your view, whether

12   he was on the inside or the outside of the building?

13             MR. NESTLER:  No.

14             THE COURT:  In other words, the allegation is that

15   he made his way to the west balcony.  He -- that puts him in

16   a restricted building, in your view, even though he's on the

17   outer -- the exterior of that building?

18             MR. NESTLER:  Correct.

19             And Your Honor's referring to the map that's at

20   5102(a) -- so sorry, 50 U.S.C. 5102(a).

21             THE COURT:  Right.

22             MR. NESTLER:  Refers to the Capitol building and

23   grounds as defined by a map from 1946.

24             THE COURT:  Correct.

25             MR. NESTLER:  And that map shows that the building

1    itself is part of the grounds.

2              THE COURT:  Correct.

3              MR. NESTLER:  And if the government had charged

4    the defendant with violating that statute, I think we would

5    be in the same position.  But we didn't.  The Grand Jury

6    indicted him on 1752.

7              And so the perimeter, the area that was "posted,

8    cordoned off, or otherwise restricted," which in this

9    situation does include the entirety of the Capitol Grounds

10   that encompassed the building, is where Mr. Caldwell and the

11   other defendants are charged with being.  There's no need to

12   resort to any other statutes.

13             THE COURT:  All right.

14             Why don't we move forward and let's -- Ms. Robin,

15   why don't we bring you into the mix here.  And if you want

16   to be heard about Count 8 and then the obstruction count,

17   the tampering count that's specific to Mr. James.

18             MS. ROBIN:  Thank you, Your Honor.

19             Just to be clear, when I filed the initial motion,

20   it was count 8.  It's now Count 9 in the fifth superseding

21   indictment.

22             THE COURT:  Right.

23             MS. ROBIN:  So I'll refer to it, for purposes of

24   this argument, as Count 9, and I'm referring to the assault

25   count.

1          So as Your Honor referenced earlier, we had filed

2   two motions, the first was a motion to dismiss what is now

3   Count 9 and Count 13.

4          And as you alluded to, with the fifth superseding

5   indictment and the government changing the language, it

6   really rendered moot half of our argument on the motion to

7   dismiss, so I won't be making any argument on that.

8          THE COURT:  Can I just -- and I'm sorry if I'm

9   preempting you, but can I just kind of cut to the chase on

10  your argument --

11         MS. ROBIN:  Sure.

12         THE COURT:  -- with respect to Count 9, I believe

13  it is --

14         MS. ROBIN:  Yes.

15         THE COURT:  -- which is, if I order the government

16  to identify the officers who your client allegedly

17  assaulted, would that --

18         MS. ROBIN:  Render moot?

19         We believe that would remedy the issue that we

20  have.

21         THE COURT:  All right.

22         And then with respect to your request to identify

23  the specific Grand Jury session --

24         MS. ROBIN:  Or proceeding, right.

25         THE COURT:  -- is it your position that the

1    government, in order to prove a crime -- the crime that's

2    alleged here, has to establish a specific Grand Jury

3    session, or can a Grand Jury proceeding in general do?

4           MS. ROBIN:  So our position with respect to the

5    request for a bill of particulars is that in order for us to

6    adequately and intelligently prepare a defense for Mr. James

7    and to avoid surprise at trial, we need to be able aware of

8    the particular proceeding.

9           I think --

10          THE COURT:  But if the government doesn't have to

11   prove a particular Grand Jury proceeding, as opposed to just

12   Grand Jury proceedings in general; that is, the process of

13   bringing an indictment, the body that brings an indictment,

14   if they don't have to prove a specific Grand Jury

15   proceeding, then why does it matter which Grand Jury

16   proceeding, if any, is at issue?

17          MS. ROBIN:  Because they have to prove a nexus

18   that both *Aguilar* and *Arthur Andersen* talk about in order to

19   prove him guilty of this particular offense, right?

20          So the nexus, as you referenced earlier, is the

21   nexus between the alleged obstructive conduct and the

22   particular proceeding at issue.  And that nexus really

23   involves two things; it involves, number one, a relationship

24   in time, so that it has to at least -- the proceeding has to

25   at least have been foreseeable to the defendant that's

1    charged, but it also involves a nexus as to logic and/or

2    causation -- relationship and logic or causation.

3              THE COURT:  I agree with you that there's a nexus

4    requirement.  But what does it matter -- I mean --

5    particularly in this case, I mean, when the allegation of

6    document -- or I can't remember whether it was documents

7    or -- with respect to Mr. James --

8              MS. ROBIN:  It's contents on a cell phone.

9              THE COURT:  Well, so contents of a cell phone --

10   I mean, it happens immediately in the aftermath, I don't

11   remember if it happens on January 6th or not, but sort of in

12   the immediate aftermath, certainly before any Grand Jury is

13   convened, I believe.

14             So what does it matter which particular Grand Jury

15   that's been impaneled over the course of many months the

16   government claims that was obstructed or impeded by virtue

17   of Mr. James's conduct?

18             MS. ROBIN:  Sure.

19             THE COURT:  I don't know which Grand Jury, for

20   example, heard evidence about Mr. James, but I don't know

21   that they have to prove the case with that degree of

22   specificity, do they?

23             MS. ROBIN:  Well, they have to prove, like I said,

24   the nexus, which kind of is really two different issues;

25   one, that there's a foreseeability prong, right?

1           THE COURT:  Right.

2           MS. ROBIN:  So that gets to the dates.

3           Mr. James wasn't indicted by a Grand Jury until

4    the end of March, I believe.  This alleged obstructive

5    conduct occurred on or about January 8th.

6           So certainly our defense, if the alleged

7    Grand Jury proceeding is the end of March, is going to vary

8    differently, significantly, I would say, than if it's a

9    Grand Jury proceeding that occurred maybe, you know, six

10   months later or three months prior.  It goes to the issue of

11   foreseeability; the particular date of the proceedings

12   certainly does.

13          But also, the second really important point there

14   is that this alleged obstructive conduct consists of

15   Mr. James allegedly deleting the Signal chat from his own

16   cell phone and advising Mr. Grods to delete the Signal chat

17   from his cell phone.  Mr. Grods was never indicted.  He pled

18   guilty to a criminal information.  So he was never the

19   subject of a Grand Jury indictment.

20          So certainly, again, when we're talking about that

21   nexus, we're talking about a concern also -- not just for

22   foreseeable, but also the issue of whether or not there's a

23   causal or some sort of logical connection between -- and

24   really what we're going to here is intent.

25          And the way that the Supreme Court has kind of

1    talked about it in both *Aguilar* and, again, in --

2           THE COURT:  I guess your point is that the only

3    Grand Jury proceeding he could have really intended to

4    obstruct was the Grand Jury that heard the evidence against

5    him, and you want to know which Grand Jury heard the

6    evidence against him.

7           In other words, say there's a -- he got indicted

8    at the end of March, the government couldn't come in and try

9    and prove that he obstructed the Grand Jury that sat in May

10   and didn't hear any evidence against him at all.

11          MS. ROBIN:  I mean, I think that, in a nutshell,

12   is it.

13          I will say that the language in *Aguilar*, which is

14   adopted in *Arthur Andersen*, is also really telling here, and

15   that's that the conduct, the alleged conduct, must have "the

16   natural and probable effect of interfering with the

17   proceeding at issue."

18          So really what we're getting at is some sort of

19   defense that would incorporate this nexus requirement, is

20   essentially, did this particular Grand Jury proceeding even

21   request these cell phone contents?  If they didn't, that

22   would certainly go towards an argument in terms of our

23   defense.  But without knowing that, we have no ability to

24   really make some sort of informed intelligent defense.  And

25   certainly, the intent element is an important part of it.

1          The language from *Arthur Andersen* really couldn't

2    be any more succinct and applicable than when it says

3    essentially that, you know, if the defendant lacks

4    knowledge, that his actions are likely to affect a

5    particular proceeding, he lacks the requisite intent.

6          And more specifically, quoting directly from

7    *Arthur Andersen*, one can't be guilty under 1512 for

8    destroying documents, or persuading others to destroy

9    documents, when he doesn't have in mind any particular

10   official proceedings in which those documents might be

11   material.

12         So when you combine that with the language from

13   *Aguilar* that the conduct or the endeavor must have the

14   natural and probable effect of interfering, then certainly

15   we need to know more about the particulars of the official

16   Grand Jury proceeding that they're talking about.

17         And the final point I'll make on that is that the

18   way that the government has structured the indictment,

19   they're really trying to get around the language that the

20   statute requires.

21         The statute requires that the obstruction be of an

22   official proceeding.  And when you look at the definitions

23   of an "official proceeding," the one that's relevant here

24   under 1515, is a proceeding before a Federal Grand Jury.

25         But that's not how they phrased it in the

1    indictment.  They phrased it as just a general Grand Jury

2    investigation of the events into January 6th.  They haven't

3    given us any time frame of any particular proceeding other

4    than the FBI investigation which we know by now and they

5    know by now doesn't -- isn't relevant to this charge, does

6    not make up a 1512 offense.

7                THE COURT:  Okay.

8                Anything further, Ms. Robin?

9                MS. ROBIN:  No.  Thank you.

10               THE COURT:  Mr. Nestler, I assume it's still

11   you --

12               MR. NESTLER:  Yes.

13               THE COURT:  -- maybe it's not.  Busy afternoon for

14   you.

15               What's your objection to identifying the

16   particular Grand Jury session that you allege Mr. James's

17   conduct to have obstructed?

18               MR. NESTLER:  It's not required, Your Honor.

19               So the government is not required to tell the

20   defense which particular Grand Jury was seated or which

21   particular meeting of that particular Grand Jury it was that

22   Mr. James's conduct obstructed.  It's sufficient, in the

23   cases that the government cited in its brief, that the

24   government to allege, at the Rule 12 stage, that his conduct

25   obstructed a Grand Jury proceeding.

1          THE COURT:  Do you think at trial, you need to

2     specify a particular Grand Jury proceeding?

3          MR. NESTLER:  No.

4          We need to -- the government would need to specify

5     that a Grand Jury was seated, and the indictment itself

6     ought to be prima facie evidence of that.

7          And then the government will need to prove a

8     nexus, which is that Mr. James's intent was to obstruct a --

9     well, was to delete the Signal thread, and that he knew it

10    was done corruptly, as we talked about with (c)(1)

11    earlier -- or with (c)(2) earlier -- this is (c)(1), it was

12    done corruptly with the intent to obstruct a proceeding,

13    which is to make sure it was not available for the

14    Grand Jury to use when investigating.

15         The government will need to prove a nexus,

16    Your Honor, we said so in our pleading.

17         THE COURT:  Right.

18         MR. NESTLER:  We agree with *Aguilar* and *Arthur*

19    *Andersen*.  And that's all.  The government does not need to

20    prove more.

21         THE COURT:  It's just interesting.

22         You know, in a sense, the earlier the Grand Jury

23    proceeding, maybe the harder it is for the government to

24    prove its case.

25         In other words, say he gets indicted six months

1    into the Grand Jury's -- various Grand Jury proceedings and

2    sessions.  The argument is probably more powerful for the

3    government that he most certainly -- well, it's harder to

4    know because the question is his state of mind at the time

5    he engaged in the obstruction.  So maybe it matters less, in

6    terms of proving his state of mind, which Grand Jury session

7    the government claims was obstructed.

8              MR. NESTLER:  That's correct.

9              And the Grand Jury did not have to be impaneled at

10   the time that he obstructed.

11             THE COURT:  Right.

12             MR. NESTLER:  It doesn't have to be pending or

13   even about to be instituted.

14             And it's not necessarily the Grand Jury or a

15   Grand Jury that was investigating Mr. James.  Mr. James's

16   conduct obstructed a Grand Jury investigation into

17   co-defendants, let's say, or the events of January 6th writ

18   large.  So there are lots of different facets that the

19   government could -- or lanes the government could choose at

20   trial to prove that Mr. James's conduct obstructed the

21   Grand Jury or a Grand Jury's investigation.

22             THE COURT:  Okay.

23             Thank you.

24             MR. NESTLER:  Thank you.

25             THE COURT:  Ms. Robin, did you want a brief

1    rebuttal?

2              Oh, did you want to add anything?

3              MR. NESTLER:  I didn't know if you wanted me to

4    address the APO charge.

5              THE COURT:  The assaulting a police officer.

6              MR. NESTLER:  Yes.

7              THE COURT:  If you'd like, sure.

8              MR. NESTLER:  The government does not believe that

9    it's required to allege in the indictment the name of the

10   officer who was assaulted.

11             THE COURT:  Have you disclosed it in discovery?

12             MR. NESTLER:  Yes, Your Honor, we've disclosed the

13   body-worn camera files and the names of the officers who had

14   the body-worn cameras attached to their chest --

15             THE COURT:  Right.

16             MR. NESTLER:  -- and identified in the indictment

17   the area and the time and the conduct that we're alleging

18   Mr. James committed the assaults.

19             THE COURT:  And how many officers were in that

20   area?

21             MR. NESTLER:  Many.

22             Many officers were in the area.

23             In the immediate area near Mr. James, there were

24   about three.

25             THE COURT:  Okay.

```
 1              MR. NESTLER:  But there were many officers in the
 2    Rotunda at the time or in the area.
 3              THE COURT:  I assume the government knows which
 4    officer Mr. James allegedly assaulted.
 5              MR. NESTLER:  Yes, though the government's
 6    position is that the government does not need to prove to
 7    the jury the name of the officer who was assaulted.
 8              THE COURT:  No, you don't need to prove the name.
 9              MR. NESTLER:  And --
10              THE COURT:  But you do need to prove it was an
11    officer.
12              MR. NESTLER:  We have to prove --
13              THE COURT:  And presumably, the defense would like
14    that information just to know which officer you claim it is
15    that was assaulted.
16              MR. NESTLER:  The government's position is that
17    the assaultive act is the unit of prosecution.  And so
18    Mr. James's act, not necessarily the victim of that act, is
19    what the government is focused on.
20              THE COURT:  Sure.
21              All right.
22              Ms. Robin.
23              MS. ROBIN:  With respect to the obstruction count,
24    the case cited by the government in their reply is
25    completely inapplicable.
```

1        I mean, in that case, the Court essentially says,

2    it's obvious from the rest of the indictment that he knows

3    which Grand Jury proceeding it is.  The defendant in that

4    case actually testified at that particular Grand Jury and

5    was also accused of perjuring himself in that Grand Jury.

6        So it's entirely distinguishable from this case,

7    where we have hundreds potentially of Grand Jury proceedings

8    to pick from and the defense has no idea which one when

9    we're trying to mount an intelligent defense that Mr. James

10   -- that the conduct that Mr. James allegedly committed

11   didn't have the sufficient nexus to the particular

12   Grand Jury proceeding.  So it's entirely distinguishable and

13   I would simply say not even helpful to the assessment of the

14   argument here.

15       Second, with respect to the assault on the law

16   enforcement officer, I mean, the problem -- I didn't get

17   into this before because there wasn't much argument, but the

18   other problem is that without them identifying the victim,

19   we're essentially facing a situation where the count is

20   duplicitous.

21       They've alleged -- they claim to have alleged only

22   one single assault.  But then when they're in the paragraph

23   that they -- paragraphs 165 to 167, the only alleged

24   descriptive conduct that actually amounts to an assault says

25   that he pushed -- says -- and this is paragraph 165 --

1    quote, "he yanked and pushed several riot officers out of

2    the way."

3              So without some sort of description as to which

4    particular officer he's accused of assaulting they've

5    actually alleged a number of different crimes in a single

6    count.

7              And when you're determining whether or not a count

8    is faulty because it's duplicitous, I mean, the question is,

9    you must determine if it sets forth separate offenses or if

10   it merely prescribes various means of committing a single

11   offense.

12             So we're not talking about -- we don't have any

13   issue with the language about -- that they're alleging that

14   he both assaulted, obstructed, all of that.  Those are just

15   different means of committing an offense.  But what clearly

16   makes a different offense is when you add multiple victims

17   into the mix.  So without identifying a particular victim,

18   that count is faulty and can't survive.

19             So we're suggesting that an easy fix is simply to

20   provide the bill of particulars.  And, quite frankly,

21   there's no reason not to identify the particular alleged

22   victim of the offense.  It's not as if it's a juvenile, it's

23   not as if they don't know the identity of the officer, so

24   there's no reason not to.

25             THE COURT:  All right.

1          Thank you, Ms. Robin.

2          All right.

3          So the last motion of the day is the motion for

4    venue transfer.  So I'm happy to hear some additional

5    argument from Mr. Fischer, if you'd like to make it.

6          MR. FISCHER:  Your Honor, first of all, it's a

7    rare day, indeed, when a defendant tries to get their case

8    moved out of D.C., out into a rural or suburban -- more

9    rural or suburban area.  I never thought I'd see the day

10   when I would try to have a case moved out of the District of

11   Columbia to one of those areas, but this is the type of case

12   that I believe is necessary and required for the Court to

13   do.

14         Your Honor, I fully understand that ordinarily the

15   Court would wait to -- wait until jury selection, wait until

16   the process of having questionnaires go out, but in this

17   case, there is so much prejudice against these defendants,

18   it's off the charts.

19         THE COURT:  How do you know that, Mr. Fischer?

20         MR. FISCHER:  I'm sorry, Your Honor?

21         THE COURT:  How do you know that?

22         MR. FISCHER:  Well, Your Honor, this city --

23   people can differ politically, I understand that, but this

24   city is very anti-Donald Trump.

25         THE COURT:  So?  And even if I accept that as

1    true, it doesn't mean your client can't get a fair trial.

2              MR. FISCHER:  Well, I think it does, Your Honor.

3              When you have people on the jury who --

4              THE COURT:  You haven't put any evidence in front

5    of me, not any kind of surveys, not any kind of polling

6    data, nothing --

7              MR. FISCHER:  Well --

8              THE COURT:  -- that would suggest that a jury pool

9    in this city is predisposed to not fairly judging your

10   client or any of these other defendants' conduct.

11             MR. FISCHER:  Well, Your Honor, unfortunately, my

12   client doesn't have the 30- or $40,000 laying around to get

13   a poll done.

14             And I don't -- look, Your Honor, in this case,

15   what separates this case from other cases involving

16   prejudicial publicity --

17             THE COURT:  How about this?

18             I mean, you wrote in your motion, "District

19   residents, who largely style themselves as chic,

20   sophisticated, worldly, highbrow urbanites, are repulsed" --

21   repulsed -- "by rural America's traditional values,

22   patriotism, religion, gun ownership, and perceived lack of

23   education."  In fact, you wrote that District residents

24   despise many things that traditional America stands for.

25             I think it would come as maybe news or surprise

1    that people in D.C. aren't traditional Americans and don't

2    have traditional values that you claim those of us who've

3    lived here for 20 years and longer, we lack those

4    traditional values.

5              MR. FISCHER:  Well, Your Honor, I don't believe

6    that that was the intent of what I wrote, to say that people

7    in D.C. don't have American values.  They certainly have

8    American values.  They just happen to hate virtually

9    everything --

10             THE COURT:  "They despise many things that

11   traditional America stands for."

12             MR. FISCHER:  And they do.

13             THE COURT:  Okay.

14             MR. FISCHER:  They absolutely do.

15             Your Honor, it is not situation normal 15 miles

16   outside of the Beltway for people to surround politicians'

17   houses.  It is not situation normal that --

18             THE COURT:  How do you know any of those people

19   live in the District of Columbia?

20             MR. FISCHER:  That surround houses?

21             THE COURT:  Well?

22             MR. FISCHER:  Your Honor, it happens all the time.

23             THE COURT:  It happens at Mitch McConnell's house

24   in Kentucky.

25             MR. FISCHER:  Well, Your Honor, the -- I mean,

1  you're talking about handful of people.

2        I mean, it's almost every day in this city, you

3  have a protest --

4        THE COURT:  All right.

5        You know, I'm not going to spend a lot of time on

6  this.  I will just say the following, Mr. Fischer:

7        I think you've done a wonderful job for your

8  client, I really do, but this brief -- and I will be

9  reserved about what I am about to say -- reads less like a

10  legal brief than something you might read on a blog, and

11  that's not acceptable.  I mean, I would expect better from

12  you, I expect better from every other lawyer in this

13  courtroom.

14        There may be very valid grounds for you to be

15  concerned about whether your client can get a fair trial or

16  not.  But painting with a broad brush is not the way to do

17  it.  And casting aspersions upon the people that live in

18  this district is not the way to do it.

19        And I'm not telling you you may not be right, we

20  may have a difficult time picking a jury in this district, I

21  don't know, we'll find out, if and when we get to trial, but

22  writing a brief that looks like it's been ripped out of a

23  blog post isn't going to do it.

24        And *Skilling* demands more, the case law demands

25  more.  And you just can't come in here and start sneaking

1    statements about things like traditional values and whether

2    people in a particular city have them or despise them.  It's

3    just not going to fly.

4            And so, you know, I don't know that we want to

5    spend a whole lot more time on this, but I just wanted you

6    to be aware of that, and I'll just ask you to be mindful of

7    that moving forward, okay?

8            MR. FISCHER:  And, Your Honor, I appreciate the

9    Court's comments.

10           And I do want to make it clear that I'm not trying

11   to denigrate the citizens of the District of Columbia.

12   There are major disagreements culturally and on issues.

13           I do want to raise one additional issue --

14           THE COURT:  I will say this:  I have never, not

15   once in my time as a judge or a defense lawyer, thought that

16   the people of the District of Columbia who've served on

17   juries have done anything other than the job they've been

18   asked to, which is dispassionately view the evidence without

19   regard to what the conduct is that's alleged and who the

20   defendant is.

21           And Ms. Hernandez and I disagree about a lot of

22   things, but she's shaking her head, so I know I'm doing okay

23   if she agrees with me on that.

24           MR. FISCHER:  Well, Your Honor, if I could point

25   out, part of the frustration -- I'm just going to raise one

1    more issue and I'll sit down and shut up -- my client and

2    these defendants have been subjected to nonstop race-baiting

3    day after day after day.  And, quite frankly, they're sick

4    and tired of it.  My client's sick and tired of it.  He's a

5    military veteran, he doesn't have a racist bone in his body,

6    yet every day, he has to see on TV, he has to read newspaper

7    articles where people write in *The Washington Post* and other

8    places that he's a white supremest, that he has the Attorney

9    General go out there and call him a white supremest, a white

10   nationalist, the Speaker of the House, the President of the

11   United States.

12           And so, Your Honor, maybe the language I used was

13   a little bit strong, but my client did not enter -- he did

14   not enter the Capitol, he did not damage any property, he

15   was not involved in any conspiracy, and, quite frankly, he's

16   sick and tired of being painted -- I think I could speak for

17   the other defendants as well, they're sick and tired of news

18   media and politicians labeling them as racist.  It's

19   disgusting, it's vile.  And, Your Honor, maybe I was a

20   little bit extreme in my language, but it's very frustrating

21   to my client.

22           So with that said, Your Honor, thank you.

23           THE COURT:  Thank you, Counsel.

24           And, look, I'm not -- I'm not condoning that

25   either, whether -- we ought not to be characterizing people

1    in large groups.  At least in this courtroom, people will be

2    judged by their individual actions, and I anticipate that

3    any jury that's selected will do the same.

4              Ms. Hernandez.

5              MS. HERNANDEZ:  We agree on a lot of things,

6    Your Honor.

7              But what I stood up for, Your Honor, the Court

8    asked some questions that I think were left, perhaps, not

9    properly answered or could be answered better, and I would

10   just like to ask the Court for permission to file a

11   supplemental brief on some of the questions that the Court

12   asked.

13             THE COURT:  Will you file it by the deadline?

14             MS. HERNANDEZ:  I will -- Your Honor, my mind --

15   I'm telling you, this is a very --

16             THE COURT:  You know, deadlines matter,

17   Ms. Hernandez.

18             MS. HERNANDEZ:  I understand, Your Honor.

19             THE COURT:  And I don't want to be difficult here,

20   but you and I have a history and you've in been in other

21   cases before me --

22             MS. HERNANDEZ:  This is the only case --

23             THE COURT:  -- and deadlines are seemingly

24   optional.

25             MS. HERNANDEZ:  This is the only case where the

```
 1    deadlines were missed.

 2            But, Your Honor, I will say the following.

 3            THE COURT:  I think the record would show

 4    otherwise, but anyway.

 5            MS. HERNANDEZ:  This is a very difficult issue.

 6    It was like you'd read one case and that case cited ten

 7    cases.

 8            THE COURT:  All right.

 9            But don't ask me for a day and then not file it

10    and then file a 30-page brief on the eve of the argument.

11            I mean, I read your brief, which won't surprise

12    you, but don't do that.

13            MS. HERNANDEZ:  Let me say this, Your Honor:

14    My view is I always try to give the Court the best work that

15    I am able to.

16            THE COURT:  I know you do.

17            MS. HERNANDEZ:  I read as many cases, all the

18    cases and more --

19            THE COURT:  Okay.

20            MS. HERNANDEZ:  -- so that I give the Court --

21            THE COURT:  I'm just asking you --

22            MS. HERNANDEZ:  I understand.

23            THE COURT:  -- file your papers in a timely way.

24            MS. HERNANDEZ:  Yes, I understand, Your Honor.

25            THE COURT:  All right.
```

1          Let's talk about what we're going to do next.

2          MS. HERNANDEZ:  Thank you.

3          THE COURT:  So I think I would like a more fulsome

4     written response from the government on the argument that's

5     raised in Ms. Hernandez's brief about whether the statute

6     encompasses the conduct that's alleged.

7          I mean, I think you and I have had a very long

8     discussion about it here today, Mr. Nestler, but I think

9     it would be in everyone's interest, including my own, to

10    have that position articulated in writing.  I know other

11    judges have asked for that to happen, including Judge Moss,

12    and he already has a schedule in place in his case.

13         I think the question, Mr. Nestler, is how quickly

14    you think you can turn something around.

15         MR. NESTLER:  About three weeks, Your Honor.

16         THE COURT:  Okay.

17         I'll give you two, because I do want to get to

18    this, I don't want this to sit very long.

19         So I'll ask for some additional briefing from the

20    government by the 22nd.  And if any of the defendants wish

21    to file essentially what would be a reply, they can do so by

22    October 6th.

23         Last bit of business, which is where we go from

24    here in terms of the case.  I hoped to have enough time to

25    kind of talk about where things stand in terms of discovery

1    and the like, but I've got to get to a meeting that I'm

2    already 15 minutes late for.

3            So can we convene -- because we haven't had a

4    status conference in this case for at least 30 days -- can

5    we convene next Thursday at 11:00 a.m. for a status

6    conference?  This obviously is addressed to the lawyers who

7    are on -- who are remote as well.

8            MR. NESTLER:  That's fine for the government,

9    Your Honor.

10           THE COURT:  Okay.

11           Any defense counsel have an intractable conflict

12   on September 16th at 11:00 a.m.?

13           MR. FISCHER:  The 16th is --

14           MR. NESTLER:  Your Honor, Yom Kippur is the 17th,

15   it starts the night of the 16th.

16           THE COURT:  Oh, okay.

17           I was just having a conversation with Mr. Douyon

18   about our detained defendants.  We're going to have to bring

19   them to the courthouse for that hearing.  There are

20   administrative changes being made at the jail with respect

21   to the remote hearings policy.  And while right now I think

22   we have five rooms available for remote hearings, they're

23   going to be reduced to two and we have three detained

24   defendants and you can do the math and figure out that

25   that's not going to work.  So that's what that conversation

1   was about.

2         All right.  So 11:00 a.m.

3         Yom Kippur doesn't present a problem, Mr. Nestler?

4         MR. NESTLER:  No, Your Honor.

5         THE COURT:  Okay.

6         So anybody unavailable at 11 a.m.?

7         You don't have to appear in person unless you want

8   to.

9         MR. MacMAHON:  Your Honor, Edward MacMahon for

10  Mr. Walden.

11        I'll be out of the country, but I'm sure Mr. Spina

12  can cover, if the Court is happy with that.

13        THE COURT:  That's fine, Mr. MacMahon.

14  No problem.

15        MR. MacMAHON:  Thank you, Your Honor.

16        MR. MACHADO:  Your Honor, we didn't hear that

17  comment that was made.

18        THE COURT:  Mr. MacMahon just said that he's

19  unavailable, he's out of the country on the 16th, but his

20  co-counsel, Mr. Spina, can certainly participate remotely

21  and hasn't said he's unavailable.

22        MR. FISCHER:  Okay.  Thank you.

23        THE COURT:  All right.

24        So hearing no other conflicts, why don't we set

25  11:00 a.m. on September the 16th for a status conference and

1    we will look forward to seeing everybody on that date.

2         Thank you, everybody, for your presentations this

3    afternoon, it's a lot to think about.

4         Thanks, everyone.

5         Don't wait for me.

6         COURTROOM DEPUTY:  All rise.

7         This court now stands adjourned.

8         (Proceedings concluded at 4:23 p.m.)

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

Date:__September 10, 2021____  /S/__William P. Zaremba_____

                              William P. Zaremba, RMR, CRR

111

**COURTROOM DEPUTY: [1]** 109/6
**DEPUTY CLERK: [1]** 8/4
**MR. FISCHER: [41]** 17/11 17/15 19/5 19/19 20/1 20/11 21/8 22/3 23/22 23/25 25/7 44/18 68/15 69/25 79/2 79/18 80/9 80/13 80/18 81/7 81/16 81/23 82/10 82/13 82/16 98/6 98/20 98/22 99/2 99/7 99/11 100/5 100/12 100/14 100/20 100/22 100/25 102/8 102/24 107/13 108/22
**MR. GEYER: [8]** 10/9 10/11 11/5 12/11 13/2 13/13 13/17 13/20
**MR. MACHADO: [2]** 16/22 108/16
**MR. MacMAHON: [2]** 108/9 108/15
**MR. NESTLER: [71]** 44/21 46/25 47/22 47/25 49/4 49/17 49/21 49/24 50/1 50/5 50/11 50/24 51/1 51/5 51/11 51/14 52/10 52/22 53/6 53/15 53/18 53/21 54/25 55/22 56/24 57/9 58/14 59/5 59/24 60/23 61/11 61/24 62/3 63/3 64/12 64/23 65/10 65/21 65/23 66/10 67/17 68/11 72/7 82/19 83/13 83/18 83/22 83/25 84/3 91/12 91/18 92/3 92/18 93/8 93/12 93/24 94/3 94/6 94/8 94/12 94/16 94/21 95/1 95/5 95/9 95/12 95/16 106/15 107/8 107/14 108/4
**MS. HALLER: [3]** 44/4 44/12 44/16
**MS. HERNANDEZ: [93]** 25/10 25/12 27/3 27/11 27/22 28/5 28/8 28/24 29/1 29/9 29/24 30/1 30/4 30/7 30/16 30/22 30/25 31/18 31/22 32/1 32/20 32/22 33/1 33/4 33/9 33/12 33/15 33/17 33/20 33/22 34/6 34/11 35/13 35/15 36/2 36/14 36/24 37/6 37/8 37/11 37/14 38/2 38/9 38/25 39/4 39/10 39/13 40/2 40/5 40/18 42/18 42/23 43/2 70/9 72/9 72/16 72/22 73/3 73/7 73/10 73/23 74/6 74/13 74/17 74/19 74/22 75/2 75/14 75/17 75/22 75/25 76/3 76/14

77/10 78/8 78/11 78/15 104/5 104/14 104/18 104/22 104/25 105/5 105/13 105/17 105/20 105/22 105/24 106/2
**MS. ROBIN: [15]** 84/18 84/23 85/11 85/14 85/18 85/24 86/4 86/17 87/8 87/18 87/23 88/2 89/11 91/9 95/23
**THE COURT: [235]**

**$**
**$40,000 [1]** 99/12

**'**
**'80s [1]** 62/18
**'81 [1]** 20/18
**'82 [1]** 20/19
**'broad [1]** 68/24
**'Corrupt' [1]** 31/9
**'corruptly' [2]** 31/9 72/3
**'culpability' [1]** 31/16
**'knowingly [1]** 31/5 31/13
**'knowingly' [1]** 31/7
**'Knowledge' [1]** 31/7
**'purpose [1]** 68/25

**/**
**/S [1]** 110/7

**0**
**08077 [1]** 4/13
**0826 [1]** 2/5
**0840 [1]** 2/18

**1**
**10 [2]** 8/10 110/7
**100 [2]** 23/23 45/2
**1000 [1]** 6/5
**1001 [1]** 77/23
**101 [1]** 4/4
**1025 [1]** 6/8
**107 [1]** 5/16
**11 [2]** 8/11 108/6
**1100 [1]** 5/22
**1111 [1]** 5/4
**114 [3]** 5/3 5/7 6/13
**11:00 [4]** 107/5 107/12 108/2 108/25
**12 [3]** 8/11 55/5 91/24
**1215 [1]** 51/8
**1219 [1]** 6/4
**1230 [1]** 4/10
**1297 [1]** 6/18
**13 [2]** 8/12 85/3
**1330 [2]** 5/11 5/13
**14 [1]** 8/12
**1431 [1]** 3/5
**15 [7]** 8/13 40/12 69/8 69/23 78/1 100/15 107/2
**1503 [9]** 23/6 23/11 23/19 24/3 51/21 55/19 74/5 74/11 78/1
**1505 [10]** 20/23 20/24

35/22 55/19 73/6 78/1
**1507 [2]** 70/12 72/16
**1512 [52]** 16/10 17/22 18/3 18/8 18/21 23/18 24/19 28/23 30/18 31/3 31/15 31/20 37/2 37/23 40/12 40/13 42/7 42/18 43/7 45/6 46/10 47/7 47/15 47/17 51/8 51/22 55/17 56/15 56/16 58/4 59/23 59/25 60/3 62/19 62/19 64/2 64/19 65/8 65/18 65/20 65/20 65/21 65/24 66/15 66/17 68/18 68/21 68/24 71/6 74/12 90/7 91/6
**1513 [1]** 23/18
**1515 [10]** 19/6 19/7 19/11 20/16 21/9 23/16 23/17 45/6 66/17 90/24
**1519 [3]** 47/7 47/8 49/6
**16 [2]** 8/13 13/12
**165 [2]** 96/23 96/25
**167 [1]** 96/23
**16th [5]** 107/12 107/13 107/15 108/19 108/25
**17 [2]** 8/14 69/24
**1752 [5]** 81/18 82/22 82/24 83/10 84/6
**1776 [1]** 6/19
**17th [1]** 107/14
**18 [2]** 8/14 82/22
**18 U.S.C [2]** 19/7 83/6
**1808 [1]** 3/13
**19106 [1]** 5/21
**19107 [1]** 6/4
**1946 [1]** 83/23
**1979 [3]** 18/20 20/12 20/18
**1981 [2]** 18/21 20/13
**1982 [4]** 18/21 20/13 68/22 69/15
**1996 [2]** 40/24 64/18

**2**
**20 [2]** 39/23 100/3
**20 years [1]** 41/19
**20-year [3]** 52/9 52/21 71/19
**200 [1]** 5/12
**20001 [3]** 2/17 3/4 7/5
**20003 [1]** 2/21
**20004 [1]** 2/13
**20007 [1]** 6/9
**20010 [1]** 3/13
**20036 [1]** 3/10
**20039 [1]** 4/18
**2006 [1]** 4/12
**2009 [1]** 63/6
**201 [1]** 4/3
**20118 [1]** 5/16
**202 [8]** 1/16 2/13 3/5 3/10 3/14 4/18 6/9 7/5
**2021 [2]** 1/5 110/7
**205 [1]** 5/13
**20530 [1]** 1/15

**208-7500 [1]** 2/13
**21-28 [2]** 1/4 8/5
**21061-3065 [1]** 2/4
**215 [2]** 5/22 6/5
**21st [1]** 5/11
**22015 [1]** 4/9
**22314 [2]** 5/4 5/8
**228 [1]** 40/24
**22nd [1]** 106/20
**234 [1]** 40/24
**237 [1]** 57/22
**240 [2]** 2/8 14/1
**25 [1]** 5/15
**252-6928 [1]** 1/16
**26 [1]** 40/23
**2615 [1]** 3/10
**265 [1]** 6/13
**269 [1]** 14/3
**270 [1]** 14/4
**273 [1]** 14/7
**278 [1]** 14/6
**28 [2]** 1/4 8/5
**288 [1]** 14/6
**2:00 [1]** 1/6
**2nd [2]** 4/3 44/5

**3**
**30 [2]** 99/12 107/4
**30 days [1]** 11/11
**30-day [1]** 12/14
**30-page [1]** 105/10
**300 [1]** 2/4
**301 [1]** 2/22
**3056 [2]** 83/6 83/7
**3065 [1]** 2/4
**310 [1]** 2/17
**31324 [1]** 6/18
**315 [1]** 14/14
**316 [1]** 14/14
**3249 [1]** 7/5
**333 [1]** 7/4
**337 [1]** 4/9
**3391 [1]** 2/8
**33950 [1]** 6/14
**342 [1]** 14/15
**34471 [1]** 4/4
**349-1111 [1]** 5/4
**350 [1]** 3/4
**352 [1]** 4/5
**352-2615 [1]** 3/10
**35205 [1]** 5/12
**354-3249 [1]** 7/5
**382 [1]** 14/19
**384 [1]** 14/20
**386 [1]** 14/22
**389 [1]** 14/24
**3902 [1]** 5/17

**4**
**40 [2]** 81/18 81/22
**400 [2]** 3/6 6/8
**400-1431 [1]** 3/5
**410 [1]** 2/5
**4310 [1]** 5/8
**4466 [1]** 4/5
**459-1776 [1]** 6/19
**472-3391 [1]** 2/8

**488 [1]** 57/12
**4:23 [1]** 109/8

**5**
**50 [2]** 82/20 83/20
**501 [1]** 5/21
**503 [1]** 2/16
**5102 [3]** 4/18 83/20 83/20
**540 [1]** 5/17
**546-1000 [1]** 6/5
**550 [1]** 2/12
**555 [1]** 1/15
**556 [1]** 63/6
**5708 [1]** 4/13
**575-8000 [1]** 6/14
**5765-F [1]** 4/8
**5th [1]** 3/3

**6**
**601 [2]** 3/8 5/20
**60585 [1]** 4/17
**607-5708 [1]** 4/13
**625 [1]** 2/12
**629-4466 [1]** 4/5
**656-1230 [1]** 4/10
**683-4310 [1]** 5/8
**687-3902 [1]** 5/17
**6928 [1]** 1/16
**6th [4]** 87/11 91/2 93/17 106/22

**7**
**703 [4]** 2/18 4/10 5/4 5/8
**7166 [1]** 2/7
**7310 [1]** 2/3
**7447 [1]** 3/14
**7500 [1]** 2/13
**7727 [1]** 2/22
**787-0826 [1]** 2/5

**8**
**8000 [1]** 6/14
**81 F.3d [1]** 40/24
**8100 [1]** 6/9
**839-5102 [1]** 4/18
**848 [1]** 63/6
**856 [1]** 4/13
**8th [1]** 88/5

**9**
**900 [1]** 3/9
**912 [1]** 6/19
**922 [1]** 2/21
**928-1100 [1]** 5/22
**928-7727 [1]** 2/22
**939-1330 [1]** 5/13
**941 [1]** 6/14
**965-8100 [1]** 6/9
**989-0840 [1]** 2/18
**996-7447 [1]** 3/14

**A**
**a.m [5]** 107/5 107/12 108/2 108/6 108/25
**ability [3]** 11/1 36/25 89/23
**able [6]** 10/2 17/5

**A**

able... [4] 22/11 66/23 86/7 105/15

about [79] 11/24 13/4 15/22 15/23 20/4 22/18 26/13 27/15 28/14 28/16 30/11 34/24 35/1 36/9 37/5 37/15 38/15 39/7 40/13 42/9 45/24 50/22 51/7 51/24 51/25 54/16 57/5 57/14 60/12 61/18 63/4 63/11 63/14 63/20 63/21 63/24 64/17 65/12 65/15 66/25 67/19 67/25 68/17 69/13 70/10 79/1 79/8 79/15 80/16 81/21 84/16 86/18 87/20 88/5 88/20 88/21 89/1 90/15 90/16 92/10 93/13 94/24 97/12 97/13 99/17 101/1 101/9 101/9 101/15 102/1 102/21 106/1 106/5 106/8 106/15 106/25 107/18 108/1 109/3

above [1] 110/4

above-titled [1] 110/4

abs [1] 34/6

absolutely [5] 22/17 32/22 36/14 37/1 100/14

absurd [1] 35/21

accept [1] 98/25

acceptable [2] 13/1 101/11

accepted [1] 32/18

accommodated [1] 10/4

accomplish [2] 52/14 59/14

accurate [2] 33/9 33/15

accused [4] 36/8 36/12 96/5 97/4

acknowledge [1] 77/1

acknowledged [1] 45/1

across [1] 74/23

act [8] 53/22 58/16 62/3 63/16 65/9 95/17 95/18 95/18

acted [1] 77/5

acting [2] 55/14 60/5

action [2] 26/17 36/9

actions [7] 31/25 53/3 55/3 55/6 67/1 90/4 104/2

activities [1] 11/8

activity [3] 19/20 27/17 34/3

acts [1] 24/23

actually [22] 16/23 28/14 29/20 37/16 37/19 48/13 48/14 52/13 60/10 61/2 62/17 63/12 65/16 66/7 66/14 69/15 69/23 70/12 73/6 96/4 96/24 97/5

acutely [1] 62/10

add [7] 38/12 38/12 43/1 43/22 43/24 94/2 97/16

added [2] 70/17 70/18

adding [2] 71/3 71/4

additional [10] 11/10 13/5 15/14 43/1 50/8 67/22 78/21 98/4 102/13 106/19

address [4] 10/13 67/5 67/14 94/4

addressed [4] 67/7 67/12 68/7 107/6

addresses [1] 56/16

addressing [1] 9/20

adequately [1] 86/6

adjourned [1] 109/7

administrative [2] 21/10 107/20

admit [2] 31/19 73/13

adopted [2] 69/22 89/14

advising [1] 88/16

affect [1] 90/4

affects [2] 28/18 28/19

after [12] 25/5 26/12 45/24 49/11 49/12 57/13 57/16 57/19 64/16 66/19 103/3 103/3

aftermath [2] 87/10 87/12

afternoon [8] 8/2 9/11 9/12 10/11 25/10 25/11 91/13 109/3

again [15] 11/14 35/25 36/18 36/24 40/21 42/8 43/15 44/24 62/13 70/13 77/14 78/2 78/12 88/20 89/1

against [6] 69/4 77/12 89/4 89/6 89/10 98/17

agency [1] 80/15

agents [1] 79/16

ago [2] 38/15 38/15

agree [14] 11/12 45/10 48/10 51/4 52/3 65/5 65/7 66/1 66/4 72/11 76/20 87/3 92/18 104/5

agreed [1] 58/2

agrees [1] 102/23

Aguilar [9] 47/20 47/21 51/20 51/21 86/18 89/1 89/13 90/13 92/18

ahead [1] 16/18

aided [1] 7/7

aimed [3] 18/5 18/6 69/11

air [1] 71/13

aj [1] 6/19

akin [1] 41/6

AL [2] 1/6 5/12

Alden [1] 4/7

Alexandria [2] 5/4 5/8

Alfred [2] 5/3 5/7

alibi [2] 70/23 73/19

all [74] 9/10 9/12 9/13 9/23 10/3 12/18 13/10 13/17 13/18 14/2 15/1 19/5 21/9 22/16 25/8 27/4 29/2 32/18 33/24 34/9 34/11 34/20 34/22 36/1 36/6 38/9 40/15 42/9 42/12 42/20 43/10 44/19 45/16 46/18 49/19 53/2 56/1 56/5 56/9 56/12 56/12 62/6 62/12 62/14 62/22 63/9 63/20 63/24 66/5 67/4 68/8 68/10 71/10 73/10 77/24 78/7 78/17 84/13 85/21 89/10 92/19 95/21 97/14 97/25 98/2 98/6 100/22 101/4 105/8 105/17 105/25 108/2 108/23 109/6

All right [3] 13/17 36/1 85/21

allegation [6] 54/12 76/9 76/10 82/4 83/14 87/5

allegations [1] 71/6

allege [3] 91/16 91/24 94/9

alleged [25] 16/8 33/7 34/4 37/20 38/5 39/11 42/16 52/19 60/21 67/15 77/12 80/8 86/2 86/21 88/4 88/6 88/14 89/15 96/21 96/21 96/23 97/5 97/21 102/19 106/6

allegedly [4] 85/16 88/15 95/4 96/10

alleging [2] 94/17 97/13

allowed [2] 30/8 41/24

allows [1] 31/15

alls [3] 56/2 62/12 63/4

alluded [1] 85/4

almost [2] 40/25 101/2

along [1] 23/2

already [4] 9/19 65/2 106/12 107/2

also [25] 14/7 14/17 14/19 14/23 16/21 18/21 23/2 23/3 24/7 57/19 57/21 64/3 65/8 69/5 69/9 70/1 73/8 80/22 81/18 87/1 88/13 88/21 88/22 89/14 96/5

Alvin [1] 8/8

always [2] 62/15 105/14

am [4] 74/19 75/18 101/9 105/15

ambiguity [1] 67/13

ambiguous [1] 74/10

Amendment [8] 35/24 42/10 75/10 75/12 75/16 76/2 76/4 76/7

AMERICA [4] 1/3 8/5 99/24 100/11

American [2] 100/7 100/8

Americans [3] 35/10 42/11 100/1

AMIT [1] 1/10

among [2] 13/6 13/8

amount [3] 37/17 45/25 67/8

amounts [1] 96/24

analysis [3] 35/19 46/21 83/9

analytical [1] 27/14

Andersen [25] 28/17 28/18 28/20 29/14 29/16 30/3 30/10 30/11 30/23 31/2 34/25 34/25 36/2 51/21 51/22 65/3 65/14 66/6 66/20 70/25 86/18 89/14 90/1 90/7 92/19

Angela [1] 5/19

angie [2] 5/22 9/1

another [6] 11/3 12/25 41/10 44/7 48/1 75/1

answer [7] 31/7 40/2 40/5 61/25 65/11 74/17 80/10

answered [2] 104/9 104/9

answering [2] 38/23 74/18

answers [1] 56/24

anti [1] 98/24

anti-Donald Trump [1] 98/24

anticipate [1] 104/2

any [50] 12/2 17/4 17/4 19/14 20/5 20/24 21/1 25/1 25/13 25/17 27/5 27/20 30/21 31/4 31/6 33/6 34/1 37/25 39/6 41/25 50/7 54/12 61/14 61/20 64/4 76/8 79/20 82/14 82/18 83/2 84/12 85/7 86/16 87/12 89/10 90/2 90/9 91/3 91/3 97/12 99/4 99/5 99/5 99/10 100/18 103/14 103/15 104/3 106/20 107/11

anybody [11] 16/16 33/5 33/5 34/2 38/13 42/16 43/21 43/23 76/13 79/5 108/6

anyone [2] 70/5 76/10

anyplace [2] 29/3 82/5

anything [18] 20/9 22/2 23/23 25/18 34/4 42/7 42/21 42/24 42/24 43/22 43/23 43/24 60/13 60/17 76/16 91/8 94/2 102/17

anyway [1] 105/4

aol.com [1] 2/9

APO [1] 94/4

apologize [2] 16/23 17/12

apparently [1] 20/11

appear [2] 20/4 108/7

appearance [1] 10/21

APPEARANCES [7] 1/12 1/18 2/25 3/15 4/20 5/23 6/20

appearing [2] 9/7 9/10

appears [3] 18/20 72/6 74/11

applicable [3] 47/17 82/21 90/2

application [1] 27/5

applications [1] 27/5

applied [32] 18/24 25/23 26/3 27/7 28/10 28/12 28/12 28/17 32/20 32/21 32/22 32/24 39/22 41/4 42/14 46/1 64/14 70/23 70/24 72/4 72/7 72/9 73/11 73/13 73/14 73/20 73/23 74/10 74/13 74/23 75/4 77/17

applies [9] 17/25 18/1 18/4 18/9 41/8 41/23 43/15 50/18 70/13

apply [4] 18/1 36/25 40/20 68/2

appreciate [2] 13/21 102/8

appropriate [6] 52/2 52/24 57/1 63/14 67/2 67/21

arbitrarily [1] 36/25

arbitrary [1] 39/7

are [68] 9/6 9/10 9/13 9/15 9/18 10/1 10/1 10/10 10/24 11/4 12/15 12/23 13/7 13/24 14/10 14/12 14/25 15/3 15/6 15/9 15/9 15/14 17/1 17/10 17/17 18/3 19/8 22/7 25/18 26/21 27/12 31/7 31/9 32/9 32/23 35/4 36/12 38/6 41/20 47/7 48/19 49/14 51/11 52/1 52/2 52/11 54/9 54/25 55/2 58/4 63/10 68/3 71/4 71/20 81/17 81/18 83/3 83/6 84/11 90/4 93/18 97/14 99/20 102/12 104/23 107/7 107/7 107/19

area [16] 15/15 78/20 78/21 79/14 79/17 80/5 80/15 80/16 83/4 84/7 94/17 94/20 94/22 94/23 95/2 98/9

areas [1] 98/11

aren't [2] 15/3 100/11

arguably [2] 46/13 56/17

argue [5] 29/11 32/1 43/17 69/10 79/23

argued [1] 15/4

arguing [1] 55/7

argument [43] 11/1 11/2 12/12 12/21 15/4 21/17

**A**

argument... [38] 15/21 16/15 21/21 27/6 27/9 27/15 27/24 28/16 28/19 37/5 37/15 37/18 39/25 40/3 40/19 44/6 44/6 57/23 60/9 67/5 67/13 69/20 73/22 76/9 77/15 78/21 79/11 84/24 85/6 85/7 85/10 89/22 93/2 96/14 96/17 98/5 105/10 106/4
arguments [13] 11/4 12/19 15/10 15/11 15/14 15/17 15/20 26/21 26/23 27/13 28/14 36/10 39/7
armed [1] 48/2
around [4] 11/9 90/19 99/12 106/14
Arthur [25] 28/17 28/18 28/20 29/14 29/16 30/3 30/10 30/11 30/23 31/2 34/25 34/25 36/2 51/21 51/21 65/3 65/14 66/6 66/20 70/25 86/18 89/14 90/1 90/7 92/18
Arthur Andersen [19] 28/17 28/18 29/14 30/3 30/10 30/11 30/23 31/2 34/25 34/25 51/21 65/3 65/14 66/6 66/20 70/25 89/14 90/1 90/7
articles [1] 103/7
articulate [2] 25/18 46/23
articulated [1] 106/10
as [122]
as-applied [1] 64/14
ask [9] 11/10 25/15 34/2 67/3 78/24 102/6 104/10 105/9 106/19
asked [8] 26/1 39/9 70/10 78/6 102/18 104/8 104/12 106/11
asking [7] 30/21 30/22 51/16 65/6 75/22 75/24 105/21
aspects [1] 56/15
aspersions [1] 101/17
assault [4] 84/24 96/15 96/22 96/24
assaulted [6] 85/17 94/10 95/4 95/7 95/15 97/14
assaulting [2] 94/5 97/4
assaultive [1] 95/17
assaults [1] 94/18
assessment [1] 96/13
associated [3] 31/8 31/10 81/11
assume [2] 91/10 95/3
assuming [1] 24/8
assure [1] 31/23
attached [1] 94/14
attack [4] 26/18 41/13 41/14 76/8

attacked [2] 76/13 76/13
attempt [2] 26/18 35/20
attempted [1] 18/19
attempting [1] 61/22
attempts [4] 35/18 35/23 37/25 73/16
attends [1] 54/6
Attilio [2] 6/16 9/3
attorney [3] 4/8 11/6 103/8
ATTORNEY'S [1] 1/14
ATTORNEYS [1] 6/17
attributes [1] 50/7
availability [1] 50/12
available [2] 92/13 107/22
Avenue [5] 2/12 2/21 3/8 6/13 7/4
average [4] 22/19 34/2 34/7 34/14
avoid [1] 86/7
aware [5] 10/3 61/20 70/3 86/7 102/6
awareness [1] 31/8

**B**

back [10] 22/16 34/24 49/8 67/19 70/13 71/7 71/8 71/9 71/9 77/14
backward [1] 22/1
baiting [1] 103/2
Balbo [3] 6/16 6/17 9/3 6/19
balbogregg.com [1] 6/19
balcony [7] 81/3 81/5 82/4 82/4 82/6 82/6 83/15
Barrett [1] 7/4
barricades [1] 76/16
barriers [2] 33/8 75/21
based [3] 55/10 68/16 75/5
basically [2] 24/3 79/3
be [123]
beaten [1] 42/16
Beaty [2] 63/5 63/12
because [49] 10/5 19/5 19/19 20/17 25/22 27/16 29/1 29/4 30/11 30/17 32/2 33/1 33/4 35/19 36/3 36/24 38/19 39/14 42/7 43/6 47/10 47/17 50/19 52/19 55/23 57/2 59/7 59/9 61/25 62/14 63/16 68/2 70/4 71/18 73/3 73/7 73/10 73/15 74/19 74/22 77/18 80/6 81/25 86/17 93/4 96/17 97/8 106/17 107/3
become [1] 80/10
been [23] 9/8 10/17 13/6 14/1 14/4 14/8 15/11 23/8 26/3 26/3 37/1 38/5 39/22 41/15 61/23 68/6 73/11 86/25

before [33] 1/10 9/16 14/25 15/6 19/12 19/15 19/17 19/24 20/22 21/5 21/13 21/14 21/14 21/15 32/5 35/2 38/14 38/16 43/20 47/21 54/7 56/7 57/15 57/18 62/19 64/4 65/17 69/19 78/23 87/12 90/24 96/17 104/21
Begay [3] 47/23 47/24 48/16
begin [1] 78/23
beginning [2] 44/11 46/12
behalf [8] 8/15 8/17 8/18 8/19 8/19 16/23 43/20 43/21
behavior [2] 24/24 61/8
being [15] 13/5 21/1 22/20 22/21 24/15 26/1 35/7 36/12 57/24 58/12 58/19 81/6 84/11 103/16 107/20
believe [27] 10/1 10/16 11/6 15/19 18/11 18/18 21/8 22/19 26/13 39/21 41/16 44/23 50/2 57/12 61/5 74/14 75/4 81/17 82/5 82/10 85/12 85/19 87/13 88/4 94/8 98/12 100/5
believes [3] 66/10 67/21 67/22
belong [1] 34/23
Beltway [1] 100/16
bench [2] 60/2 74/3
Bennie [2] 2/20 8/8 16/24
Berwick [1] 4/12
besides [1] 82/14
best [3] 12/5 56/11 105/14
better [8] 13/8 37/9 37/12 40/15 58/10 101/11 101/12 104/9
between [11] 29/22 41/9 51/9 54/18 69/22 70/14 80/24 81/19 81/24 86/21 88/23
beyond [4] 23/14 58/7 60/16 61/9
big [1] 30/12
bill [5] 15/18 38/17 51/17 86/5 97/20
bills [2] 18/22 21/11
Birmingham [1] 5/12
bit [3] 103/13 103/20 103/24
BLIND [1] 4/16
blindjusticedc.org [1] 4/19
blog [2] 101/10 101/23
board [1] 9/19
bodies [1] 61/19

body [4] 94/13 94/14 94/13 94/14 94/13 94/14
body-worn [2] 94/13 94/14
boggles [1] 42/13
bomb [1] 53/2
bond [2] 14/16 14/17
bone [1] 103/5
bordered [1] 53/10
borne [1] 46/3
both [7] 21/23 31/11 51/23 57/15 86/18 89/1 97/14
bottom [5] 12/9 28/11 71/16 71/22 76/17
Box [3] 4/17 5/15 6/18
Bradford [3] 4/11 4/14 8/22
brakes [1] 69/8
BRAND [1] 3/12
brandwoodwardlaw.com [1] 3/15
breadth [1] 67/19
breaking [1] 61/2
Brennwald [3] 2/20 2/20 8/20
brevity [1] 11/18
Brian [2] 6/16 8/14
bribe [2] 33/4 72/11
bribes [1] 27/18
bribing [1] 34/13
brief [16] 11/4 18/17 26/22 67/4 68/6 68/13 81/22 91/23 93/25 101/8 101/10 101/22 104/11 105/10 105/11 106/5
briefed [1] 67/7
briefing [2] 67/22 106/19
briefly [3] 11/11 12/4 82/19
briefs [2] 25/14 56/4
bring [3] 34/12 84/15 107/18
bringing [1] 86/13
brings [2] 50/21 86/13
broad [7] 21/7 32/2 42/2 55/20 63/19 63/19 101/16
broaden [1] 39/19
broadly [2] 39/15 55/17
broke [1] 59/15
brought [1] 56/7
BROWN [1] 6/12
Bruhl [3] 57/22 61/6 61/11
Bruhl-Daniels [3] 57/22 61/6 61/11
brush [1] 101/16
bsrlegal.com [1] 6/15
building [17] 3/9 58/22 59/13 80/23 81/2 81/4 81/5 81/14 82/3 82/11 82/25 83/12 83/16 83/17 83/22 83/25 84/10

buildings [4] 79/20 80/24 81/9 81/19
builds [1] 83/1
bum [1] 74/1
Burge [1] 58/1
Burke [2] 4/8 4/9
Burnie [1] 2/4
burning [1] 61/18
business [1] 106/23
bust [2] 59/20 59/21
Busy [1] 91/13
buy [1] 70/22

**C**

CALDWELL [9] 1/6 2/2 8/6 8/17 13/25 17/22 18/12 82/1 84/10
Caldwell's [2] 16/19 80/22
call [1] 103/9
called [3] 12/4 12/5 22/21
calling [1] 51/16
came [5] 11/7 11/10 60/1 62/24 70/11
camera [1] 94/13
cameras [1] 94/14
can [39] 9/21 10/13 12/5 12/18 14/24 15/15 23/2 26/20 28/9 30/18 31/13 36/9 44/8 45/1 48/22 49/23 56/4 57/17 58/5 62/9 64/10 66/8 71/18 74/21 74/25 79/16 80/2 85/8 85/9 86/3 98/23 101/15 106/14 106/21 107/3 107/4 107/24 108/12 108/20
can't [10] 15/23 22/13 40/9 41/12 79/20 87/6 90/7 97/18 99/1 101/25
candor [1] 67/4
cannot [4] 36/10 39/15 69/1 75/9
canon [3] 47/10 47/17 49/8
canons [1] 45/20
Capitol [22] 33/10 41/18 54/13 58/21 58/22 59/12 79/19 79/20 80/17 80/23 80/24 80/24 81/2 81/5 81/9 81/14 81/14 81/19 81/19 83/22 84/9 103/14
capture [2] 49/23 62/23
career [1] 48/2
CARLTON [1] 6/7
carltonfields.com [1] 6/10
Carmen [2] 2/7 8/18
Carmen Hernandez [1] 8/18
carried [1] 69/2
carry [1] 21/23
case [88] 8/4 9/20

**C**

**case... [86]** 10/23 11/7 11/9 13/11 14/24 16/7 24/12 24/12 25/13 25/24 27/8 27/24 31/24 32/11 32/14 32/25 34/21 34/22 34/24 35/1 36/16 37/20 38/5 39/23 40/22 41/4 41/8 41/22 42/8 43/3 45/13 45/17 46/1 48/1 48/25 53/24 57/19 61/10 61/12 61/20 63/6 63/6 63/12 64/9 64/14 64/18 64/19 64/21 65/8 66/19 66/19 71/25 72/1 73/12 73/14 73/15 77/18 77/19 78/13 79/9 79/12 79/15 79/25 80/23 81/25 87/5 87/21 92/24 95/24 96/1 96/4 96/6 98/7 98/10 98/11 98/17 99/14 99/15 101/24 104/22 104/25 105/6 105/6 106/12 106/24 107/4
**casting [1]** 101/17
**cases [19]** 27/13 32/10 34/20 34/20 35/24 43/6 43/10 48/13 54/16 58/2 61/14 61/16 68/7 91/23 99/15 104/21 105/7 105/17 105/18
**casting [1]** 101/17
**catch [16]** 40/15 49/19 56/1 56/2 56/5 56/9 56/12 56/12 62/6 62/12 62/12 62/14 62/22 63/4 63/9 63/20
**catch-all [13]** 40/15 49/19 56/1 56/5 56/9 56/12 56/12 62/6 62/12 62/14 62/22 63/9 63/20
**catch-alls [3]** 56/2 62/12 63/4
**causal [1]** 88/23
**causation [2]** 87/2 87/2
**cause [2]** 18/10 72/19
**causes [1]** 54/8
**causing [1]** 74/3
**cell [5]** 87/8 87/9 88/16 88/17 89/21
**Centre [1]** 4/8
**certain [1]** 16/2
**certainly [14]** 15/2 17/10 79/18 80/8 87/12 88/6 88/12 88/20 89/22 89/25 90/14 93/3 100/7 108/20
**certainty [1]** 45/2
**certification [4]** 18/15 22/5 22/18 53/13
**Certified [1]** 7/3
**certify [2]** 59/13 110/2
**cetera [2]** 27/18 46/11
**CH [1]** 7/4
**chairman [1]** 20/7
**chairs [1]** 53/3
**challenge [3]** 64/14 64/14 64/18

**changed [1]** 20/17
**changes [1]** 107/20
**changing [1]** 85/5
**chaos [1]** 79/3
**characterization [1]** 11/12
**characterizing [1]** 103/25
**charge [5]** 77/23 77/25 78/1 91/5 94/4
**charged [11]** 17/22 18/12 36/23 37/1 37/4 39/24 58/12 82/22 84/3 84/11 87/1
**charging [1]** 83/10
**charts [1]** 98/18
**chase [1]** 85/9
**chat [2]** 88/15 88/16
**chernan7 [1]** 2/9
**chest [1]** 94/14
**chic [1]** 99/19
**choose [2]** 54/22 93/19
**chose [1]** 21/6
**chris [2]** 5/9 8/24
**chrisleibiglaw.com [1]** 5/9
**Christopher [2]** 5/6 5/7
**Cinnaminson [1]** 4/13
**Circuit [26]** 26/2 26/3 32/11 34/7 35/3 35/17 40/18 40/21 40/24 41/3 41/8 57/18 58/1 58/9 63/13 64/16 64/19 64/24 66/14 72/1 72/3 72/22 74/7 75/2 78/13 79/15
**Circuits [3]** 32/8 35/4 48/12
**circumstance [1]** 27/20
**citation [1]** 70/20
**cite [3]** 34/11 41/13 56/3
**cited [25]** 18/16 23/3 24/11 24/11 40/23 48/13 58/2 61/18 62/17 67/19 68/20 68/20 69/16 69/17 72/2 73/12 73/15 73/16 77/19 81/12 81/21 82/20 91/23 95/24 105/6
**cites [4]** 32/11 34/21 43/3 63/10
**citing [1]** 47/3
**citizens [1]** 102/11
**city [5]** 98/22 98/24 99/9 101/2 102/2
**civil [1]** 61/17
**claim [5]** 71/4 71/5 95/14 96/21 100/2
**claims [3]** 43/5 87/16 93/7
**clause [12]** 17/22 18/4 18/19 19/3 25/22 47/12 48/17 48/19 50/5 63/8 63/19 71/17
**clause' [1]** 68/25

**clean [2]** 26/1 43/16
**clear [15]** 13/23 14/11 18/25 23/16 25/21 26/11 31/7 35/3 35/4 35/17 39/16 57/12 63/21 84/19 102/10
**clearest [1]** 57/10
**clearly [9]** 20/18 20/19 32/7 45/14 50/20 64/2 64/4 77/5 97/15
**client [21]** 11/23 12/4 27/7 33/4 36/21 41/17 42/14 42/15 55/7 75/22 76/8 77/12 85/16 99/1 99/10 99/12 101/8 101/15 103/1 103/13 103/21
**client's [2]** 10/13 103/4
**clients [2]** 16/25 36/7
**clue [1]** 46/7
**clues [1]** 57/7
**co [2]** 93/17 108/20
**co-counsel [1]** 108/20
**co-defendants [1]** 93/17
**Code [3]** 41/21 66/16 82/21
**College [6]** 18/15 22/5 22/18 24/16 53/14 59/13
**COLUMBIA [7]** 1/1 1/14 2/11 98/11 100/19 102/11 102/16
**combine [1]** 90/12
**come [11]** 10/12 22/11 52/19 62/1 62/16 71/1 71/23 74/4 89/8 99/25 101/25
**comes [8]** 22/16 26/12 45/20 49/12 51/20 51/24 54/21 79/3
**comfortable [1]** 9/21
**coming [1]** 46/6
**comment [1]** 108/17
**comments [2]** 68/17 102/9
**committed [2]** 94/18 96/10
**committee [7]** 21/15 21/16 21/22 36/11 54/7 68/21 68/23
**committing [3]** 58/16 97/10 97/15
**common [1]** 50/7 66/9 66/13
**commonly [1]** 69/2
**COMMUNITY [1]** 5/19
**comparable [2]** 61/21 63/1
**compare [1]** 36/10
**compelling [1]** 18/18
**completely [3]** 12/13 56/14 95/25
**component [1]** 65/8
**comprehensive [1]** 12/22
**comprehensively [1]**

**compromised [1]** 57/12
**computer [1]** 7/7
**computer-aided [1]** 7/7
**concede [5]** 30/5 48/4 50/19 50/20 56/12
**conceded [2]** 73/25 74/24
**conceivable [1]** 49/19
**concept [2]** 40/20 68/1
**concern [2]** 54/15 88/21
**concerned [2]** 62/20 101/15
**concerning [1]** 15/14
**concerns [4]** 15/23 15/24 46/9 78/19
**conclude [1]** 21/3
**concluded [1]** 109/8
**conclusion [1]** 79/1
**concrete [1]** 66/22
**concur [1]** 47/4
**concurred [1]** 47/5
**concurrence [1]** 47/4
**condoning [1]** 103/24
**conduct [77]** 18/5 18/19 18/23 19/18 24/7 24/9 27/10 29/23 30/9 35/20 37/19 37/22 37/23 39/2 39/11 39/24 46/16 48/15 48/23 48/24 49/20 49/23 50/21 51/9 51/9 53/11 53/12 54/11 55/13 55/14 56/17 58/11 58/14 58/15 58/15 58/16 58/19 58/21 59/2 60/9 60/21 61/15 64/22 67/15 69/4 69/8 69/23 70/5 72/24 73/25 74/11 74/25 75/5 75/8 76/3 77/2 77/12 77/25 86/21 87/17 88/5 88/14 89/15 89/15 90/13 91/17 91/22 91/24 93/16 93/20 94/17 96/10 96/24 99/10 102/19 106/6
**conference [3]** 107/4 107/6 108/25
**confirmation [4]** 38/21 52/7 54/4 54/6
**conflict [1]** 107/11
**conflicts [1]** 108/24
**Congress [75]** 18/19 18/20 18/22 18/25 19/3 19/6 19/12 19/14 19/15 19/17 19/22 19/24 20/12 20/15 20/17 20/21 20/22 21/4 21/12 21/13 21/23 22/8 22/13 22/25 23/12 23/19 35/9 35/9 35/18 35/22 36/6 38/14 38/16 38/16 38/20 39/2 39/20 41/25 47/16 50/22 52/15

25/24 55/16 55/23 55/25 56/2 56/5 56/7 56/8 56/11 57/3 57/4 57/11 58/6 59/6 59/8 59/8 59/9 59/10 59/11 59/15 62/14 62/20 62/21 63/17 63/18 63/19 63/24 64/1 64/5 70/15 70/17 75/11 77/4 81/24
**Congress's [7]** 18/5 18/24 23/23 44/25 57/2 57/2 63/15
**congressional [8]** 17/25 20/1 20/3 21/15 42/9 53/1 54/3 70/14
**Congressmen [1]** 57/8
**conjunction [1]** 50/2
**connection [2]** 67/13 88/23
**connectivity [1]** 48/24
**Connie [5]** 3/7 8/10 8/22 14/21 44/5
**conscious [2]** 31/13 31/15
**consciousness [1]** 31/9
**consider [3]** 11/2 18/14 65/25
**consideration [4]** 13/9 20/4 28/19 67/23
**considerations [1]** 48/16
**considered [2]** 19/8 47/8
**considering [1]** 62/22
**consists [1]** 88/14
**conspiracy [7]** 15/11 38/7 52/20 53/13 53/17 53/19 103/15
**constitutes [2]** 24/10 82/10
**Constitution [1]** 7/4
**constitutional [4]** 21/24 28/10 29/13 41/17
**constructed [1]** 20/16
**construction [6]** 45/20 47/10 49/12 55/20 70/2 70/4
**contact [2]** 4/10 24/8
**contemplated [1]** 63/10
**contemporaneously [1]** 82/2
**contentions [1]** 16/12
**contents [3]** 87/8 87/9 89/21
**context [3]** 18/1 46/6 68/2
**continuance [1]** 12/14
**CONTINUED [6]** 2/1 3/1 4/1 5/1 6/1 7/1
**contraband [1]** 24/13
**controls [1]** 43/16
**convene [3]** 21/23 107/3 107/5
**convened [1]** 87/13

**C**

conversation [2] 107/17 107/25
conviction [2] 29/4 29/21
convictions [1] 64/17
convince [2] 48/17 60/2
convincing [1] 59/4
Cooper [3] 3/2 3/3 8/20
coordination [2] 13/6 13/8
cordon [2] 79/12 79/17
cordoned [4] 80/5 80/16 83/3 84/8
cordons [1] 80/15
core [3] 27/17 64/22 70/21
corporate [3] 41/13 41/14 46/4
CORPORATION [2] 4/17 40/23
corral [1] 13/14
correct [15] 27/3 27/22 49/4 50/1 51/5 53/15 55/8 63/3 64/23 65/11 83/18 83/24 84/2 93/8 110/3
Corrections [1] 10/6
corrupt [28] 27/17 34/5 34/12 34/15 34/15 34/16 35/8 38/13 51/17 52/13 53/4 55/3 55/4 55/6 55/8 58/15 58/16 59/7 59/9 59/18 64/22 70/21 71/1 72/12 72/21 73/1 75/7 78/3
Corruption [1] 34/18
corruptly [49] 27/2 27/25 28/1 28/22 29/18 30/21 31/14 32/15 32/19 37/24 38/8 51/10 51/12 51/14 51/18 53/22 55/14 58/20 60/6 61/2 64/2 64/7 64/9 64/15 64/17 64/19 64/25 65/4 65/7 65/9 65/17 66/7 66/11 66/15 66/16 66/21 66/23 70/24 71/1 71/24 73/9 74/9 74/10 74/25 75/1 77/17 77/22 92/10 92/12
corruptly' [1] 31/5
could [31] 17/1 17/25 21/3 24/12 24/14 27/20 27/24 29/21 37/1 38/13 46/21 55/13 60/3 60/15 62/23 63/16 64/25 69/12 70/17 70/17 71/1 72/24 75/6 79/5 80/9 89/3 93/19 93/19 102/24 103/16 104/9
couldn't [3] 59/16 89/8 90/1
counsel [16] 9/9 9/11 10/15 10/16 10/22 12/19 13/4 13/7 15/22

103/23 107/11 108/20
counseled [1] 44/24
count [37] 14/20 14/22 15/9 15/11 15/12 15/13 15/14 15/15 15/18 15/19 15/23 15/25 16/19 16/19 16/21 16/21 38/7 38/10 78/19 78/19 78/22 82/18 84/16 84/16 84/17 84/20 84/20 84/24 84/25 85/3 85/3 85/12 95/23 96/19 97/6 97/7 97/18
Count 1 [3] 14/22 16/19 16/21
Count 2 [2] 16/19 16/21
Count 3 [1] 14/20
Count 4 [2] 15/14 82/18
Count 8 [1] 84/16
Count 9 [4] 84/20 84/24 85/3 85/12
countless [2] 72/6 72/8
country [3] 22/7 108/11 108/19
counts [8] 14/18 15/9 15/9 16/1 16/2 16/13 16/15 17/17
Counts 1 [2] 14/18 17/17
couple [8] 9/16 10/18 10/24 14/3 38/15 52/11 56/24 65/17
course [3] 25/25 72/11 87/15
court [115]
Court's [5] 39/19 43/2 66/6 67/23 102/9
court-like [1] 19/20
courthouse [6] 10/1 72/14 72/19 74/1 74/2 107/19
courtroom [5] 9/14 60/1 62/7 101/13 104/1
courts [5] 63/20 72/23 74/13 75/3 76/18
cover [5] 25/13 42/18 42/19 72/20 108/12
covered [3] 21/10 72/18 82/5
covers [6] 42/5 42/7 48/19 49/19 72/16 78/15
CR [1] 1/4
crime [3] 46/4 86/1 86/1
crimes [3] 48/19 48/19 97/5
criminal [13] 8/4 31/17 41/20 45/15 48/2 54/21 62/15 62/21 62/23 64/11 69/5 72/6 88/18
criminality [1] 31/14
criminalize [1] 61/2
criminalized [1] 62/5

cross [1] 33/8
crowd [1] 51/9
Crowl [4] 2/7 8/6 8/18 14/18
Crowl's [1] 14/6
CRR [2] 110/2 110/8
cs.com [1] 2/22
culturally [1] 102/12
current [3] 10/19 19/1 31/20
cut [1] 85/9

**D**

D-e B-r-u-h-l-Daniels [1] 61/12
D.C [14] 1/5 1/15 2/13 2/17 2/21 3/4 3/10 3/13 4/18 6/9 7/5 98/8 100/1 100/7
D.C. [17] 26/2 34/7 35/3 40/18 40/21 40/24 41/3 41/8 63/13 64/16 64/19 64/24 72/3 72/22 74/7 75/2 78/13
D.C. Circuit [17] 26/2 34/7 35/3 40/18 40/21 40/24 41/3 41/8 63/13 64/16 64/19 64/24 72/3 72/22 74/7 75/2 78/13
damage [1] 101/4
Daniels [4] 57/22 61/6 61/11 61/12
data [1] 99/6
date [5] 11/3 17/3 88/11 109/1 110/7
dates [1] 88/2
daughter [1] 17/1
david [8] 2/2 4/2 4/3 4/5 6/12 8/14 8/17 8/21
day [19] 12/14 12/20 12/24 22/8 23/24 35/11 35/13 71/2 77/4 80/7 98/3 98/7 98/9 101/2 103/3 103/3 103/3 103/6 105/9
daylights [1] 58/24
days [2] 11/11 107/4
De [3] 57/22 61/6 61/11
deadline [1] 104/13
deadlines [3] 104/16 104/23 105/1
deal [5] 13/24 17/18 20/20 24/23 37/16
dealing [4] 20/8 35/18 44/13 68/3
deals [1] 24/19
decade [1] 69/16
decades [1] 69/16
decide [2] 55/10 78/13
decided [3] 55/5 57/19 57/20
decision [10] 28/18 47/2 47/22 47/20 57/21 61/5 61/6 61/18 63/13 66/25
decisions [1] 61/4
declaration [1] 22/25

cross [1] 33/8
criminalizes
D-e B-r-u-h-l-Daniels
defendant [56] 1/25 of 2/10 2/15 2/19 3/2 3/7 4/2 4/6 4/15 5/2 5/10 5/18 6/2 6/6 6/11 6/16 8/5 8/6 8/7 8/7 8/8 8/9 8/9 8/10 8/10 8/11 8/11 8/12 8/12 8/13 8/13 8/14 8/14 8/22 8/23 8/24 8/24 8/25 9/1 9/2 9/2 9/3 9/4 9/8 12/20 36/8 41/22 71/18 84/4 86/25 90/3 96/3 98/7 102/20
defendant's [1] 11/5
defendants [34] 1/7 9/5 9/10 9/25 10/5 13/12 14/2 14/4 14/9 16/2 16/7 17/23 27/7 36/12 36/15 36/15 36/19 42/14 43/12 43/22 53/22 54/13 55/2 59/7 75/15 75/19 84/11 93/17 98/17 103/2 103/17 106/20 107/18 107/24
defendants' [5] 55/3 55/6 55/13 67/1 99/10
DEFENDER [2] 2/11 5/20
defense [14] 9/12 13/6 68/13 86/6 88/6 89/19 89/23 89/24 91/20 95/13 96/8 96/9 102/15 107/11
deficiency [1] 29/16
deficient [1] 29/14
defined [4] 64/3 66/16 83/6 83/23
defines [2] 19/11 83/1
defining [1] 20/22
definite [3] 64/10 66/8 66/8
definition [23] 17/20 19/25 20/10 20/12 23/16 28/21 28/22 29/12 29/13 30/25 34/5 38/7 45/21 49/12 65/1 65/3 66/22 66/24 70/24 71/1 71/23 77/17 81/9
definitions [5] 34/12 45/15 66/20 83/2 90/22
degree [2] 48/20 87/21
delay [1] 53/13
delaying [1] 11/3
delete [2] 88/16 92/9
deleting [1] 88/15
demands [2] 101/24 101/24
demonstration [1] 39/22
demonstrators [1] 41/15
denigrate [1] 102/11
Department [2] 10/6 50/17
depending [1] 60/4
depraved [2] 31/10 32/7

deprived [1] 32/9
Der [3] 6/2 6/3 9/1
described [1] 74/1
description [1] 97/3
descriptive [1] 96/24
deserves [1] 33/24
designed [1] 23/5
despise [9] 99/24 100/10 102/2
destroy [3] 26/19 73/19 90/8
destroying [3] 22/15 59/3 90/8
destruction [10] 15/25 16/2 40/13 40/17 46/5 46/5 46/9 56/16 56/20 58/8
detail [1] 18/17
detained [2] 107/18 107/23
determine [1] 97/9
determining [2] 45/16 97/7
dicta [5] 29/1 29/7 29/10 32/2 35/2
dictionary [2] 34/12 45/15
did [21] 10/22 13/3 21/5 23/7 23/8 23/13 29/22 39/20 52/13 52/14 59/14 62/17 76/8 80/11 89/20 93/9 93/25 94/2 103/13 103/13 103/14
didn't [26] 11/20 19/3 19/14 29/18 29/19 33/4 33/5 33/5 47/4 51/1 53/11 55/8 67/4 67/14 71/9 76/12 76/14 76/15 81/4 84/5 89/10 89/21 94/3 96/11 96/16 108/16
differ [1] 98/23
difference [2] 22/9 41/9 54/17 70/14
different [27] 18/18 20/21 27/12 27/13 27/13 35/5 35/19 36/8 39/25 40/3 45/13 45/18 47/7 48/11 48/23 56/17 56/18 59/3 60/9 74/24 77/2 80/12 87/24 93/18 97/5 97/15 97/16
differentiate [1] 81/19
differentiates [1] 80/24
differentiating [2] 81/24 81/24
differently [6] 47/15 48/5 60/18 66/13 74/23 88/8
difficult [4] 24/15 101/20 104/19 105/5
diffuse [1] 57/2
dig [1] 11/14
directed [1] 15/11
direction [2] 13/16 80/19
directly [1] 90/6

**D**

disagree [1] 102/21
disagreements [1] 102/12
disagrees [1] 16/16
discern [2] 44/25 57/4
disclosed [2] 94/11 94/12
discovered [1] 18/17
discovery [2] 94/11 106/25
discretion [1] 54/24
discussed [1] 11/11
discussion [2] 36/9 106/8
disgusting [1] 103/19
dishonest [3] 30/14 30/23 43/9
dishonesty [1] 34/22
dismiss [8] 11/13 13/25 14/18 14/20 14/22 14/24 85/2 85/7
dispassionately [1] 102/18
dispute [1] 37/8
disrupting [1] 74/2
disruption [1] 54/9
distinction [1] 76/17
distinguishable [3] 43/4 96/6 96/12
distinguishes [1] 51/9
district [19] 1/1 1/1 1/10 1/14 2/11 26/4 30/13 32/14 57/21 61/13 71/25 98/10 99/18 99/23 100/19 101/18 101/20 102/11 102/16
divided [1] 57/18
divining [1] 69/18
divorced [1] 40/16
do [59] 12/15 15/8 17/7 20/20 21/5 23/25 26/25 29/17 29/17 34/16 34/17 29/10 35/11 36/5 37/25 42/12 42/12 43/20 43/24 44/6 44/7 49/15 50/1 52/4 53/8 55/18 55/19 55/19 56/10 59/16 61/14 67/12 70/16 71/18 79/5 79/8 86/3 87/22 92/1 95/10 98/13 98/19 98/21 100/12 100/14 100/18 101/8 101/16 101/18 101/23 102/10 102/13 104/3 105/12 105/16 106/1 106/17 106/21 107/24
do you know [3] 98/19 98/21 100/18
document [15] 24/23 35/7 40/8 40/9 40/13 40/17 46/15 46/16 47/13 50/12 58/8 58/18 58/18 59/3 87/6
documents [15] 16/1 22/14 22/15 22/21

56/17 69/10 70/25 87/6 90/8 90/9 90/10
does [30] 24/8 27/10 34/16 41/11 43/17 43/21 48/11 50/13 50/18 51/14 51/18 52/4 55/24 64/12 67/14 68/2 71/8 77/16 78/5 83/11 84/9 86/15 87/4 87/14 88/12 91/5 92/19 94/8 95/6 99/2
doesn't [27] 19/1 19/2 31/20 34/23 37/22 38/1 38/4 38/7 39/1 39/11 39/13 39/24 40/20 43/4 54/15 55/20 62/1 62/14 72/17 86/10 90/9 91/5 93/12 99/1 99/12 103/5 108/3
doing [10] 10/10 30/17 34/18 34/19 36/8 53/22 59/11 59/17 67/5 102/22
DOJ [1] 24/2
DOJ's [1] 23/7
Dolan [3] 6/2 8/13 9/2
dollar [1] 50/16
don't [59] 10/12 10/18 10/25 12/23 16/18 17/8 21/20 25/13 25/16 25/16 25/17 27/23 29/9 29/24 30/4 30/10 31/22 33/16 33/18 34/25 35/24 42/6 45/23 50/7 57/7 59/13 62/14 68/8 69/17 71/22 73/21 74/20 77/16 78/18 78/19 81/17 82/10 84/14 84/15 86/14 87/10 87/19 87/20 95/8 97/12 97/23 99/14 100/1 100/5 100/7 101/21 102/4 104/19 105/9 105/12 106/18 108/7 108/24 109/5
Donald [2] 63/11 98/24
Donald Rumsfeld's [1] 63/11
done [16] 35/11 35/13 36/4 38/5 43/13 46/19 51/2 58/19 67/1 78/25 80/17 92/10 92/12 99/13 101/7 102/17
Donovan [2] 2/7 8/6
door [2] 76/11 79/3
doors [3] 59/15 59/20 59/21
Douyon [1] 107/17
down [2] 67/25 103/1
dragged [2] 38/19 38/19
drawn [1] 76/13
draws [1] 32/12
drill [1] 67/25
Drive [1] 4/12
drop [1] 30/21
dropped [1] 16/12

dropping [1] 8/25
due [4] 25/22 41/16 71/14 71/16
due-process [1] 25/22
duplicitous [2] 96/20 97/8
duplicity [2] 15/23 15/24
during [2] 38/21 82/7
duty [1] 21/24
dwilsonlaw.com [1] 4/5

**E**

each [1] 41/22
earlier [7] 20/23 65/6 85/1 86/20 92/11 92/11 92/22
early [1] 62/18
easier [1] 20/14
easily [1] 62/10
East [1] 5/16
easy [2] 61/25 97/19
ebmjr [1] 5/17
ECF [4] 14/1 14/3 14/6 14/14
Ed [1] 8/25
Edmund [1] 3/12
education [1] 99/23
Edward [4] 5/14 5/15 8/6 108/9
Edwards [2] 71/25 72/1
effect [4] 16/7 48/17 89/16 90/14
effort [1] 56/22
either [6] 10/7 15/22 21/1 56/1 58/25 103/25
ejusdem [6] 40/20 47/10 47/16 49/8 68/1 78/12
elect [2] 79/25 80/6
Electoral [6] 18/15 22/5 22/18 24/16 53/14 59/13
element [2] 65/7 89/25
eliminate [1] 24/4
eliminates [1] 41/25
else [7] 19/23 37/13 42/7 43/21 51/6 60/13 60/17
elsewhere [2] 66/16 83/6
Email [23] 1/16 1/17 2/5 2/9 2/14 2/18 2/22 3/5 3/11 3/14 4/5 4/10 4/14 4/19 5/5 5/9 5/13 5/17 5/22 6/5 6/10 6/15 6/19
Empire [1] 2/4
employed [1] 64/10
enacted [2] 26/7 41/12 70/15
encompass [1] 56/6
encompassed [1] 84/10
encompasses [1] 106/6

end-all [1] 45/16
endeavor [1] 90/13
ends [2] 45/7 59/14
enforcement [6] 16/8 39/8 39/8 79/4 79/13 96/16
engage [1] 23/12
engaged [1] 93/5
enough [1] 106/24
Enron [1] 46/6
enter [3] 81/4 103/13 103/14
entered [1] 10/21 33/10 58/25 76/11 80/23
entering [4] 58/21 74/2 78/20 82/24
enters [1] 41/17
entirely [2] 96/6 96/12
entirety [1] 84/9
entry [1] 15/15
enumeration [2] 41/7 69/2
envision [2] 24/14 24/16
essentially [9] 15/20 49/18 54/16 55/21 89/20 90/3 96/1 96/19 106/21
establish [1] 86/2
estimate [1] 37/21
et [3] 1/6 27/18 46/11
et cetera [2] 27/18 46/11
Eugene [2] 6/7 9/2
evade [1] 38/12
evaluate [1] 12/3
eve [1] 105/10
even [15] 27/16 42/19 43/4 50/19 61/5 61/21 69/21 78/23 79/14 80/17 83/16 89/20 93/13 96/13 98/25
event [6] 22/6 22/6 22/23 23/1 31/6 34/1
events [2] 91/2 93/17
every [17] 22/6 22/8 23/24 35/11 35/13 38/14 43/3 48/17 49/19 67/18 71/2 73/12 73/14 73/15 101/2 101/12 103/6
everybody [7] 9/19 13/15 13/15 14/8 58/24 109/1 109/2
everyone [2] 8/2 109/4
everyone's [1] 106/9
everything [7] 11/15 19/9 29/17 42/5 42/7 56/7 100/9
evidence [23] 11/19 15/25 20/6 26/15 26/19 43/10 46/6 46/9 46/10 46/10 53/3 56/10 56/11

73/17 73/17 87/20 89/4 89/6 89/10 92/6 99/4 102/18
evidenced [1] 53/22
evidences [1] 59/17
evil [2] 31/10 32/7
exact [3] 21/10 57/14 57/23
exactly [3] 30/10 30/16 41/10
example [7] 20/8 57/10 58/1 60/14 79/13 80/4 87/20
examples [6] 48/6 48/18 48/21 55/24 56/3 56/8
exception [1] 14/9
exclusively [2] 18/5 18/6
excuse [7] 14/14 28/16 33/17 37/11 46/5 51/7 76/22
excused [3] 17/2 17/5 17/9
exercise [1] 54/23
exercising [1] 75/16
exist [1] 62/12
expand [1] 23/13
expect [2] 101/11 101/12
explain [1] 77/20
explicitly [3] 23/20 75/10 78/15
expose [1] 41/18
extends [1] 61/8
extensive [1] 23/4
extent [1] 67/11
exterior [1] 83/17
extreme [1] 103/20

**F**

F.3d [1] 40/24
F.Supp.3d [1] 57/22
face [4] 26/25 39/12 39/14 50/20
Facebook [1] 16/3
facets [1] 93/18
facial [2] 28/16 64/14
facially [6] 27/2 27/15 27/18 27/25 28/8 28/11
facie [1] 92/6
facing [1] 96/19
fact [10] 10/23 19/1 20/20 23/20 28/6 32/13 47/1 50/8 81/8 99/23
factor [1] 54/2
factors [1] 45/18
facts [5] 25/23 41/23 61/21 71/6 75/6
factual [1] 76/9
failed [1] 32/13
fails [1] 55/22
fair [7] 37/17 41/17 45/25 67/8 71/17 99/1 101/15
fairly [6] 10/23 12/22 21/24 25/21 46/15 99/9
fall [4] 19/24 39/2

Case 1:21-cr-00020-APM Document 114 Filed 09/13/22 Page 117 of 128

**F**

**fall...** [2] 55/13 71/6
**falls** [2] 35/20 42/15
**false** [3] 61/16 73/19 77/25
**falsify** [1] 26/18
**familiar** [1] 47/23
**family** [1] 16/25
**far** [7] 17/18 46/15 47/15 56/13 58/3 81/9 82/3
**fashion** [1] 41/24
**faulty** [2] 97/8 97/18
**FBI** [3] 16/5 16/12 91/4
**fd.org** [2] 2/14 5/22
**federal** [4] 2/11 5/19 79/16 90/24
**federally** [2] 79/14 79/16
**feel** [2] 41/23 54/20
**felony** [2] 52/9 52/21
**few** [1] 20/22
**FIELDS** [1] 6/7
**fifth** [5] 15/21 16/11 47/3 84/20 85/4
**figure** [4] 12/24 23/24 68/9 107/24
**file** [7] 10/22 104/10 104/13 105/9 105/10 105/23 106/21
**filed** [12] 14/1 14/3 14/11 14/13 14/18 14/21 14/23 17/19 44/4 68/6 84/19 85/1
**files** [1] 94/13
**filing** [2] 68/20 81/8
**final** [1] 90/17
**find** [4] 10/25 28/9 30/8 101/21
**finds** [1] 72/5
**fine** [4] 9/22 42/15 107/8 108/13
**finish** [4] 33/14 33/19 35/15 73/8
**firm** [1] 11/13
**first** [23] 10/22 11/14 11/23 18/20 21/8 26/24 27/1 27/15 29/2 34/6 35/24 38/9 42/10 51/12 57/1 75/10 75/12 75/16 76/2 76/4 76/7 85/2 98/6
**First Amendment** [8] 35/24 42/10 75/10 75/12 75/16 76/2 76/4 76/7
**Firstly** [1] 62/3
**Fischer** [15] 2/2 2/3 8/17 16/20 17/14 44/22 45/1 62/18 69/12 70/7 78/23 82/20 98/5 98/19 101/6
**fischerandputzi** [1] 2/6
**fish** [2] 24/13 24/13
**fit** [1] 55/25
**five** [1] 107/22
**fix** [1] 97/19
**FL** [2] 4/4 6/14

**flaws** [1] 30/2
**flee** [1] 59/16
**floor** [1] 43/24
**fly** [1] 102/3
**focus** [2] 15/5 45/13
**focused** [2] 46/4 95/19
**focuses** [1] 40/17
**follow** [4] 46/21 46/22
**followed** [1] 16/12
**following** [8] 47/12 49/9 52/5 61/19 69/14 75/18 101/6 105/2
**follows** [5] 12/15 13/25 15/8 37/23 41/5
**fool** [1] 35/10
**footnote** [1] 65/14
**force** [3] 53/23 53/25 70/11
**forced** [1] 62/11
**foregoing** [1] 110/3
**Foreign** [1] 63/16
**foreseeability** [2] 87/25 88/11
**foreseeable** [2] 86/25 88/22
**form** [1] 49/19
**FormerFeds** [1] 4/12
**formerfedsgroup.com** [1] 4/14
**formulate** [1] 55/11
**formulation** [1] 41/9
**forth** [2] 23/17 97/9
**forward** [8] 12/5 18/22 19/7 19/7 20/13 84/14 102/7 109/1
**found** [6] 28/21 29/12 29/13 30/8 57/15 77/22
**four** [1] 22/6
**fourth** [4] 1/15 16/4 46/18 79/15
**frame** [1] 91/3
**frameworks** [1] 27/14
**frankly** [5] 32/6 80/18 97/20 103/3 103/15
**fraud** [2] 41/13 41/14
**free** [2] 17/10 41/21
**frequently** [1] 62/1
**Friday** [2] 11/6 11/7
**front** [3] 59/20 59/21 99/4
**frustrating** [1] 103/20
**frustration** [1] 102/25
**FTC** [1] 40/23
**full** [2] 40/25 41/1
**fully** [2] 69/1 98/14
**fulsome** [1] 106/3
**furniture** [1] 70/22
**further** [4] 42/21 42/24 82/15 91/8
**future** [1] 62/23

**G**

**GA** [1] 6/18
**gain** [2] 33/5 34/20
**general** [7] 39/17 41/4 41/5 86/3 86/12 91/1 103/9

generally [3] 40/4 63/8 80/17
**generis** [5] 40/20 47/10 47/16 49/8 68/1
**get** [17] 9/17 34/13 36/18 42/12 46/2 46/22 48/4 73/18 90/19 96/16 98/7 99/1 99/12 101/15 101/21 106/17 107/1
**get-go** [1] 48/4
**gets** [3] 37/18 88/2 92/25
**getting** [2] 21/13 89/18
**Geyer** [6] 4/11 8/22 10/7 10/10 12/8 13/21
**ghastly** [1] 38/18
**Ginsberg** [1] 26/14
**Ginsburg** [3] 26/10 39/17 40/6
**give** [13] 25/4 46/20 48/17 49/12 52/24 56/8 56/8 68/13 71/17 72/11 105/14 105/20 106/17
**given** [6] 29/14 37/16 43/8 43/9 64/25 91/3
**gives** [1] 34/19
**glance** [1] 11/14
**Glen** [1] 2/4
**gloss** [1] 19/16
**gmail.com** [1] 2/18
**go** [14] 12/18 15/2 16/18 46/15 47/19 47/21 48/4 49/8 75/11 77/14 89/22 98/16 103/9 106/23
**goes** [6] 26/15 26/15 26/16 38/14 45/18 88/10
**going** [27] 10/14 13/24 15/3 15/5 15/7 28/9 34/24 35/9 36/3 46/20 59/14 62/16 70/13 71/5 71/18 74/17 80/7 88/7 88/24 101/5 101/23 102/3 102/25 106/1 107/18 107/25 107/25
**gone** [1] 43/12
**good** [6] 8/2 9/11 9/12 10/11 25/10 25/11
**Gorda** [1] 6/14
**got** [12] 10/20 16/20 26/1 26/5 33/13 35/18 36/16 38/13 48/8 78/9 89/7 107/1
**government** [88] 1/13 8/16 11/18 23/7 24/5 25/6 25/23 30/13 30/17 30/20 32/10 34/21 36/7 36/21 37/18 39/15 40/19 41/3 41/21 42/3 42/6 42/22 42/25 43/3 43/4 44/2 44/14 47/16 50/17 51/18 51/23 54/10 55/9 59/6 60/5 60/19 62/9 62/11 63/5 65/5 65/7 65/25 66/10 66/21 67/11 67/17 67/21 67/24 68/20

73/12 73/13 73/16 75/9 80/5 80/10 82/21 84/3 85/5 85/15 86/1 86/10 87/16 89/8 90/18 91/19 91/23 91/24 92/4 92/7 92/15 92/19 92/23 93/3 93/7 93/19 93/19 94/8 95/3 95/6 95/19 95/24 106/4 106/20 107/8
**government's** [13] 12/17 24/2 45/5 59/17 63/23 64/8 68/19 70/20 71/3 71/14 78/6 95/5 95/16
**Governor** [1] 2/3
**Grand** [48] 14/19 16/6 16/13 84/5 85/23 86/2 86/3 86/11 86/12 86/14 86/15 87/12 87/14 87/19 88/3 88/7 88/9 88/19 89/3 89/4 89/5 89/9 89/20 90/16 90/24 91/1 91/16 91/20 91/21 91/25 92/2 92/5 92/14 92/22 93/1 93/1 93/6 93/9 93/14 93/15 93/16 93/21 93/21 96/3 96/4 96/5 96/7 96/12
**Grand Jury** [40] 16/6 16/13 84/5 85/23 86/2 86/11 86/12 86/14 86/15 87/12 87/14 87/19 88/3 88/7 88/9 89/3 89/4 89/5 89/9 89/20 90/16 91/1 91/16 91/20 91/22 92/2 92/5 92/14 92/22 93/1 93/6 93/9 93/14 93/15 93/16 93/21 96/3 96/5 96/7 96/12
**great** [1] 37/16
**GREGG** [1] 6/17
**Grods** [2] 88/16 88/17
**grossi** [1] 6/10
**grounds** [16] 54/14 58/22 79/6 79/19 79/22 80/25 81/15 81/19 82/2 82/25 83/1 83/3 83/23 84/1 84/9 101/14
**group** [2] 13/8 59/20
**groups** [1] 104/1
**guess** [5] 21/20 44/9 73/21 78/23 89/2
**guide** [1] 31/5
**guilty** [5] 29/19 34/3 86/19 88/18 90/7
**gun** [1] 99/22

**H**

**Hackett** [3] 5/19 8/12 9/1
**had** [22] 10/15 10/16 16/4 19/10 21/1 26/8 29/17 29/17 36/19 37/2 42/16 43/12 44/14 53/24 55/14 67/12 71/10 84/3 85/1 94/13

07/9 107/3
**half** [1] 85/6
**halim** [3] 5/19 5/22 9/1
**Haller** [3] 3/7 3/8 8/21
**hallerjulia** [1] 3/11
**halls** [1] 38/20
**hallway** [1] 38/18
**halt** [5] 38/6 52/20 52/23 59/22 61/22
**halting** [2] 52/25 62/4
**hand** [4] 26/16 26/16 26/16 26/16
**handful** [1] 101/1
**handicapped** [1] 38/16
**hang** [10] 33/2 33/13 35/14 37/7 38/3 39/5 73/4 73/24 74/1 74/8
**happen** [2] 22/8 100/8 106/11
**happened** [1] 19/6
**happens** [4] 87/10 87/11 100/22 100/23
**happy** [4] 28/12 67/24 98/4 108/12
**hard** [3] 29/11 46/23 57/4
**harder** [2] 92/23 93/3
**Harrelson** [11] 4/7 8/10 8/23 9/6 9/25 10/7 10/15 10/19 11/24 12/21 14/15
**Harrelson's** [5] 10/22 11/4 12/25 14/5 25/15
**Harrelson-specific** [1] 12/21
**HARTSHORN** [1] 6/3
**has** [78] 9/8 10/17 11/6 11/25 14/1 14/3 14/8 14/15 14/17 14/21 15/17 16/21 19/17 25/1 26/2 26/3 33/23 37/16 39/22 39/24 40/25 41/11 41/14 44/6 44/23 45/12 45/14 46/22 49/10 50/8 52/2 54/7 54/10 54/20 56/12 56/19 57/13 58/10 61/20 62/13 64/9 64/16 65/8 65/9 66/8 66/9 66/11 66/11 66/12 66/13 66/14 67/20 69/8 69/9 69/10 70/4 70/24 71/7 71/8 71/12 73/12 73/15 73/16 74/6 74/7 75/3 82/14 83/2 86/2 86/24 86/24 88/25 90/18 96/8 103/6 103/6 103/8 106/12
**hasn't** [2] 44/14 108/21
**hate** [1] 100/8
**have** [107] 9/24 12/1 12/2 14/4 15/11 16/25 17/3 17/8 22/11 22/13 26/11 31/4 31/20 31/25 32/8 33/7 36/6 36/9 37/1 38/5 40/6 41/20 42/4 42/11 42/16 42/25 43/23 44/6 44/7 46/3

**H**

have... **[77]** 48/12
48/23 50/13 52/11
52/14 52/15 52/15
52/18 55/8 56/3 60/8
63/1 65/25 66/20 67/8
67/18 68/6 70/17 70/17
71/8 72/17 72/23 73/10
75/3 75/4 76/18 77/19
78/18 79/23 80/11
80/19 81/13 81/25
85/20 86/10 86/14
86/17 86/25 87/21
87/23 89/3 89/15 89/23
90/9 90/13 91/17 93/9
93/12 94/11 95/12 96/7
96/11 96/21 97/12
98/10 99/3 99/12 100/2
100/7 100/7 101/3
101/20 102/2 102/14
102/17 103/2 103/5
104/20 106/7 106/10
106/11 106/24 107/11
107/18 107/22 107/23
108/7
haven't **[4]** 36/4 91/2
99/4 107/3
having **[4]** 45/24 80/20
98/16 107/17
he **[53]** 10/15 10/16
10/16 10/20 11/24 12/5
33/5 33/5 41/17 41/18
41/18 42/16 47/4 47/5
55/8 76/10 76/11 76/12
76/14 76/14 76/16
80/23 81/2 81/2 81/4
82/4 83/12 83/15 83/15
88/17 88/18 89/3 89/7
89/9 90/5 90/9 92/9
92/25 93/3 93/5 93/10
96/2 96/25 97/1 97/14
103/5 103/6 103/6
103/8 103/13 103/14
103/14 106/12
he didn't **[2]** 33/5 81/4
He entered **[1]** 76/11
He said **[1]** 12/5
he's **[11]** 33/7 34/16
78/25 83/16 97/4 103/4
103/8 103/15 108/18
108/19 108/21
head **[2]** 57/8 102/22
health **[2]** 10/19 11/25
hear **[6]** 25/5 44/1
78/21 89/10 98/4
108/16
heard **[5]** 52/14 84/16
87/20 89/4 89/5
hearing **[29]** 1/9 9/9
10/2 12/10 12/25 17/2
17/6 17/10 18/1 19/20
20/3 21/14 21/22 22/9
25/16 25/17 35/6 35/8
36/18 36/20 37/3 38/17
42/9 44/1 45/11 52/8
54/6 107/19 108/24
hearings **[10]** 17/25
20/1 21/9 21/10 22/7

107/21 107/22
held **[2]** 28/3 28/21
32/3
help **[2]** 49/11 72/13
helpful **[3]** 67/23 69/18
96/13
her **[3]** 55/7 70/23
102/22
here **[49]** 9/13 9/15
9/18 10/12 11/10 12/7
12/9 13/15 21/7 30/17
31/6 31/11 45/3 46/3
46/17 46/21 48/8 52/20
52/23 52/24 53/25
54/13 55/6 58/19 59/7
61/15 63/23 64/1 67/6
68/3 69/13 69/21 70/11
72/4 78/10 78/11 81/13
82/21 84/15 86/2 88/24
89/14 90/23 96/14
100/3 101/25 104/19
106/8 106/24
here's **[5]** 54/12 77/3
81/1
Hernandez **[19]** 2/7
8/18 16/20 24/11 25/9
26/20 33/16 37/9 38/23
42/21 43/19 46/22 55/7
65/15 70/8 78/9 102/21
104/4 104/17
Hernandez's **[1]** 106/5
highbrow **[1]** 99/20
Highland **[1]** 2/8
Highway **[1]** 2/3
Hill **[1]** 6/18
him **[11]** 12/1 12/2
14/24 15/19 83/15 84/6
86/19 89/5 89/6 89/10
103/9
himself **[2]** 41/18 96/5
hinder **[2]** 38/6 53/13
hired **[1]** 10/17
his **[18]** 10/19 11/25
12/2 12/6 77/24 79/1
79/1 79/2 83/15 88/15
88/17 90/4 91/24 93/4
93/6 103/5 106/12
108/19
history **[13]** 18/16 23/3
23/4 41/13 44/22 44/25
45/8 57/5 60/15 63/1
68/18 69/14 104/20
holding **[1]** 28/6
Hollow **[1]** 2/7
Honor **[116]**
Honor's **[2]** 65/10
83/19
HONORABLE **[1]** 1/10
hope **[1]** 50/20
hoped **[1]** 106/24
hotmail.com **[1]** 2/6
house **[4]** 21/2 58/25
100/23 103/10
housekeeping **[1]** 9/16
houses **[3]** 21/23
100/17 100/20
how **[27]** 10/4 10/10

24/5 39/18 50/17 52/4
55/23 60/7 63/14 68/9
69/7 69/17 71/20 74/10
74/20 79/3 90/25 94/19
98/19 98/21 99/17
100/18 106/13
however **[1]** 73/1
hundred **[1]** 57/3
hundreds **[1]** 96/7
hypothetical **[3]** 52/6
54/3 59/19

**I**

I agree **[1]** 11/12
I am **[4]** 74/19 75/18
101/9 105/15
I apologize **[2]** 16/23
17/12
I assume **[2]** 91/10
95/3
I believe **[12]** 10/1
10/16 11/6 18/18 21/8
26/13 75/4 82/5 85/12
87/13 88/4 98/12
I can **[2]** 44/8 56/4
I did **[2]** 13/3 23/7
I didn't **[2]** 51/1 96/16
I don't **[11]** 27/23 29/9
29/24 30/10 33/16
35/24 71/22 82/10
87/10 99/14 100/5
I guess **[3]** 44/9 73/21
89/2
I have **[4]** 12/1 12/2
81/13 102/14
I haven't **[1]** 36/4
I hope **[1]** 50/20
I just **[7]** 10/3 14/5
25/12 61/4 68/16 73/25
102/5
I know **[7]** 24/11 28/13
68/5 78/14 79/10
102/22 106/10
I mean **[48]** 12/9 12/21
17/7 19/11 19/14 19/23
20/3 20/7 21/3 21/25
21/25 22/24 23/12
23/15 29/7 29/15 32/12
32/18 37/6 38/14 42/15
42/19 43/6 50/15 52/6
53/10 54/15 54/16
54/20 55/20 57/6 57/25
58/4 61/16 61/20 64/6
67/4 67/11 69/13 78/25
80/4 87/5 87/10 96/16
97/8 100/25 101/11
106/7
I say **[2]** 42/8 45/24
I should **[1]** 49/15
I think **[44]** 10/2 12/9
12/14 13/11 14/1 14/8
15/22 15/25 19/5 24/18
25/13 25/20 26/10
26/21 27/23 28/22
29/11 29/15 29/15 31/3
34/6 34/14 35/21 37/16
50/15 50/19 65/10 67/8

84/4 86/9 89/11 99/23
99/25 101/7 103/16
104/8 106/7 106/8
106/13 107/21
I understand **[6]** 13/13
26/22 26/23 27/19 40/1
98/23
I want **[6]** 26/21 28/13
37/17 42/21 45/13
77/21
I wanted **[1]** 70/2
I was **[3]** 11/23 81/20
107/17
I will **[9]** 25/19 69/14
73/13 89/13 101/6
101/8 102/14 104/14
105/2
I would **[2]** 44/8 96/13
I'd **[4]** 11/14 23/2 80/22
98/9
I'll **[25]** 12/15 13/3 13/9
17/5 24/1 25/4 31/18
31/19 33/24 43/24
47/19 48/10 56/12 66/3
68/13 78/14 78/16
78/21 84/23 90/17
102/6 103/1 106/7
106/19 108/11
I'm **[48]** 11/25 12/10
20/9 23/15 26/24 28/12
29/9 33/22 34/3 34/11
36/3 38/25 42/23 48/15
50/25 51/1 60/24 61/10
65/6 65/11 71/18 74/17
75/24 76/5 76/9 77/6
77/11 77/13 78/8 80/16
81/16 81/21 84/24 85/8
85/8 98/4 98/20 101/5
101/19 102/10 102/22
102/25 103/24 103/24
104/15 105/21 107/1
108/11
I'm going **[1]** 74/17
I'm just **[5]** 48/15 77/13
80/16 102/25 105/21
I'm not **[10]** 34/3 65/11
71/18 76/5 77/6 101/5
101/19 102/10 103/24
103/24
I'm not sure **[2]** 33/22
81/16
I'm sorry **[8]** 23/15
34/11 38/25 42/23
50/25 60/24 78/8 85/8
I'm sure **[1]** 108/11
I've **[14]** 11/8 11/17
11/21 12/1 12/1 12/16
12/16 15/6 39/6 67/19
68/5 68/20 78/9 107/1
idea **[1]** 96/8
identical **[2]** 40/22
40/25
identification **[1]** 14/13
identified **[3]** 15/6 16/5
94/16
identify **[3]** 85/16 85/22
97/21

identifying **[3]** 91/15
96/18 97/17
identity **[1]** 96/23
ignore **[1]** 49/15
illegal **[3]** 35/23 78/4
79/19
illegally **[1]** 77/5
immediate **[2]** 87/12
94/23
immediately **[1]** 87/10
immoral **[1]** 31/10
Immunities **[1]** 63/16
impair **[1]** 50/11
impaneled **[2]** 87/15
93/9
impeachment **[3]** 18/1
19/24 20/9
impede **[6]** 30/14 35/5
35/6 37/3 38/11 42/11
impeded **[1]** 87/16
impedes **[3]** 37/24 38/8
39/6
impeding **[1]** 30/19
implicated **[2]** 76/3
76/7
implication **[1]** 81/25
implies **[1]** 21/14
imply **[1]** 32/13
important **[6]** 22/6
22/14 48/5 54/2 88/13
89/25
impose **[1]** 31/17
impossible **[5]** 12/7
23/22 35/21 39/21
41/16
improved **[1]** 11/25
inapplicable **[1]** 95/25
Inauguration **[2]** 82/7
82/8
include **[5]** 19/14 55/25
60/14 65/13 84/9
included **[1]** 62/19
includes **[3]** 43/9 56/2
66/4
including **[10]** 25/15
31/25 34/20 36/15
66/16 66/19 74/14 75/3
106/9 106/11
inclusion **[1]** 68/24
inconsistent **[1]** 28/6
incorporate **[3]** 23/6
24/3 89/19
incumbent **[1]** 80/4
indeed **[1]** 98/7
Indiana **[1]** 2/12
indicated **[4]** 61/4
64/13 65/2 65/16
indicted **[5]** 84/6 88/3
88/17 89/7 92/25
indictment **[24]** 15/3
15/21 16/4 16/9 16/11
36/22 53/8 60/22 71/4
76/10 76/15 80/8 83/10
84/21 85/5 86/13 86/13
88/19 90/18 91/1 92/5
94/9 94/16 96/2
individual **[1]** 104/2
individuals **[1]** 54/4

**I**

indulgence [1] 43/2
infer [1] 58/5
influence [5] 35/23
38/11 42/11 50/21
75/11
influences [3] 37/24
38/8 39/6
influencing [2] 35/9
56/21
inform [1] 17/5
information [3] 11/19
88/18 95/14
informed [2] 27/13
89/24
inherently [1] 50/22
initial [2] 11/13 84/19
initially [2] 25/12 62/19
innocent [3] 29/20
35/19 50/21
inquiry [8] 18/6 18/7
18/24 20/25 21/1 24/9
45/7 78/5
inside [3] 60/4 81/6
83/12
instead [1] 30/14
instituted [1] 93/13
instructed [2] 29/20
31/24
instruction [10] 29/5
29/18 29/22 30/12 32/3
32/5 35/1 43/8 43/8
66/15
instructions [5] 30/3
51/25 55/10 65/12
66/25
insufficient [1] 78/6
integrity [2] 26/18
73/17
intelligence [4] 60/25
71/21 77/16 78/2
intelligent [3] 71/22
89/24 96/9
intelligently [1] 86/6
intend [5] 11/1 19/3
23/13 52/13 52/14
intended [14] 10/20
18/9 20/12 20/18 23/19
35/22 41/25 55/17
56/11 56/13 58/6 59/8
69/9 89/3
intending [3] 59/10
63/17 72/19
intends [3] 21/4 50/21
59/6
intent [24] 18/12 20/17
23/23 24/1 33/10 36/19
38/4 45/1 50/11 52/12
52/13 53/22 55/3 57/2
57/2 57/4 59/22 63/15
88/24 89/25 90/5 92/8
92/12 100/6
intention [3] 67/6
72/15 74/2
interest [1] 106/9
interesting [3] 32/10
57/25 92/21
interfere [3] 37/2 38/5

interfered [1] 36/17
interference [1] 46/9
interferes [1] 64/3
interfering [2] 89/16
90/14
interior [1] 82/5
interpret [3] 26/11
63/25 69/7
interpretation [2] 31/5
46/20
interpreted [1] 24/6
26/6
interpreting [2] 47/17
61/6
interrupt [14] 12/8
26/20 33/16 33/18 36/3
36/20 37/10 37/12
69/12 70/12 70/16 75/5
75/8 80/2
interrupted [2] 22/24
36/17
interrupting [3] 17/12
18/14 24/16
interrupts [1] 72/25
intimidate [2] 59/8
59/10
intimidated [1] 22/12
intimidating [2] 59/3
59/5
intractable [1] 107/11
invalid [2] 27/15 27/18
inventive [3] 62/15
62/21 69/5
investigating [2] 92/14
93/15
investigation [9] 16/5
16/6 16/8 16/14 21/1
91/2 91/4 93/16 93/21
investigatory [1] 22/14
involve [5] 43/10 61/14
61/16 61/17 69/10
involved [10] 16/2
26/17 36/2 40/8 48/1
64/21 70/25 73/16
77/22 103/15
involves [5] 58/17
79/12 86/23 86/23 87/1
involving [2] 13/11
99/15
Iraq [1] 63/5
is [335]
is there [2] 54/8 56/10
Isaacs [3] 6/7 8/13 9/2
isn't [9] 77/8 79/12
80/3 80/4 80/8 81/2
81/5 91/5 101/23
issue [19] 16/25 24/7
40/8 44/7 44/9 46/16
58/12 61/15 80/21
85/19 86/16 86/22
88/10 88/22 89/17
97/13 102/13 103/1
105/5
issues [5] 17/18 18/3
68/7 87/24 102/12
it [230]
it would be [2] 20/16

it's [97] 11/15 12/7
16/13 20/14 21/14
21/14 22/6 23/1 23/8
23/8 23/17 23/18 23/20
23/22 24/15 25/21
25/22 25/25 27/4 27/25
28/8 28/9 28/10 28/11
28/22 29/8 29/11 31/3
32/7 32/20 32/22 34/7
35/13 35/21 36/8 37/9
37/12 39/18 44/5 44/10
46/8 48/1 48/7 48/10
49/7 54/23 55/12 55/12
57/1 57/15 57/22 59/5
60/9 61/6 61/25 62/11
63/6 65/20 66/21 69/16
69/21 71/13 71/13 72/4
72/5 76/25 79/18 81/7
82/5 82/23 84/20 87/8
88/8 91/10 91/13 91/18
91/22 92/21 93/3 93/14
94/9 96/2 96/6 96/12
97/8 97/22 97/22 97/22
98/6 98/18 101/2
101/22 102/2 103/18
103/19 103/20 109/3
it's like [1] 12/7
items [1] 61/9
its [15] 18/12 20/17
21/23 26/24 27/4 33/23
39/12 39/14 50/20
56/18 67/12 67/24 75/9
91/23 92/24
itself [6] 27/10 64/25
66/11 72/5 84/1 92/5

**J**

jail [1] 107/20
James [18] 5/2 8/11
8/25 9/6 14/3 15/17
84/17 86/6 87/7 87/20
88/3 88/15 93/15 94/18
94/23 95/4 96/9 96/10
James's [7] 87/17
91/16 91/22 92/8 93/15
93/20 95/18
January [4] 87/11 88/5
91/2 93/17
Jason [2] 6/2 8/13
Jeferson [1] 6/8
Jeffrey [2] 1/13 8/15
jeffrey.nestler [1] 1/17
jenifer [3] 4/16 4/19
8/23
jerks [1] 78/3
Jessica [2] 2/10 8/7
9/5
Jessica Watkins [1]
9/5
Joan [1] 5/2
job [4] 39/19 39/19
101/7 102/17
John [5] 2/15 2/16 8/19
8/23 10/17
johnlmachado [1] 2/18
joined [3] 14/1 14/4
14/8

Joining [1] 12/9
JONATHAN [3] 4/7
5/11 8/12
Jonathan Walden [1]
8/12
Jonathon [1] 4/7
joni [3] 5/3 5/5 8/24
jonirobinlaw.com [1]
5/5
jonmoseley.com [1]
4/10
Joseph [4] 5/19 6/16
8/12 9/3
Joshua [5] 5/2 8/11 9/6
Jr [3] 3/12 5/14 5/15
judge [13] 1/10 32/12
34/8 68/7 68/11 71/25
72/1 72/20 74/3 78/24
79/5 102/15 106/11
Judge Kelly's [1] 68/7
Judge McFadden's [1]
79/5
Judge Moss [1] 106/11
Judge Posner [1]
32/12
judge's [1] 54/6
judged [1] 104/2
judges [2] 26/4 106/11
judging [1] 99/9
judgment [1] 47/5
judicial [12] 18/2 18/2
19/16 20/2 20/3 20/5
61/22 70/13 70/14
70/19 72/25 73/18
judicial-like [1] 20/2
Judiciary [3] 54/7
68/21 68/23
Juli [2] 3/7 8/21
JULIA [1] 3/8
juries [1] 102/17
juror [1] 62/6
jurors [2] 66/23 74/4
jury [75] 14/19 16/6
16/13 29/14 29/18
29/20 29/21 30/3 30/8
31/24 32/4 35/1 43/8
43/9 51/24 55/5 55/9
55/10 65/12 66/14
66/25 72/20 77/8 80/3
80/7 80/20 84/5 85/23
86/2 86/3 86/11 86/12
86/14 86/15 87/12
87/14 87/19 88/3 88/7
88/9 88/19 89/3 89/4
89/5 89/9 89/20 90/16
90/24 91/1 91/16 91/20
91/21 91/25 92/2 92/5
92/14 92/22 93/1 93/6
93/9 93/14 93/15 93/16
93/21 95/7 96/3 96/4
96/5 96/7 96/12 98/15
99/3 99/8 101/20 104/3
Jury's [2] 93/1 93/21
just [73] 9/16 10/3
10/12 10/13 10/14 12/8
12/15 12/23 12/25 13/9
13/14 13/23 14/5 14/11
15/6 15/8 20/22 22/24

25/12 30/14 30/24
32/7 33/19 33/24 34/1
41/12 41/24 42/13
43/15 47/4 48/15 49/15
51/3 52/23 53/6 56/6
61/2 64/4 68/16 71/11
71/14 73/25 75/24
77/13 77/14 78/8 78/11
78/24 80/16 81/17
82/19 82/22 84/19 85/8
85/9 86/11 88/21 91/1
92/21 95/14 97/14
100/8 101/6 101/25
102/3 102/5 102/6
102/25 104/10 105/21
107/17 108/18
justice [24] 4/16 18/10
18/10 18/13 21/18
22/17 22/19 23/1 24/14
24/15 24/17 26/10
26/14 32/11 32/23
38/21 39/16 40/6 47/3
47/20 50/18 69/1 69/5
69/9
Justice Ginsburg [1]
40/6
Justice Scalia [1]
32/23
justices [2] 52/8 75/4
justified [1] 68/24
juvenile [1] 97/22

**K**

Kathryn [1] 1/13 8/15
Kathryn Rakoczy [1]
8/15
kathryn.rakoczy [1]
1/18
Kavanaugh [1] 38/21
keep [4] 9/19 9/22
13/15 33/24
Kelly [3] 4/2 8/9 9/5
Kelly's [1] 68/7
Kenneth [3] 4/7 8/10
9/6
Kenneth Harrelson [1]
9/6
Kentucky [1] 100/24
key [2] 30/23 77/15
kind [13] 11/8 29/8
34/3 36/8 39/24 48/20
56/18 85/9 87/24 88/25
99/5 99/5 106/25
Kippur [2] 107/14
108/3
knew [1] 92/9
know [60] 10/18 10/25
13/11 16/17 21/3 23/25
24/11 28/13 28/20 31/4
31/20 33/21 34/14
36/17 37/9 40/18 45/1
53/12 54/17 54/18
54/22 58/9 58/23 60/20
61/1 62/15 63/17 66/3
68/5 69/17 69/22 71/5
77/16 77/17 78/14
79/10 87/19 87/20 88/9
89/5 90/3 90/15 91/4

**K**

know... [17] 91/5 92/22 93/4 94/3 95/14 97/23 98/19 98/21 100/18 101/5 101/21 102/4 102/4 102/22 104/16 105/16 106/10
knowing [7] 31/25 65/8 65/13 65/16 66/11 66/12 89/23
knowingly [8] 28/22 31/21 65/9 65/23 66/1 66/4 66/7 82/24
knowledge [2] 80/11 90/4
known [4] 52/15 63/10 63/10 63/11
knows [5] 21/5 32/14 72/2 95/3 96/2

**L**

labeling [1] 103/18
lack [3] 58/10 99/22 100/3
lacks [2] 90/3 90/5
laid [2] 18/23 21/25
lanes [1] 93/19
language [16] 18/23 20/16 20/21 21/11 57/11 63/18 75/2 82/23 85/5 89/13 90/1 90/12 90/19 97/13 103/12 103/20
large [3] 57/3 93/18 104/1
largely [1] 99/19
last [8] 10/18 10/20 36/10 57/22 61/13 78/11 98/3 106/23
late [2] 10/20 107/2
later [2] 69/16 88/10
Latin [1] 41/4
Laura [2] 3/2 8/9
law [17] 2/16 3/8 3/12 4/3 4/8 5/3 5/6 6/17 11/13 16/7 16/8 71/15 79/4 79/13 80/10 96/15 101/24
law's [1] 63/21
law.com [1] 5/17
lawful [1] 51/9
lawfully [2] 54/5 54/13
lawyer [2] 101/12 102/15
lawyers [3] 10/3 71/20 107/6
laying [1] 99/12
lays [2] 69/7 79/3
lead [1] 79/6
leaning [1] 80/19
leap [1] 46/15
least [24] 9/24 10/18 11/2 13/4 15/1 16/6 24/12 25/23 27/19 36/12 43/21 46/1 48/12 48/23 50/19 58/9 58/10 66/5 71/21 77/1 86/24 86/25 104/1 107/4

74/3
lectern [1] 9/22
left [3] 11/19 55/18 104/8
legal [4] 4/17 30/9 101/10
legislate [1] 55/24
legislation [4] 20/5 20/19 22/14 24/21
legislative [20] 18/5 18/7 18/16 18/24 22/7 22/9 23/3 23/4 23/13 24/9 41/13 44/22 44/25 45/8 57/5 60/14 61/22 63/1 68/17 69/14
legislator [1] 51/16
legislators [1] 42/12
legitimate [1] 42/10
Leibig [3] 5/6 5/7 8/24
Leigh [1] 1/13
Lenity [1] 46/19
less [2] 93/5 101/9
let [13] 14/11 16/17 26/25 30/24 31/23 33/13 33/18 35/15 60/18 67/3 73/8 78/24 105/13
let's [10] 12/15 37/5 37/15 63/18 76/19 76/23 77/1 84/14 93/17 106/1
level [1] 31/16
LEVIN [1] 6/3
liability.' [1] 31/17
lie [2] 26/19 73/18
light [1] 24/18
like [27] 9/18 11/14 12/6 12/7 19/20 20/2 22/24 25/5 41/2 47/12 48/7 49/2 61/15 67/9 68/14 78/22 87/23 94/7 95/13 98/5 101/9 101/22 102/1 104/10 105/6 106/3 107/1
likely [2] 52/10 90/4
limit [2] 21/4 49/12
limitation [3] 19/2 47/6 49/22
limited [6] 19/4 20/19 23/20 24/22 24/24 46/14
limiting [10] 31/14 48/18 50/17 51/8 51/11 51/15 51/19 51/20 52/1 54/2
limits [2] 19/16 57/23
line [7] 12/9 28/11 56/5 66/6 71/16 71/22 76/17
linguistically [1] 31/12
link [1] 10/5
linkage [1] 69/22
linked [1] 58/5
links [1] 46/13
list [3] 49/6 49/9 68/3
literally [1] 59/15
little [2] 103/13 103/20
live [3] 28/12 100/19

lived [1] 100/3
LLC [1] 4/12
LLP [1] 2/20
local [2] 79/7 79/13
logic [3] 75/6 87/1 87/2
logical [2] 20/15 88/23
logically [1] 21/18
long [3] 47/8 106/7 106/18
longer [1] 100/3
look [28] 12/9 22/3 22/22 34/21 36/5 40/6 43/7 44/24 49/11 52/12 53/8 57/1 60/15 63/15 63/16 65/14 66/5 66/24 69/13 72/24 78/14 78/16 78/25 81/12 90/22 99/14 103/24 109/1
looked [6] 47/13 57/13 67/16 67/18 81/10 81/10
looking [4] 45/8 51/21 51/22 57/5
looks [5] 9/18 45/18 45/19 45/19 101/22
lost [1] 13/7
lot [13] 12/16 13/12 35/19 51/18 61/16 64/7 67/5 69/13 101/5 102/5 102/21 104/5 109/3
lots [1] 93/18
lying [2] 70/23 77/22

**M**

Machado [4] 2/15 2/16 8/19 16/23
macmahon [7] 5/14 5/15 5/17 8/25 108/9 108/13 108/18
macmahon-law.com [1] 5/17
made [11] 15/22 16/21 25/18 27/24 54/5 58/12 59/15 69/21 83/15 107/20 108/17
major [2] 81/25 102/12
make [18] 10/3 11/15 11/20 12/12 26/22 27/6 27/9 28/13 35/23 62/22 68/16 78/22 89/24 90/17 91/6 92/13 98/5 102/10
makes [5] 11/18 31/11 39/16 40/19 97/16
making [8] 26/23 28/15 35/10 39/7 39/25 40/3 76/9 85/7
manner [2] 39/23 76/5
manual [2] 23/8 24/2
many [12] 23/9 23/9 50/16 71/20 87/15 94/19 94/21 94/22 95/1 99/24 100/10 105/17
map [5] 81/11 81/12 83/19 83/23 83/25
March [3] 88/4 88/7

Marie [1] 8/7
Marion [1] 6/13
marshals [1] 74/4
mask [2] 9/21 9/23
masks [1] 9/19
material [2] 16/3 90/11
math [1] 107/24
matter [7] 9/7 83/11 86/15 87/4 87/14 104/16 110/4
matters [4] 9/16 24/9 63/9 93/5
may [15] 12/20 35/12 38/9 39/8 39/17 45/15 68/6 76/5 76/6 77/6 77/11 89/9 101/14 101/19 101/20
maybe [13] 11/18 14/9 65/6 67/7 78/3 78/3 88/9 91/13 92/23 93/5 99/25 103/12 103/19
McConnell's [1] 100/23
McFadden [1] 78/24
McFadden's [1] 79/5
MD [2] 2/4 2/8
me [56] 9/22 11/18 11/23 11/24 12/7 14/11 14/14 14/25 15/6 16/17 16/17 21/21 22/2 26/24 26/25 27/16 28/16 28/17 30/24 31/23 33/13 33/17 33/19 34/1 35/15 37/10 37/11 37/12 37/16 37/21 45/23 45/24 46/5 46/15 46/24 51/7 57/25 59/2 60/18 67/3 69/19 73/8 74/24 75/22 76/22 78/24 78/25 80/7 81/23 94/3 99/5 102/23 104/21 105/9 105/13 109/5
mean [74] 12/9 12/16 12/21 17/7 19/11 19/14 19/23 20/3 20/7 20/9 21/3 21/25 21/25 22/24 23/12 23/15 23/16 25/17 27/23 29/7 29/15 30/2 32/12 32/18 37/6 38/14 42/1 42/15 42/19 43/6 50/15 52/6 53/5 53/10 53/12 54/15 54/16 54/20 55/20 57/6 57/7 57/25 58/4 60/9 60/15 61/16 61/20 64/6 66/3 67/4 67/8 67/11 68/5 69/13 78/25 79/10 79/10 80/4 80/7 81/10 87/4 87/5 87/10 89/11 96/1 96/16 97/8 99/1 99/18 100/25 101/2 101/11 105/11 106/7
meaning [11] 23/18 31/6 39/19 41/25 45/17 57/7 60/24 64/10 66/8 69/18 71/17

meanings [1] 31/11
means [12] 19/20 19/21 27/19 27/21 32/15 48/14 53/21 64/1 72/3 77/18 97/10 97/15
meant [1] 63/25
mechanical [1] 7/6
media [1] 103/18
Medicaid [1] 38/17
meet [2] 34/4 38/7
meeting [4] 11/23 61/3 91/21 107/1
Meggs [13] 3/7 4/2 8/9 8/10 8/21 8/22 9/5 9/25 14/14 14/17 14/21 14/21 44/6
Meggs's [1] 44/10
MEHTA [1] 1/10
member [1] 17/1
memo [1] 25/15
mens [4] 50/9 50/13 55/8 67/2
mention [3] 13/3 25/16 25/16
mentioned [1] 14/5
merely [2] 61/9 97/10
Merit [1] 7/2
mess [2] 73/16 73/16
met [1] 11/21
Michael [2] 6/2 9/1
Michelle [1] 2/10
Middleburg [1] 5/16
might [7] 13/8 17/5 53/3 56/6 58/7 90/10 101/10
miles [1] 100/15
military [1] 103/5
million [1] 50/16
million-dollar [1] 50/16
mind [16] 29/19 29/21 31/25 36/13 42/13 58/20 59/18 60/4 62/15 62/21 69/5 71/14 90/9 93/4 93/6 104/14
mindful [1] 102/6
minimum [3] 48/11 48/14 58/24
Mink [1] 2/7
Minuta [5] 4/16 8/11 8/24 9/6 14/23
minute [1] 11/24 43/24
minutes [3] 14/19 52/16 107/2
miscarriage [2] 18/10 69/1
misconduct [1] 58/7
misdemeanors [1] 37/4
missed [1] 105/1
missing [1] 74/16
Mitch [1] 100/23
mix [2] 84/15 97/17
Moerschel [2] 6/12 8/14 9/3
Moerschel's [1] 9/8
moment [2] 36/10 68/9
momentary [1] 52/16
money [2] 34/17 34/23

**M**

**months [4]** 87/15 88/10 88/10 92/25
**moored [1]** 57/15
**moot [4]** 15/20 16/16 85/6 85/18
**moral [2]** 32/7 32/8
**more [26]** 14/11 15/2 20/15 22/4 22/23 24/15 25/18 44/10 46/20 62/7 62/9 62/10 66/5 71/21 90/2 90/6 90/15 92/20 93/2 98/8 101/24 101/25 102/5 103/1 105/18 106/3
**Morrison [4]** 64/18 70/21 70/21 70/24
**Moseley [3]** 4/7 4/7 8/23
**Moss [1]** 106/11
**most [5]** 15/10 15/10 34/18 35/8 93/3
**mostly [1]** 53/25
**motion [35]** 1/9 10/23 11/12 11/20 12/21 12/25 13/25 14/1 14/5 14/6 14/7 14/8 14/12 14/12 14/15 14/16 14/17 14/18 14/19 14/22 14/23 15/18 16/21 17/19 25/15 44/4 44/10 55/6 60/3 84/19 85/2 85/6 98/3 98/3 99/18
**motions [12]** 10/24 12/17 13/24 14/3 14/4 14/10 14/25 15/2 15/5 17/19 25/14 85/2
**mount [1]** 96/9
**mouth [1]** 33/25
**move [7]** 23/2 37/13 42/21 42/25 78/9 78/19 84/14
**moved [3]** 76/16 98/8 98/10
**moving [4]** 13/12 13/15 58/23 102/7
**Mr [2]** 91/10 95/4
**Mr. [87]** 8/17 8/18 8/20 8/21 9/25 9/25 10/7 10/7 10/10 10/15 10/17 10/17 10/19 10/21 10/22 11/4 11/11 11/21 11/22 11/24 11/25 12/8 12/25 13/21 13/25 14/3 14/5 14/6 14/14 14/15 14/17 14/18 14/23 15/17 16/19 16/20 16/23 17/14 17/22 18/12 25/15 44/20 44/22 45/1 62/18 67/3 68/17 69/12 70/7 78/23 80/22 82/1 82/18 82/20 84/10 84/17 86/6 86/7 87/17 87/20 88/3 88/15 88/18 88/17 91/16 91/22 92/8 93/15 93/15 93/20 94/18 94/23

**Ms. Meggs [1]** 14/21
**Ms. Meggs's [1]** 44/10
**Ms. Parker [1]** 8/19
**Ms. Robin [5]** 84/14 91/8 93/25 95/22 98/1
**Ms. Steele [1]** 8/21
**Ms. Watkins [1]** 8/19 9/25
**mtv [1]** 6/5
**mtvlaw.com [1]** 6/5
**much [8]** 17/11 20/14 20/15 24/15 52/4 81/5 96/17 98/17
**muddle [1]** 12/5
**multi [1]** 57/3
**multi-hundred-person [1]** 57/3
**multiple [4]** 15/22 72/23 74/13 97/16
**murder [1]** 61/19
**must [4]** 69/3 89/15 90/13 97/9
**my [34]** 11/8 11/23 16/25 18/17 20/12 33/4 33/24 33/24 36/21 38/23 39/1 40/23 41/17 42/14 42/15 64/7 67/6 68/20 74/16 74/18 75/22 76/8 77/12 81/8 99/11 102/15 103/1 103/4 103/13 103/20 103/21 104/14 105/14 106/9
**My client [1]** 76/8
**My view [1]** 105/14

**N**

**name [3]** 94/9 95/7 95/8
**names [1]** 94/13
**narrow [2]** 20/10 46/20
**narrower [1]** 45/21
**nationalist [1]** 103/10
**natural [3]** 31/6 89/16 90/14
**nature [4]** 72/24 75/10 77/2 78/5
**near [1]** 94/23
**nearly [2]** 14/8 40/22
**necessarily [4]** 36/11 45/16 93/14 95/18
**necessary [1]** 98/12
**need [29]** 12/21 12/24 15/4 19/16 22/10 22/11 42/4 42/6 45/7 55/19 55/19 55/19 62/5 65/6 66/1 71/9 79/8 84/11 86/7 90/15 92/1 92/4 92/4 92/7 92/15 92/19 95/6 95/8 95/10
**needs [2]** 17/18 50/2
**negotiated [1]** 57/11
**neighboring [1]** 21/6
**NEILL [1]** 6/3
**Nestler [11]** 1/13 8/15 11/11 11/22 44/20 67/3 82/18 91/10 106/8

**Nestler's [1]** 68/17
**never [15]** 11/21 12/1 12/2 29/2 39/22 41/15 45/1 70/4 76/12 80/23 82/1 88/17 88/18 98/9 102/14
**news [2]** 99/25 103/17
**newspaper [1]** 103/6
**next [5]** 15/16 17/3 36/19 106/1 107/5
**nexus [16]** 29/22 51/22 52/1 55/15 86/17 86/20 86/21 86/22 87/1 87/3 87/24 88/21 89/19 92/8 92/15 96/11
**night [2]** 11/7 107/15
**NJ [1]** 4/13
**no [55]** 1/4 8/5 8/5 8/6 8/7 8/7 8/8 12/1 12/3 13/6 17/4 17/13 20/7 22/20 22/20 22/21 27/20 30/1 33/7 33/13 34/24 41/9 44/1 45/7 49/22 51/3 51/3 52/22 54/12 55/22 61/24 63/1 70/18 72/10 72/23 75/7 76/8 76/9 76/15 77/10 79/14 80/20 82/15 83/13 84/11 89/23 91/9 92/3 95/8 96/8 97/21 97/24 108/4 108/14 108/24
**No problem [1]** 108/14
**nobody [2]** 32/14 72/2
**nobody's [1]** 20/6
**non [1]** 30/8
**None [2]** 14/25 43/22
**nonetheless [1]** 33/23
**nonstop [1]** 103/2
**normal [3]** 71/21 100/15 100/17
**normally [1]** 31/8 31/9
**North [4]** 5/3 34/8 34/8 74/14
**not [176]**
**noted [1]** 16/7
**nothing [9]** 22/18 29/17 38/13 49/2 50/22 71/2 76/15 82/15 99/6
**notice [3]** 41/17 60/8 60/10
**noticed [1]** 11/17
**noting [1]** 68/25
**notion [9]** 26/15 26/17 34/13 34/15 34/22 34/23 35/20 43/10 43/14
**novel [2]** 70/1 70/3
**now [21]** 13/7 15/5 15/20 16/16 18/21 23/2 24/11 31/19 36/3 42/25 52/18 52/19 53/3 53/10 82/3 84/20 85/2 91/4 91/5 107/21 109/7
**number [8]** 14/10 17/20 17/21 17/23 18/3 45/18 86/23 97/5

**numbers [2]** 53/23 53/25
**numerous [1]** 81/18
**nutshell [2]** 69/7 89/11
**NW [8]** 1/15 2/12 2/16 3/3 3/8 3/13 6/8 7/4

**O**

**oath [1]** 21/17
**object [10]** 19/17 40/9 45/21 45/22 47/11 52/20 52/23 52/24 56/18 56/20
**objection [2]** 80/20 91/15
**objections [1]** 20/8
**obstruct [10]** 33/11 35/18 38/10 58/7 58/17 59/8 62/4 89/4 92/8 92/12
**obstructed [10]** 87/16 89/9 91/17 91/22 91/25 93/7 93/10 93/16 93/20 97/14
**obstruction [24]** 15/12 15/13 18/13 20/24 21/18 22/17 23/1 24/14 24/15 24/17 26/6 26/7 26/16 36/23 42/4 54/18 55/18 69/1 69/3 70/12 84/16 90/21 93/5 95/23
**obstructive [7]** 24/23 49/20 54/19 61/8 86/21 88/4 88/14
**obstructs [4]** 37/24 38/8 39/6 64/2
**obtain [1]** 22/13
**obvious [3]** 24/1 52/7 96/2
**obviously [4]** 22/5 22/23 54/10 107/6
**Ocala [1]** 4/4
**occasions [1]** 18/19
**occurred [2]** 88/5 88/9
**October [1]** 106/22
**October 6th [1]** 106/22
**odd [1]** 21/21
**off [11]** 33/5 34/13 34/19 79/12 79/17 80/5 80/15 80/17 83/3 84/8 98/18
**offender [1]** 48/3
**offense [6]** 86/19 91/6 97/11 97/15 97/16 97/22
**offenses [2]** 69/3 97/9
**offered [1]** 70/22
**OFFICE [5]** 1/14 2/16 4/3 5/3 5/20
**officer [11]** 20/8 76/8 94/5 94/10 95/4 95/7 95/11 95/14 96/16 97/4 97/23
**officers [9]** 33/8 54/1 52/3 85/16 94/13 94/19 94/22 95/1 97/1
**OFFICES [2]** 3/8 5/6
**official [22]** 7/3 16/5

**Mr. Caldwell [6]** 8/17 13/25 17/22 18/12 82/1 84/10
**Mr. Caldwell's [2]** 16/19 80/22
**Mr. Crowl [2]** 8/18 14/18
**Mr. Crowl's [1]** 14/6
**Mr. Douyon [1]** 107/17
**Mr. Fischer [12]** 16/20 17/14 44/22 45/1 62/18 69/12 70/7 78/23 82/20 98/5 98/19 101/6
**Mr. Geyer [4]** 10/7 10/10 12/8 13/21
**Mr. Grods [2]** 88/16 88/17
**Mr. Harrelson [6]** 9/25 10/7 10/15 10/19 11/24 14/15
**Mr. Harrelson's [5]** 10/22 11/4 12/25 14/5 25/15
**Mr. James [13]** 14/3 15/17 84/17 86/6 86/7 87/20 88/3 88/15 93/15 94/18 94/23 96/9 96/10
**Mr. James's [7]** 87/17 91/16 91/22 92/8 93/15 93/20 95/18
**Mr. Machado [1]** 16/23
**Mr. MacMahon [2]** 108/13 108/18
**Mr. Meggs [4]** 8/21 9/25 14/14 14/17
**Mr. Minuta [1]** 14/23
**Mr. Nestler [8]** 11/11 11/22 44/20 67/3 82/18 106/8 106/13 108/18
**Mr. Nestler's [1]** 68/17
**Mr. Parker [1]** 8/20
**Mr. Pierce [5]** 10/17 10/17 10/21 11/21 11/25
**Mr. Spina [2]** 108/11 108/20
**Mr. Walden [1]** 108/10
**Ms. [29]** 8/19 8/19 8/21 9/25 14/21 16/20 24/11 25/9 26/20 33/16 37/9 38/23 42/21 43/19 44/10 46/22 55/7 65/15 70/8 78/9 84/14 91/8 93/25 95/22 98/1 102/21 104/4 104/17 106/5
**Ms. Hernandez [17]** 16/20 24/11 25/9 26/20 33/16 37/9 38/23 42/21 43/19 46/22 55/7 65/15 70/8 78/9 102/21 104/4 104/17
**Ms. Hernandez's [1]**

**O**

official... [20]  16/9
16/14 17/20 17/24 19/8
19/11 21/22 23/17
33/11 37/3 37/25 39/6
55/15 64/3 64/4 70/18
90/10 90/15 90/22
90/23
**often** [1]  62/7
**oftentimes** [1]  62/4
**oh** [5]  28/13 34/21 44/3
94/2 107/16
**okay** [41]  9/11 10/6
25/3 27/10 27/11 30/6
32/21 33/12 36/8 37/10
37/13 37/20 38/25 40/4
40/5 42/17 43/20 44/1
44/17 45/22 49/25 50/4
51/13 68/4 68/12 74/8
74/9 75/25 82/12 91/7
93/22 94/25 100/13
102/7 102/22 105/19
106/16 107/10 107/16
108/5 108/22
**old** [1]  81/13
**once** [2]  22/6 102/15
**once-every-four-year**
[1]  22/6
**one** [51]  11/24 14/9
15/19 15/20 17/20 18/3
18/14 20/12 21/3 24/12
24/14 27/20 29/19
30/12 30/18 32/10
36/18 36/19 37/17
39/23 41/5 41/6 43/14
46/6 47/8 48/6 52/7
53/21 59/12 60/24
63/16 68/6 68/16 72/13
72/18 72/24 78/8 78/11
81/11 82/20 83/2 86/23
87/25 90/7 90/23 96/8
96/22 98/11 102/13
102/25 105/6
**one's** [1]  51/16
**only** [15]  16/13 18/24
31/12 31/16 38/13 42/3
44/9 67/12 69/9 72/17
89/2 96/21 96/23
104/22 104/25
**open** [3]  43/24 71/10
79/3
**opened** [1]  76/11
**opinion** [2]  26/2 26/5
**opportunity** [3]  25/4
44/14 68/13
**opposed** [2]  48/8
86/11
**opposition** [3]  12/17
67/4 67/12
**optional** [1]  104/24
**orally** [2]  43/24 67/6
**order** [13]  26/25 31/17
54/10 55/15 58/17 60/1
67/25 72/13 79/22
85/15 86/1 86/5 86/18
**ordinarily** [3]  18/14
45/22 98/14
**ordinary** [7]  20/3 60/8

77/16 78/2
**original** [1]  25/15
**originally** [2]  10/15
16/4
**other** [55]  9/10 13/4
14/10 15/19 16/3 17/23
18/6 18/25 19/23 19/24
20/9 21/9 22/8 23/20
25/1 26/4 27/7 32/8
33/3 35/4 47/12 49/14
49/19 51/20 54/2 54/9
55/18 55/21 56/14
56/18 56/19 57/7 62/5
65/24 66/17 73/2 73/5
75/3 78/4 83/14 84/11
84/12 89/7 91/3 92/25
96/18 99/10 99/15
101/12 102/17 103/7
103/17 104/20 106/10
108/24
**others** [5]  42/15 56/4
71/22 76/11 90/8
**otherwise** [38]  9/22
26/9 26/12 37/24 38/12
39/5 39/5 39/15 39/22
40/7 40/11 40/14 42/2
42/4 46/13 48/2 48/7
48/14 48/22 49/5 49/7
49/9 49/11 49/13 49/18
50/6 57/23 58/5 58/7
58/18 67/14 68/1 71/7
71/11 71/12 83/3 84/8
105/4
**ought** [8]  43/20 48/23
49/10 55/5 65/12 67/7
92/6 103/25
**our** [19]  16/16 17/24
18/4 18/8 22/7 30/17
30/17 34/23 39/18 41/2
44/4 56/3 79/19 85/6
86/4 88/6 89/22 92/16
107/18
**out** [44]  11/23 12/24
18/23 19/7 21/23 22/1
22/12 23/3 23/4 23/7
23/8 23/8 23/24 26/2
26/5 30/14 36/18 38/19
43/6 46/3 46/6 58/24
68/9 69/2 69/6 69/7
71/3 71/11 72/1 80/22
81/8 81/13 97/1 98/8
98/8 98/10 98/16
101/21 101/22 102/25
103/9 107/24 108/11
108/19
**outbrust** [1]  54/9
**outer** [1]  83/17
**outlawed** [1]  37/16
**outlook.com** [1]  3/11
**outside** [4]  24/8 59/12
83/12 100/16
**outstanding** [1]  14/10
**over** [3]  42/15 76/16
87/15
**overboard** [2]  24/13
24/13
**overflow** [1]  10/2

**over** [14]  25/2 ...
**overriding** [1]  63/20
**overruled** [2]  26/3
63/13
**overruling** [1]  63/24
**overturns** [1]  29/4
**own** [8]  88/15 106/9
**ownership** [1]  99/22
Oxley [3]  24/21 26/8
46/4

**P**

P-e-t-r-u-k [1]  57/19
**P.A** [2]  2/3 6/7
**P.C** [1]  6/17
**p.m** [2]  1/6 109/8
**P.O** [2]  5/15 6/18
**PA** [2]  5/21 6/4
**page** [4]  40/23 105/10
**painted** [1]  103/16
**painting** [1]  101/16
**papers** [2]  82/14
105/23
**parading** [1]  76/24
**paragraph** [3]  47/9
96/22 96/25
**paragraphs** [1]  96/23
Park [1]  3/13
**Parker** [7]  2/15 2/20
8/8 8/8 8/8 8/19 8/20 16/24
**Parkway** [1]  4/8
**part** [9]  39/8 56/2 79/10
81/2 81/5 81/14 84/1
89/25 102/25
**participate** [1]  108/20
**particular** [28]  12/19
14/24 15/24 27/2 53/24
57/8 68/2 86/8 86/11
86/19 86/22 87/14
88/11 89/20 90/5 90/9
91/3 91/16 91/20 91/21
91/21 92/2 96/4 96/11
97/4 97/17 97/21 102/2
**particularly** [2]  42/8
87/5
**particulars** [4]  15/18
86/5 90/15 97/20
**parties** [2]  31/4 55/11
**parts** [2]  13/12 21/9
**pass** [2]  18/19 18/21
**passage** [1]  32/2
**passed** [2]  19/22 62/19
**passes** [1]  41/16
**passing** [1]  63/15
**past** [4]  33/8 54/10
75/20 75/20
**path** [1]  46/22
**patriotism** [1]  99/22
**pause** [1]  37/16
**pay** [1]  33/5
**paying** [2]  34/13 34/19
**pcooper** [1]  3/6
**peaceful** [1]  54/8
**penalty** [1]  50/6
**pending** [1]  10/24 24/4
93/12
**Pennsylvania** [2]  2/21
3/8

**people** [22]  23/6 23/22
32/9 34/18 35/8 36/5
58/25 59/21 61/21 77/4
78/3 98/23 99/3 100/1
100/6 100/16 100/18
101/1 101/17 102/2
102/16 103/7 103/25
104/1
**perceived** [1]  99/22
**percent** [2]  23/23 45/2
**perhaps** [2]  23/19
104/8
**perimeter** [1]  84/7
**perjuring** [1]  96/5
**perjury** [2]  26/19 73/19
**permanently** [1]  56/23
**permission** [1]  104/10
**person** [24]  9/7 22/19
34/2 34/7 34/15 34/20
38/14 52/17 53/1 54/6
57/3 58/16 59/12 60/1
60/8 60/15 60/20 60/25
61/22 70/22 77/16 78/2
78/5 108/7
**person's** [2]  52/12
60/4
**personal** [1]  33/6
**persons** [2]  31/12
38/16
**persuade.'** [1]  31/14
**persuaded** [1]  30/13
**persuaders** [1]  31/14
**persuading** [1]  90/8
Peter [3]  3/2 3/3 8/20
petercooperlaw.com
[1]  3/6
**peterson** [3]  2/10 2/14
8/18
**Petruk** [2]  57/19 61/5
**Philadelphia** [2]  5/21
6/4
**phone** [5]  87/8 87/9
88/16 88/17 89/21
**phrase** [7]  41/10 41/10
47/10 47/14 64/2 66/9
66/11
**phrased** [3]  63/8 90/25
91/1
**phrases** [1]  41/1
**physically** [2]  9/13
81/4
**pick** [2]  54/22 96/8
**picket** [1]  70/16
**picketting** [1]  76/24
**picking** [1]  101/20
**piece** [1]  56/20
Pierce [6]  10/17 10/17
10/17 10/21 11/21
11/25
**pin** [1]  68/8
**place** [3]  24/21 76/5
106/12
**placement** [1]  45/19
**places** [1]  103/18
**plain** [5]  37/22 39/2
60/24 60/24 82/23
Plaintiff [1]  1/4
**planned** [1]  12/18

**ple** [1]  5/15
**pleading** [1]  92/16
**please** [5]  8/2 9/19
17/16 35/16 68/16
**pled** [1]  88/17
**plurality** [2]  47/2 47/3
**plus** [1]  69/16
**PO** [1]  4/17
**pocket** [1]  34/23
Poindexter [18]  26/2
27/16 27/24 28/1 28/4
29/7 32/6 32/8 34/8
35/22 43/16 64/8 64/13
64/16 74/14 77/21
77/22 77/24
**point** [22]  20/12 22/4
22/22 23/3 23/7 29/11
43/22 44/7 57/17 62/21
63/5 67/25 68/16 69/6
69/20 70/1 74/16 80/22
88/13 89/2 90/17
102/24
**pointed** [3]  23/4 31/4
71/3
**points** [2]  25/2 25/13
**police** [7]  33/8 54/1
58/22 75/20 76/8 80/17
94/5
**policy** [1]  107/21
**political** [1]  75/8
**politically** [1]  98/23
**politician** [2]  34/16
34/16
**politicians** [1]  103/18
**politicians'** [1]  100/16
**poll** [1]  99/13
**polling** [1]  99/5
**pool** [1]  99/8
**portions** [2]  56/19
56/19
**posed** [1]  48/20
**position** [21]  17/24
18/4 18/8 24/2 32/17
32/18 45/5 46/22 52/15
59/17 60/12 60/19
63/23 64/6 66/7 84/5
85/25 86/4 95/6 95/16
106/10
Posner [2]  32/11 32/12
**possibility** [2]  11/3
13/4
**post** [2]  101/23 103/7
**posted** [2]  83/3 84/7
**postings** [1]  16/3
**potentially** [4]  45/25
59/23 59/24 96/7
**power** [5]  11/6 18/6
18/7 18/24 20/25
**powerful** [1]  93/2
**precedes** [4]  48/24
48/25 49/6 49/11
**preceding** [2]  40/16
46/14
**predisposed** [1]  99/9
**preempting** [1]  85/9
**preface** [1]  65/10
**prefatory** [1]  50/5
**prejudice** [1]  98/17

**P**

prejudicial [1] 99/16
prepare [1] 86/6
prepared [4] 11/13
 12/10 51/25 65/11
prescribes [1] 97/10
presence [1] 9/8
present [12] 10/8 10/9
 11/1 11/2 16/16 17/8
 17/8 17/10 54/5 54/13
 66/2 108/3
presentation [1] 46/10
presentations [1]
 109/2
presented [2] 11/16
 35/7
President [8] 79/25
 79/25 80/6 80/6 82/1
 82/7 83/7 103/10
President-elect [2]
 79/25 80/6
presiding [1] 20/7
presumably [1] 95/13
pretend [2] 76/21
 76/23
pretrial [1] 58/6
pretty [2] 18/18 23/16
Prettyman [1] 7/4
prevent [4] 35/7 43/13
 62/6 62/8
preventing [1] 68/25
prima [1] 92/6
principle [6] 40/20
 50/17 51/8 51/15 51/20
 70/2
principles [2] 51/11
 52/1
printed [1] 81/13
prior [4] 16/22 19/10
 60/14 88/10
prison [1] 41/19
probable [2] 89/16
 90/14
probably [2] 25/18
 93/2
problem [7] 17/13
 30/12 54/21 96/16
 96/18 108/3 108/14
problematic [2] 27/16
 28/25
problems [3] 17/4
 30/12 46/1
proceed [2] 15/7 68/9
proceeding [70] 16/5
 16/9 16/14 17/21 17/25
 18/2 19/12 19/12 19/15
 19/17 19/19 19/21
 19/24 20/22 21/4 21/22
 23/10 23/10 23/17
 23/19 24/5 24/16 29/23
 33/11 37/3 37/25 39/6
 50/12 53/2 53/3 54/3
 54/4 55/15 56/23 58/7
 58/17 61/23 62/4 64/3
 64/4 64/4 72/25 73/18
 74/3 75/5 85/24 86/3
 86/8 86/11 86/15 86/16
 86/22 86/24 88/7 88/9
proceedings [25] 1/9
 7/6 16/1 19/8 19/9 24/4
 52/9 52/18 52/18 52/21
 52/24 52/25 59/22
 61/17 70/13 70/15
 70/18 70/19 86/12
 88/11 90/10 93/1 96/7
 109/8 110/4
process [7] 22/1 25/22
 41/16 71/14 71/16
 86/12 98/16
produce [1] 22/21
produced [2] 7/7 32/4
product [1] 69/4
prohibition [1] 61/8
prohibits [1] 49/16
promulgated [1] 69/15
prong [1] 87/25
properly [1] 104/9
property [2] 46/5
 103/14
proposals [1] 20/13
propose [1] 15/8
proposed [3] 19/10
 21/11 23/5
proposes [1] 42/3
proscribe [1] 61/2
prosecute [5] 18/13
 41/15 41/22 54/11 66/9
prosecuted [3] 61/23
 69/3 70/4
prosecutes [1] 18/12
prosecution [2] 23/7
 95/17
prosecutions [2] 43/7
 60/14
prosecutorial [1] 54/23
protected [3] 42/10
 76/1 79/14
protectee [1] 79/24
 83/4 83/8
protectees [1] 79/4
 83/6
protecting [1] 77/24
protection [1] 69/3
protects [3] 75/10
 75/12 79/4
protest [1] 101/3
prove [19] 59/6 80/5
 86/1 86/11 86/14 86/17
 86/19 87/21 87/23 89/9
 92/7 92/15 92/20 92/24
 93/20 95/6 95/8 95/10
 95/12
provide [5] 17/3 51/14
 56/4 56/9 97/20
provided [3] 47/3 65/3
 66/20
provides [6] 31/7 46/6
 48/6 51/8 56/5 66/24
providing [1] 70/23
proving [1] 93/6
provision [14] 21/6
 24/20 26/7 26/7 40/16
 90/16 90/22 90/23
 90/24 91/3 91/25 92/2
 92/12 92/23 96/3 96/12
proceedings [25] 1/9

**Q**

qualification [1] 19/14
qualify [3] 20/10 21/22
 22/1
quality [1] 56/13
quasi [3] 18/2 20/3
 20/5
quasi-judicial [3] 18/2
 20/3 20/5
question [33] 18/23
 36/6 38/24 39/1 50/16
 55/5 55/9 57/14 60/10
 60/11 60/18 65/11
 67/14 67/16 67/18
 72/10 74/18 75/23 77/9
 77/15 77/15 79/14
 79/15 80/3 80/8 80/10
 80/12 80/20 81/1 82/6
 93/4 97/8 106/13
questionnaires [1]
 98/16
questions [5] 25/2
 70/10 82/14 104/8
 104/11
quick [1] 13/3
quickly [2] 10/13
 106/13
quite [6] 23/20 45/14
 80/18 97/20 103/3
 103/15
quote [3] 65/15 68/23
 97/1
quoting [1] 90/6

**R**

race [1] 103/2
race-baiting [1] 103/2
racist [2] 103/5 103/18
radically [1] 20/17
raise [5] 12/20 44/7
 70/2 102/13 102/25
raised [4] 11/4 54/16
 79/15 106/5

**P** (continued)

rare [3] 62/11 69/4 98/7
Ray [2] 2/7 8/6
rea [4] 50/9 50/13 55/8
 67/2
reach [11] 17/21 23/14
 27/10 31/16 37/22
 39/24 55/17 56/13
 67/15 77/12 77/19
reached [1] 11/22
reaches [5] 24/8 37/19
 60/8 60/10 60/21
reaction [1] 46/2
read [15] 12/16 24/18
 30/24 35/2 39/15 40/15
 42/6 48/18 50/2 61/1
 101/10 103/6 105/6
 105/11 105/17
reading [3] 35/21
 48/15
reads [1] 101/9
real [2] 13/3 54/21
reality [2] 21/12 23/12
realize [1] 51/1
really [16] 11/14 26/15
 52/4 67/4 85/6 86/22
 87/24 88/13 88/24 89/3
 89/14 89/18 89/24 90/1
 90/19 101/8
Realtime [1] 7/3
reason [2] 32/12 62/12
 71/6 78/4 97/21 97/24
reasoning [2] 79/1
 79/2
reasons [4] 39/10
 39/13 46/25 52/11
rebuttal [3] 25/5 68/14
 94/1
recent [3] 15/2 44/10
 61/18
recently [2] 14/11
 14/21
recognize [2] 48/12
 48/12
recognizing [1] 47/6
record [7] 10/14 13/23
 40/9 47/13 72/2 105/3
 110/3
recorded [1] 7/6
reduced [1] 107/23
refer [6] 71/7 71/8 71/9
 71/9 71/12 84/23
reference [4] 26/12
 41/6 66/17 66/17
referenced [2] 85/1
 86/20
referring [4] 31/3 81/20
 83/19 84/24
Refers [1] 83/2
reflect [1] 19/2
reflects [1] 10/14
regained [1] 13/8
regard [2] 16/25
 102/19
regarding [5] 21/9
 68/17 68/18 68/21
 69/15
regardless [1] 12/19

**R** (continued)

regimented [2] 21/24
 21/25
Registered [1] 7/2
rejected [1] 57/23
related [2] 22/20 55/15
relates [1] 15/19
relationship [2] 86/23
 87/2
relatively [1] 21/6
relevant [2] 90/23 91/5
relied [1] 46/19
relieved [1] 11/25
religion [1] 99/22
rely [2] 62/10 62/11
relying [4] 27/24 29/7
 29/9 60/19
remaining [3] 78/18
 78/20 82/25
remedy [1] 85/19
remember [4] 15/23
 40/9 87/6 87/11
remote [3] 107/7
 107/21 107/22
remotely [4] 9/10 9/15
 17/10 108/20
remove [1] 9/21
removed [1] 10/16
render [2] 66/25 85/18
rendered [1] 85/6
reoriented [1] 11/8
replace [1] 10/21
reply [6] 18/17 25/14
 40/23 68/19 95/24
 106/21
Report [3] 62/18 68/21
 68/23
Reporter [4] 7/2 7/2
 7/3 7/3
represent [1] 44/5
repulsed [2] 99/20
 99/21
request [5] 14/19 44/8
 85/22 86/5 89/21
require [5] 22/10 29/19
 29/19 29/22 31/17
required [4] 91/18
 91/19 94/9 98/12
requirement [7] 24/5
 50/9 50/14 51/22 52/2
 87/4 89/19
requires [5] 69/22
 71/17 79/11 90/20
 90/21
requisite [1] 90/5
rescheduling [1] 13/7
resembles [1] 49/2
reserved [1] 101/9
residents [2] 99/19
 99/23
residual [10] 17/21
 18/4 18/19 19/3 23/6
 56/1 62/22 63/8 63/19
 68/25
resort [3] 45/8 62/6
 84/12
resorted [1] 47/9
respect [16] 11/3 15/18
 16/21 20/24 24/25

124

**R**

respect... [11] 33/24 63/2 70/20 82/18 85/12 85/22 86/4 87/7 95/23 96/15 107/20
respectfully [1] 44/8
respects [3] 25/22 48/6 50/16
respond [1] 44/14
response [4] 64/8 78/6 82/18 106/4
responses [1] 11/17
rest [1] 96/2
restating [1] 19/9
restricted [9] 15/15 78/20 78/20 79/23 82/25 83/1 83/4 83/16 84/8
restricting [1] 79/5
result [1] 29/21
results [1] 17/6
retained [1] 10/16
return [1] 70/22
reus [1] 26/17
reverse [1] 26/25
review [3] 14/16 14/17 78/12
Richmond [1] 6/18
riding [1] 64/7
right [57] 13/10 13/15 13/17 13/18 19/13 20/23 23/21 25/8 27/17 28/5 28/24 29/6 29/25 30/15 30/20 36/1 36/5 42/20 44/19 47/24 50/10 51/6 52/21 53/20 55/16 56/15 57/9 62/2 62/25 65/19 65/22 68/8 69/6 78/7 78/17 82/9 83/21 84/13 84/22 85/21 85/24 86/19 87/25 88/1 92/17 93/11 94/15 95/21 97/25 98/2 101/4 101/19 105/8 105/25 107/21 108/2 108/23
rights [2] 42/10 75/16
RIOS [1] 6/12
riot [1] 97/1
ripe [5] 15/1 15/2 15/3 44/5 44/10
ripped [1] 101/22
rise [1] 109/6
risk [1] 48/20
Ritchie [1] 2/3
RMR [2] 110/2 110/8
Road [2] 2/7 3/13
Roberto [3] 4/16 8/11 9/6
ROBERTSON [1] 2/20
Robin [8] 5/2 5/3 8/24 84/14 91/8 93/25 95/22 98/1
room [3] 10/2 36/11 71/20
rooms [1] 107/22
Rossi [2] 6/7 9/2
Rotunda [4] 58/23 59/1

roughly [1] 48/19
rule [5] 26/1 46/19 55/5 60/2 91/24
Rule 12 [2] 55/5 91/24
ruling [2] 25/25 79/5
Rumsfeld's [1] 63/11
run [1] 72/20
rural [3] 98/8 98/9 99/21
rush [4] 33/8 72/14 72/19 76/14
rushing [3] 74/1 75/20 75/20
Ruth [1] 8/8

**S**

safely [1] 58/5
said [53] 12/5 12/6 12/7 26/11 27/16 31/1 31/13 32/8 32/14 33/18 34/9 35/1 39/17 40/6 40/18 41/8 42/24 44/11 45/12 45/14 46/18 48/13 48/16 49/10 49/24 52/2 54/17 56/6 61/7 62/13 63/7 63/18 63/25 64/1 64/20 64/24 67/20 68/22 68/22 70/6 70/18 70/21 72/2 72/3 72/23 74/6 74/7 76/12 87/23 92/16 103/22 108/18 108/21
same [14] 21/11 23/10 23/18 26/8 46/1 58/6 61/7 66/13 74/9 74/11 74/11 74/25 84/5 104/3
Sandra [3] 2/15 8/8 16/24
Sarbanes [3] 24/21 26/8 46/4
Sarbanes-Oxley [3] 24/21 26/8 46/4
sat [1] 89/9
satisfy [2] 39/12 39/14
say [35] 12/10 15/1 23/23 25/13 25/19 32/16 35/5 35/8 42/8 43/4 45/24 46/19 53/6 58/4 59/20 66/3 69/14 71/5 71/11 71/18 71/20 76/12 77/21 88/8 89/7 89/13 92/25 93/17 96/13 100/6 101/6 101/9 102/14 105/2 105/13
saying [7] 34/3 54/25 55/2 75/18 77/6 77/11 77/13
says [21] 22/19 28/1 30/7 30/11 32/6 35/21 38/10 43/5 48/6 52/18 53/2 61/6 64/1 70/15 76/16 83/5 83/7 90/2 96/1 96/24 96/25
Scalia [3] 32/23 34/9 47/20
scamper [2] 72/20 74/4

scare [1] 52/3
scaring [1] 58/24
scene [1] 38/18
schedule [3] 12/25 15/4 106/12
scheme [1] 31/12
scott [3] 6/12 6/15 9/2
SE [1] 2/21
seated [4] 8/3 54/8 91/20 92/5
seats [1] 59/16
second [6] 27/6 28/16 52/16 61/4 88/13 96/14
Secondly [4] 9/24 46/8 47/7 57/13
Secret [7] 79/4 79/11 79/24 80/11 80/14 83/5 83/7
section [6] 23/5 40/11 40/16 46/14 68/21 68/24
sections [4] 20/23 23/21 48/9 58/4
see [9] 12/15 12/23 24/13 28/9 54/19 54/22 72/25 98/9 103/6
seeing [1] 109/1
seek [2] 33/5 75/11
seeks [2] 75/5 75/8
seem [5] 20/14 24/22 27/6 27/9 81/23
seemingly [2] 14/23 104/23
seems [11] 21/21 22/1 27/15 34/1 45/23 45/23 46/15 48/12 58/10 59/2 80/7
seen [1] 68/5
sees [1] 55/25
selected [1] 104/3
selection [1] 98/15
selective [1] 39/8
semicolon [3] 41/1 41/10 41/11
Senate [9] 52/7 54/7 58/25 61/3 61/3 62/18 62/20 68/21 68/23
sense [8] 20/5 29/18 30/5 31/11 52/5 56/18 67/15 92/22
sensibly [1] 31/15
sentence [5] 40/8 41/1 47/11 47/12 66/13
separate [9] 10/2 26/6 40/12 48/9 50/8 50/13 60/11 79/21 97/9
separated [1] 40/11
separately [1] 47/5
separates [1] 99/15
separating [1] 41/1
September [5] 1/5 44/5 107/12 108/25 110/7
serial [1] 40/10
series [2] 40/10 58/2
serious [3] 22/4 22/23 23/1
served [1] 102/16
serves [1] 63/9

scare [1] 52/3
service [3] 79/4 79/11
79/24 80/1 80/14 83/5 83/8
SERVICES [1] 4/17
session [4] 85/23 86/3 91/16 93/6
sessions [1] 93/2
set [4] 10/22 23/17 81/8 108/24
sets [2] 27/14 97/9
settled [1] 57/11
Seventh [2] 32/11 57/18 58/1 58/9 66/14 72/1
sever [2] 14/12 14/15
several [8] 28/1 34/7 34/9 40/25 46/25 47/12 56/3 97/1
sfbrennwald [1] 2/22
shaking [1] 102/22
share [3] 50/5 50/6 50/7
she [3] 12/6 26/11 102/23
she's [1] 102/22
Shelli [2] 2/14 8/18
short [2] 18/11 45/11
should [15] 9/22 11/16 23/12 24/18 24/24 41/5 44/24 44/25 48/18 49/15 55/10 61/1 63/20 63/24 69/7
shouldn't [1] 15/1
shout [1] 42/11
shouting [1] 35/9
show [2] 53/23 105/3
showing [2] 62/7 62/8
shows [2] 81/14 83/25
shredding [6] 24/23 46/15 46/16 48/25 49/2 70/25
shut [2] 33/25 103/1
sick [4] 103/3 103/4 103/16 103/17
Signal [2] 88/15 88/16 92/9
significantly [1] 88/8
Silberman [1] 34/8
similar [4] 24/24 26/8 48/20 49/7
similarity [1] 58/11
simple [4] 45/9 58/8 69/2 76/23
simply [6] 15/8 19/9 19/12 20/15 96/13 97/19
Since [1] 11/8
single [8] 40/8 61/22 71/23 77/18 77/19 96/22 97/5 97/10
sir [4] 11/12 13/9 13/20 37/14
sit [2] 103/1 106/18
situation [13] 10/13 10/19 12/3 12/7 22/13 49/17 55/12 59/5 79/7 84/9 96/19 100/15 100/17

**skating** [2] 88/9 92/25
Skilling [1] 101/24
slate [2] 26/1 43/16
sneaking [1] 101/25
so [163]
So a [1] 54/6
so I think [2] 16/15 106/3
so it's [1] 44/5
some [47] 11/17 11/19 13/3 13/5 14/4 15/17 19/16 25/5 26/18 27/17 28/9 29/12 32/2 32/12 32/12 34/20 35/7 38/15 39/17 46/14 48/13 48/23 49/5 54/8 58/11 62/15 62/23 65/3 65/23 66/22 67/24 68/7 69/16 69/22 70/10 71/21 75/4 78/3 78/4 88/23 89/18 89/24 97/3 98/4 104/8 104/11 106/19
somebody [11] 22/15 22/24 34/19 43/13 50/21 52/7 59/4 59/20 61/18 72/12 73/18
someone [4] 37/23 38/4 65/9 70/11
something [23] 13/7 15/5 18/14 24/8 24/24 32/13 34/13 34/17 34/18 34/19 37/13 40/8 43/13 45/12 55/4 65/6 67/9 69/11 71/7 71/8 71/13 101/10 106/14
sometime [1] 11/7
sometimes [2] 55/25 56/9
somewhere [1] 81/13
sophisticated [1] 99/20
sorry [13] 23/15 33/20 34/11 38/25 42/23 50/25 51/1 60/24 61/10 78/8 83/20 85/8 98/20
sort [23] 12/18 15/22 21/3 21/25 26/25 41/2 44/11 48/6 48/7 48/15 54/8 58/2 64/21 66/5 66/5 66/8 66/22 67/12 87/11 88/23 89/18 89/24 97/3
South [1] 5/11
Southern [1] 61/13
Sovereign [1] 63/16
speak [2] 13/3 103/16
Speaker [1] 103/10
speaks [2] 20/24 82/7
specific [15] 12/21 36/19 37/2 41/5 41/7 55/24 55/24 62/5 62/8 62/10 67/25 84/17 85/23 86/2 86/14
specifically [7] 18/23 28/20 62/20 63/9 70/18 79/23 90/6
specificity [2] 56/8 87/22

**S**

**specify [2]** 92/2 92/4
**speculation [1]** 63/21
**spelled [1]** 19/7
**spend [3]** 37/17 101/5 102/5
**spent [3]** 12/16 67/5 67/8
**Spina [4]** 5/11 8/25 108/11 108/20
**spoke [2]** 11/5 12/4
**spoken [2]** 12/1 12/2
**spoliation [3]** 26/14 39/18 43/10
**Spruce [1]** 6/4
**Sr [1]** 2/2
**St [1]** 6/8
**stage [1]** 91/24
**stand [3]** 16/17 36/5 106/25
**standalone [1]** 15/12
**standing [2]** 36/11 59/12
**stands [6]** 52/7 52/17 53/1 99/24 100/11 109/7
**stanley [3]** 3/12 3/15 8/22
**start [6]** 16/19 47/1 47/6 47/19 67/6 101/25
**started [2]** 9/17 44/22
**starts [2]** 46/13 107/15
**stashed [1]** 53/24
**state [7]** 23/8 31/25 36/12 58/20 59/18 93/4 93/6
**stated [2]** 19/10 25/14
**statement [5]** 32/2 63/11 71/10 77/18 77/25
**statements [4]** 25/17 54/5 61/17 102/1
**states [8]** 1/1 1/3 1/10 8/5 23/9 41/21 50/18 103/11
**status [3]** 107/4 107/5 108/25
**statute [84]** 18/9 18/11 19/2 19/22 21/19 22/17 23/14 24/3 24/6 24/10 24/18 24/20 24/22 25/21 26/13 26/24 27/1 27/10 27/19 27/20 30/18 36/25 37/19 37/22 38/10 39/3 39/12 39/14 39/18 40/7 40/22 40/24 41/12 41/14 45/2 45/3 45/15 45/17 45/25 46/3 48/11 48/18 55/13 56/1 56/19 60/10 60/13 60/16 60/21 60/25 61/1 61/7 64/11 67/15 69/15 69/19 69/21 70/5 70/12 70/15 72/18 73/5 74/9 75/1 77/13 79/11 79/21
**statutorily [1]** 21/25
**statutory [10]** 21/24 31/12 45/20 46/8 46/12 47/9 57/7 62/9 63/21 81/9
**stay [1]** 12/6
**Steele [3]** 3/2 8/9 8/21
**stenography [1]** 7/6
**Stephen [2]** 2/20 8/20
**still [7]** 23/8 29/21 44/6 67/9 72/4 77/16 91/10
**stolen [1]** 43/12
**stood [1]** 104/7
**stop [9]** 38/6 52/8 52/18 52/19 53/3 53/7 53/13 56/22 61/3
**stopping [1]** 59/10
**Street [10]** 1/15 2/16 3/3 4/3 5/3 5/7 5/16 5/20 6/4 59/21
**strictly [1]** 40/17
**string [1]** 48/8
**strong [1]** 103/13
**structurally [2]** 47/8 48/10
**structure [1]** 47/18
**structured [3]** 47/15 48/5 90/18
**style [1]** 99/19
**SUAREZ [1]** 6/12
**subject [2]** 16/15 88/19
**subjected [1]** 103/2
**subjects [1]** 41/6
**submit [3]** 25/20 57/1 82/13
**submits [7]** 47/16 51/18 51/24 55/9 60/5 66/21 67/17
**submitted [1]** 32/4
**suborn [2]** 26/19 73/18
**subsection [3]** 40/12 56/1 56/2
**subsections [1]** 40/25
**substantive [3]** 10/23 15/10 15/12
**suburban [2]** 98/8 98/9
**succinct [1]** 90/2
**such [2]** 16/8 65/9
**suffers [1]** 45/25
**sufficiency [1]** 83/10
**sufficient [2]** 91/22 96/11
**sufficiently [1]** 64/9
**suggest [5]** 54/21 56/14 58/10 67/6 99/8
**suggested [7]** 20/25 48/7 48/22 53/10 55/17

**suggesting [2]** 76/6 97/19
**suggests [1]** 19/2
**Suite [10]** 2/4 2/12 2/17 3/4 3/9 4/4 5/12 5/21 6/8 6/13
**superseding [5]** 15/21 16/4 16/11 84/20 85/4
**supplemental [1]** 104/11
**support [1]** 60/19
**supported [1]** 68/24
**supportive [1]** 13/5
**supposed [2]** 78/12 78/13
**suppress [1]** 14/13
**Supreme [23]** 26/6 28/18 32/13 36/16 36/17 44/23 45/12 49/10 52/2 52/8 54/16 62/13 63/6 63/7 63/12 63/14 63/18 65/2 65/16 66/6 71/1 72/23 88/25
**Supreme Court [20]** 26/6 28/18 32/13 36/16 36/17 44/23 45/12 49/10 52/2 52/8 54/16 62/13 63/6 63/7 63/14 63/18 65/2 71/1 72/23 88/25
**Supreme Court's [1]** 66/6
**supremest [1]** 103/8 103/9
**sure [15]** 10/3 11/15 20/9 26/22 28/13 33/22 62/23 80/13 81/1 81/1 87/18 92/13 94/7 95/20 108/11
**surprise [3]** 86/7 99/25 105/11
**surreply [1]** 68/6
**surround [2]** 100/16 100/20
**surveys [1]** 99/5
**survive [1]** 97/18
**susceptible [1]** 66/22
**suspect [1]** 20/14
**SW [1]** 4/3
**swallow [2]** 55/21 56/6

**T**

**table [2]** 11/20 34/17
**take [10]** 21/16 22/11 30/13 51/3 52/6 59/19 69/20 71/10 78/14 78/16
**taken [2]** 22/20 48/16
**takers [1]** 44/1
**taking [2]** 20/6 34/16
**talk [9]** 37/5 37/15 51/24 51/25 63/4 65/12 86/18 106/1 106/25
**talked [5]** 57/4 63/14 64/17 89/1 92/10
**talking [10]** 28/14 42/9 65/15 80/16 81/21

**talks [3]** 30/11 40/13
**tampering [6]** 16/1 16/13 46/11 56/16 61/9 84/17
**tangible [5]** 40/9 45/21 45/22 47/11 61/9
**target [1]** 58/6
**technically [1]** 11/7
**tell [6]** 26/24 28/17 37/21 46/23 78/25 91/19
**telling [4]** 44/23 89/14 101/19 104/15
**temporarily [1]** 56/23
**ten [1]** 105/6
**tender [1]** 13/9
**term [26]** 17/24 21/13 21/14 23/10 26/9 26/11 26/13 26/14 27/25 29/2 39/14 39/21 41/4 41/4 41/5 42/2 43/9 46/13 57/6 58/10 71/23 72/3 72/5 73/14 74/9 74/25
**terms [21]** 10/25 12/14 13/23 15/7 20/21 27/1 31/6 36/12 39/2 40/10 45/15 45/16 51/19 69/18 71/3 71/4 83/9 89/22 93/6 106/24 106/25
**terribly [1]** 69/17
**Terrific [1]** 13/19
**test [1]** 43/14
**testified [1]** 96/4
**testify [2]** 20/4 59/4
**testifying [2]** 22/12 35/6
**testimony [5]** 14/13 21/16 22/10 22/20 56/21
**tethered [4]** 49/6 57/14 57/24 67/20
**Texas [2]** 57/21 61/13
**text [5]** 37/22 45/2 45/3 57/7 60/25
**texts [1]** 63/21
**than [15]** 19/24 20/9 20/16 25/18 36/9 45/21 59/3 60/9 65/6 71/22 88/8 90/2 91/4 101/10 102/17
**thank [27]** 11/22 13/20 13/21 17/11 17/15 25/4 44/18 70/6 70/7 70/9 82/16 82/17 84/18 91/9 93/23 93/24 98/1 103/22 103/23 106/2 108/15 108/22 109/2
**thank you [22]** 11/22 13/20 13/21 17/11 17/15 25/7 43/18 43/19 70/6 70/7 70/9 82/16 84/18 91/9 93/23 93/24 98/1 103/22 106/2 108/22 109/2

**thanks [1]** 109/4
**that [610]**
**that's [100]** 9/22 10/14 11/14 12/12 13/1 15/15 18/9 18/13 19/20 20/2 20/5 22/25 23/17 24/5 30/9 33/9 33/15 33/22 34/4 34/6 34/14 34/15 35/2 35/2 35/8 35/8 35/10 35/23 36/7 36/24 37/19 39/11 39/18 40/4 40/19 41/10 42/3 42/5 43/11 44/12 45/13 46/2 46/10 46/24 49/4 49/8 49/24 52/19 53/5 54/15 55/9 55/23 58/20 59/2 59/17 60/21 61/11 61/12 61/15 61/23 63/3 63/23 67/15 69/8 69/11 71/14 71/18 72/12 72/20 75/10 75/11 76/1 78/4 79/21 80/12 81/11 81/20 83/9 83/19 84/17 86/1 86/25 87/15 89/15 90/23 90/25 92/19 93/8 101/11 102/19 104/3 106/4 106/6 107/8 107/25 107/25 108/13
**their [27]** 10/3 17/1 31/15 34/15 42/12 52/12 52/14 52/15 53/3 53/22 53/23 53/23 53/23 53/25 53/25 55/3 55/14 59/14 59/16 59/18 70/11 75/16 76/3 94/14 95/24 98/7 104/2
**them [15]** 10/5 11/18 12/20 13/4 17/3 17/5 26/22 51/16 55/19 66/25 96/18 102/2 102/2 103/18 107/19
**themselves [2]** 48/21 99/19
**then [30]** 12/24 14/6 15/17 16/11 16/20 20/20 24/9 32/18 40/13 42/3 48/6 49/10 51/7 55/18 55/25 56/9 66/4 68/9 69/15 71/10 82/25 83/5 84/16 85/22 86/15 90/14 92/7 96/22 105/9 105/10
**there [67]** 10/23 11/19 13/25 14/10 15/14 15/24 17/17 18/3 19/16 22/20 22/20 22/21 23/8 23/9 23/25 26/10 27/17 28/21 28/21 29/22 32/23 36/21 38/15 38/17 39/17 41/20 43/12 47/11 47/14 49/14 51/11 52/1 52/1 52/11 53/2 54/8 54/9 56/10 57/21 58/10 61/7 62/14 63/7 68/5 68/19 69/3 69/6 70/12 71/12 72/23 76/17 77/4 77/6

**T**

there... [14] 77/11 80/7 81/17 81/18 88/13 93/18 94/23 95/1 96/17 98/17 101/14 102/12 103/9 107/19

**there's [52]** 13/6 13/12 14/6 14/7 14/12 16/7 20/7 20/7 22/17 24/7 29/12 31/23 32/8 35/19 39/23 40/12 41/9 43/23 45/7 49/22 50/22 54/12 60/16 61/17 61/25 62/8 62/13 64/7 69/13 69/20 70/1 71/2 75/7 76/8 76/9 76/15 76/15 77/18 77/18 78/13 78/21 79/14 79/15 79/16 81/11 84/11 87/3 87/25 88/22 89/7 97/21 97/24

**therefore [1]** 29/15

**these [31]** 12/17 18/22 20/18 21/11 23/5 31/6 31/11 36/11 41/24 41/25 42/12 42/14 43/6 43/12 48/16 52/8 52/18 52/18 52/20 58/2 59/22 67/1 68/7 71/6 71/6 75/15 75/18 89/21 98/17 99/10 103/2

**they [85]** 9/25 10/1 15/4 17/1 17/1 17/3 17/5 17/7 17/8 17/9 17/10 18/22 19/6 19/7 19/9 19/9 21/10 21/13 21/16 22/10 22/10 22/12 31/3 31/24 32/3 34/11 34/22 36/16 36/23 37/1 37/2 37/4 38/17 38/17 38/18 38/19 41/23 42/13 50/5 50/6 50/6 52/12 52/13 52/14 53/6 53/24 54/5 55/14 55/24 58/4 59/7 59/9 59/9 59/14 59/15 59/16 59/16 60/5 61/17 71/4 71/5 77/19 77/23 77/24 78/3 80/11 86/14 86/17 87/21 87/22 87/23 89/21 90/25 91/1 91/2 91/4 96/21 96/23 97/23 100/7 100/8 100/10 100/12 100/14 106/21

**they're [18]** 14/25 15/1 20/6 20/6 20/8 27/13 30/22 34/3 41/23 71/5 81/23 90/16 90/19 96/22 97/13 103/3 103/17 107/22

**they've [4]** 38/4 96/21 97/4 102/17

**thin [1]** 71/13

**thing [4]** 43/14 75/6 77/3 78/11

**things [14]** 18/6 22/7 29/19 34/24 42/12 51/23 60/23 86/23

102/22 104/5 106/25

**think [68]** 10/20 12/9 12/14 13/11 14/1 14/8 15/22 15/25 16/15 19/5 20/16 24/18 25/13 25/20 26/10 26/21 27/23 28/17 28/22 29/9 29/11 29/15 29/15 30/10 31/3 34/6 34/14 34/25 35/21 35/22 35/24 37/16 43/15 49/15 50/15 50/19 54/23 56/11 61/18 65/10 67/8 67/9 68/5 69/13 71/22 73/6 75/13 75/15 78/24 80/1 80/9 84/4 86/9 89/11 92/1 99/2 99/25 101/7 103/16 104/8 105/3 106/3 106/7 106/8 106/13 106/14 107/21 109/3

**thinking [1]** 56/6

**third [2]** 18/8 27/9

**Thirdly [2]** 10/7 46/12

**this [157]**

**THOMAS [6]** 1/6 2/2 5/11 6/8 8/6 8/25

**those [46]** 9/13 9/15 9/18 10/4 10/16 11/4 14/4 14/12 14/13 14/25 15/3 16/1 16/12 16/12 16/15 19/10 22/10 25/2 27/12 30/2 31/16 36/15 36/19 38/6 51/23 54/4 54/5 55/21 56/18 56/19 61/14 61/16 62/10 65/17 73/10 73/20 75/14 81/10 81/21 83/2 90/10 97/14 98/11 100/2 100/3 100/18

**though [4]** 33/22 63/4 83/16 95/5

**thought [4]** 35/15 45/24 98/9 102/15

**thoughts [1]** 67/24

**thousands [1]** 41/20

**thread [1]** 92/9

**threatening [2]** 53/11 53/11

**three [10]** 9/24 10/4 18/18 18/21 26/23 27/12 88/10 94/24 106/15 107/23

**through [9]** 12/18 14/22 45/18 57/6 58/22 59/15 59/20 59/21 82/22

**throwing [1]** 24/13

**throws [1]** 43/6

**Thursday [1]** 107/5

**thwart [2]** 18/9 69/9

**thwarts [1]** 69/5

**ticket [1]** 54/7

**tied [1]** 52/1

**tightened [1]** 20/15

**tightening [1]** 23/13

12/16 13/5 17/4 18/20 26/8 36/6 36/18 36/18 37/17 44/24 51/24 54/5 62/13 65/12 67/5 67/8 76/5 78/18 79/20 86/24 91/3 93/4 93/10 94/17 95/2 100/22 101/5 101/20 102/5 102/15 106/24

**timely [1]** 105/23

**times [5]** 9/23 18/22 28/1 34/8 34/9

**tired [4]** 103/4 103/4 103/16 103/17

**title [14]** 45/19 81/18 81/22 82/20

**titled [1]** 110/4

**today [10]** 11/1 11/10 12/12 12/16 13/24 14/25 15/4 15/7 25/19 106/8

**together [2]** 31/11 48/16

**told [1]** 11/24

**tolling [1]** 17/4

**tommy [1]** 5/13

**tommyspina.com [1]** 5/13

**topic [1]** 67/23

**towards [1]** 89/22

**Towers [1]** 2/4

**traditional [7]** 99/21 99/24 100/1 100/2 100/4 100/11 102/1

**transcript [3]** 1/9 7/6 110/3

**transcription [1]** 7/7

**transfer [2]** 14/7 98/4

**TransUnion [2]** 40/21 40/22

**trespass [2]** 79/19 79/20

**trial [8]** 31/24 59/7 86/7 92/1 93/20 99/1 101/15 101/21

**tried [4]** 18/20 38/17 46/23 70/11

**tries [1]** 98/7

**true [4]** 33/22 44/12 63/21 99/1

**Trump [1]** 98/24

**trust [2]** 54/17 55/12

**trust-us [1]** 55/12

**truthful [1]** 22/10

**try [8]** 23/24 35/5 35/6 42/11 44/25 89/8 98/10 105/14

**trying [10]** 13/14 22/13 34/13 62/3 62/6 62/7 63/25 90/19 96/9 102/10

**turn [3]** 15/15 16/18 104/14

**TV [1]** 103/6

**twice [1]** 66/13

**twist [1]** 41/24

**two [27]** 10/15 14/9

23/20 25/21 29/19 29/21 30/2 34/24 35/3 38/15 41/2 48/5 48/7 48/8 51/11 60/23 69/16 81/25 85/2 86/23 87/24 106/17 107/23

**two-plus [1]** 69/16

**type [16]** 18/2 19/15 19/17 20/22 21/4 22/23 48/23 58/6 58/11 58/14 58/15 58/16 69/4 70/5 75/6 98/11

**types [1]** 19/8

**typically [1]** 55/23

**U**

**U.S [4]** 1/14 47/24 66/16 82/20

**U.S.C [4]** 19/7 82/22 83/6 83/20

**Ulrich [3]** 6/16 8/14 9/4

**ultimate [1]** 70/3

**ultimately [6]** 55/4 55/9 63/17 66/24 77/8 80/3

**unable [1]** 10/5

**unambiguous [4]** 45/3 45/4 45/6 45/7

**unavailable [4]** 10/18 108/6 108/19 108/21

**unceremoniously [1]** 38/19

**unconstitutional [2]** 27/25 28/8

**unconstitutionally [6]** 25/24 32/9 73/14 77/13 77/23 78/1

**under [27]** 17/23 18/12 20/10 20/18 20/25 21/17 23/11 24/20 26/8 34/17 37/1 43/7 53/2 54/18 54/19 56/5 58/12 58/12 61/23 65/8 69/23 70/5 79/4 79/14 82/11 90/7 90/24

**understand [15]** 13/13 21/20 26/22 26/23 27/19 27/21 40/1 55/4 73/21 74/20 98/14 98/23 104/18 105/22 105/24

**understandable [1]** 12/13

**understanding [6]** 17/2 31/8 60/20 64/7 66/9 66/14

**understandings [1]** 66/12

**understood [5]** 41/6 45/22 55/7 64/10 69/25

**undertaking [1]** 22/4

**unfortunately [1]** 99/11

**unit [1]** 95/17

**UNITED [7]** 1/1 1/3 1/10 8/5 41/21 50/18 103/11

**United States [3]**

50/18 103/11

**United States of [1]** 8/5

**unknowns [2]** 63/10 63/11

**unlawful [4]** 50/22 51/9 58/12 69/23

**unlawfully [1]** 58/21

**unless [6]** 9/20 25/1 42/25 79/10 82/14 108/7

**unlimited [1]** 61/8

**unmoored [1]** 56/14

**unpack [1]** 26/21

**until [3]** 88/3 98/15 98/15

**up [25]** 10/5 10/12 13/12 16/17 36/5 36/11 36/16 37/18 42/16 45/20 52/7 52/17 53/1 56/7 62/1 62/7 62/8 62/16 62/24 71/1 71/23 73/16 91/6 103/1 104/7 64/16 73/11 77/23

**upheld [5]** 34/21 43/7

**uphold [1]** 35/24

**upon [3]** 60/19 80/4 101/17

**urbanites [1]** 99/20

**us [12]** 31/4 31/5 46/6 48/17 54/17 55/12 63/6 71/21 75/11 86/5 91/3 100/2

**usdoj.gov [2]** 1/17 1/18

**use [6]** 21/13 53/11 53/25 57/6 66/12 92/14

**used [18]** 20/21 21/11 23/18 26/14 30/14 38/6 39/2 40/21 41/15 49/7 54/10 63/19 63/19 66/8 75/3 75/3 75/4 103/12

**useful [1]** 67/10

**uses [5]** 29/2 73/8 74/9 74/25 75/1

**usually [1]** 31/17

**V**

**VA [4]** 4/9 5/4 5/8 5/16

**vague [19]** 25/24 27/2 27/4 27/7 27/20 28/17 32/9 32/19 32/20 32/22 32/24 64/25 72/4 72/4 73/14 77/13 77/23 77/25 78/1

**vagueness [2]** 29/3 77/15

**valid [1]** 101/14

**value [2]** 32/12 63/8

**values [6]** 99/21 100/2 100/4 100/7 100/8 102/1

**Van [3]** 6/2 6/3 9/1

**various [3]** 19/8 93/1 97/10

**vary [1]** 88/7

**Veen [3]** 6/2 6/3 9/1

**venue [2]** 14/7 98/4

**V**

**versus [4]** 8/5 40/23 47/24 63/5

**very [29]** 11/25 17/11 20/21 20/25 21/5 22/6 22/14 22/25 32/6 35/3 35/4 35/17 39/16 44/23 45/10 45/12 55/20 59/2 64/1 64/4 74/24 82/23 98/24 101/14 103/20 104/15 105/5 106/7 106/18

**veteran [1]** 103/5

**Vice [6]** 79/25 79/25 80/6 80/6 82/1 83/7

**victim [4]** 95/18 96/18 97/17 97/22

**victims [1]** 97/16

**view [11]** 22/4 22/23 37/21 59/22 60/7 60/16 75/7 83/11 83/16 102/18 105/14

**viewed [2]** 75/7 75/9

**vile [1]** 103/19

**violate [7]** 30/9 30/18 73/2 73/5 74/25 76/5 79/22

**violating [1]** 84/4

**violation [7]** 24/10 59/23 59/24 60/3 70/17 71/19 74/5

**violent [1]** 78/4

**Virginia [1]** 53/24

**virtually [1]** 100/8

**virtue [2]** 15/21 87/16

**visit [1]** 79/24

**visiting [1]** 83/4

**voice [1]** 52/14

**Volpendesto [2]** 57/17 61/5

**vote [6]** 47/4 51/17 51/17 53/14 59/13 72/13

**votes [1]** 43/13

**voting [1]** 22/25

**vs [1]** 1/5

**W**

**wait [4]** 98/15 98/15 98/15 109/5

**waive [1]** 25/17

**waived [1]** 9/8

**waiving [1]** 17/4

**Walden [4]** 5/11 8/12 8/25 108/10

**walk [1]** 82/22

**Walnut [1]** 5/20

**want [32]** 10/3 17/9 25/12 26/21 28/13 30/4 31/22 37/13 37/17 39/17 42/13 42/21 42/24 45/13 45/23 46/2 47/6 51/3 53/6 77/14 77/21 84/15 89/5 93/25 94/2 102/4 102/10 102/13 104/19 106/17 106/18 108/7

**wanted [5]** 62/22 68/16

**wants [4]** 39/16 42/6 43/23 56/8

**war [1]** 22/25

**wary [2]** 63/20 63/24

**was [129]**

**Washington [13]** 1/5 1/15 2/13 2/17 2/21 3/4 3/10 3/13 4/18 5/16 6/9 7/5 103/7

**wasn't [6]** 28/3 49/7 51/2 77/24 88/3 96/17

**watch [1]** 10/2

**waterfront [1]** 12/18

**Watkins [5]** 2/10 8/7 8/19 9/5 9/25

**way [20]** 5/11 11/22 12/1 12/3 24/1 28/9 37/8 46/14 70/11 71/14 72/13 72/23 75/7 83/15 88/25 90/18 97/2 101/16 101/18 105/23

**ways [1]** 30/18

**we [114]**

**we believe [4]** 18/11 57/12 61/5 85/19

**we will [2]** 17/3 109/1

**we'd [1]** 12/6

**we'll [10]** 15/4 16/19 44/1 47/1 47/19 54/22 68/9 68/9 82/13 101/21

**we're [21]** 13/12 13/14 13/24 15/5 15/7 28/9 28/14 46/19 51/25 71/21 88/20 88/21 88/24 89/18 94/17 96/9 96/19 97/12 97/19 106/1 107/18

**we've [5]** 10/4 16/20 48/8 71/23 94/12

**weapons [1]** 53/23

**week [1]** 10/20

**weeks [2]** 10/18 106/15

**Weinberg [3]** 6/12 6/12 9/3

**welcome [2]** 9/13 9/15

**well [48]** 10/24 12/7 13/11 14/16 15/17 17/23 17/23 20/11 21/5 21/8 23/15 23/22 24/12 24/25 28/3 28/5 29/9 30/4 35/12 40/2 44/9 47/21 48/20 52/11 58/14 69/10 70/2 72/17 76/14 77/10 79/2 79/18 80/9 81/16 87/9 87/23 92/9 93/3 98/22 99/2 99/7 99/11 100/5 100/21 100/25 102/24 103/17 107/7

**went [3]** 36/16 38/16 82/4

**were [48]** 10/3 10/5 14/11 14/13 15/24 19/9 20/13 21/11 22/20 22/21 23/5 25/2 30/2 31/3 34/2 37/4 38/15

**whether [31]** 12/24 28/11 28/17 34/2 37/19 55/4 55/6 56/23 57/14 58/17 60/4 60/9 64/8 65/11 66/1 67/1 67/9 69/16 79/13 79/16 79/16 80/11 80/14 83/11 87/6 88/22 97/7 101/15 102/1 103/25 106/5

**which [77]** 9/20 10/15 12/19 14/5 15/10 15/23 16/11 17/22 18/20 20/4 21/1 22/4 22/23 23/4 24/19 24/19 25/18 26/2 26/3 26/6 26/15 29/5 30/16 32/19 34/12 40/13 40/16 41/4 44/23 45/1 46/14 47/8 47/13 49/7 49/9 50/5 50/11 51/22 53/21 57/18 58/1 60/18 61/10 67/11 69/5 70/25 72/1 73/5 73/8 73/24 74/1 74/20 77/21 81/12 84/8 85/15 86/15 87/14 87/19 87/24 89/5 89/13 90/10 91/4 91/20 91/20 92/8 92/13 93/6 95/3 95/14 96/3 96/8 97/3 102/18 105/11 106/23

**while [5]** 9/21 11/23 36/4 48/22 107/21

**white [3]** 103/8 103/9 103/9

**who [25]** 9/13 9/15 9/18 11/6 11/22 12/2 16/20 32/8 37/24 38/14 38/16 44/6 54/6 58/24 60/25 77/4 85/16 94/10 94/13 95/7 99/3 99/19 102/19 107/6 107/7

**who've [2]** 100/2 102/16

**whoever [1]** 50/6

**whole [3]** 24/20 63/7 102/5

**why [34]** 10/12 12/23 16/18 19/15 32/24 37/21 38/1 38/4 38/7 39/1 39/11 40/15 46/2 46/24 47/13 55/18 55/19 55/19 68/2 68/8 73/2 73/5 78/18 78/18 78/24 79/8 80/3 80/4 80/16 81/2 84/14 84/15 86/15 108/24

**Why isn't [1]** 81/2

**Wicks [2]** 4/16 8/23

**wife [2]** 11/5 12/6

**will [24]** 17/3 25/19 26/25 31/24 41/18 41/18 48/4 56/9 63/5 69/14 73/13 83/4 89/13 92/7 92/15 101/6 101/8 102/14 104/1 104/3 104/13 104/14 105/2

**where Justice Scalia [1]** 47/20

**William [7]** 2/2 6/7 7/2 8/13 110/2 110/7 110/8

**Wilson [3]** 4/2 4/3 8/21

**wing [1]** 75/9

**wish [5]** 1/12 17/7 43/22 45/9 106/20

**within [5]** 19/25 35/20 39/2 55/13 71/6

**without [6]** 62/5 89/23 96/18 97/3 97/17 102/18

**witness [5]** 35/5 56/16 56/20 59/4 62/8

**witness's [1]** 70/22

**witnesses [4]** 20/4 22/11 22/21 46/11

**women [1]** 75/8

**won't [3]** 80/4 85/7 105/11

**wonder [2]** 11/18 67/9

**wonderful [1]** 101/7

**wondering [2]** 17/1 17/4

**Woodward [3]** 3/12 3/12 8/22

**word [43]** 10/20 19/19 24/4 27/2 27/19 30/14 31/20 48/2 48/14 48/17 49/5 49/6 49/9 51/14 53/11 58/5 64/9 64/15 64/17 64/18 64/20 64/24 65/3 65/13 65/16 65/17 65/23 66/1 66/4 66/11 66/12 66/15 66/15 66/20 66/21 66/23 67/13 68/1 71/10 72/4 74/11 74/21 75/1

**words [12]** 18/25 33/3 38/6 41/24 42/1 47/12 48/8 49/11 60/16 83/14 89/7 92/25

**work [7]** 12/2 50/19 51/18 52/4 78/25 105/14 107/25

**works [1]** 71/15

**worldly [1]** 99/20

**worn [2]** 94/13 94/14

**worried [1]** 79/8

**would [95]** 15/8 15/8 17/16 18/14 19/16 19/24 20/10 20/14 20/16 21/10 21/22 22/1 22/19 22/24 24/14 24/22 25/15 25/20 29/1 30/9 30/9 32/1 32/16 32/17 34/4 34/12 35/8 36/18 38/22 42/3 42/4 42/14 42/18 43/14 43/17 44/8 45/10 45/10 50/19 50/20 52/21 59/22 60/5 60/7 60/13 60/20 61/1 61/1 65/5 65/6 65/25 66/1 66/1 66/23 67/10 67/21 67/23 67/24 68/15 69/6 69/10 70/3 71/20 73/2 73/5 74/4 77/19 77/20

**W**

**would... [27]** 79/6 79/6
79/23 80/10 80/19
80/19 81/23 81/25 84/4
85/17 85/19 88/8 89/19
89/22 92/4 95/13 96/13
98/10 98/15 99/8 99/25
101/11 104/9 105/3
106/3 106/9 106/21
**wouldn't [3]** 42/19
44/13 46/23
**writ [1]** 93/17
**write [1]** 103/7
**writing [4]** 43/16 67/25
101/22 106/10
**written [3]** 43/13 69/21
106/4
**wrong [4]** 26/24 35/8
46/24 78/24
**wrongdoing [2]** 31/13
31/15
**wrongful [1]** 31/10
**wrote [4]** 47/5 99/18
99/23 100/6

**Y**

**yanked [1]** 97/1
**Yates [19]** 24/11 24/12
24/12 26/5 37/18 39/16
40/7 43/17 45/13 46/18
46/21 47/1 47/6 47/8
57/16 57/18 57/19
67/12 67/16
**Yeah [4]** 30/22 34/10
75/24 81/20
**year [6]** 22/6 52/9
52/21 57/22 61/13
71/19
**years [6]** 23/9 38/15
38/15 39/23 41/19
100/3
**yelling [1]** 59/13
**yells [1]** 52/8
**yes [26]** 10/9 12/11
13/2 13/13 37/14 44/3
44/21 46/25 47/22
47/25 49/21 59/25
68/11 70/23 73/13
73/20 75/17 76/7 81/4
82/19 85/14 91/12 94/6
94/12 95/5 105/24
**yet [2]** 44/5 103/6
**Yom [2]** 107/14 108/3
**you [192]**
**you'd [6]** 25/5 68/14
78/22 94/7 98/5 105/6
**you'll [1]** 16/17
**you're [27]** 9/20 9/20
9/21 12/10 28/14 29/7
35/17 36/5 38/23 39/7
39/25 40/3 42/9 46/12
47/23 55/16 61/20 66/4
66/5 66/5 74/16 74/18
75/22 78/12 78/13 97/7
101/1
**you've [19]** 10/21 26/1
26/5 33/13 35/18 38/13
48/7 48/13 52/19 53/10

58/3 73/25 74/24 101/7
104/20
**your [166]**
**Your Honor [111]**
**Your Honor's [2]** 65/10
83/19
**yours [1]** 19/25
**yourself [4]** 10/25
34/14 34/19 35/10

**Z**

**Zaremba [4]** 7/2 110/2
110/7 110/8
**Zsuzsa [1]** 3/7