**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | **Criminal No. 1:21-cr-00028-APM** |
| **v.** ) | |
| ) | |
| **CONNIE MEGGS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT CONNIE MEGGS'S
MOTION TO DISMISS COUNTS I AND II OF THE INDICTMENT**

This Court's determination of whether § 1512(c) applies to the conduct alleged in the

Fifth Superseding Indictment is guided by the Supreme Court's consideration of nearly an

identical challenge to the same chapter of the criminal code in *Yates v. United States*, 574 U.S.

528 (2015).

Specifically, at issue was whether the breadth of a sister-section, 18 U.S.C. § 1519, was

unconstitutional.  A majority of the Court concluded it was, and reversed a fisherman's

conviction under an "accountant's offense" – both § 1512(c) and § 1519 were "originally passed

to confront the sort of document destruction conducted by Anderson Consulting in the early days

of the Enron investigations."  *See* Gregory M. Gilchrist, Regulation by Prosecutor, 56 Am. Crim.

L. Rev. 315, 338 (2019).  *See also Yates*, 574 U.S. at 535 ("The Sarbanes-Oxley Act, *all agree*,

was prompted by the exposure of Enron's massive accounting fraud and revelations that the

company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially

incriminating documents." (emphasis added)).

Here, the government would have this court rule that in enacting § 1512(c), Congress

intended to arm prosecutors with a broad catch-all provision capturing *any* conduct so long as

"corruptly" intended to disrupt an "official proceeding" and that the legislature did so by wedging it among provisions precluding witness tampering and document destruction.  In summary, § 1512(c) suffers the same criticism levied by Justice Kagan against § 1519 in her *dissent* from the majority of the Court in *Yates*:  "I tend to think, for the reasons the plurality gives, that § 1519 is a bad law—too broad and undifferentiated, with too-high maximum penalties, which give prosecutors too much leverage and sentencers too much discretion."  *Yates*, 574 U.S. at 570 (Kagan, J., dissenting).  This Court should follow the guidance provided by the Supreme Court in *Yates* and dismiss Counts I and II of the fifth superseding indictment.

### A.   The Yates *Court's "Narrow Grounds" Favors Dismissal*

As the concurrence of Justice Alito presents the narrowest grounds upon which the Court reached its holding, is serves as the binding opinion of the Court.  *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (internal quotation marks omitted)).  In Justice Alito's view, the Court could reach a determination as to the statutory interpretation of the meaning of § 1519 by considering that section's nouns and verbs, as well as its title.  *See Yates*, 574 U.S. at 549-552 ("Although perhaps none of these features by itself would tip the case in favor of Yates, the three combined do so.") (Alito, J., concurring).

Here, § 1512(c)'s nouns are limited to "records, documents, or other objects," precluding the "alter[ation], destr[uction], mutilat[ion], or conceal[ment]" of which that "impair[s] the object's integrity or availability for use in an official proceeding."  Put differently, the statute prohibits *tampering with a record to impede an official proceeding*.  The additional verbs that

follow:  "obstruct[], influence[], or impede[]" which itself are modified by the adverb "otherwise," must be read collectively with the actions – the verbs – that precede.

To be sure, Justice Alito acknowledged the shortcomings of relying solely on the nouns and verbs within a section to derive legislative intent and/or meaning, *see Yates*, 574 U.S. at 551 ("focusing on the verbs, the category of nouns appears to be filekeeping [and while] [t]his observation is not dispositive, . . . *neither is it nothing*"), ultimately the section's title tipped the scales.  Title IX of the Sarbanes-Oxley Act – the "*Corporate* Fraud Accountability Act of 2002" (emphasis added) – provides § 1512(c)'s language within a section titled:  "Tampering With a Record or Otherwise Impeding An Official Proceeding."  The section's title thus affirms the foregoing interpretation – "or otherwise obstructs, influences, or impedes and official proceeding" is intended to be read collectively with the statute's prohibition of *tampering with a record to impede an official proceeding.*[1]

Despite potential application of this straightforward analysis, the government submits that *Yates* is distinguishable because, unlike § 1519, § 1512(c)'s "text and structure make plan that [Congress] further intended Section 1512(c)(2) to cover more ground than Section 1512(c)(1)," in that § 1512(c) "includes one numbered provision that prohibits evidence-tampering, followed by a semi-colon, the disjunctive 'or,' and then a separate numbered provision containing a separate catch-all obstruction provision."  *Id.* at 23-24.  Yet, again, Justice Alito's holding on "narrow[er] grounds" did not solely rely on statutory construction canons.

---

[1] The Government submits that Congress "simply opted not to rename § 1512 to reflect either of the two new obstruction prohibitions added in § 1512(c)." Brief at 23 (ECF 437).  This begs an important question: what if Congress chose *not* to modify the title because it intended the new prohibitions to capture similar conduct?  Consider what other acts §1512 prohibits: § 1512(a) precludes killing, attempting to kill, or using physical force or threat of physical force against a person to prevent testimony or induce a witness to withhold information; § 1512(b) precludes using intimidation, threats, or corrupt persuasion as against a person to prevent testimony or hinder, delay, or prevent communication of information to law enforcement or the courts; and § 1512(d) precludes intentionally harassing another person to hinder, delay, or prevent that person from taking certain actions.  Each of these sections use language, are formatted similarly, and apply to conduct consistent with the title under which they were codified.

Presciently, he responds to the government's argument, concluding such canons instructive despite an "imperfect . . . case." *Yates*, 574 U.S. at 550 (Alito, J., concurring). Instead, Justice Alito concluded § 1519 unconstitutionally vague following consideration of all "interpretive evidence." *See Yates*, 574 U.S. at 552 (Alito, J., concurring) (citing *Washington Sate Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-385 (2003)). Here too, consideration of all "interpretative evidence" provides only one result. The "known unknowns" intended to be captured by § 1512(c)(2)'s catchall provision "should be similar to known knowns."[2] *Yates*, 574 U.S. at 551 (Alito, J., concurring).

### B. The Yates Court's Plurality Opinion is Similarly Persuasive

The broader opinion by the *Yates* Court's plurality is similarly persuasive and provides guidance as to additional "interpretive evidence" that similarly tip the scales in favor of defendants.

First, the *Yates* Court's plurality observed that the government's proposed interpretation of § 1519 would "cut [it] loose from its financial-fraud mooring to hold that it encompasses any and all [conduct]." *Yates*, 574 U.S. at 532. Here too would this Court be remiss by ignoring the historical framework that saw the passage of the Sarbanes-Oxley Act. The legislative history of the Act clearly articulates that its purpose was to "clarify and close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence and the preservation financial audit records." S. Rep. No. 107-146, at 14-15. Introduced as an amendment, Senator Trent Lott explained that the proposed amendment, which added among other provisions § 1512(c), would

---

[2] The Supreme Court's opinion in *Begay v. United States*, 533 U.S. 137 (2008) is not inapposite. There, the court rejected the government's assertion that the term "otherwise" placed after specific prohibitions was specifically intended to capture offenses other than the enumerated ones. *Begay v. United States*, 533 U.S. 137, 143-44 (2008). Rather, the Court held that "[t]he enumeration of specific crimes . . . indicates that the 'otherwise involves' provision covers only similar crimes, rather than every crime that presents a serious potential risk of physical injury to another." *Yates*, 574 U.S. at 545 (quoting Begay, 553 U.S. at 142) (internal quotation marks omitted).

enact stronger laws against document shredding:  "Current law prohibits obstruction of justice by

a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for

the evidence that has been destroyed or altered . . . ."  148 Cong. Rec. S6542, S645 (daily ed.

July 10, 2002).

Second, the *Yates* Court's plurality was persuaded by the placement of § 1519 in the

"Obstruction of Justice" chapter of the Criminal Code.  The government would have this Court

rule that it is purely coincidental that a broad catch-all it seeks passed as part of the "Corporate

Fraud Accountability Act of 2002" and was wedged haphazardly within a section titled,

"Tampering with a witness, victim, or an informant," and following a prohibition on tampering

with documents so as to affect the obstruction of an "official proceeding."  As the Plurality

observed in *Yates*:

> Congress directed placement of [Sarbanes-Oxley's other additions] within or alongside
> retained provisions that address obstructive acts relating broadly to official proceedings
> and criminal trials: . . . § 1102, 'Tampering with a record or otherwise impeding an
> official proceeding,' was codified as § 1512(c) *and inserted with the pre-existing § 1512,*
> *which addresses tampering with a victim, witness, or informant to impede any official*
> *proceeding*."

*Yates*, 574 U.S. at 540-41 (emphasis added).

Third, the *Yates* Court's plurality observed that the types of records captured by

§ 1512(c) was more expansive than those captured by § 1519.  Such a broad reading of the

language of § 1512(c)[3] further supports the assertion that § 1512(c)(2) was intentionally tethered

to the tampering of documents, which "otherwise" resulted in the disruption of an official

proceeding.  It does not, as the government would suggest, Brief at 20 (ECF No. 437), require

the progressive conclusion that Congress therefore must have intended to preclude *any* conduct

---

[3] At the outset, whether the records referenced by §1512(c)(1) are intended to broadly include "any and every
physical object," *Yates*, 574 U.S. at 541, was not an issue argues before the *Yates* Court (specifically, it was disputed
by neither the defendant nor the government).

effecting the obstruction of an official proceeding.  *C.f. Yates*, 574 U.S. at 540 ("If Congress

indeed meant to make §1519 an all-encompassing ban on the spoliation of evidence, as the

dissent believes Congress did, one would have expected a clearer indication of that intent").

Fourth, the *Yates* Court's plurality also found persuasive the statutory construction canon

of surplusage.[4]  Of note, sections 1512(a), 1512(b), and 1512(d) all proscribe conduct that could

instead be prosecuted under a liberally construed § 1512(c)(2), as could conduct falling within

the scope of the other obstruction statutes, 18 U.S.C. § 1503 and § 1505.  The government's

apparent reading of § 1512(c)(2) thus results in a wholesale transformation of numerous statutory

provisions into surplusage, a situation unacceptable for any statute, let alone a criminal one.  *See*

*generally Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994) (courts should avoid treating any

statutory terms as surplusage, and resistance to such a result "should be heightened when the

words describe an element of a criminal offense."  Moreover, this replacement, in effect, of a

number of obstruction of justice statutes with a broadly-interpreted § 1512(c)(2) would substitute

the section's 20-year maximum sentence for the substantially lesser penalties that Congress

previously deemed appropriate for the conduct specifically proscribed by 18 U.S.C. §§ 1503,

1505, 1512(a) 1512(b), and 1512(b).

Consider, for example, the conduct proscribed by 40 U.S.C. § 5104, which precludes

"[a]n individual or group of individuals [from] willfully and knowingly . . . enter[ing] or

remain[ing] in a room in any of the Capitol Buildings set aside or designated for the use of

(i) either House of Congress or a member, committee, officer, or employee of Congress, or either

House of Congress . . . with the intent to disrupt the orderly conduct of official business."  The

---

[4] Of course, the *Yates* Court's plurality also found persuasive the statutory construction canons of noscitur a sociis and ejusdem generis, concluding, as here, that together with all such "interpretive evidence" that the Court should more narrowly construe the statute born of the corporate fraud from the Enron scandal.

government's interpretation effectively subsumes this statute (unless, of course, the government instead sought a less offense).  While Congress, in its prerogative, may criminalize conduct through multiple statutes, its interpretation of § 1512(c), *as applied here*, gives no notice to the person "of ordinary intelligence," *see United States v. Harriss*, 347 U.S. 612, 617 (1954), that the conduct alleged to have occurred on January 6 was a 20-year felony, under § 1512, as opposed to a misdemeanor under § 5104.

The government's utilization of § 1512(c)(2) here also contravenes the First Amendment in so much as it criminalizes a call to "stand tall" in support of a presidential campaign's political fight.  Fifth Superseding Indictment ¶ 12 (ECF No. 328).  *See Texas v. Johnson*, 491 U.S. 397, 406-07 (1989) ("'A law *directed* at the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need that the First Amendment requires.' It is, in short, not simply the verbal or nonverbal nature of the expression, but the governmental interest at stake, that helps to determine whether a restriction on that expression is valid." (quoting *Community for Creative Non-Violence v. Watt*, 703 F.2d 586, 622-23 (Scalia, J., dissenting) (emphasis original), rev'd sub nom. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984)).  *See also Reno v. ACLU*, 521 U.S. 844, 870-71 (1997) ("In addition to the opprobrium and stigma of a criminal conviction, [a criminal statute regulating speech] may well cause speakers to remain silent rather than communicate even arguably unlawful words, ideas, and images.  As a practical matter, this increased deterrent effect, coupled with the 'risk of discriminatory enforcement' of vague regulations, poses greater First Amendment concerns than those implicated by . . . civil regulation . . . .").  To that end, the restrictions imposed by 40 U.S.C. § 5104 have been successfully challenged on just such grounds, which the government potentially seeks to circumvent here.  *See Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50,

(D.D.C. 2000) ("The regulation as applied in this case therefore amounts to an unwritten rule

banning all prayer or certain acts related to, or messages conveyed by prayer."); *Jeannette*

*Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 585 (1972) ("While some

substantial governmental interests  in the Capitol Grounds may warrant protection, none have

been alleged which are sufficiently substantial to override the fundamental right to petition 'in its

classic form' and to justify a blanket prohibition of all assemblies, no matter how peaceful and

orderly, anywhere on the Capitol Grounds."); *United States v. Nicholson*, 263 A.2d 56, 57 (D.C.

1970) (finding a predecessor statute unconstitutionally overbroad to the extent it reached conduct

other than that which interfered with orderly processes of Congress or with the safety of its

stakeholders).

\* \* \*

In summary, the collective combination of "interpretative evidence" tips the scale in

favor of the defendants and warrants the dismissal of Counts I and II of the fifth superseding

indictment.  At the very least, the *Yates* Court's plurality concluded the doctrine of lenity is

relevant and should be invoked where "the Government urges a reading . . . that exposes

individuals to 20-year prison sentences for tampering with any physical object that might have

evidentiary value in any federal investigation into any offense, no matter whether the

investigation is pending or merely contemplated, or whether the offense subject to investigation

is criminal or civil."  *Yates*, 574 U.S. at 547-48.  So too here, where the Government would have

this Court apply § 1512(c)(2) in such a way that exposes individuals, specifically Mrs. Meggs, to

20-year prison sentences for any conduct that effects the obstruction of an official proceeding.

The doctrine of lenity serves to preclude such findings by "ensure[ing] that criminal statutes will

provide fair warning concerning conduct rendered illegal and strike[ing] the appropriate balance

between the legislature, the prosecutor, and the court in defining criminal liability." *Yates*, 574

U.S. at 548 (quoting *Liparota v. United States*, 471 U.S. 419, 427 (1985). As the Plurality held in

*Yates*, and as this Court should similarly find, "[i]n determining the meaning of [the language in

§1512(c)(2)], 'it is appropriate, before [choosing] the harsher alternative, to require that

Congress should have spoken in language that is clear and definite.'" *Yates*, 574 U.S. at 548

(quoting *Cleveland v. United States*, 531 U.S. 12, 25 (2000)).  Here, the harsher alternative

would be finding that §1512(c)(2) applies to any conduct that obstructs an official proceeding.

Thus, this Court should require that Congress should have spoken in language that is clear and

definite, and the Government's conclusions regarding §1512(c)(2) should be rejected by this

Court, in favor of the doctrine of lenity.

## CONCLUSION

For the foregoing reasons Defendant Connie Meggs respectfully requests this Court's

dismissal of Counts I and II of the fifth superseding indictment.

[SIGNATURE ON NEXT PAGE]

Dated: October 12, 2021                    Respectfully submitted,

                                     */s/ Stanley E. Woodward, Jr.*
                                           Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                           BRAND WOODWARD LAW, LP
                                           1808 Park Road NW
                                           Washington, DC 20010
                                           202-996-7447 (telephone)
                                           202-996-0113 (facsimile)
                                           Stanley@BrandWoodwardLaw.com

                                       */s/* Juli Z. Haller
                                           Juli Z. Haller, (D.C. Bar No.466921)
                                           The Law Offices of Julia Haller
                                           601 Pennsylvania Avenue, N.W., Suite 900
                                           Washington, DC 20004
                                           Telephone: (202) 729-2201
                                           HallerJulia@outlook.com

                                           *Counsel for Defendant Connie Meggs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Criminal No. 1:21-cr-00028-APM** |
| **v.** | ) | |
| | ) | |
| **CONNIE MEGGS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

On October 12, 2021, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification to all parties of record.

  */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, ATTORNEYS AT LAW
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Connie Meggs*