**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Criminal No. 1:21-cr-00028-APM** |
| **v.** ) | |
| ) | |
| **DONOVAN RAY CROWL,** ) | |
| ) | |
| **SANDRA RUTH PARKER,** ) | |
| ) | |
| **BENNIE ALVIN PARKER,** ) | |
| ) | |
| **LAURA STEELE,** ) | |
| ) | |
| **CONNIE MEGGS,** ) | |
| ) | |
| **WILLIAM ISAACS,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **JAMES BEEKS,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' DISCOVERY STATUS REPORT

On February 10, 2022, the government filed its latest Discovery Status Report in which it advised that: "Upon this filing, the government intends to consult with defense counsel in this case about how this status report may impact the parties' readiness to proceed with the trial currently scheduled for April 19, 2022, in light of the time frames set forth above." Discovery Status Report at 21-22 (Feb. 10, 2022) (ECF No. 620). After conferring with defense counsel, on February 15, 2022, the government and defense counsel jointly filed a motion to continue the trial date in this matter. Motion to Continue (Feb. 15, 2022) (ECF No. 623). Specifically, the government's latest report "describ[es] the status of implementation of [its] global discovery plan," including, as relevant here: (i) the production of "voluminous amounts of video" and the

"multiple tools the government has provided to assist the defense in locating footage [defense counsel] may consider relevant;" (ii) "the ability of legal defense teams to obtain access to Relativity," "the current contents of that database," and the "manner of production of voluminous documents in view of defense counsel access to Relativity"; as well as (iii) the current status of case-specific discovery.  Discovery Status Report at 21-22 (Feb. 10, 2022) (ECF No. 620).  Because the view of the status of discovery from the perspective of opposing parties does not always clearly align, and in support of the parties' motion to continue, we provide the following response to the government's discovery status report.[1]

## I.   EVIDENCE.COM AND THE PRODUCTION OF DIGITAL MEDIA EVIDENCE

As early as August of 2021, the government began advising defense counsel and courts in this District that it was in the process of establishing a defense database hosted by Evidence.com because, "Relativity was primarily designed as [a] document review platform and not to manage terabytes of digital evidence."  The government further advised, "[a]lthough its technologically possible to view and share video evidence withing Relativity, in this case, the volume of video would significantly reduce Relativity's performance speed."  "Accordingly," the government advised, "we will use evidence.com as a platform to manage, review, and share *digital media evidence.*"  Discovery Status Report Ex. 3 at 7, *United States v. Samsel*, No. 21-cr-000537 (D.D.C. Nov. 23, 2021) (ECF No. 64) (emphasis added) (describing and attaching the government's prior discovery status reports up until the date of filing).

Defense counsel acknowledges the ability to now access Evidence.com, which now contains over 24,000 files (or roughly 2,500 hours of video).  Defense counsel further

---

[1] Because Defendant Joshua Beeks is not scheduled for trial on April 19 and because this Defense Discovery Report is filed "in support of" the Parties' consent motion to continue that trial date, counsel for Defendant Beeks does not sign this report, but has represented he has no objection to the same.

acknowledges the government's provision of the six (6) specific analytical and mapping tools described by the government in its status report.  Discovery Status Report at 4-5 (Feb. 14, 2022) (ECF No. 620).  Defense counsel do not agree, however, that these tools, without more, satisfy the government's obligation responsive under Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995), Rule 5.1 of the Local Criminal Rules of the District Court for the District of Columbia, and the repeated due process orders given to the Government pursuant to the Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020).

To be clear, absent these tools, the government clearly risks, "[c]reating a voluminous discovery file that is unduly onerous to access" in violation of *Brady*.  *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *vacated in part on other grounds*, 561 U.S. 358 (2010).  And given the novel nature of this investigation, it is unsurprising that there are certain limitations with the tools developed by the government for this case – limitations that defense counsel continues to discuss in good faith with the government.  By way of one example, the mapping program developed within Evidence.com only displays a maximum of twenty (20) results, meaning that one cannot effectively use the program to identify video in any of the heavily populated areas of the Capitol building or its grounds on January 6 to identify pertinent video. To be clear, this is not one of the tools identified by the government in its status report, but is the only known non-government tool available to defense counsel.  Put simply, only *the government's tools* are available to assist defense counsel in identifying potentially pertinent video.  Yet these tools are also subject to potentially significant limitations.  For example, as the government concedes, although the MPD Radio Global Positioning Satellite Spreadsheet contains the Computer Aided Dispatch ("CAD") of officer radios, but only in "many," and

undisputedly not all, cases.  Further complicating the usefulness of this tool, only "frequently" is an officer's body worn camera footage saved in Evidence.com utilizing that officer's CAD. Thus, although this spreadsheet provides a helpful tool for identifying potentially pertinent video, it by no means can be exclusively relied upon by defense counsel.  Further problematic is the fact that the government's remaining tools were developed for the purpose of assisting *the government*.  While defense counsel appreciates the government's willingness to share this work product with the defense, it is yet unknown whether this information can be reliably utilized to ascertain what video may be material and/or exculpatory to the defense.

In addition, *notably absent* from the government's status report is any reference to non-governmental video evidence obtained from sources such as video seized or otherwise obtained from the electronic devices of those at the Capitol on January 6 – so-called private citizen digital media evidence.  The government had previously represented that it was in possession of, at least, more than 2,000 hours of video from the social media website parler.com alone.[2]  The government provides no timetable with respect to the anticipated ingestion or otherwise availability of this data, nor is it clear whether the government has developed, or will develop, any tools for the categorization and/or organization of this significant tranche of evidence. Defense counsel simply is in no position to know the volume of additional video or other digital

---

[2] The government's discovery status report suggests that it expects to provide, "in the near future," "[v]ideos scraped from Parler that were deemed potentially relevant to the Capitol Siege after the FBI's review of thousands of videos from a two-week period encompassing January 6, 2021."  Discovery Status Report at 10-11 (Feb. 10, 2022) (ECF No. 620).  As noted, however, the government had previously advised that Relativity was not conducive to hosting digital media evidence such as this evidence, such that it is not clear how *this video* could be effectively made available to defense counsel through Relativity.  *See* Discovery Status Report Ex. 3 at 7, *United States v. Samsel*, No. 21-cr-537 (D.D.C. Nov. 23, 2021) (ECF No. 64).

media evidence we can expect to receive and how much of that video it should expect to have to be reviewed in advance of trial.[3]

Relevant here, defense counsel and the government continue to negotiate in good faith toward the resolution of these issues in an effort to avoid the need for judicial intervention while advancing this case toward a position of trial readiness.  In the meantime, defense counsel and the government are united in agreement that there is otherwise no tenable way to prepare for trial by April 19.

## II.    THE PRODUCTION OF NON-VIDEO EVIDENCE AND RELATIVITY.COM

Also as early as August 2021, the government described its plan to create a defense workspace within Relativity to allow defense counsel to "leverage Relativity's search and analytics capabilities to search the voluminous documents we expect to produce [utilizing] key term searches and metadata searches across hundreds of thousands of documents in the defense workspace."  Discovery Status Report Ex. 3 at 7, *United States v. Samsel*, No. 21-cr-537 (D.D.C. Nov. 23, 2021) (ECF No. 64).  Defense counsel acknowledges that access to the Relativity.com database is available, although a number of defense counsel are still navigating the "*at least* four to five business days" to fully gain access to the database.  Discovery Status Report at 7 (Feb. 10, 2022) (ECF No. 620).  That said, it is undisputed that the database is far from complete.  At the time of the government's filing of its status report, only four (4) of the eleven (11) prior global discovery productions had been loaded into the database.  Discovery Status Report at 10 (Feb. 10, 2022) (ECF No. 620).  Since then, it appears as though the remaining global productions have in fact been added to relativity (roughly only 300 files).  Of particular note, however, is the volume of

---

[3] Of note, on February 15, 2022, the government advised defense counsel by email of its intent to introduce one such private-citizen-created video, which defense counsel submits indisputably captures angles and/or events not otherwise available from government sources.

discovery that has only recently been provided to defense counsel, whether through Relativity, or otherwise:

- Volume 8 was provided on or about November 30, 2021, and contained roughly 62 files totaling 23.8 gigabytes.
- Volume 9 was provided on or about December 17, 2021, and contained roughly 295 files totaling 32.1 megabytes.
- Volume 10 was provided on or about January 14, 2022, and contained roughly 1,337 files totaling 110 gigabytes; and
- Volume 11 was not separately provided to defense counsel, but rather only uploaded to Relativity, such that its access by defense counsel has been necessarily limited. Because it is stored only in Relativity, it is technically difficult for defense counsel to ascertain its digital size, but includes 18,512 individual files.

Thus, since November 30, 2021, thousands of files totaling more than 130 gigabytes have been produced to defense counsel, whereas previously, the total size of the so-called global discovery had not exceeded 13.4 gigabytes of materials and just roughly 300 files.

In addition, of particular concern is the lack of detail about what remains to be added to the Relativity database. The government delineated five (5) categories of data, each of which appear voluminous and totaling tens of thousands of records. *See* Discovery Status Report at 10-11 (Feb. 10, 2022) (ECF No. 620). That, however, seems to be just the tip of the proverbial iceberg given that the government also advised that it provided Deloitte (the Relativity provider) with another 380,000 records from the FBI's case management system on February 7, 2022, *for the government to first review* as the data will require, "in-depth analysis and customization so that they may be produced to the FPD database in a standardized format," which the government estimates will "take an additional several weeks." Discovery Status Report at 15 (Feb. 10, 2022) (ECF No. 620). Thus, defense counsel do not now know *when they can begin* their review of this data. Similarly, the government acknowledges it has no accurate timetable on the production of materials scoped from other investigation subjects' devices and social media accounts as well

as law enforcement recorded interviews of other investigation subjects.[4]  Discovery Status Report at 16 (Feb. 10, 2022) (ECF No. 620).  In short, the government does not yet know when its document database will be populated and defense counsel do not yet know the volume of data that will need to be considered as part of pretrial preparations.

Relevant here, defense counsel and the government continue to negotiate in good faith toward the resolution of these issues in an effort to avoid the need for judicial intervention while advancing this case toward a position of trial readiness.  In the meantime, defense counsel and the government are united in agreement that there is otherwise no tenable way to prepare for trial by April 19.

### III.    CASE-SPECIFIC DISCOVERY

Finally, the government also advises that "case-specific discovery is nearing completion." Discovery Status Report at 20 (Feb. 10, 2022) (ECF No. 620).  Defense counsel respectfully submits that the parties continue to negotiate a number of challenges to the government's case-specific discovery that remain unresolved.  Specifically, the government has produced approximately 37,000 records exceeding 2.5 terabytes of data in case-specific discovery, excluding the un-scoped data seized from the defendants' devices in this case (which totals another 1.5 terabytes of data), as well as the defendants with whom they are alleged to have conspired in two other cases in addition to other uncharged subjects referenced in discovery materials.  Yet the manner in which discovery has been provided has presented significant challenges to the ability of defense counsel to analyze, organize, and assimilate the material.

---

[4] Relatedly, the government advises that it will be producing, "thousands of tips or the results of searches of other defendants' devices and [social media] accounts," and that these productions, "would likely exceed the capacity of our file transfer system or defense downloading capabilities" – meaning that the contemplated discovery is likely larger than any single production to-date.  See Discovery Status Report at 8 (Feb. 10, 2022) (ECF No. 620).

At the outset, it bears noting that the government's investigation largely occurred after its initial indictment returned on January 27, 2021, just twenty-one (21) days after the events of January 6.  Accordingly, the government has prioritized the provision of information over the formality of making formal discovery productions in the course of a refined investigation.  As a consequence, the government's productions have lacked cohesive organization and have been made without individual records being assigned bates-numbers or other unique identifiers permitting defense counsel to confirm their receipt of every record,[5] or enabling the data to later be easily organized in a manner consistent with the way in which it was routinely held.  Alone, this approach contradicts the *decade-old* recommendations for the production of electronic discovery authored by the government and cited in its Discovery Status Report.  *See* Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases, Department of Justice (DOJ) and Administrative Office of the U.S. Courts (AO) Joint Working Group on Electronic Technology in the Criminal Justice System (JETWG) at 6-7 (Feb. 2012), *available at* https://www.justice.gov/archives/dag/page/file/913236/download (detailing three recommended methods for the production of electronic records, each of which involves the utilization of bates-numbering), *cited in* Discovery Status Report at 17 n.19 (Feb. 10, 2022) (ECF No. 620).

Generally speaking, discovery has been provided in one of several folders, each of which provide only limited information about their contents.  The folders include:

| |
|---|
| Highly Sensitive Discovery 3 - External Capitol CCTV Footage |
| Highly Sensitive Discovery Materials - U.S. v. Caldwell, et al |
| Highly Sensitive Discovery Materials 2 - U.S. v. Caldwell, et al |

---

[5] By way of example, although the government recently made available to defense counsel a complete copy of discovery that had been produced to-date, a preliminary review of the complete production reveals that at least one production, from September 15, 2021, was presumably inadvertently excluded.

| Highly Sensitive Discovery Materials 4 - FBI Files |
| --- |
| Highly Sensitive Discovery Materials 5 |
| Highly Sensitive Discovery Materials 6 |
| Sensitive Discovery 1 - 21-cr-28 |
| U.S. v. Caldwell et al. Discovery |
| U.S. v. Caldwell et al. Discovery 2 |
| U.S. v. Caldwell et al. Discovery 3 |

Again, because the data was presumably produced as the government discovered it, it has not been organized in any particular fashion.  By way of example, there are at least seven (7) separate folders that appear to contain discovery related to Mrs. Connie Meggs, by virtue of her name being in the title of the parent folder:

| Highly Sensitive Discovery Materials 4 – FBI Files/C.Meggs.zip |
| --- |
| Highly Sensitive Discovery Materials 4 – FBI Files/Additional FBI Reports Added 8-6-21/C Meggs |
| Highly Sensitive Discovery Materials 4 – FBI Files/Additional FBI Reports Added 11-4-2021/C Meggs |
| Highly Sensitive Discovery Materials 4 – FBI Files/Additional FBI Reports Added 9-15-21 |
| U.S. v. Caldwell et al. Discovery/Defendant Statements/Connie Meggs |
| U.S. v. Caldwell et al. Discovery 2/Additional GJ Subpoena Returns Added 8-6-21/Meggs |
| 3-Scoped SW Returns as of 2-7-22/21-cr-28 (US v. Crowl et al)/C Meggs Devices & Accounts |

The remaining discovery – for each of the sixteen (16) defendants that have been charged, as well as the other uncharged subjects referenced in discovery materials, is similarly "organized." In short, there are hundreds of folders containing tens of thousands of files with innocuous names such as "FBI Reports" that must be meticulously parsed for the purpose of identifying information that is *actually* material and/or exculpatory by defense counsel.

Of course, defense counsel appreciates, as the government has repeatedly advised, that this is one of the "largest [investigations] in American history, both in terms of the number of

defendants prosecuted and the nature and volume of the evidence."  But in August, the government advised the Court that it anticipated substantially completing its discovery by early September.  Discovery Status Report at 1 (Aug. 18, 2021) (ECF No. 349).  Thus, the Court has allowed the government to repeatedly benefit from extensions of the Constitutionally and legislatively proscribed time within which it must prepare a case for trial.  Now, however, defense counsel is faced with the nearly insurmountable task of distilling what the government – the largest law firm in the world[6] – has had months to digest in just a few short weeks.  To that end, despite the government's promise that discovery would be substantially completed by early September, the government has doubled the amount of discovery it produced – 1.86 terabytes or 6,500 files in 257 folders, largely comprised of scoped data from search warrant returns of electronic devices –*since* September, when roughly only 1.92 terabytes or 8,305 files in 170 folders had been produced (including un-scoped devices).

Of particular note, the government also advised as early as August that defense counsel would be provided access to two discovery platforms which, "will offer search and other analytical functions *commensurate to those available to the government*."[7]  Discovery Status Report at 1 (Aug. 18, 2021) (ECF No. 349).  Similarly, in other Capitol Breach cases, the government has advised the Court that:  "Producing discovery in a meaningful manner and balancing complex legal-investigative and technical difficulties takes time [and that the government] want[s] to ensure that all defendants obtain meaningful access to voluminous information that may contain exculpatory material, and that we do not overproduce or produce in

---

[6] Mission, Office of Attorney Recruitment & Management, United States Department of Justice, https://www.justice.gov/oarm#:~:text=Mission,more%20than%2010%2C000%20attorneys%20nationwid (last visited Feb. 9, 2022) ("The Department of Justice is the world's largest law office, employing more than 10,000 atorneys nationwide.").

[7] In other status reports, the government has described this database as providing, "functionalities including document organization, review, production, and analytics within a single environment."  Discovery Status Report Ex. C at 3, *United States v. Samsel*, No. 21-cr-537-TJK (Nov. 23, 2021) (ECF No. 64)

a disorganized manner." Discovery Status Report at 8, *United States v. Klein*, No. 21-cr-00236-JDB (July 12, 2021) (ECF No. 28); Discovery Status Report Ex. A at 8, *United States v. Samsel*, No. 21-cr-537-TJK (Nov. 23, 2021) (ECF No. 64) (attaching discovery status reports filed in Capitol Breach Cases). The manner and means with which case-specific discovery has been made available to defense counsel in this case does not satisfy the government's promise. We submit that Rule 16 and *Brady*, as well as their progeny, require more. *See United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) ("In the present case, the government did much more than drop several hundred million pages on [the defendant's] doorstep. The open file was electronic and searchable. The government produced a set of 'hot documents' that it thought were important to its case or were potentially relevant to [the defendant's] defense. The government created indices to these and other documents. The government also provided [the defendant] with access to various databases concerning prior [relevant] litigation."). *See also United States v. Blankenship*, No. 14-cr-00244, 2015 U.S. Dist. LEXIS 76287, at *16-17 (S.D.W.V. June 12, 2015) ("Given the constitutional nature of the Government's *Brady* obligation, and the circumstances presented in this case, the Court finds designation, to the extent it can be given, is appropriate. . . . [T]he Court observes that the United States, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*.").

Relevant here, defense counsel and the government continue to negotiate in good faith toward the resolution of these issues in an effort to avoid the need for judicial intervention while advancing this case toward a position of trial readiness. In the meantime, defense counsel and

the government are united in agreement that there is otherwise no tenable way to prepare for trial by April 19.

Dated:  February 18, 2022

Respectfully submitted,

_____/s/ Carmen Hernandez_____
Carmen D. Hernandez (MD Bar No. 03366)
7166 Mink Hollow Road
Highland, MD 20777
240-427-3391 (telephone)
chernan7@aol.com

*Counsel for Defendant Donovan Ray Crowl*

_____/s/ John L. Machado_____
John L. Machado (D.C. Bar No. 449961)
503 D Street, NW, Suite 310
Washington, DC 20001
703-989-0840 (telephone)
johnlmachado@gmail.com

*Counsel for Defendant Sandra Ruth Parker*

_____/s/ Stephen F. Brennwald_____
Stephen F. Brennwald (D.C. Bar No. 398319)
922 Pennsylvania Avenue, SE
Washington, DC 20003
301-928-7727 (telephone)
sfbrennwald@cs.com

*Counsel for Defendant Bennie Alvin Parker*

_____/s/ Peter A. Cooper_____
Peter A. Cooper (D.C. Bar No. 478082)
400 5th Street, NW, Suite 350
Washington, DC 20001
202-400-1431 (telephone)
pcooper@petercooperlaw.com

*Counsel for Defendant Laura Steele*

_____/s/ Stanley E. Woodward, Jr._____
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
Stanley@BrandWoodwardLaw.com

_____/s/ Juli Z. Haller_____
Juli Z. Haller, (D.C. Bar No.466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
202-729-2201 (telephone)
HallerJulia@outlook.com

*Counsel for Defendant Connie Meggs*

_____/s/ Gene Rossi_____
Gene Rossi (VA Bar No. 93136)
Carlton Fields, P.A.
1025 Thomas Jefferson St, NW, Suite 400 W
Washington, DC 20007
202-965-8119 (telephone)
grossi@carltonfields.com

_____/s/ Natalie A. Napierala_____
Natalie A. Napierala (NY Bar No. 2445468)
Carlton Fields, P.A.
405 Lexington Avenue, 36th Floor
New York, NY 10174-0002
212-785-2747 (telephone)
nnapierala@carltonfields.com

_____/s/ Charles M. Greene_____
Charles M. Greene (FL Bar No. 938963)
Law Offices of Charles M. Greene, P.A.
55 East Pine Street
Orlando, FL 32801
407-648-1700 (telephone)
cmg@cmgpa.com

*Counsel for Defendant William Isaacs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) **Criminal No. 1:21-cr-00028-APM** |
| **v.** | ) |
| | ) |
| **CONNIE MEGGS,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**<u>CERTIFICATE OF SERVICE</u>**

On February 18, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

Respectfully submitted,

_/s/ Stanley E. Woodward, Jr._
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Connie Meggs*