# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CROWL, Et al.**<br><br>**ACCUSED** | **Criminal Case No.**<br><br>1:21-cr-00028-APM<br><br>Assigned to the Honorable Amit Mehta, District Court Judge |

### FACTUAL INFORMATION IN RESPONSE TO PROSECUTOR'S IMPROPER
### MOTION for Inquiry Pursuant to D.C. Rule of Professional Conduct 1.8(e)

The prosecutors of the U.S. Attorney's Office have filed a smear mainly of me, the undersigned, Jonathon Moseley, and of other persons who are neither parties nor counsel, thus mis-using the Court and its system.  The USAO's filing is not a classic motion for or against any party, but a public act of intimidation.  Filings in court enjoy only limited immunity.

Having been tangentially and improperly smeared in a public filling, Moseley submits the following factual response to the USAO's **MOTION for Inquiry Pursuant to D.C. Rule of Professional Conduct 1.8(e).**

First, the USAO relies upon an advocacy organization known as <u>BuzzFeed News</u>,[1] at Exhibit 2, to paraphrase the undersigned, Jonathon Moseley as saying:

---

[1]     Although BuzzFeed News did important work in exposing the dishonesty of the U.S. Capitol Police which withheld the existence of six (6) demonstration permits for demonstrations on the U.S. Capitol Grounds for the afternoon of January 6, 2021, until BuzzFeed News forced them in court to come clean and reveal this important, earth-shattering news to the American public.

> **He also said that Defending the Republic doesn't tell him how to argue his case. "They've made it clear it's up to me to decide the things that need to be decided," Moseley said. "Defending the Republic is really doing some useful things with the money they have raised."**

The USAO's filing further depends upon BuzzFeed News' report that

> **Third-party support of litigation is by no means prohibited. Venture capitalist Peter Thiel famously bankrolled the privacy suit by pro wrestler Hulk Hogan that bankrupted Gawker, and today there are investment funds dedicated solely to financing lawsuits in exchange for a share of settlements or verdicts.**

Second, the USAO relies upon a very far, left-wing advocacy publication as <u>Mother Jones</u>, in Exhibit 1, for the proposition that:

> **There is no indication that Defending the Republic dictates the specifics of defenses employed by suspects and attorneys who receive support from the group.**

And:

> **It's not illegal for Powell's organization to pay defendants' legal bills. Moseley said he did not receive instructions from Defending the Republic on how to defend Meggs.**

And:

> **As the government's prosecutions of members of the Oath Keepers — by most measures, the most significant of any to come out of the Jan. 6 insurrection — move toward trial, defense lawyers face a daunting task: overcoming more than 2 terabytes of evidence arrayed against their clients, including countless hours of video footage from within the Capitol itself.**
>
> **Some of those lawyers, it appears, are getting outside help.**

Third, the undersigned Jonathon Moseley has been consistent and transparent that no outside funding source, whether family, friend, or institutional, determines the relationship between an attorney and his or her client or the decisions made by the client exclusively in the interests of the

client and that a source or sources of third-party funding may affect the attorney's representation of the client.

Indeed, the approach followed by Defending the Republic is especially honorable, noble, and to be commended because – nearly identical to the government's own court-appointed attorney or C.J.A. Criminal Justice Act program – the Defendant is left by the agreement with no outstanding remaining bills or debt.  Thus, the client is freed from any concerns of divergent pressures and focus only on what is best for him or her.  Rather than some plans – as good as those may be in their own right – which contribute **_toward_** a defendant's legal bills, Defending the Republic's plan is for their payments for actual legal bills for actual work actually performed to constitute the entirety of any payment owed for an attorney's work.

In this respect, the plan is very similar to the government's own C.J.A. program.

However, many clients, whose lay person understanding may not be as sharpened to the law as jurists, are uncomfortable having the government seeking to throw them in jail also funding their legal defense.  Whether one thinks that is the right attitude or not, it is a widespread worry.  The average person – and this is not limited by any means to any particular people or case – whether logically or illogically doubts that government funded lawyers can be completely free of influence by the same government prosecuting them.  Of course, some of the best attorneys in these cases are court-appointed or public defenders, yet we are talking about the client's perceptions.

Fourth, almost every attorney graduating from law school must take **the Multi-State Professional Responsibility Exam (MPRE)** as part of taking the bar exam after graduation, which is administered by the National Conference of Bar Examiners (NCBE):

> **The Multistate Professional Responsibility Examination (MPRE), developed by NCBE, is a two-hour, 60-question multiple-choice examination that is administered three times**

> **per year. It is required for admission to the bars of all but two US jurisdictions (Wisconsin and Puerto Rico.) (Note that Connecticut and New Jersey accept successful completion of a law school course on professional responsibility in lieu of a passing score on the MPRE.)**

**Multistate Professional Responsibility Examination
Jurisdictions Requiring the MPRE**

**https://www.ncbex.org/exams/mpre/**

Fourth, the NCBE publishes the scope of the content of the NPRE:

> IV.  Conflicts of interest (12–18%)
>   A.   Current client conflicts—multiple clients and
>   joint representation
>   B.   Current client conflicts—lawyer's personal interest or duties
>   Former client conflicts
>   C.   Prospective client conflicts
>   Imputed conflicts
>   F.   Acquiring an interest in litigation
>   G.   Business transactions with clients
>   **H.   Third-party compensation and influence**
>   I.   Lawyers currently or formerly in government service
>   J.   Former judge, arbitrator, mediator, or other third-party neutral.

**https://www.ncbex.org/pdfviewer/?file=%2Fdmsdocument%2F2** *(emphasis added).*

Thus, every attorney with the possible exception (though unlikely) of those seeking admission (only) in Puerto Rico or Wisconsin has actual knowledge of what in D.C. is codified at Rule 1.8(e).  Preparing to take the MPRE, every attorney becomes familiar with the substance of what is in D.C. Rule 1.8(e).

The USAO's motion serves no genuine purpose other than to publicly smear the undersigned and others.  It is unfounded.  And it serves only an improper purpose.

Indeed the Motion recites that the USAO has notified by private (that is, un-filed) letter all

4

attorneys of the requirements of Rule 1.8(e).  Any possible valid purpose was completely fulfilled by the USAO sending private letters, if any reminder could conceivably be necessary.

Fifth, the DoJ sought to investigate or prosecute Sidney Powell and the organization she helped set up for **_NOT_** using the funds raised to fulfill the purposes of Defending the Republic.

Now, the USAO is hopping mad that Defending the Republic **_IS_** using the funds raised for a proper and laudable purpose to benefit criminal defendants, and my own transparency has frustrated their plans to falsely accuse Sidney Powell of **_NOT_** spending the money on criminal defense attorneys.

The DoJ had hoped to falsely torment Sidney Powell for **_NOT_** using funds for such purposes, and they seem to be filled with angst that attorneys are being properly funded as she promised.

The record showing that the DoJ is simultaneously crying that Defending the Republic both **_IS_** but **_ISN'T_** using the funds of the organization to help promote justice in criminal cases demonstrates that the filing is spread upon the public record for an improper purpose.

These are the same actions honorably undertaken for decades by organizations such as the American Civil Liberties Union, National Association for the Advanced of Colored Persons, Innocence Project, Sierra Club, Institute for Justice, American Center for Law & Justice, etc., etc., etc. etc.  The list of generally liberal organizations is too long to even suggest a sampling.

These organizations assist defendants with legal bills which they cannot pay and/or which would push them into insolvency.  This of course would leave them no option but to plead guilty to charges of which they believe they are innocent.   Traditionally, and not limited to any particular case, group of people or time period, public interest law firms are especially involved where actions are not so much in dispute as whether those actions constitute a crime.

Finally, the two advocacy publications relied upon  first concede the complete lack of any

indication of anything improper, but then seek to suggest that attorneys that receive third-party funding might agree.  In fact, the record shows the opposite.  Although those presumed innocent until convicted of a crime should have the conditions of their confinement carefully reviewed, such as under a pandemic emergency at the time, only two attorneys, Brad Geyer and myself, agreed upon a motion addressing the conditions of our clients while in confinement in light of COVID-19.

*The lack of a pattern* is far more conspicuous and telling than any supposed pattern.  Other attorneys allegedly funded by the same foundation declined to follow Brad Geyer's lead (even though much later some courts have struck down some vaccination requirements and controversies remain)

Thus if one is going to strain to find patterns in the absence of any actual evidence of influence, the result would be strongly *against* the USAO's concerns.  Moseley himself noted that his motivation was different from Geyer's.  Thus there is no pattern to be imagined.

Dated: June 28, 2022

RESPECTFULLY SUBMITTED
JONATHON A. MOSELEY,

*/s/ Jonathon Moseley*

Jonathon A. Moseley, Esq.

Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone: (703) 656-1230
**Contact@JonMoseley.com**
**Moseley391@gmail.com**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing

to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S. District Court for the District of Columbia.

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
**jeffrey.nestler@usdoj.gov**

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
**kathryn.rakoczy@usdoj.gov**

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
**justin.sher@usdoj.gov**

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
**troy.edwards@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

**Louis J. Manzo**
DOJ-CRM
1400 New York Ave NW
Washington, DC 20002

202-616-2706
**louis.manzo@usdoj.gov**


**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
**ahmed.baset@usdoj.gov**

_____
Jonathon Moseley, Esq.