**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| v. | ) | **Case No. 1:22-cr-00015-APM** |
| **KELLY MEGGS,** | ) | |
| Defendant. | ) | |
| | ) | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **Criminal No. 1:21-cr-00028-APM** |
| | ) | |
| **CONNIE MEGGS,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT CONNIE AND KELLY MEGGS' JOINT MOTION IN LIMINE</u>**

Defendants Kelly and Connie Meggs, by and through the undersigned counsel, and

pursuant to this court's Pretrial Order, dated May 12, 2022, (ECF 133), hereby file this Motion in

Limine, and Memorandum of Points and Authorities in Support thereof, to bar reference at trial

to the to the protected marital privileged communications, and are privileged communications

that are further prejudicial while not genuinely probative.

I.      **INTRODUCTION AND BACKGROUND**

1.  Defendant, Connie Meggs and Kelly Meggs, come now jointly and move *in limine* to bar the introduction of certain communications in trial, to exclude text messages between Connie and Kelly Meggs, husband and wife, including a message that which first got disclosed by the government in an opposition to another defendant's motion. (*U.S. v. Caldwell*, 21-cr-28-APM, ECF 344, p. 9)  Further, the submission in ECF 344 specifically omitted Connie Meggs' response to the subject message – which explicitly shuts down criminal intent.

2.  Undersigned counsel asserted the marital communications privilege to the government in correspondence by Stanley Woodward to Government counsel, 08/26/21.    In response to counsel's objection, the government first confirmed its intention that 'it may introduce' the subject communications at trial, in response to counsel's assertion of the marital communications privilege:   "We may seek to introduce this communication against your client (and/or Kelly Meggs) at trial, because we do not believe it is privileged, for at least two reasons…"

3.  The first reason the government asserted was based on a belief that "other individuals were on the text message chain…"

4.  The second reason the government cited:  "Second, even if the communication was initially privileged, we believe it falls within an exception to the privilege, namely the crime-fraud exception. See, e.g., *United States v. Ammar*, 714 F.2d 238, 257 (3d Cir. 1983) (relying on the principles of the crime-fraud exception to the attorney-client privilege, holding that communications between spouses pertaining to ongoing or future criminal activity not protected by marital communications privilege)."

5. The subject communication omitted in the public filing Connie Meggs' follow up response in that same communication, which negates intent.   Therefore, the communication not specifically relevant to intent, would instead, only serve to inflame a jury based on the strong language therein, making it highly prejudicial under F.R.E. Rule 403. Excluding Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons.  Further, FRE Rule 404(b) limits the use of Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Further, it is subject to the marital communications privilege also applicable under FRE 501.

6.   The Government submits in its correspondence that the Cellebrite report shows other on the communications. [1]  The government had taken other phones in the family at the time of the arrest of these defendants, and does not argue that said phones reflect receipt of the subject communication between Mr. and Mrs. Meggs.

7. Instead the Cellebrite report attached hereto, (redacted in the public filing), page 38 is the relevant page of the total pages for 10/2/2020 – 12/02/2020 shows only husband and wife were the participants were on the subject date and time, 11/3/2020 between 7:11:42 and 7:55:04, despite the fact that the family had a family group chat/plan.  On the day in question, 11/3/20 the texts are between +………..14 Connie and +……….00 Kelly Dad (owner).

---

[1]Email from the government dated August 30, 2021, "We may seek to introduce this communication against your client (and/or Kelly Meggs) at trial, because we do not believe it is privileged…" in response to the undersigned counsel's raising the marital privilege objection.

## II.   LEGAL ARGUMENT

Kelly and Connie Meggs move in limine to bar this text message protected under the marital communications privilege because the Government has made clear that it may introduce this communication.[2]   This text message was sent outside of the time of the alleged conspiracy, and is therefore, not relevant evidence of intent while highly prejudicial.

### a.   Prejudicial v. Probative Evidence

To be admitted, the prospective evidence must be, "relevant to a material issue, similar in kind *and close in time* to the crime charged, and substantially more probative than prejudicial." *Johnson*, 879 F.2d 331, 334 (8th. Cir. 1989) (Emphasis added)).

When requesting that evidence be entered under 404(b),

> "[t]he Government must provide a clear explanation on the record of the chain of inferences on which it was relying." *United States v. Murray*, 103 F.3d 310 (3d Cir. 1997). **If there is no logical connection to a material issue, without referencing the defendant's predisposition to commit bad acts, then the evidence is impermissible. *Harris*, 938 F.2d 401 (3d. Cir. 1991)**. Furthermore, if the Court subsequently rules that the evidence is admissible, then in its ruling the Court must be able to map out a logical connection between the evidence and its relevance, exclusive of propensity. *Pinney*, 27 V.I. 412, 967 F.2d 912 (3d Cir. 1992). 'Where the evidence is being offered to prove the defendant's state of mind at the time of the crime, the court cannot permit evidence that is too remote and too unconnected to the events surrounding the crime that the Defendant is currently being tried for.

*People of the V.I. v. Carty*, 50 V.I. 34, 43, 2008 V.I. LEXIS 11, *11-12 (citing *United States v. Johnson*, 879 F.2d 331 (8th. Cir. 1989).

---

[2] Email from the government dated August 30, 2021, "We may seek to introduce this communication against your client (and/or Kelly Meggs) at trial, because we do not believe it is privileged…"

**b.  The Marital Privileges**

The spousal testimonial privilege is one of the two marital privileges recognized under the Federal Rules of Evidence.   According to the testimonial privilege, the government is precluded from compelling one spouse to testify against his or her spouse in a criminal case. *United States v. Duran*, 884 F. Supp. 537, 540, (D. D.C. 1995) (*citing Trammel v. United States*, 445 U.S. 40, 49-50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1958)).

The marital communications privilege covers "information privately disclosed between husband and wife in the confidence of the marital relationship." *SEC v. Lavin*, 111 F.3d 921, 925, (D.C. Cir. 1997); (*see also United States v. Brock*, 724 F.3d 817, 820-821, (7th Cir. 2013)(*citing Trammel v. United States*, 445 U.S. 40, 51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980). 'The marital communications privilege can be asserted by either spouse:  The marital communications privilege belongs to both spouses, so either spouse may invoke the privilege to avoid testifying or to prevent the other from testifying about the privileged communication.' *Brock.* at 820-821 (*citing United States v. Lea*, 249 F.3d 632, 641 (7th Cir. 2001)).

The Circuit Court of Appeals in *SEC v. Lavin* applied the marital communications privilege to a civil case*,* and explained how the Supreme Court in *Trammel*, "reaffirmed the significance of the confidential marital communications privilege and its important role in protecting the marital relationship, " "the best solace of human existence.' " *SEC v. Lavin*, 111 F.3d 921, 925 (D.C. Cir. 1997) (*citing Trammel v. United States*, 445 U.S. 40, 51 (*quoting Stein v. Bowman*, 38 U.S. (13 Pet.) 209, 220-23, 10 L. Ed. 129 (1839)); see also 2 JACK B. WEINSTEIN ET AL., WEINSTEIN'S EVIDENCE P 505[04] (1996)) (See *also, Blau v. United States*, 340 U.S. 332, 333, 95 L. Ed. 306, 71 S. Ct. 301 (1951); *Wolfle v. United States*, 291 U.S. 7, 14, 78 L. Ed. 617, 54 S. Ct. 279 (1934)).  The court further explained that,

The confidential marital communications privilege may be asserted against the production of evidence when four prerequisites are met: (1) there must have been a communication, *see Pereira v. United States*, 347 U.S. 1, 6-7, 98 L. Ed. 435, 74 S. Ct. 358 (1954); (2) there must have been a valid marriage at the time of the communication, *United States v. Evans*, 966 F.2d 398, 401 (8th Cir.), *cert. denied*, 506 U.S. 988, 121 L. Ed. 2d 438, 113 S. Ct. 502 (1992); *United States v. Lustig*, 555 F.2d 737, 747 (9th Cir. 1977), *cert. denied*, 434 U.S. 926 (1977) and 434 U.S. 1045 (1978); (3) the communication must have been made in confidence, *see Pereira*, 347 U.S. at 6; *Blau*, 340 U.S. at 333; *Wolfle*, 291 U.S. at 14; and (4) the privilege must not have been waived. *See United States v. Premises Known as 281 Syosset Woodbury Road*, 71 F.3d 1067, 1072 (2d Cir. 1995); *United States v. Figueroa-Paz*, 468 F.2d 1055, 1057 (9th Cir. 1972); *Fraser v. United States*, 145 F.2d 139, 144 (6th Cir. 1944), cert. denied, 324 U.S. 849, 89 L. Ed. 1409, 65 S. Ct. 684 (1945).

*Id.*

In *Brock*, the question before the court turned on the question of "waiver" of the privilege. *See Id*. at 822.   In this case, however, neither Kelly or Connie Meggs had any opportunity to object, "[a] claim of privilege is not defeated by a disclosure which was . . . (2) Made without opportunity to claim the privilege." *Bixler v. Commonwealth*, 204 S.W.3d 616, 631, (Ky. 2006).  Moreover, as the government has argued to counsel, "*United States v. Wilson*, 505 F. Supp. 3d 3 (D. Mass. 2020) (noting there is no need for a filter team or a Kastigar hearing when the government reviewed allegedly privileged emails between defendant and his wife; the marital communication privilege applies only to prevent introduction of such evidence at trial, and neither suppression nor disqualification of government counsel were warranted).

### c.  **"Crime Fraud" Exception is not Applicable**

The government goes further and suggests in its correspondence to counsel that there such an exception to this privilege known as  "the crime-fraud exception." The Court of Appeals for the First Circuit recently rejected the government's argument of a "joint participant" exception on a criminal conspiracy charge, and upheld the marital communications privilege exception under FRE 501.  *Id*. at 24-25.

By the Government's logic, the difficulties involved in prosecuting conspiracies would outweigh the significant countervailing interests that underlie a number of other evidentiary privileges as well, including, for example, the Fifth Amendment privilege against self-incrimination. 6 The Fifth Amendment, of course, is a constitutional right, and not just a matter of common law as is the spousal testimonial privilege. But given that both privileges are deeply rooted in history, the interests that underlie the spousal testimonial privilege are similarly significant.

*United States v. Pineda-Mateo*, 905 F.3d 13, 22-23, (1st Cir. 2018).

While the Sixth Circuit, for example, has recognized a "joint participant" exception to the confidential marital communication privilege, it limited that exception to communications that concern "*joint ongoing or future patently illegal activity*." *U.S. v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985).  And otherwise there is a circuit split in recognizing what is generally referred to as the "joint participant" exception.  And in *United States v. Tejeda*, 2017 U.S. Dist. LEXIS 124851, *12, 2017 DNH 149P, 2017 WL 3396527, *affirmed* by *United States v. Pineda-Mateo*, 905 F.3d 13 (1st Cir. 2018).  The lower court did a survey of the decisions, in 2017, and found that  "more Courts of Appeals have declined to recognize a joint-participant exception than have recognized it.  *Id.* (*citing In re Grand Jury*, 755 F.2d at 1026; Malfitano, 633 F.2d at 279; Ramos-Oseguera, 120 F.3d at 1042.)

As the court therein explained,

Neither the First Circuit Court of Appeals nor the Supreme Court have recognized a joint-participant exception to the adverse spousal testimonial privilege.  In the absence of such binding precedent, the prosecution would have this court follow the Seventh Circuit Court of Appeals in recognizing the exception.  Guerrero, taking the contrary position, contends that the decisions of the Second, Third, and Ninth Circuit Courts of Appeals rejecting such an exception are more persuasive. The court agrees with Guerrero.

'The prosecution's contention that "other courts have recognized that when husband and wife are co-conspirators, acts made in furtherance of [a criminal] conspiracy are outside the testimonial privilege," the Seventh Circuit aside, is unsupported.  … Nor does

recognition of a joint-participant exception to the marital communications privilege, in and of itself, create a similar exception to the adverse spousal testimonial privilege.[3])).

*United States v. Tejeda*, 2017 U.S. Dist. LEXIS 124851, *12, 2017 DNH 149P, 2017 WL 3396527, *affirmed* by *United States v. Pineda-Mateo*, 905 F.3d 13 (1st Cir. 2018).

The case the government cited for the "crime-fraud exception," U*nited States v. Ammar,* 714 F.2d 238, 257 (3d Cir. 1983), in which the Third Circuit in 1983 in addressing a conspiracy drug case set forth admissibility of a statement under the hearsay rules, and the confrontation clause, with the court recognizing that if the statement is not hearsay, then it does not violate the Confrontation clause. *Id*. at 256. At issue were statements "ongoing or future criminal activity involving both spouses" *Id*. at 257 - 258.

And the DC Circuit Court of Appeals has laid out the standards on rhetorical hyperbole,

> The Supreme Court has repeatedly extended First Amendment protection to statements that, in context, do not reasonably state or imply defamatory falsehoods in the requisite sense. In *Greenbelt*, 398 U.S. at 13-15, **the Court concluded that use of the word "blackmail" to describe the plaintiff's hard-nosed negotiating tactics could not reasonably be understood to mean the plaintiff had committed a criminal offense.** In context, "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." Id. at 14. Consequently, "the imposition of liability . . . was constitutionally impermissible" because "as a matter of constitutional law, the word 'blackmail' . . . was not slander when spoken, and not libel when reported in the Greenbelt News Review." *Id*. at 13.

*Farah v. Esquire Magazine*, 736 F.3d 528, 535-536, 407 U.S. App. D.C. 208, 215-216, (D.C. Cir. 2013). The court further explained rhetorical hyperbole,

> Similarly, in *Letter Carriers*, 418 U.S. at 283-87, the Court held that the use of the word "traitor" in a literary definition accompanying a union-published "List of

---

[3] *Cf. In re Grand Jury*, 755 F.2d at 1027 (distinguishing the rationales underlying the marital communications privilege and the adverse spousal testimonial privilege, acknowledging joint-participant exception to the former, and declining to recognize it for the latter); *Malfitano*, 633 F.2d at 279 n.5 (rejecting an analogy between the marital communications privileges and the adverse spousal testimonial privilege, because the latter does not protect the disclosure of communications "but rather the impact of the testimony on the marriage."

Scabs" could not reasonably be understood to accuse the listed individuals of treason, because the word was used "in a loose, figurative sense" and was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members."

And in *Hustler Magazine*, 485 U.S. at 50, the Court held that an ad parody depicting the Rev. Jerry Falwell in an incestuous relationship with his mother could not support an emotional distress claim because the offending speech "could not reasonably have been interpreted as stating actual facts about the public figure involved." So instructed, this court held in *Weyrich*, 235 F.3d at 624-25, that a political magazine's statement that a conservative leader "began to suffer bouts of pessimism and paranoia" following his successful rise to power was not actionable because, in context, the description was merely "rhetorical sophistry, not a verifiably false attribution in fact of a 'debilitating  mental condition'" as the plaintiff had contended.

*Id.*

For context of the subject message string, even assuming a literal reading, and not recognizing the rhetorical hyperbole, they were not made in furtherance or during the course of the alleged conspiracy.

The court can further take judicial notice of the fact that in 2020, counting the votes did not even stop until weeks later, and the possible relevance of January 6th did not become realized until the immediate weeks before January 6th. And as a practical matter, on any Presidential Election Night, many people are highly emotional and make comments that are hyperbolic.  Mrs. Meggs' message left out of the disclosure in ECF 344, includes her response to the subject message shutting it down.  (page 38 of Cellbrite Report produced by the Government attached under seal). Even assuming that the message is literal, rather than Election night political hyperbole, Mrs. Meggs disavows it in the clearest exclamation one can make in a text.   The government further admitted in oral argument at one hearing, "[a]nd so it's correct that we don't have a Signal chat with Mr. Meggs saying, now everybody go storm the Capitol." (ECF 118, p.17).  And that is a

significant deficiency for the predicate of this information as being relevant to the government's case.[4]

The alleged disclosed marital communication messaging is not "ongoing or future criminal activity involving both spouses."  It is outside the alleged conspiracy and is not only subject to the marital communications privilege, but is also more prejudicial than probative.  It is therefore, respectfully requested that pursuant to the Federal Rules of Evidence, 404(b), 403 and 501 addressing privileges in general that the court bar the introduction of this hyperbolic rhetoric between husband and wife on election night.

Dated: July 29, 2022                      Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*/s/  Juli Z. Haller*
Juli Z. Haller, (D.C. Bar No.466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

Counsel for Defendants Connie and Kelly Meggs

---

[4] "[the FBI] found no evidence that the groups had serious plans about what to do if they made it inside."  See Mark Hosenball and Sarah N. Lynch, Exclusive:  F*BI Finds Scant Evidence U.S. Capitol Attack was Coordinated*, Reuters (Aug. 20, 2021). available at https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July <u>29</u>, 2022, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF System, with consequent service on all parties of record.

<u>     /s/ *Juli Haller*                    </u>