IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )    CR No. 21-28
                                 )    Washington, D.C.
      vs.                        )    July 8, 2022
                                 )    11:35 a.m.
CONNIE MEGGS (9),                )
                                 )
          Defendant.             )
_____ )
```

TRANSCRIPT OF STATUS CONFERENCE VIA ZOOM PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          Jeffrey S. Nestler
                            U.S. ATTORNEY'S OFFICE
                            555 Fourth Street NW
                            Washington, D.C. 20530
                            (202) 252-7277
                            Email:
                            jeffrey.nestler@usdoj.gov

For the Defendant:          Stanley Edmund Woodward, Jr.
                            BRAND WOODWARD LAW
                            1808 Park Road NW
                            Washington, D.C. 20010
                            (202) 996-7447
                            Email:
                            stanley@brandwoodwardlaw.com

                            Juli Zsuzsa Haller
                            LAW OFFICES OF JULIA HALLER
                            601 Pennsylvania Avenue, NW
                            Suite 900
                            S. Building
                            Washington, D.C. 20036
                            (202) 352-2615
                            Email: hallerjulia@outlook.com

APPEARANCES CONTINUED:

Court Reporter:                    William P. Zaremba
                                   Registered Merit Reporter
                                   Certified Realtime Reporter
                                   Official Court Reporter
                                   E. Barrett Prettyman CH
                                   333 Constitution Avenue, NW
                                   Washington, D.C. 20001
                                   (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                   P R O C E E D I N G S
 2           COURTROOM DEPUTY:  Good morning, Your Honor.
 3   This is Criminal Case No. 21-28-9, the United States of
 4   America versus Connie Meggs.
 5               Jeffrey Nestler the government.
 6               Stanley Woodward and Julie Haller for the defense.
 7               Andrew Wise as conflicts counsel.
 8               The defendant is appearing telephonically for
 9   these proceedings.
10               THE COURT:  Okay.  Good afternoon, everyone, or
11   good morning, everyone, I should say.
12               Ms. Meggs, you're on the telephone;
13   is that correct?
14               MR. WOODWARD:  Yes, Your Honor, I have her
15   conferenced in with me.
16               THE COURT:  Okay.
17               MR. WOODWARD:  Ms. Meggs, can you hear us?
18               THE COURT:  I can hear you.
19               If I can just ask Ms. Meggs to say something so
20   that she can acknowledge that she's hearing me.
21               THE DEFENDANT:  Can you hear me, Your Honor?
22               THE COURT:  Yes, we can hear you fine.  Thank you,
23   Ms. Meggs.
24               THE DEFENDANT:  You're welcome.
25
```

1          THE COURT:  So I had intended to do this or meant

2     to do this when we were all together last week but it

3     slipped my mind and so I wanted to go through the same

4     process we did with Mr. Meggs with respect to the

5     representation issues that have arisen concerning

6     Mr. Woodward and Ms. Haller representing both Ms. Meggs in

7     what is now the Crowl matter and Mr. Meggs in the Rhodes

8     matter.

9          I appointed, at the government's request,

10    Andy Wise and Mary Lou Soller from the law firm of Miller &

11    Chevalier to consult with the Meggs, as well as counsel and

12    with the government to provide advice concerning potential

13    conflicts and to determine whether Ms. Meggs, if she wished

14    to do so, to waive any potential conflicts to assess whether

15    that -- and in order to ensure me that any such waiver was

16    knowing and voluntary and with full understanding of what

17    the potential conflicts might be.

18         So, Mr. Wise, why don't I just ask you to sort of

19    summarize what you did and your view of Ms. Meggs' -- as

20    I understand, she's prepared to waive.

21         And, Ms. Meggs, I'll ask you to listen to Mr. Wise

22    while he is describing his efforts, because I want to

23    confirm with you that they are accurate and that you agree

24    with his assessment about your willingness and desire to

25    waive any potential conflicts arising from the fact that

1   your lawyers are also representing your husband.

2           So, Mr. Wise.

3           MR. WISE:  Sure, Your Honor, thank you,

4   Your Honor.

5           So my colleague Mary Lou Soller and I started by

6   talking with Mr. Nestler and then have had thorough

7   discussions with Ms. Haller, Mr. Woodward, and then both

8   with Mr. Meggs and Ms. Meggs separately in the presence of

9   both Ms. Haller and Mr. Woodward.

10          In those discussions, we explored the facts and

11  circumstances that could give rise to conflicts when one set

12  of lawyers simultaneously represents two defendants in

13  separate cases arising out of the same set of facts.

14          We focused on Ms. Haller's and Mr. Woodward's

15  proposed simultaneous representation of both Ms. Meggs and

16  Mr. Meggs in related criminal cases, but we also discussed

17  with both Mr. Meggs and Ms. Meggs Ms. Haller's proposed

18  representation of both of them in related civil proceedings.

19          We advised Mr. and Ms. Meggs separately of the

20  potential conflicts that we believe exist in this situation.

21  Those conversations built off of previous conversations and

22  discussions that we had had in December of last year with

23  both Mr. Meggs and Ms. Meggs regarding Ms. Haller's

24  simultaneous representation of Ms. Meggs in this matter and

25  Mr. Meggs in civil litigation arising out of the same set of

1    events.

2          We invited both Mr. and Ms. Meggs and their

3    counsel to raise any questions about our advice.  And

4    separately both Mr. Meggs and Ms. Meggs indicated that they

5    understood the advice, did not believe their interests were

6    adverse, and were willing to waive any conflicts that arose

7    from the joint representation of them by Ms. Haller and

8    Mr. Woodward.

9          We followed up those conversations by providing

10   Mr. and Ms. Meggs our advice in writing and asked both of

11   them to confirm their understanding of that advice, which

12   each of them has done, and we are, therefore, satisfied that

13   both Mr. Meggs and Ms. Meggs understand the actual and

14   potential conflicts that exist and are satisfied that they

15   are waiving those conflicts knowingly and voluntarily.

16         THE COURT:  Mr. Wise, thank you for that summary.

17         Before I turn to Ms. Meggs, let me just ask

18   Mr. Woodward or Ms. Haller whether either of them want to

19   add anything to the record?

20         MR. WOODWARD:  Nothing further from us.

21   Your Honor.  Mr. Wise's summary was very thorough.

22         THE COURT:  Okay.

23         Ms. Meggs, let me just confirm that you did listen

24   to and were able to hear everything that Mr. Wise just said?

25         THE DEFENDANT:  Yes, Your Honor.  He explained it

1    very well.

2              THE COURT:  Okay.

3              And do you agree that he consulted with you and

4    advised you, along with his colleague, Ms. Soller, about the

5    potential conflicts that might arise from your counsel's

6    representation of your husband in a different criminal case,

7    although one arising from the same events, as well as

8    Ms. Haller's representation of both of you in the civil

9    case?

10             THE DEFENDANT:  Yes, Your Honor, he did.

11             THE COURT:  And, Ms. Meggs, are you satisfied that

12   you have received the information you believe you should

13   have received about potential conflicts from Mr. Wise?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And are you prepared then, knowing

16   those conflicts, ma'am, to waive any conflicts and proceed

17   with both Mr. Woodward and Ms. Haller representing both you

18   and your husband in these criminal proceedings?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Mr. Nestler, is there anything else

21   you would like me to inquire of either Mr. Wise or

22   Ms. Meggs?

23             MR. NESTLER:  No, Your Honor.

24             THE COURT:  All right.  Well, I think that takes

25   care of that.

1          So, Mr. Wise, thank you again for all the efforts.

2    Please also extend my deep gratitude to Ms. Soller.  You

3    know, this case has presented a fair number of tricky

4    ethical issues, and, you know, having the both of you help

5    out has been terrific, and I'm really grateful.

6          MR. WISE:  Our pleasure, Your Honor.

7          THE COURT:  Okay.  Thank you.

8          MR. WISE:  All right.

9          THE COURT:  Hang on, everybody.  I'm just going to

10   go off camera for one minute; I'll be right back with you.

11          (Pause)

12          THE COURT:  Okay.  While we're all together,

13   I wanted to just revisit the issue about the attorneys fees

14   and the third-party payment of attorneys' fees.  I have

15   received Ms. Haller's engagement letter; I've reviewed that

16   letter.  I did not, and maybe -- Mr. Woodward, you did not

17   enter -- provide a separate engagement letter, correct?

18          MR. WOODWARD:  I apologize, Your Honor.  That

19   slipped my mind.  I'll send it to you now.

20          THE COURT:  All right.

21          MR. WOODWARD:  You won't seem surprised that the

22   language is the same as in Mr. Meggs' engagement letter.

23          THE COURT:  Mr. Nestler, what would you -- where

24   does the government -- I don't know if we ever really talked

25   about this, but specifically what is the government

1   requesting in terms of an inquiry of the defendant to

2   satisfy the government that the requisite disclosures have

3   been made and the potential conflicts or issues that might

4   arise from a third-party payee?

5           MR. NESTLER:  Sure.

6           So it's similar to the conflicts inquiry, as far

7   as we would see it, which is to make sure that the

8   defendants whose attorneys are implicated with receiving

9   fees from the same third-party payor, but that those

10  defendants are aware of that fact and the potential conflict

11  that could arise from that, and that those attorneys are

12  knowingly and intelligently waiving any potential conflict

13  that would arise from that.

14          And so we believe, after Your Honor has reviewed

15  the third-party-payor agreements, which obviously we have

16  not, but assuming that they just say this third-party payor

17  is intending to finance the attorneys, that the defendants

18  themselves are aware of that fact and that this payor is

19  also paying for other defendants' attorneys in the same or

20  related cases.

21          And so similar to, I guess, the advice that

22  Mr. Wise and Ms. Soller provided to these defendants, there

23  is a potential for a conflict that could be waived, so long

24  as these defendants were informed of that fact.

25          That's sort of the top line.  I suppose if there's

1    anything in the fee arrangement that Your Honor sees, that

2    would provide additional basis for a conflict.

3           But there's a universe in which the fee

4    arrangement says something along the lines of, this

5    organization has to review the litigation strategy or has

6    to, like, be in line with it or okay with it on a monthly

7    basis and has the potential to hold back future funds.  If

8    they're not satisfied with one thing or another, that could

9    provide its own conflict in terms of what the -- sort of a

10   mixed duty of loyalty from the attorney.  So I don't

11   understand that to be the case, I just -- I don't know, but

12   I believe the first one I indicated is something that we'd

13   want to have addressed.

14          THE COURT:  And specifically, Mr. Nestler, in

15   terms of the actual potential for conflicts, what do you

16   foresee those to be and that ought to be communicated to

17   each of the clients?

18          MR. NESTLER:  It would generally be that there is

19   a potential that their attorney would not continue being

20   their attorney or would not take certain actions that might

21   be in their interest, because of a perceived desire to align

22   with other defendants and other defendants' attorneys who

23   are being paid by the same organization.

24          And so we can provide the Court with some language

25   if we're looking to have a future colloquy with these

1    defendants about this so we can think about what actual

2    language it would be.

3            But I believe it's similar to what Mr. Wise just

4    said is that the conflict could potentially arise that --

5    it's similar to an attorney representing multiple

6    individuals related to the same matter, it's just one layer

7    further removed.

8            THE COURT:  So, you know, look --

9            MS. HALLER:  If I may?  I'm sorry.

10           THE COURT:  That's okay, Ms. Haller.  I'll turn to

11   you in a moment.

12           But, you know, I would prefer to avoid having to

13   ask conflicts counsel to run the traps on this.  I've used

14   their good offices and resources quite a bit.

15           And clearly, the joint-representation issue poses

16   very apparent and very real conflicts, which is not to

17   suggest that the joint-payment situation does not or the

18   shared payment arrangement does not.

19           But I would prefer to avoid having to bring

20   conflicts counsel into this if we could agree on some

21   colloquy, as I think we did -- you had submitted something

22   when we had the earlier issue involving Mr. Meggs and the

23   civil case, that I could conduct with individual clients and

24   to satisfy the government that any potential conflicts are

25   being voluntarily waived.

 1          MR. NESTLER:  That's fine.  We'll happily

 2  submit -- and, in fact, I'm happy to work with the counsel

 3  who are implicated and come up with language, if we can,

 4  that we all agree on.

 5          They'll have a better factual predicate for how

 6  this works than I would, because I'm not party to it,

 7  obviously.

 8          THE COURT:  Right.

 9          MR. NESTLER:  But we're happy to do that.

10          THE COURT:  Okay.

11          All right.  Well, that sounds good.

12          So I guess what I would say is that we need not

13  then do an inquiry or conduct an inquiry of Ms. Meggs today;

14  we'll save that until the government provides its suggested

15  colloquy.

16          I will say, though, one thing, I did review

17  Ms. Haller's engagement letter.  And, actually, before I

18  raise the issue, Ms. Haller, you wanted to say something, so

19  let me allow you to be heard before I make my comment.

20          MR. HALLER:  Thank you, Your Honor.

21          I was just going to point out that, being that

22  Mr. Nestler hasn't yet seen the representation agreements,

23  I think the fact that we comply or at least I certified that

24  I comply with Rule 1.8(e) and maintaining confidential

25  communications, and that, as Your Honor is aware --

1    Your Honor has seen the letter.

2            So I was just going to say, I'm not sure that if

3    you're complying with 1.8(e) on confidential strategy

4    questions and anything else that's privileged, then --

5    sorry -- then I'm not sure how -- if there's another step

6    that's needed, but I leave that to Your Honor.

7            THE COURT:  Yeah, look, it's a fair point,

8    Ms. Haller, in the sense that Rule 1.8 sort of specifies

9    sort of three conditions, if you will, for a lawyer to be

10   able to accept payment from a third party.

11           I think the question here, while related, is maybe

12   a little different in the sense that my interest, I think

13   the government's interest here, is to ensure that we don't,

14   in the future, if it comes to it, have any issues raised

15   about potential conflicts that could be raised in any

16   post-conviction proceedings or on appeal and to try and

17   button that down sooner rather than later.  And so that may

18   involve a little bit more of an in-depth inquiry than simply

19   the three conditions that are set out in Rule 1.8.

20           MR. NESTLER:  Right.

21           And to be clear, Judge, as to what we're

22   ferreting, we take all the defense attorneys at their word

23   that they have complied with Rule 1.8(e).  It's the client's

24   knowledge of the potential conflict that the same payor is

25   paying for multiple defendants' fees in the same related

```
 1    cases that poses a more acute issue.

 2              THE COURT:  Right.

 3              It's not dissimilar than the joint -- with a

 4    joint-representation issue, in the sense that you have

 5    obligations as counsel to inform your client as to potential

 6    conflicts.

 7              But, you know, I think the Court has an

 8    independent obligation to make inquiries in that situation.

 9    And while this -- the 1.8(e) situation, I don't think, has

10    come up in any case law, I think it probably just makes

11    sense to do that out of an abundance of caution to ensure

12    that we don't have any issues arise in the future.

13              So I'll wait for the government to provide a

14    sample and then we can conduct the inquiry at a later date.

15              The only thing I wanted to comment on with respect

16    to the fee arrangement -- fee agreement that I received of

17    Ms. Haller -- and I don't know whether we need to have

18    Mr. Nestler on for this purpose or not, given that they have

19    not yet seen it, there was an element of it that I wanted to

20    raise with you.

21              MS. HALLER:  Your Honor, I'm fine with that, with

22    Mr. Nestler being aware of it -- well, to the extent that

23    it's privileged, but we're on a public communication at this

24    point, so I don't know if this is because it's a public

25    line.
```

```
1              THE COURT:  Yeah.
2              Look, I mean, we can if you want, I think that
3    given that the agreement is confidential, go into an
4    in-camera session, disconnect the public line, that's a fair
5    point that we can do that.  I think the question is whether
6    you're comfortable having Mr. Nestler present for that or
7    whether you think the contents of that agreement are such
8    that any discussion about it could potentially be an issue.
9              MR. HALLER:  Well, being that it's confidential,
10   I'd like to keep issues in it confidential for the client.
11   To the extent that there's, you know, maybe a question I can
12   answer, I don't know what --
13             THE COURT:  All right.  Well, let's do this.
14   Let's go ahead and we'll go into a non-public session now.
15   Let's put Mr. Nestler in a breakout room for a moment.
16   I can then talk to Ms. Haller about what it is that I wanted
17   to talk to her about.  And if she's comfortable with me then
18   having Mr. Nestler come back, we can then have him do that,
19   okay?
20             (Ex parte, sealed)
21   ██████████████████████     ██████████████████████████████
22   ████████████████████████████████████████████████████
23       ████████████████     ████████████
24       ███████████████████████████████████████████████████████
25   █████████████████████████████████████████
```









1

2

3

4          (Open court)

5          COURTROOM DEPUTY:  Your Honor, we are now

6   reconnected with the public line.

7          THE COURT:  Okay.

8          All right, Counsel.  So with that, is there

9   anything else we need to take up this afternoon?

10          MR. NESTLER:  Not from the government's

11   perspective, Your Honor.

12          MR. WOODWARD:  Nor from the defendant's

13   perspective.

14          THE COURT:  All right.  Terrific.  Thank you,

15   everyone.  I'll see everybody soon.

16          (Proceedings concluded at 12:00 p.m.)

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

       Please note:  This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.



Date:__August 5, 2022_____    _____

                     William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [4]**  3/2 15/21 19/9 20/5
**MR. HALLER: [3]**  12/20 15/9 16/20
**MR. NESTLER: [8]**  7/23 9/5 10/18 12/1 12/9 13/20 19/25 20/10
**MR. WISE: [3]**  5/3 8/6 8/8
**MR. WOODWARD: [6]**  3/14 3/17 6/20 8/18 8/21 20/12
**MS. HALLER: [10]**  11/9 14/21 16/12 17/2 17/8 17/12 18/1 18/17 18/20 19/6
**THE COURT: [40]**
**THE DEFENDANT: [6]**  3/21 3/24 6/25 7/10 7/14 7/19

## 1

**1.8 [6]**  12/24 13/3 13/8 13/19 13/23 14/9
**11:35 [1]**  1/6
**12:00 [1]**  20/16
**1808 [1]**  1/18
**19 [1]**  21/6

## 2

**20001 [1]**  2/5
**20010 [1]**  1/18
**20036 [1]**  1/23
**202 [4]**  1/15 1/19 1/24 2/5
**2022 [2]**  1/5 21/10
**20530 [1]**  1/14
**21-28 [1]**  1/4
**21-28-9 [1]**  3/3
**252-7277 [1]**  1/15
**2615 [1]**  1/24
**28 [1]**  1/4

## 3

**3249 [1]**  2/5
**333 [1]**  2/4
**352-2615 [1]**  1/24
**354-3249 [1]**  2/5

## 5

**555 [1]**  1/14

## 6

**601 [1]**  1/22

## 7

**7277 [1]**  1/15
**7447 [1]**  1/19

## 9

**900 [1]**  1/22
**996-7447 [1]**  1/19

## A

**a.m [1]**  1/6
**able [2]**  6/24 13/10

7/13 8/13 8/25 11/1 11/1 13/15 15/8 15/16 15/17
**above [1]**  21/4
**above-titled [1]**  21/4
**abundance [1]**  14/11
**accept [1]**  13/10
**accurate [1]**  4/23
**acknowledge [1]**  3/20
**actions [1]**  10/20
**actual [2]**  6/13 10/15 11/1
**actually [1]**  12/17
**acute [1]**  14/1
**add [1]**  6/19
**additional [1]**  10/2
**addressed [1]**  10/13
**adverse [1]**  6/6
**advice [6]**  4/12 6/3 6/5 6/10 6/11 9/21
**advised [2]**  5/19 7/4
**after [1]**  9/14
**afternoon [2]**  3/10 20/9
**again [1]**  8/1
**agree [4]**  4/23 7/3 11/20 12/4
**agreement [3]**  14/16 15/3 15/7
**agreements [2]**  9/15 12/22
**ahead [1]**  15/14
**aided [1]**  2/7
**align [1]**  10/21
**all [12]**  4/2 7/24 8/1 8/8 8/12 8/20 12/4 12/11 13/22 15/13 20/8 20/14
**All right [1]**  8/8
**allow [1]**  12/19
**along [2]**  7/4 10/4
**also [4]**  5/1 5/16 8/2 9/19
**although [1]**  7/7
**AMERICA [2]**  1/3 3/4
**AMIT [1]**  1/10
**Andrew [1]**  3/7
**Andy [1]**  4/10
**Andy Wise [1]**  4/10
**another [2]**  10/8 13/5
**answer [1]**  15/12
**any [13]**  4/14 4/15 4/25 6/3 6/6 7/16 9/12 11/24 13/14 13/15 14/10 14/12 15/8
**anything [5]**  6/19 7/20 10/1 13/4 20/9
**apologize [1]**  8/18
**apparent [1]**  11/16
**appeal [1]**  13/16
**APPEARANCES [2]**  1/12 2/1
**appearing [1]**  3/8
**appointed [1]**  4/9
**are [17]**  4/23 5/1 6/12 6/14 6/15 7/11 7/15 9/8 9/10 9/11 9/18 10/23 11/24 12/3 13/19 15/7 20/5

## B

**back [3]**  8/10 10/7 15/18
**Barrett [1]**  2/4
**basis [2]**  10/2 10/7
**be [15]**  4/17 8/10 9/23 10/6 10/11 10/16 10/16 10/18 10/21 11/2 12/19 13/9 13/15 13/21 15/8
**because [4]**  4/22 10/21 12/6 14/24
**been [2]**  8/5 9/3
**before [1]**  1/10 6/17 12/17 12/19
**being [6]**  10/19 10/23 11/25 12/21 14/22 15/9
**believe [6]**  5/20 6/5 7/12 9/14 10/12 11/3
**better [1]**  12/5
**bit [2]**  11/14 13/18
**both [15]**  4/6 5/7 5/9 5/15 5/17 5/18 5/23 6/2 6/4 6/10 6/13 7/8 7/17 7/17 8/4
**BRAND [1]**  1/17
**brandwoodwardlaw.com [1]**  1/20
**breakout [1]**  15/15
**bring [1]**  11/19
**Building [1]**  1/23
**built [1]**  5/21
**button [1]**  13/17

## C

**camera [2]**  8/10 15/4
**can [15]**  3/17 3/18 3/19 3/20 3/21 3/22 10/24

9/13 11/4 14/12
**arisen [1]**  4/5
**arising [4]**  4/25 5/13 5/25 7/7
**arose [1]**  6/6
**arrangement [4]**  10/1 10/4 11/18 14/16
**as [15]**  3/7 4/11 4/11 4/19 7/7 7/7 8/22 9/6 9/7 9/24 11/21 12/25 13/21 14/5 14/5
**ask [5]**  3/19 4/18 4/21 6/17 11/13
**asked [1]**  6/10
**assess [1]**  4/14
**assessment [1]**  4/24
**assuming [1]**  9/16
**attorney [4]**  10/10 10/19 10/20 11/5
**ATTORNEY'S [1]**  1/13
**attorneys [7]**  8/13 9/8 9/11 9/17 9/19 10/22 13/22
**attorneys' [1]**  8/14
**August [1]**  21/10
**Avenue [2]**  1/22 2/4
**avoid [2]**  11/12 11/19
**aware [4]**  5/20 9/18 12/25 14/22

**D**

duty [1]  10/10

**E**

each [2]  6/12 10/17
earlier [1]  11/22
Edmund [1]  1/17
efforts [2]  4/22 8/1
either [2]  6/18 7/21
element [1]  14/19
else [3]  7/20 13/4 20/9
Email [3]  1/15 1/19
1/24
engagement [4]  8/15
8/17 8/22 12/17
ensure [3]  4/15 13/13
14/11
enter [1]  8/17
ethical [1]  8/4
events [2]  6/1 7/7
ever [1]  8/24
everybody [2]  8/9
20/15
everyone [3]  3/10 3/11
20/15
everything [1]  6/24
Ex [1]  15/20
exist [2]  5/20 6/14
explained [1]  6/25
explored [1]  5/10
extend [1]  8/2
extent [2]  14/22 15/11

**F**

fact [6]  4/25 9/10 9/18
9/24 12/2 12/23
facts [2]  5/10 5/13
factual [1]  12/5
fair [3]  8/3 13/7 15/4
far [1]  9/6
fee [4]  10/1 10/3 14/16
14/16
fees [4]  8/13 8/14 9/9
13/25
ferreting [1]  13/22
finance [1]  9/17
fine [3]  3/22 12/1 14/21
firm [1]  4/10
first [1]  10/12
focused [1]  5/14
followed [1]  6/9
foregoing [1]  21/3
foresee [1]  10/16
Fourth [1]  1/14
full [1]  4/16
funds [2]  10/7
further [2]  6/20 11/7
future [4]  10/7 10/25
13/14 14/12

**G**

generally [1]  10/18
give [1]  5/11
given [2]  14/18 15/3
go [5]  4/3 8/10 15/3
15/14 15/14
go ahead [1]  15/14
going [3]  8/9 12/21

good [5]  3/2 3/10 3/11
11/14 12/11
good morning [1]  3/11
government [9]  1/13
3/5 4/12 8/24 8/25 9/2
11/24 12/14 14/13
government's [3]  4/9
13/13 20/10
grateful [1]  8/5
gratitude [1]  8/2
guess [2]  9/21 12/12

**H**

had [6]  4/1 5/6 5/22
5/22 11/21 11/22
Haller [14]  1/21 1/21
3/6 4/6 5/7 5/9 6/7 6/18
7/17 11/10 12/18 13/8
14/17 15/16
Haller's [6]  5/14 5/17
5/23 7/8 8/15 12/17
hallerjulia [1]  1/24
Hang [1]  8/9
happily [1]  12/1
happy [2]  12/2 12/9
has [10]  6/12 8/3 8/5
9/14 10/5 10/5 10/7
13/1 14/7 14/9
hasn't [1]  12/22
have [18]  3/14 4/5 5/6
7/12 7/13 8/14 9/2 9/15
10/13 10/25 12/5 13/14
13/23 14/4 14/12 14/17
14/18 15/18
having [5]  8/4 11/12
11/19 15/6 15/18
he [4]  4/22 6/25 7/3
7/10
He explained [1]  6/25
hear [5]  3/17 3/18 3/21
3/22 6/24
heard [1]  12/19
hearing [2]  3/20 21/5
help [1]  8/4
her [2]  3/14 15/17
here [2]  13/11 13/13
him [1]  15/18
his [3]  4/22 4/24 7/4
hold [1]  10/7
Honor [22]
HONORABLE [1]  1/10
how [2]  12/5 13/5
husband [3]  5/1 7/6
7/18

**I**

I apologize [1]  8/18
I believe [2]  10/12 11/3
I can [2]  15/11 15/16
I did [1]  12/16
I don't [1]  14/9
I have [2]  3/14 8/14
I just [2]  4/18 10/11
I mean [1]  15/2
I should [1]  13/1
I think [9]  7/24 11/21
12/23 13/11 13/12 14/7

I understand [1]  4/20
I want [1]  4/22
I wanted [2]  4/3 8/13
I was [2]  12/21 13/2
I will [1]  12/16
I'd [1]  15/10
I'll [6]  4/21 8/10 8/19
11/10 14/13 20/15
I'm [8]  8/5 8/9 11/9
12/2 12/6 13/2 13/5
14/21
I'm not [1]  12/6
I'm not sure [1]  13/2
I'm sorry [1]  11/9
I've [2]  8/15 11/13
implicated [2]  9/8 12/3
independent [1]  14/8
indicated [2]  6/4 10/12
individual [1]  11/23
individuals [1]  11/6
inform [1]  14/5
information [1]  7/12
informed [1]  9/24
inquire [1]  7/21
inquiries [1]  14/8
inquiry [6]  9/1 9/6
12/13 12/13 13/18
14/14
intelligently [1]  9/12
intended [1]  4/1
intending [1]  9/17
interest [3]  10/21
13/12 13/13
interests [1]  6/5
invited [1]  6/2
involve [1]  13/18
involving [1]  11/22
is [28]
is that correct [1]  3/13
issue [7]  8/13 11/15
11/22 12/18 14/1 14/4
15/8
issues [6]  4/5 8/4 9/3
13/14 14/12 15/10
it [18]  4/2 6/25 8/19 9/7
10/6 10/6 10/18 11/2
12/6 13/14 13/14 14/10
14/19 14/19 14/22 15/8
15/10 15/16
it would be [1]  11/2
it's [10]  9/6 11/3 11/5
11/6 13/7 13/23 14/3
14/23 14/24 15/9
its [2]  10/9 12/14

**J**

Jeffrey [2]  1/13 3/5
jeffrey.nestler [1]  1/16
joint [5]  6/7 11/15
11/17 14/3 14/4
joint-payment [1]
11/17
joint-representation
[2]  11/15 14/4
Jr [1]  1/17
JUDGE [1]  1/10 13/21
Juli [1]  1/21

Julie [1]  3/6
July [1]  1/5
just [14]  3/19 4/18 6/17
6/23 6/24 8/9 8/13 9/16
10/11 11/3 11/6 12/21
13/2 14/10

**K**

keep [1]  15/10
know [11]  8/3 8/4 8/24
10/11 11/8 11/12 14/7
14/17 14/24 15/11 15/12
knowing [2]  4/16 7/15
knowingly [2]  6/15
9/12
knowledge [1]  13/24

**L**

language [4]  8/22
10/24 11/2 12/3
last [2]  4/2 5/22
later [2]  13/17 14/14
law [4]  1/17 1/21 4/10
14/10
lawyer [1]  13/9
lawyers [2]  5/1 5/12
layer [1]  11/6
least [1]  12/23
leave [1]  13/6
let [3]  6/17 6/23 12/19
let's [3]  15/13 15/14
15/15
letter [6]  8/15 8/16 8/17
8/22 12/17 13/1
like [3]  7/21 10/6 15/10
limitations [1]  21/7
line [5]  9/25 10/6 14/25
15/4 20/6
lines [1]  10/4
listen [2]  4/21 6/23
litigation [2]  5/25 10/5
little [2]  13/12 13/18
long [1]  9/23
look [3]  11/8 13/7 15/2
looking [1]  10/25
Lou [2]  4/10 5/5
loyalty [1]  10/10

**M**

ma'am [1]  7/16
made [1]  9/3
maintaining [1]  12/24
make [3]  9/7 12/19
14/8
makes [1]  14/10
Mary [2]  4/10 5/5
matter [5]  4/7 4/8 5/24
11/6 21/4
may [2]  11/9 13/17
maybe [3]  8/16 13/11
15/11
me [9]  3/15 3/20 3/21
4/15 6/17 6/23 7/21
12/19 15/17
mean [1]  15/2
meant [1]  4/1

mechanical [1]  2/7
MEGGS [35]
Meggs' [2]  4/19 8/22
MEHTA [1]  1/10
Merit [1]  2/2
might [4]  4/17 7/5 9/3
10/20
Miller [1]  4/10
mind [2]  4/3 8/19
minute [1]  8/10
mixed [1]  10/10
moment [2]  11/11
15/15
monthly [1]  10/6
more [2]  13/18 14/1
morning [2]  3/2 3/11
Mr. [43]
Mr. and [3]  5/19 6/2
6/10
Mr. Meggs [10]  4/4 4/7
5/8 5/16 5/17 5/23 5/25
6/4 6/13 11/22
Mr. Meggs' [1]  8/22
Mr. Nestler [10]  5/6
7/20 8/23 10/14 12/22
14/18 14/22 15/6 15/15
15/18
Mr. Wise [4]  4/18 4/21
5/2 6/16 6/24 7/13 7/21
8/1 9/22 11/3
Mr. Wise's [1]  6/21
Mr. Woodward [7]  4/6
5/7 5/9 6/8 6/18 7/17
8/16
Mr. Woodward's [1]
5/14
Ms. [43]
Ms. Haller [11]  4/6 5/7
5/9 6/7 6/18 7/17 11/10
12/18 13/8 14/17 15/16
Ms. Haller's [6]  5/14
5/17 5/23 7/8 8/15
12/17
Ms. Meggs [22]
Ms. Meggs' [1]  4/19
Ms. Soller [3]  7/4 8/2
9/22
multiple [2]  11/5 13/25
my [6]  4/3 5/5 8/2 8/19
12/19 13/12

**N**

need [3]  12/12 14/17
20/9
needed [1]  13/6
Nestler [12]  1/13 3/5
5/6 7/20 8/23 10/14
12/22 14/18 14/22 15/6
15/15 15/18
No [3]  1/4 3/3 7/23
non [1]  15/14
non-public [1]  15/14
not [18]  6/5 8/16 8/16
9/16 10/8 10/19 10/20
11/16 11/17 11/18 12/6
12/12 13/2 13/5 14/3
14/18 14/19 20/10
note [1]  21/5

**N**

Nothing [1] 6/20
now [4] 4/7 8/19 15/14 20/5
number [1] 8/3
NW [4] 1/14 1/18 1/22 2/4

**O**

obligation [1] 14/8
obligations [1] 14/5
obviously [2] 9/15 12/7
occurred [1] 21/5
off [2] 5/21 8/10
OFFICE [1] 1/13
offices [1] 1/21 11/14
Official [1] 2/3
okay [11] 3/10 3/16 6/22 7/2 8/7 8/12 10/6 11/10 12/10 15/19 20/7
one [7] 5/11 7/7 8/10 10/8 10/12 11/6 12/16
only [1] 14/15
Open [1] 20/4
order [1] 4/15
organization [2] 10/5 10/23
other [1] 9/19 10/22 10/22
ought [1] 10/16
our [3] 6/3 6/10 8/6
out [6] 5/13 5/25 8/5 12/21 13/19 14/11
outlook.com [1] 1/24
own [1] 10/9

**P**

p.m [1] 20/16
paid [1] 10/23
pandemic [1] 21/6
Park [1] 1/18
parte [1] 15/20
party [7] 8/14 9/4 9/9 9/15 9/16 12/6 13/10
Pause [1] 8/11
payee [1] 9/4
paying [2] 9/19 13/25
payment [4] 8/14 11/17 11/18 13/10
payor [5] 9/9 9/15 9/16 9/18 13/24
Pennsylvania [1] 1/22
perceived [1] 10/21
perspective [2] 20/11 20/13
Plaintiff [1] 1/4
Please [2] 8/2 21/5
pleasure [1] 8/6
point [2] 12/21 13/7 14/24 15/5
poses [2] 11/15 14/1
post [1] 13/16
post-conviction [1] 13/16
potential [19] 4/12 4/14 4/17 4/25 5/20 6/14 7/5 7/13 9/3 9/10 9/12 9/23 10/7 10/15

predicate [1] 12/5
prefer [2] 11/12 11/19
prepared [2] 4/20 7/15
presence [1] 5/8
present [1] 15/6
presented [1] 8/3
Prettyman [1] 2/4
previous [1] 5/21
privileged [2] 13/4 14/23
probably [1] 14/10
proceed [1] 7/16
proceedings [8] 1/9 2/7 3/9 5/18 7/18 13/16 20/16 21/4
process [1] 4/4
produced [1] 2/7
proposed [2] 5/15 5/17
provide [6] 4/12 8/17 10/2 10/9 10/24 14/13
provided [1] 9/22
provides [1] 12/14
providing [1] 6/9
public [5] 14/23 14/24 15/4 15/14 20/6
purpose [1] 14/18
put [1] 15/15

**Q**

question [3] 13/11 15/5 15/11
questions [2] 6/3 13/4
quite [1] 11/14

**R**

raise [3] 6/3 12/18 14/20
raised [2] 13/14 13/15
rather [1] 13/17
real [1] 11/16
really [2] 8/5 8/24
Realtime [1] 2/3
received [4] 7/12 7/13 8/15 14/16
receiving [1] 9/8
reconnected [1] 20/6
record [2] 6/19 21/3
recorded [1] 2/7
regarding [1] 5/23
Registered [1] 2/3
related [6] 5/16 5/18 9/20 11/6 13/11 13/25
remotely [1] 21/7
removed [1] 11/7
Reporter [4] 2/2 2/2 2/3 2/3
reporting [1] 21/7
representation [10] 4/5 5/15 5/18 5/24 6/7 7/6 7/8 11/15 12/22 14/4
representing [4] 4/6 5/1 7/17 11/5
represents [1] 5/12

request [2] 4/5
requesting [1] 9/1
requisite [1] 12/14
resources [1] 11/14
respect [2] 4/4 14/15
review [2] 10/5 12/16
reviewed [2] 8/15 9/14
revisit [1] 8/13
Rhodes [1] 4/7
right [11] 7/24 8/8 8/10 8/20 12/8 12/11 13/20 14/2 15/13 20/8 20/14
rise [1] 15/1
RMR [2] 21/2 21/11
Road [1] 1/18
room [1] 15/15
Rule [4] 12/24 13/8 13/19 13/23
run [1] 11/13

**S**

said [2] 6/24 11/4
same [11] 4/3 5/13 5/25 7/7 8/22 9/9 9/19 10/23 11/6 13/24 13/25
sample [1] 14/4
satisfied [4] 6/12 6/14 7/11 10/8
satisfy [2] 9/2 11/24
save [1] 12/14
say [7] 3/11 3/19 9/16 12/12 12/16 12/18 13/2
says [1] 10/4
sealed [1] 15/20
see [2] 9/7 20/15
seem [1] 8/21
seen [3] 12/22 13/1 14/19
sees [1] 10/1
send [1] 8/19
sense [1] 13/8 13/12 14/4 14/11
separate [2] 5/13 8/17
separately [3] 5/8 5/19 6/4
session [2] 15/4 15/14
set [4] 5/11 5/13 5/25 13/19
shared [1] 11/18
she [2] 3/20 4/13
she's [2] 3/20 4/20 15/17
should [2] 3/11 7/12
similar [4] 9/6 9/21 11/3 11/5
simply [1] 13/18
simultaneous [2] 5/15 5/24
simultaneously [1] 5/12
situation [4] 5/20 11/17 14/8 14/9
slipped [1] 4/3 8/19
so [23]
So it's [1] 9/6
Soller [5] 4/10 5/5 7/4 8/2 9/22
some [2] 10/24 11/20

something [3] 4/3 18
soon [1] 20/15
sooner [1] 13/17
sorry [2] 11/9 13/5
sort [5] 4/18 9/25 10/9 13/8 13/9
sounds [1] 12/11
specifically [2] 8/25 10/14
specifies [1] 13/8
stanley [3] 1/17 1/20 3/6
started [1] 5/5
STATES [4] 1/1 1/3 1/10 3/3
STATUS [1] 1/9
stenography [1] 2/7
step [1] 13/5
strategy [2] 10/5 13/3
Street [1] 1/14
subject [1] 21/6
submit [1] 12/2
submitted [1] 11/21
such [2] 4/15 15/7
suggest [1] 11/17
suggested [1] 12/14
Suite [1] 1/22
summarize [1] 4/19
summary [2] 6/16 6/21
suppose [1] 9/25
sure [5] 5/3 9/5 9/7 13/2 13/5
surprised [1] 8/21

**T**

take [3] 10/20 13/22 20/9
takes [1] 7/24
talk [2] 15/16 15/17
talked [1] 7/24
talking [1] 5/6
technological [1] 21/7
telephone [1] 3/12
telephonically [1] 3/8
terms [3] 9/1 10/9 10/15
terrific [2] 8/5 20/14
than [4] 12/6 13/17 13/18 14/3
thank [7] 3/22 5/3 6/16 8/1 8/7 12/20 20/14
thank you [5] 3/22 6/16 8/1 8/7 12/20
that [104]
that's [6] 9/25 11/10 12/1 13/4 13/6 15/4
their [8] 6/2 6/5 6/11 10/19 10/20 10/21 11/14 13/22
them [5] 5/18 6/7 6/11 6/12 6/18
themselves [1] 9/18
then [10] 5/6 5/7 7/15 12/13 13/4 13/5 14/14 15/16 15/17 15/18
there [5] 7/20 9/22 14/18 14/19 20/8

there's [4] 9/25 10/3 13/5 15/11
therefore [2] 6/12 21/6
these [5] 3/9 7/18 9/22 9/24 10/25
they [6] 4/23 6/4 6/14 9/16 13/23 14/18
They'll [1] 12/5
they're [1] 10/8
thing [3] 10/8 12/16 14/15
think [12] 7/24 11/1 11/21 12/23 13/11 13/12 14/7 14/9 14/10 15/2 15/5 15/7
third [6] 8/14 9/4 9/9 9/15 9/16 13/10
third-party [4] 8/14 9/4 9/9 9/16
third-party-payor [1] 9/15
this [21] 3/3 4/1 4/2 5/20 5/24 8/3 8/25 9/16 9/18 10/4 11/1 11/13 11/20 12/6 14/9 14/18 14/23 14/24 15/13 20/9 21/5
This is [1] 3/3
thorough [2] 5/6 6/21
those [8] 5/10 5/21 6/9 6/15 7/16 9/9 9/11 10/16
though [1] 12/16
three [2] 13/9 13/19
through [1] 4/3
titled [1] 21/4
today [1] 12/13
together [2] 4/2 8/12
top [1] 9/25
transcript [1] 1/9 2/7 21/3
transcription [1] 2/7
traps [1] 11/13
tricky [1] 8/3
try [1] 13/16
turn [2] 6/17 11/10
two [1] 5/12

**U**

U.S [1] 1/13
understand [3] 4/20 6/13 10/11
understanding [2] 4/16 6/11
understood [1] 6/5
UNITED [4] 1/1 1/3 1/10 3/3
United States of [1] 3/3
universe [1] 10/3
until [1] 12/14
up [4] 6/9 12/3 14/10 20/9
us [2] 3/17 6/20
usdoj.gov [1] 1/16
used [1] 11/13

**V**

very **[4]** 6/21 7/1 11/16 11/16
VIA **[1]** 1/9
view **[1]** 4/19
voluntarily **[2]** 6/15 11/25
voluntary **[1]** 4/16
vs **[1]** 1/5

**W**

wait **[1]** 14/13
waive **[5]** 4/14 4/20 4/25 6/6 7/16
waived **[2]** 9/23 11/25
waiver **[1]** 4/15
waiving **[2]** 6/15 9/12
want **[4]** 4/22 6/18 10/13 15/2
wanted **[6]** 4/3 8/13 12/18 14/15 14/19 15/16
was **[5]** 4/15 6/21 12/21 13/2 14/19
Washington **[5]** 1/5 1/14 1/18 1/23 2/5
we **[35]**
we believe **[1]** 5/20
we'd **[1]** 10/12
we'll **[3]** 12/1 12/14 15/14
we're **[5]** 8/12 10/25 12/9 13/21 14/23
week **[1]** 4/2
welcome **[1]** 3/24
well **[8]** 4/11 7/1 7/7 7/24 12/11 14/22 15/9 15/13
were **[5]** 4/2 6/5 6/6 6/24 9/24
what **[13]** 4/7 4/16 4/19 8/23 8/25 10/9 10/15 11/1 11/3 12/12 13/21 15/12 15/16
when **[3]** 4/2 5/11 11/22
where **[1]** 8/23
whether **[6]** 4/13 4/14 6/18 14/17 15/5 15/7
which **[5]** 6/11 9/7 9/15 10/3 11/16
while **[4]** 4/22 8/12 13/11 14/9
who **[2]** 10/22 12/3
whose **[1]** 9/8
why **[1]** 4/18
will **[2]** 12/16 13/9
William **[3]** 2/2 21/2 21/11
willing **[1]** 6/6
willingness **[1]** 4/24
Wise **[12]** 3/7 4/10 4/18 4/21 5/2 6/16 6/24 7/13 7/21 8/1 9/22 11/3
Wise's **[1]** 6/21
wished **[1]** 4/13
won't **[1]** 8/21
Woodward **[10]** 1/17 6/18 7/17 8/16
Woodward's **[1]** 5/14
word **[1]** 13/22
work **[1]** 12/2
works **[1]** 12/6
would **[13]** 7/21 8/23 9/7 9/13 10/2 10/18 10/19 10/20 11/2 11/12 11/19 12/6 12/12
writing **[1]** 6/10

**Y**

Yeah **[2]** 13/7 15/1
year **[1]** 5/22
Yes **[6]** 3/14 3/22 6/25 7/10 7/14 7/19
yet **[2]** 12/22 14/19
you **[50]**
you're **[4]** 3/12 3/24 13/3 15/6
your **[30]**
Your Honor **[22]**

**Z**

Zaremba **[3]** 2/2 21/2 21/11
ZOOM **[1]** 1/9
Zsuzsa **[1]** 1/21