**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 21-cr-28 (APM)** |
| | : | |
| **v.** | : | |
| | : | |
| **DONOVAN CROWL,** | : | |
| **SANDRA PARKER,** | : | |
| **BENNIE PARKER,** | : | |
| **LAURA STEELE,** | : | |
| **CONNIE MEGGS,** | : | |
| **WILLIAM ISAACS,** | : | |
| **JAMES BEEKS, and** | : | |
| **MICHAEL GREENE,** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S NOTICE PURSUANT
## TO FEDERAL RULE OF EVIDENCE 404(b)

The defendants stand charged with participating in a plot to stop, hinder, or delay the Certification of the Electoral College vote on January 6, 2021, and to use force, intimidation, and violence to prevent members of Congress from discharging their duties that day. Their trial is scheduled to begin on February 1, 2023. The government respectfully submits this notice of its intent to introduce certain evidence at trial including: (1) evidence that certain co-conspirators traveled to Washington, D.C., in November 2020 and, like for January 6, 2021, organized an armed Quick Reaction Force ("QRF"); (2) evidence that co-conspirator Jeremy Brown transported explosives to the Washington, D.C., area on January 6, 2021; and (3) evidence that certain co-conspirators including, Defendants Michael Greene and Donovan Crowl and co-conspirators Stewart Rhodes, Kelly Meggs, and Jessica Watkins, discussed and prepared for violent conflict with government actors after January 6 and before January 20, demonstrating the co-conspirators' plan and intent throughout the time period of the charged conspiracy.

All of this evidence constitutes intrinsic evidence of the conspiracy and falls outside Rule 404(b)'s notice requirement.   That said, this evidence is also admissible pursuant to Rule 404(b). While the primary purposes for the admission of the other crimes evidence are noted above, the proffered other crimes evidence will serve multiple, appropriate purposes. *United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (*en banc*) ("Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation, and the like."). Regardless, the government provides notice of its intent to introduce the evidence below so that the defense and the Court may consider the relevance and admissibility of this evidence well in advance of trial.

## I.      Procedural History

The indictment charges all defendants with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (Count One); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two); conspiracy to use force, intimidation, or threats to prevent officers of the United States from discharging their duties, in violation of 18 U.S.C. § 372 (Count Three); and entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Five). ECF No. 684. Some defendants were additionally charged with  destruction  of  government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361 and 2 (Count Four); civil disorder and aiding and abetting, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Counts Six and Seven); and tampering with documents or other objects and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(1) and 2 (Counts Eight and Nine). *Id.*

## II.     Factual Background

The defendants are charged with participating a conspiracy to stop, hinder, or delay the Certification of the Electoral College vote on January 6, 2021, and to use force, intimidation, and

violence to prevent members of Congress from discharging their duties that day. That conspiracy was led by Rhodes, the founder and head of a group called the "Oath Keepers" who was found guilty of seditious conspiracy and related charges in the recent trial of *U.S. v. Rhodes*, et al., 22-cr-15-APM. The evidence at that trial, some of which the government will introduce at this trial as well, showed that within days of the 2020 U.S. Presidential Election, Rhodes began disseminating messages to Oath Keepers members and affiliates delegitimizing the results of the election and encouraging members and affiliates of his organization to forcibly oppose the lawful transfer of presidential power from former President Trump to President Biden. Then, in December 2020, Rhodes focused his co-conspirators, including these defendants, on the Certification proceeding set to take place on January 6, 2021. The defendants in this case are charged with joining Rhodes to corruptly obstruct the Certification of the electoral college vote—ultimately by storming the Capitol building and grounds on January 6.

### III.   Legal Standard

#### a.   Intrinsic Evidence is Admissible

"Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache."); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("The Rule does not bar 'evidence . . . of an act that is part of the charged offense,'"); *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) ("No [404(b)] notice is required, however, for evidence of an 'intrinsic act,' that is, an act that is 'part of the crime charged.'"); *United States v. Gartmon*, 146

F.3d 1015, 1020 (D.C. Cir. 1998) (evidence that defendant charged with fraud had threatened a co-conspirator not "other crime evidence" but instead "inextricably intertwined" with charged offense); *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("Moreover, 'Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'"); Fed. R. Evid. 404(b), Advisory Comm. Note regarding 1991 Amendment ("The amendment does not extend to evidence of acts which are 'intrinsic' to the charged offense."); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[U]ncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime," thus taking such acts outside the scope of Rule 404(b).)[1]

This well-established principle applies with particular force in cases, such as this, that involve a conspiracy: "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Moreover, where evidence of the defendants' acts is either inextricably intertwined with the charged conspiracy, or provides evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis even if those acts fall outside the period during which the

---

[1] It should be noted that *Bowie,* 232 F.3d 923 seems to have questioned the admission of intrinsic other crimes evidence without a 404(b) analysis, but one panel of the Circuit cannot overrule standing precedent. *See, e.g., United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("panels of this court [] are obligated to follow controlling circuit precedent until either [the Court of Appeals] sitting *en banc*, or the Supreme Court, overrule it."); *see also United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003) ("Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic distinction . . . we have nonetheless recognized that at least in a narrow range of circumstances ... evidence can be 'intrinsic to' the charged crime"). In any event, the *Bowie* court recognized that its position does not affect the admissibility of the evidence: the "only consequences of labeling evidence 'intrinsic' are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon the defense counsel's request." *Id.* at 927.

indictment alleges the conspiracy existed. *United States v. Diaz*, 878 F.2d 608, 614-16 & n.2 (2nd Cir. 1989) (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior).

      b.   Other Acts Evidence is Admissible under Rule 404(b)

Evidence subject to Federal Rule of Evidence 404(b) is nevertheless still admissible. The Federal Rules of Evidence simply prohibit "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). As the Court of Appeals has reiterated, however:

> Although stated as a restriction, the Rule is actually one of "inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). Evidence is only prohibited if it is offered for the impermissible inference that a defendant is of bad character resulting in bad conduct. *See, e.g., United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990). Thus evidence of a defendant's prior bad acts is admissible for purposes *unrelated* to the defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); *see also Miller*, 895 F.2d at 1436 ("[U]nder Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.").

*United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (emphasis in original). The Rule's list of permissible uses of bad-act evidence is illustrative, not exhaustive. 2 J. Weinstein and M. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 404.22[6][a] (2017); *see, e.g., Bowie*, 232 F.3d at 933 (approving admission of other crimes evidence to corroborate other evidence). The D.C.

Circuit has held that Rule 404(b) is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660-61 (D.C. Cir. 2003) (quotations and citations omitted); *see also United States v. Loza*, 764 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing *Mahdi*, 598 F.3d at 891); *United States v. Pettiford*, 517 F.3d 584, 588 (D.C. Cir. 2008); *Miller*, 895 F.2d at 1436.

Analysis of the admissibility of bad acts evidence involves two steps. First, the Court determines "whether the evidence is probative of some issue other than character." *Cassell*, 292 F.3d at 792. Evidence of other crimes is admissible if it "is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime or act." *Id.* (citing *Bowie*, 232 F.3d at 926-27); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988). "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *United States v. Moore*, 732 F.2d 983, 987 n.30 (D.C. Cir. 1984). Second, the court must decide if the evidence should be excluded under Rule 403 of the Federal Rules of Evidence, *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994), which precludes evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly cumulative evidence," Fed. R. Evid. 403. "[T]he test under 403 is 'unfair prejudice,' not just any prejudice or harm to the defense." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 61-62 (D.D.C. 2012).

Notably, other crimes evidence is often relevant to several issues. In its *en banc* decision in *Crowder*, the Court of Appeals stated the following:

> Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like. Proof of an individual's intent to

> commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago.   In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits.   Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact B motive B  from which it could in turn infer the element of possession.   Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

*Crowder*, 141 F.3d at 1208 (citation omitted). Thus, in *Crowder*, other crimes evidence was admitted to show the defendant's knowledge, intent, and motive.  And these admissible other acts may occur before or after the charged offense. *See, e.g., United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990) (admitting other crimes that occurred three months after charged offense); *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991) ("By it its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts"); *United States v. Johnson*, 934 F.2d 936, 940 (8th Cir. 1991) ("the mere subsequency of an act . . . does not on that ground alone make it incompetent").

## IV.    The Government's Proffered Evidence is Admissible

The government will seek to introduce the following categories of evidence at trial that are not explicitly cited in the indictment and that involve allegations of the use, training to use, and plotting to use weapons, force, and violence. All of the proffered evidence is admissible as intrinsic evidence that "arose out of the same transaction or series of transactions as the charged offense." *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996); *see also United States v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 40 (D.D.C. 2015) ("[W]here the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence.")*.*  All of this evidence is also relevant to issues other than the co-conspirators' character and, therefore, admissible pursuant to Rule 404(b).

7

a.   Co-conspirators' Travel to Washington, D.C., on November 14, 2020

The government anticipates introducing evidence regarding the defendants' pre-January 6 coordination and travel to Washington, D.C.  Specifically, the government anticipates introducing evidence that on November 14, 2020, Defendants Greene and Crowl, along with Rhodes, Meggs, Watkins, and other co-conspirators, were present in and around Washington, D.C., for an operation centered around an event referred to as the "Million MAGA March," and that certain defendants and others helped organize an armed QRF for the event.

Ahead of the event, Rhodes called upon Oath Keepers to participate and travel to Washington, D.C. On November 10, 2020, Rhodes published an article on the Oath Keepers' website entitled, "Call to Action! March on DC, Stop the Steal, Defend the President, & Defeat the Deep State." He began the article by stating: "Oath Keepers and patriots, duty calls!  We must all march on Washington D.C. and directly back-up and defend President Trump as he fights against the ongoing coup that is attempting to steal the election." Rhodes then provided information about ways people could participate in the event, including by serving as part of the QRF.

Defendants Greene, Crowl, and Connie Meggs, as well as Rhodes, Kelly Meggs, Watkins, and others, attended the November 14 event, and some, including Greene and Crowl, visited Thomas Caldwell's property in Virginia, which served as a rally point. Watkins and others likewise helped organize an armed QRF for the event.  On November 9, 2020, Watkins messaged another individual, "If it gets bad, they QRF to us with weapons for us.  We can have mace, tasers, or night sticks.  QRF staged, armed, with our weapons, outside the city." Watkins recruited Crowl for the event, writing to him on the night of November 9, "Be ready to march on D.C. on Saturday. Driving out Friday night." Crowl responded, I'm on board Capt'n. I'll make some eggs.

N nightsticks. Let's party!!!" Watkins continued, "This is what we've been waiting for. It's not just an Oath keeper mission. Patriots everywhere. 3 Percenters too[.] Let's make history motherfucker." The government's evidence demonstrates that Watkins and Crowl then traveled to D.C. for the operation and contributed firearms to the QRF that staged in a vehicle in Arlington, Virginia, and was prepared to drive the firearms to the co-conspirators in Washington, D.C., if called upon.

The defendants' previous travels to Washington D.C., are directly relevant to their actions on January 6. Co-conspirators believed November 14 to be a significant opportunity to forcibly oppose the lawful transfer of presidential power. *See* November 9, 2020 Watkins text massage ("We march on D.C. on Saturday. This is the real for real shit. No weapons allowed, be prepared to fight hand to hand. Want to come? It's now or never time."). Ultimately, the co-conspirators did not activate their plans on that date; however, this first operation in support of the goals of the conspiracy, which occurred during the alleged time period of the conspiracy, is relevant evidence of the conduct charged in the indictment. As this conduct is "intrinsic" to the charged offense, it is not subject to the notice requirements under Rule 404(b). *Bowie*, 232 F.3d at 929.

Indeed, in the related *Rhodes* case, this Court ruled that evidence of the QRF's role in the November operation was "clearly intrinsic to the charged offenses." 22-cr-15 8/30/22 Tr. at 10. As the Court found, the use of the QRF in that operation was "consistent with what happened January" and therefore relevant and admissible.

Even if this evidence were not intrinsic, it would be admissible as evidence of the co-conspirators' intent, preparation, plan, knowledge, and association. Fed. R. Evid. 404(b). The November 14 event sheds light on the relationships among a number of the co-conspirators and

was a precursor to the co-conspirators' actions on January 6, where they followed many of the same protocols they described in the lead up to the November event.  *See, e.g.*, *United States v. Gaviria*, 116 F.3d 1498, 1532-33 (D.C. Cir. 1997) (other crimes evidence properly admitted where "'it shows or tends to show the existence of a relationship between the defendants, and whether it shows or tends to show the defendants had a common scheme or plan which included the offenses for which they are now charged.'"); *United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996) (evidence of the criminal activity preceding the charged conspiracy helped explain the subsequent formation of the larger conspiracy).  While co-conspirators contributed weapons to a QRF that supported this November operation, the co-conspirators are not alleged to have engaged in any direct acts of violence on November 14.  Such evidence is not unfairly prejudicial and therefore subject to exclusion pursuant to Rule 403.  As such, at trial, the government intends to introduce evidence of the co-conspirators' travel to Washington, D.C., in November 2020.

  b. <u>Jeremy Brown's Transportation and Possession of Explosives</u>

  Jeremy Brown is currently an unindicted co-conspirator in the Oath Keeper conspiracy.[2] In November 2020, Brown led the Florida chapter of the Oath Keepers in a training on "unconventional warfare."  During this period, he messaged extensively with Florida-based co-conspirators on Signal.[3]  For example, on November 9, he messaged, "As I am sure you all

---

[2] Brown is charged in the District of Columbia with 18 U.S.C. §§ 1752(a)(1) and (2), relating to his actions on January 6, 2020, Case No. 21-CR-609, and also charged in the Middle District of Florida with various offenses including 26 U.S.C. § 5861(d) and 18 U.S.C. § 842(j), relating to his illegal possession of firearms and explosives, Case No. 21-CR-348.  In Florida, Brown is also charged with 18 U.S.C. § 793(e), relating to his illegal retention of classified documents.  The government does not seek to introduce evidence related to those documents in this case.

[3] Brown participated in the "OKFL Hangout" and "OK FL DC OP Jan 6."

have plenty of ammo and guns.  What I suspect we are not deep on are burner phones and phone cards.  These will be needed in great numbers as part of a clandestine comms plan."

In preparation for January 6, 2021, Brown continued to participate on Signal chats with Rhodes and various Florida Oath Keepers, including Kelly Meggs, Kenneth Harrelson and Caleb Berry, regarding transportation to Washington, D.C. on January 6:

> We have a RV an Van going.   Plenty of Gun Ports left to fill.   We can pick you up… If you can, come to my house anytime Saturday.   You can stop by and drop stuff off, or stay the night.   This way we can load plan, route plan, and conduct PCIs (Pre Combat Inspections).   I would LIKE to depart by 0645 on Sunday morning, Jan 3rd.  Push through to the NC linkup on the 3rd, RON (Rest Over Night) there, then push to DC on the 4th.   This will give us the 4th/5th to set up, conduct route recons, CTR (Close Target Reconnaissance) and any link ups needed with DC elements.

On January 4, 2021, Brown supplied a helmet to Florida Oath Keeper Berry, who met Brown at Brown's house, and then caravanned with Berry, Kelly and Connie Meggs, Harrelson and other Florida Oath Keepers first to North Carolina, where they rendezvoused with additional Oath Keepers, and then to the Washington, D.C. area.

The same day, January 4, Kelly Meggs informed Jessica Watkins and other co-conspirators via Signal that Brown would be assisting in the Washington, D.C. operation, writing, "Jessica you have 4 working the detail from Ohio. Padimaster you have 6 confirmed for detail from SC. If correct that gives us 27 man team I like it!! Perfect mi with 4-5 medics in the group. I'll keep working on overall contact between Natl/congress team and stop the steal team for scheduling etc... Kenneth Harrelson runs the ground team. Whippit and Jeremy Brown will assist him especially when we are moving!" Upon arrival in the Washington, D.C. area, Brown deposited various weapons at the Comfort Inn hotel in Virginia that served as the staging

area for the QRF. During this same period, Kelly Meggs informed Berry that Brown possessed explosives in his Recreational Vehicle ("RV").[4]

The government subsequently seized explosives from Brown. On September 30, 2021, pursuant to an authorized search warrant, the government seized two illegal short barrel firearms from Brown's residence and military ordinance grenades from Brown's RV—the same RV that Brown used to travel to Washington, D.C. on January 6.

The government plans to introduce Brown's statements and the evidence collected from the search of Brown's property. The government maintains that Brown's statements, firearms, and explosives are intrinsic to the co-conspirators' charged offense as contemporaneous, direct evidence of the manner and means used by the co-conspirators to advance the goals of the charged conspiracy. Indeed, possessing, transporting, and storing various weapons around the Washington, D.C., area was part and parcel to organizing and executing the QRF for January 6, which, as alleged in the indictment, co- conspirators relied on as part of the plan to oppose the lawful transfer of power by force. *See Lorenzana-Corden*, 141 F. Supp. 3d at 43 ("Defendants' alleged possession and use of weapons, as well as their reliance on heavily-armed security, are part and parcel to the alleged drug trafficking operation and constitute contemporaneous conduct designed to facilitate and advance the goals of the charged conspiracy."). *Cf. United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 158 (D.D.C. 2013); *United States v. Edwards*, 889 F. Supp. 2d 47, 49-51 (D.D.C. 2012) (listing cases finding evidence admissible in conspiracy cases applying the "*Bowie* formulation"); *United States v. Davis*, 402 F. Supp. 2d 252, 262 (D.D.C. 2005).

---

[4] The government is unaware whether Brown deposited the explosives at the Comfort Inn in Virginia or retained them in his RV, which he parked in College Park, Maryland.

In *Rhodes,* this Court did not find this evidence to be intrinsic to the charged offenses but did find it nonetheless admissible under Rule 404(b). 22-cr-15 8/30/22 Tr. at 32-35. As this Court held, Brown's transportation of firearms and explosives to the Washington, D.C., area on January 6 and, particularly, Kelly and Connie Meggs' and others' knowledge about the firearms and explosives, was directly relevant to the co-conspirators' intent, preparation, knowledge, and planning. That some of the charged co-conspirators messaged with Brown about "gun ports" to fill, "Pre Combat Inspections," and "Close Target Reconnaissance," as it related to their travel to Washington, D.C., for January 6, paired with their learning that Brown in fact brought firearms and explosives, is all directly relevant to these co- conspirators' knowing participation in plans to engage in violence in advance of the charged conspiracy.

   c.  <u>Co-conspirators' Preparations for Violence After January 6</u>

Following January 6, Rhodes directed his followers to continue to oppose the incoming Biden Administration by force, and co-conspirators, to include Defendants Greene and Crowl, continued to engage with this plot.

On the evening of January 6, Rhodes messaged those on the "DC OP: Jan 6 21" chat, "Thousands of ticked off patriots spontaneously marched on the Capitol and sent the message that they will not live under an illegitimate ChiCom puppet regime. You can't handle that, hit the door. You ain't seen nothing yet." Co-conspirators echoed Rhodes, with Kelly Meggs stating, "We aren't quitting !! We are reloading !!" and QRF leader Edward Vallejo threatening, "We'll be back at 6 am TO DO IT AGAIN."

On or about January 11, Rhodes told co-conspirators, "Get ready to rock and roll, shit's about to go down," and that those who were fit enough to move, shoot, and communicate should be organized and prepared to do so. Rhodes also summoned co-conspirators like Greene and

Joshua James to his side in Texas. James collected what he referred to as "all available firearms," and traveled to Texas where he stayed with Rhodes and others, in part, to serve as Rhodes' security against law enforcement until February 2021. Greene relieved him in February.

Meanwhile, in mid-January, Crowl discussed with Watkins her organizing of a "bugout plan if the usurper is installed," including hiding out in the Kentucky Mountains in a spot that "gives us the high ground, and makes tunneling out fighting positions great (above water line). Be like the NVA [a reference to the Army of North Vietnam] and network tunnels."

Such co-conspirator statements and actions following January 6, but before January 20, are within the charged timeline and constitute evidence of the charged crime. Accordingly, notice under Rule 404(b) is not required. Were it to fall within 404(b)'s ambit, however, this evidence would be clearly admissible as evidence of the co-conspirators' plan and intent prior to January 6. "Potential juror doubt about whether any of [the] defendants was somehow mistakenly swept up into activities he did not know were part of a criminal conspiracy is powerfully undermined by the evidence of similar criminal teamwork with some of the same people, both before and after the [charged offenses]." *United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015).

**V.      Conclusion**

Accordingly, for the foregoing reasons, the government respectfully requests that the Court permit at trial the introduction of the evidence proffered above, as evidence of the charged offenses or, in the alternative, pursuant to Federal Rule of Evidence 404(b).


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     _____/s/_____
Kathryn L. Rakoczy
Assistant United States Attorney
D.C. Bar No. 994559
Troy A. Edwards, Jr.
Louis Manzo
Jeffrey Nestler
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

_____/s/_____
Alexandra Hughes
Trial Attorney
National Security Division,
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20004