IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 21-cr-28 (APM)** |
| : | |
| **v.** : | |
| : | |
| **DONOVAN CROWL,** : | |
| **SANDRA PARKER,** : | |
| **BENNIE PARKER,** : | |
| **LAURA STEELE,** : | |
| **CONNIE MEGGS,** : | |
| **WILLIAM ISAACS,** : | |
| **JAMES BEEKS, and** : | |
| **MICHAEL GREENE,** : | |
| : | |
| **Defendants.** : | |

### GOVERNMENT'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

The defendants stand charged with participating in a plot to stop, hinder, or delay the Certification of the Electoral College vote on January 6, 2021, and to use force, intimidation, and violence to prevent members of Congress from discharging their duties that day, and then taking actions on January 6 to effectuate the goals of this conspiracy. Their trial is scheduled to begin on February 1, 2023. On December 16, 2022, defendants filed a number of motions *in limine*. The United States respectfully submits this omnibus opposition to those motions. The defendants' motions raise objections to the admissibility of two main types of evidence: (1) the out-of-court statements by these defendants and their co-conspirators; and (2) videos, photographs, and other items of digital evidence that do not depict these defendants. These motions *in limine* are without merit and should be denied. The defendants also raise a number of issues that are either moot or to which the government does not object; the government will address those issues in the third part of this filing. Finally, Defendants Sandra Parker, Bennie Parker, Steele, Isaacs, and Greene adopt

a number of motions *in limine* filed in the related case of *United States v. Elmer Stewart Rhodes*, et al., No. 22-cr-15-APM. ECF No. 782, 783, 793, 796, 798. The government adopts the arguments it made in opposition to those filings in that case. *See, e.g., U.S. v. Rhodes, et al.*, No. 22-cr-15-APM, ECF Nos. 248, 251, 292, 321, 392. The government believes that all exhibits it will seek to introduce at this trial are consistent with the Court's resolution of those earlier motions in the related cases.

I.  **Motions *in Limine* Regarding Out-of-Court Statements**

Defendants Sandra Parker, Bennie Parker, Laura Steele, Connie Meggs, William Isaacs, and Michael Greene move to exclude out-of-court statements made by co-conspirators on chats and in meetings in which these defendants did not personally participate, as well as all statements by North Carolina Oath Keeper members and affiliates. ECF Nos. 780, 784, 793, 794. In the alternative, if any messages from certain group chats or meetings are introduced, these defendants move for the entirety of those chats to be admitted pursuant to Rule 106 of the Federal Rules of Evidence. ECF Nos. 781, 784, 793. All of the out-of-court co-conspirator statements that the government will seek to introduce are admissible under one or more hearsay exceptions, are relevant to establish these defendants' guilt for the offenses charged in this Indictment, and have a probative value that is not outweighed by any prejudice they may cause. *United State v. Sitzmann*, 866 F. Supp. 2d 55, 61-62 (D.D.C. 2012) ("[T]he test under 403 is 'unfair prejudice,' not just any prejudice or harm to the defense"). Other statements are non-hearsay because they are not assertions of fact; rather, they provide directions or encouragement. And still other statements are admissible for their effect on the listener; these statements, for instance, inform these defendants and/or their co-conspirators about information relevant to the goals of their conspiracy. Accordingly, the defendants' motions to exclude such statements should be denied.

### a. Legal Background

A party's own statements are admissible against him or her under Rule 801(d)(2)(A). The out-of-court statements of co-conspirators who are not part of this case are admissible as co-conspirator statements under Rule 801(d)(2)(E), present-sense impressions under Rule 803(1), statements of the co-conspirator's state of mind under Rule 803(3), and/or a statements against interest under Rule 804(b)(3).

Statements are made in furtherance of a conspiracy if they "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *Id.*; *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). "Statements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the Rule's in-furtherance requirement"—even if the listener is not a member of the conspiracy. *United States v. Gupta*, 747 F.3d 111, 125 (2d Cir. 2014). Admissible co-conspirator statements include "those that keep a co-conspirator updated on the status of the business, motivate a co-conspirator's continued participation, or provide background information on key conspiracy members." *United States v. Miller*, 738 F.3d 361, 374 (D.C. Cir. 2013). Indeed, in *Tarantino*, one of the bases for the court's holding was that the statements "helped keep [the listener] current on the status of the business." 846 F.2d at 1412; *see also United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) (updates to others, including descriptions of efforts to avoid detection, were in furtherance of conspiracy).

Other out-of-court statements by co-conspirators will be admissible as present-sense impressions. Rule 803(1) defines a present-sense impression as "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). The exception is grounded in the idea that "statements about an event and made

soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." *See Navarette v. California*, 572 U.S. 393, 400 (2014) (internal quotations omitted). For the Court to admit the proffered statement of the anonymous civilian witness as a present-sense impression, the government must prove three elements: (1) the statement describes or explains an event or condition, (2) which the declarant perceived firsthand, and (3) the statement was made contemporaneously – while the declarant perceived the event or condition or immediately thereafter. Fed. R. Evid. 801(3).

Out-of-court co-conspirator statements may also be admissible to provide context for other statements and to elucidate those co-conspirators' states of mind. *See United States v. Williams*, 358 F.3d 956, 963 (D.C. Cir. 2004) (statement is admissible to "elucidat[e] . . . a listener's state of mind"); *United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003) (statement may be admissible to provide "context" to another statement).

Finally, co-conspirator statements that are clearly against their pecuniary or penal interest are admissible under Rule 804(b)(3) of the Federal Rules of Evidence. "The rationale of the hearsay exception for statements against interest is that people seldom make statements which are damaging to themselves unless satisfied for good reason that they are true." *Williamson v. United States*, 512 U.S. 594, 611 (1994) (citation and internal quotation marks omitted).

    **b. Analysis**

        i. <u>Generally, the out-of-court statements of co-conspirators that the government will seek to introduce at trial were in furtherance of the conspiracy and/or demonstrate the conspiratorial state of mind of those co-conspirators and are therefore admissible against all of these defendants.</u>

The government will provide the defense in advance of the Pretrial Conference its draft list of statements it intends to introduce at this trial. It may be more prudent to address the defendants'

challenges to particular statements, one by one, at the Pretrial Conference currently scheduled for January 18, 2023. Generally speaking, however, to the extent that these statements include out-of-court statements by co-conspirators not charged in this case, these statements break down into four main categories of statements: (a) statements by Stewart Rhodes , Kelly Meggs, Jessica Watkins, and other leaders of this conspiracy setting forth the goals and purposes of the conspiracy, (b) statements involving planning and coordination in furtherance of the goals of the conspiracy, (c) statements made on January 6, 2021, in furtherance of the conspiracy and discussing the progress of the conspirators carrying out their unlawful agreement, and (d) statements made after January 6 that constitute either admissions by co-conspirators of their participation in the conspiracy alleged in the Indictment or statements in furtherance of the conspiracy. Thus, these statements will all be admissible as co-conspirator statements under Rule 801(d)(2)(E), present-sense impressions under Rule 803(1), statements of the co-conspirator's state of mind under Rule 803(3), and/or statements against interest under Rule 804(b)(3).[1]

One of the only categories of statements specifically addressed by the defendants' motions are the portions of the "Stop the Steal J6" Zello chat on which co-conspirator Jessica Watkins made certain statements that this court ruled admissible in the related *Rhodes* trial. ECF Nos. 322, 358. Watkins is alleged to have been a leader of this conspiracy, who coordinated directly with and traveled to the D.C. with Defendants Crowl, Bennie Parker, and Sandra Parker. On January 6, Watkins marched to the Capitol with seven of these defendants and breached the building with six

---

[1] Defendant Isaacs (with Defendant Parker joining) contends that co-conspirator statements should not be admitted "unless the Government shows by a preponderance of the evidence in a *pretrial* written proffer or during a *pretrial* evidentiary hearing that the threshold requirements of Rule 801(d)(2)(E) are met" (ECF No. 782 at 12 (emphasis added)). As this Court is well-aware, however, a district court "can preliminarily admit hearsay statements of co-conspirators, subject to connection through proof of conspiracy later at trial." *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) (citing *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C.Cir.1980)).

of them. She was standing directly next to Defendant Crowl and several other of these defendants as she made some of the comments on the channel while standing on the Capitol steps and, later, in the Rotunda. As such, Watkins' comments on the Zello channel are as relevant to these defendants as they were to the defendants in the related *Rhodes* case. The Court found most of these statements admissible. *See Rhodes, et al.*, No. 22-cr-15-APM, ECF Nos. 322, 358. They are equally admissible here.

Another category of statements singled out by defendants is those by North Carolina Oath Keeper members and affiliates who assisted in planning and coordinating the quick reaction force ("QRF") for January 6. This Court is well familiar with the relevance of the QRF to the conspiracy alleged in this case. Several of these defendants, including Defendants Greene, Crowl, Bennie Parker, Sandra Parker, and Connie Meggs, are alleged to have had knowledge of the QRF and/or made plans to contribute weapons to it. Indeed, the government will introduce at trial a message from Thomas Caldwell to Defendant Crowl in which Caldwell informed Crowl that North Carolina QRF leader Paul Stamey "has a room [in the Comfort Inn that served as a staging area for the QRF] and is bringing someone. He will be the quick reaction force. . . . Paul will have the goodies in case things go bad and we need to get heavy." Accordingly, this Court should deny any motion to exclude evidence of the North Carolinians' role in this conspiracy.

Defendant Sandra Parker likewise moves to preclude the government from introducing her husband's statements against her. In addition to being co-conspirators generally, the evidence will show that Sandra Parker and Bennie Parker met with Jessica Watkins on January 2, in Ohio, for a planning meeting in advance of January 6; then the two traveled together to D.C. with Watkins and Crowl; and on January 6, Sandra Parker breached the building with Watkins, Crowl, and other co-conspirators, while her husband stood outside telling a journalist the attack on the Capitol

showed that many Americans were willing to engage in civil war to stop the election results from becoming final. In other words, the evidence will establish Sandra Parker as a knowing participant in the conspiracy, and for the same reasons that her husband's statements are admissible against the rest of the co-conspirators, they are equally admissible against her.

ii. These statements are not excludable under the First Amendment.

Defendant Crowl moves to exclude any statements he made that are protected by the First Amendment. ECF No. 791. Defendants Bennie Parker, Steele, Greene, and Isaacs join this motion. ECF Nos. 795, 796, 798, 800. The Supreme Court has explicitly held that courts may consider otherwise-protected speech to establish a defendant's motive or intent during the commission of some other unlawful conduct. *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (holding that the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). The cases the defendant cites do nothing to distinguish this holding because he has relied largely on criminal cases where the government sought to punish speech itself, or in other words cases where the words uttered were the actus reus of the offense of conviction. *See Hess v. Indiana*, 414 U.S. 105, 107 ("Indiana's disorderly conduct statute was applied in this case to punish only spoken words"); *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) ("[W]e are here confronted with a statute which, by its own words and as applied, purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others merely to advocate the described type of action").[2] The last case the defendant cites is a civil case, *Meyer*

---

[2] Defendant Crowl also cites to the "clear and present danger" test articulated in *Schenck v. United States*, 249 U.S. 47 (1919). Putting aside that the Court in *Schenck* affirmed the defendant's conviction for distributing leaflets advocating resisting the World War I draft, *id.* at 52-53, the use of this test was abrogated by *Brandenburg*. *See Brandenburg*, 395 U.S. at 449 (overruling *Whitney v. California*, 274 U.S. 357 (1927), which relied on the "clear and present danger" standard).

7

*v. Grant*, 486 U.S. 414, 421 (1988), which struck down a Colorado statute that did not allow proponents of an amendment to the state constitution to use paid petition circulators to reach the requisite number of signatures to get the amendment on the ballot. *Id.* at 417, 421. In other words, none of the cases cited by Defendant Crowl go to the core issue surrounding the use of the defendants' statement in this case: can the government use them to prove motive, intent or an element of the offense? The Supreme Court has answered that with a resounding "yes" in *Mitchell*, and the other cases cited by the defendant do nothing to call *Mitchell's* holding into question on these facts.

      iii.   <u>Defendant Isaacs' statements are admissible to establish his state of mind.</u>

Defendant Isaacs moves to exclude particular statements he made, in text messages sent to his aunt on January 3, 2021, about District of Columbia Mayor Muriel Bowser. ECF No. 782. On January 3, 2021, a day before Isaacs left Florida with his aunt to drive to Washington, D.C., Isaacs sent the following image to this same aunt with whom he traveled:



Isaacs followed the image with messages that, among other things, suggested that "we" should commit violence against Mayor Bowser "upon arrival" in Washington, D.C.

Defendant Isaacs' own statements are all admissible against him under Rule 801(d)(2)(A), as he is an opposing party. The initial image sent by Isaacs is relevant to show his concern for conditions on the ground in Washington, D.C., where he is alleged to have traveled for the January 5-7 time-period. His two references to Mayor Bowser that follow are equally probative. They are not hearsay, both because they are statements of a party opponent and are not being introduced for the truth of the matter. They are relevant, because the hostility shown by Isaacs in response to Mayor Bowser's reported closing of certain business establishments in the District shows his anger towards anyone standing in the way of "patriots" headed to D.C. for the events of January 6. They further show his willingness to resort to violence against politicians who stand in the way of his conspiratorial goals. For someone charged with conspiring to obstruct the Certification on January 6 and using forced, intimidation, or threat to prevent members of Congress from discharging their duties that day, his level of anger at and suggestion of using violence against local politicians perceived as interfering with these objectives are plainly relevant.

The probative value of these statements is not substantially outweighed by the prejudice they may cause, such that they should be excluded under Rule 403. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Isaacs' harsh words in these messages does not pose a risk that the jury will infer bad character and convict him solely on this ground. This is particularly true where the government plans to argue solely from this evidence that it showed Defendant Isaacs' aggression towards any politician who would stand in the way of his and his co-conspirators' goals. Accordingly, the Court should admit the image above along with the three text messages from Defendant Isaacs to his aunt that follow.

> iv. <u>Defendant Bennie Parker's statements are admissible against all defendants.</u>

Defendant Bennie Parker seeks to preclude the government from introducing video of an interview he gave to a reporter on the grounds of the Capitol on January 6, in which he stated that the then-ongoing attack on the Capitol showed how angry many Americans were about the perceived fraud in the election and, "If we need to, it will come to a civil war, and a lot of people are willing to take up their arms." ECF No. 785. That defendant Bennie Parker made this statement while standing in the restricted area of the Capitol grounds, while his wife and co-conspirators were inside the Capitol, attempting to prevent, hinder, and delay the Certification proceeding and use force, intimidation, and violence to drive members of Congress from the building, and while other co-conspirators stood nearby guarding an arsenal of weapons in support of this conspiracy, is plainly relevant. This motion by Defendant Bennie Parker should be denied.

> v. <u>Rule 106 does not require the admission of the entirety of the chats and meetings from which these statements derive.</u>

Should the Court deny defendants' motions and rule co-conspirators' out-of-court statements inadmissible, the defendants move in the alternative for the admission of the entirety of the chats and meetings from which those statements derive, pursuant to Rule 106 of the Federal Rules of Evidence. ECF Nos. 781, 784, 793. Under Rule 106, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — *that in fairness ought to be considered at the same time*." Fed. R. Evid. 106 (emphasis added). Rule 106 does not require that the entirety of a group chat or recording be admitted. Rather, "the provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context." *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986)

(citation omitted). The Court has broad discretion to determine which additional portions of a statement may be admissible under Rule 106. *United States v. Abroms*, 947 F.2d 1241, 1250 (5th Cir. 1991), as amended on denial of reh'g (Dec. 18, 1991) ("In reviewing for an abuse of discretion by the district court concerning Rule 106, we are more than mindful that it also has discretion to conduct the trial in an efficient and orderly manner in the admission or exclusion of evidence.") (citation and internal quotation marks omitted). Here, if there are additional messages or statements that the defense believes should be admitted under Rule 106 to place in proper context the messages and statements the government seeks to introduce, they should propose these statements to the Court during the trial, and the Court can rule on their admissibility in due course.

## II. Motions *in Limine* Regarding Video/Audio/Other Digital Exhibits Not Featuring These Defendants

Defendant Crowl moves to exclude videos, photographs, and digital files that do not depict him. ECF No. 790 at 1-2. Defendants Bennie Parker, Steele, Greene, and Isaacs join this motion. ECF Nos. 795, 796, 798, 800. As with the statements discussed above, the government will provide the defense with its draft audio/video exhibits in advance of the Pretrial Conference. While it may be more straightforward to address the defendants' specific objections at that conference or at trial, the government will note here that it will seek to introduce only a limited number of audio and video exhibits that depict co-conspirators not on trial here to establish the existence of the conspiracy, planning and coordination in furtherance of the conspiracy, and actions of the co-conspirators on January 6. As such, these items of evidence are relevant and probative and should be admitted.

### III.  Motions in Limine That Are Moot or To Which Government Does Not Object

There are several motions *in limine* that the government does not oppose or are moot:

- Defendants Isaacs and Bennie Parker move to preclude the government from using any of the following descriptors to refer to these defendants, their co-conspirators, and the Oath Keepers organization: anti-government, extremist/extremist, insurrection/insurrectionist, militia, mob, organized militia, racism/racist, riot/rioters, and white nationalism/nationist/supremacism/supremacist. ECF Nos. 782, 784. The government does not intend to utilize these words except when quoting directly from these defendants or their co-conspirators' statements, *see e.g.*, Exhibit No. 1.S.656.9260 (12/21/2020 message by Kelly Meggs to OKFL Hangout Signla chat: "We are Militia ! We don't have to play by their rules ! We make the rules WE THE PEOPLE !") and references to the militia of which Donovan Crown and the Parkers were members (which statements are independently relevant evidence, because of other aspects of the statement, that show intent, planning, and coordination among co-conspirators).

- Defendants Isaacs and Bennie Parker also move to prohibit witnesses from invoking the Fifth Amendment privilege in front of the jury. ECF No. 782 at 24. The government does not anticipate that any of its witnesses will do so.

- Defendant Greene seeks to preclude evidence of "extrinsic acts," without citing any specific evidence he seeks to exclude. ECF No. 384 at 5-6. Similarly, Defendant Crowl asks the Court to exclude certain unspecified "inflammatory irrelevant evidence" or "'other crimes' evidence in which the defendant himself had not participated." ECF No. 790 at 2-3. Aside from the evidence cited in its Notice

Pursuant to Rule 404(b), ECF No. 777-2, the government does not anticipate seeking to introduce evidence of acts that are extrinsic to the conspiracy alleged herein.

- Defendant Greene also asks the Court to prohibit witnesses from testifying as to matters outside their personal knowledge. ECF No. 384 at 6-7. The government plans to lay an adequate foundation for all questions posed to its witnesses. Additionally, Defendant Greene moves to preclude the government from possessing weapons, displaying badges, asking leading questions, making side-bar remarks, and making improper objections. ECF No. 784 at 7-8. Undersigned counsel do not plan to engage in any of this conduct at trial (and we are sure defense counsel and the Court will rightly correct us if we inadvertently ask a leading question on direct examination).

- Defendant Crowl moves to compel the government to designate and produce to the defense one-month before the start of trial any images, video and audio recordings, out-of-court statements, transcripts, and summary charts and materials that will be summarized in summary charts that the government may seek to introduce at trial as evidence or use at trial as an aid to the jury. ECF No. 792. Defendants Sandra Parker, Bennie Parker, Steele, Greene, and Isaacs join this motion. ECF Nos. 793, 795, 796, 798, 800. Per the Court's scheduling order, ECF No. 703, the government will provide its draft exhibits to the defense in advance of the January 18 Pretrial Conference, so that the defense will be prepared to lodge any objections at that conference.

**Conclusion**

For the foregoing reasons, the government respectfully requests that the Court deny the defendants' motions *in limine*.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:  /s/
Kathryn L. Rakoczy
Assistant United States Attorney
D.C. Bar No. 994559
Troy A. Edwards, Jr.
Louis Manzo
Jeffrey Nestler
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

/s/
Alexandra Hughes
Trial Attorney
National Security Division,
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20004