IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21-cr-28 (APM) |
| v. | : | |
| DONOVAN CROWL, | : | |
| SANDRA PARKER, | : | |
| BENNIE PARKER, | : | |
| LAURA STEELE, | : | |
| CONNIE MEGGS, | : | |
| WILLIAM ISAACS, | : | |
| JAMES BEEKS, and | : | |
| MICHAEL GREENE, | : | |
| Defendants. | : | |

## GOVERNMENT'S REPLY IN SUPPORT OF NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

The defendants stand charged with participating in a plot to stop, hinder, or delay the Certification of the Electoral College vote on January 6, 2021, and to use force, intimidation, and violence to prevent members of Congress from discharging their duties that day. Their trial is scheduled to begin on February 1, 2023. On December 16, 2022, the government filed notice of its intent to introduce evidence that: (1) certain co-conspirators traveled to Washington, D.C., in November 2020 and, like for January 6, 2021, organized an armed Quick Reaction Force ("QRF"); (2) co-conspirator Jeremy Brown transported certain weapons, including explosives, to the Washington, D.C., area on January 6, 2021; and (3) certain co-conspirators, including Defendants Michael Greene, Donovan Crowl, and Connie Meggs and co-conspirators Elmer Stewart Rhodes III, Kelly Meggs, and Jessica Watkins, discussed and prepared for violent conflict with government actors after January 6 and before January 20, demonstrating the co-conspirators' plan and intent throughout the time period of the charged conspiracy. ECF No. 777.

On December 30, 2022, Defendants William Isaacs and Michael Greene filed oppositions to the government's notice. ECF Nos. 801, 806. Because these categories of evidence are intrinsic to the charged conspiracy and are also admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, [and] absence of mistake or accident," Fed. R. Evid. 404(b), they should be admitted. *See United Sates v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) ("[U]nder Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character.").

    i.    <u>The November 14 Operation</u>

Defendant Isaacs contends that evidence of the November 14 operation is "entirely separate from the charged conspiracy and falls outside of the period alleged in the Indictment." ECF No. 801 at 4. As explained in greater detail in the government's initial notice, the evidence at trial will show that three of the defendants charged in this case—Defendants Greene, Crowl, and Connie Meggs—joined co-conspirators Rhodes, Kelly Meggs, Jessica Watkins, and others to travel to Washington, D.C., for an operation on November 14 that coincided with an event known as the "Million MAGA March." While this incident occurred outside the time period of the conspiracy alleged in the Indictment (December 2020 through January 2021), ECF No. 684 at ¶¶ 21, 115, it is "inextricably intertwined" with the conspiracy charged herein. *See United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (evidence that defendant charged with fraud had threatened a co-conspirator not "other crime evidence" but instead "inextricably intertwined" with charged offense). As such, it is admissible without needing to undergo analysis under Rule 404(b) of the Federal Rules of Evidence. *See United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("Moreover, 'Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'").

The Indictment frames the conspiracy charged in this case as part of Rhodes' larger plot to oppose by force the lawful transfer of power following the 2020 Presidential Election, ECF No. 684 at ¶¶ 2-4, and portrays certain events of November 2020, including the November 14 operation, as foundational to the conspiracy, *id.* at ¶¶ 14-20. The November 14 operation was the first Rhodes organized in Washington, D.C., after the 2020 Presidential Election. *Id.* at ¶ 18. It occurred a week after Rhodes encouraged Oath Keeper members and affiliates to oppose the 2020 U.S. Presidential Election by following the "procedure" employed by Serbians who opposed an election they believed to have been stolen by Slobodan Milosevic—a plan that included "gather[ing] in our capital," breaking through barricades, and "storm[ing] the Parliament." *Id.* at ¶ 14(b). During the online "GoToMeeting" in which Rhodes organized the November 14 operation, Rhodes told those listening, "We're very much in exactly the same spot that the founding fathers were in like March 1775. Now—and Patrick Henry was right. Nothing left but to fight. And that's true for us, too. We're not getting out of this without a fight." *United States v. Rhodes, et al.*, ECF No. 22-cr-15, Gov. Trial Exh. 1000.7. To support this fight, the conspirators established an armed quick reaction force ("QRF") in support of the November 14 operation. *Rhodes, et al.*, 22-cr-15, 10/16/2022AM Tr. 1900-02, 1909. According to a member of that QRF, part of its purpose was to transport firearms to co-conspirators on the ground inside of Washington, D.C., to help President Trump oppose the "rogue government" or those in Congress who had gone rogue in trying to make him leave office. *Id.*

Thus, this evidence is intrinsic evidence of the conspiracy charged in this case even though it falls outside the period during which the Indictment alleges the conspiracy existed. *United States v. Diaz*, 878 F.2d 608, 614-16 & n.2 (2nd Cir. 1989) (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy

prosecution and did not raise Rule 404(b) question); *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior). This Court ruled in the *Rhodes* trial that evidence of the QRF's role in the November operation was "clearly intrinsic to the charged offenses." 22-cr-15 8/30/22 Tr. at 10. As the Court found, the use of the QRF in that operation was "consistent with what happened January" and therefore relevant and admissible. *Id.* The same logic supports the admission of this evidence as intrinsic to the conspiracy charged here.

Even if the Court were to find that evidence of the November 14 is extrinsic to the conspiracy charged in this case, it is still admissible as evidence of the co-conspirators' intent, preparation, plan, knowledge, and association. Fed. R. Evid. 404(b). It sheds light on why the co-conspirators repeatedly traveled to Washington, D.C. in the time period of November 2020 through January 2021, and the purpose of the armed QRFs they organized in support of these operations. *Cf. United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) ("We have also permitted the introduction of 'other acts' evidence in conspiracy cases (i) to link a defendant to other defendants and drug transactions for which the conspiracy was responsible, *United States v. Gaviria*, 116 F.3d 1498, 1532 (D.C. Cir. 1997); (ii) to show the nature of a conspiracy and 'the kind of organizational control' a defendant exercised, *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010); and (iii) to show the defendants' intent to act in concert, *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000); *see also United States v. Straker*, 800 F.3d 570, 590 (D.C. Cir. 2015) (evidence of uncharged hostage takings was "relevant to ... how those defendants started to work together as kidnappers").

Defendant Isaacs argues that the government must establish a defendant's participation in or knowledge of a prior act to establish its relevance under Rule 404(b). ECF No. 801 at 6-7. In support of this contention, Defendant Isaacs cites the Supreme Court's observation in *United States v. Huddleston*, that, "In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." 485 U.S. 681, 689, (1988). *Huddleston* was not a conspiracy case, however. "It is in the nature of a conspiracy prosecution that the evidence against each member will differ, and that the members of the conspiracy will have different roles." *Straker*, 800 F.3d at 628; *see also* O'Malley, Grenig, & Lee, Fed. Jury. Prac. & Instr. Crim Comp HB § 10:3 ("To have guilty knowledge, a defendant need not have known the full extent of the conspiracy or all of the activities of all of its participants . . . . Each member of a conspiracy may perform separate and distinct acts and may perform them at different times."). Here, numerous co-conspirators, including three of whom are charged in this case, participated in the November 14 operation. In light of this fact, as well as the other reasons cited above, evidence of the November 14 operation is relevant to establishing the co-conspirators' intent, preparation, plan, knowledge, and association in this conspiracy.

ii.  Co-Conspirator Jeremy Brown's Weapons

In light of this Court's ruling in *United States v. Minuta, et al.*, the government will not seek to introduce evidence that Jeremy Brown brought explosives to the D.C. area for January 6. *Minuta, et al.*, 22-cr-15, 1/3/2023PM Tr. 2598-2601. The government reserves the right, however, to introduce evidence that Brown transported other weapons, including firearms. As in the related trials, the government may present evidence from the Signal messages and testimony from co-conspirators like Caleb Berry, that Jeremy Brown was part of the caravan of Florida Oath Keepers to D.C. for January 6. So, too, was Defendant Connie Meggs. While Defendant Laura Steele did

not travel with this caravan, she did travel with her brother, Florida Oath Keeper Graydon Young, who would testify as to his understanding that he would have firearms available to him from the Florida group's arsenal, which he believed would be stored "in Virginia in an RV," and that they would be brought into the city when called by a leader like Rhodes or Kelly Meggs. *Rhodes, et al.*, 22-cr-15, 10/31/2022PM Tr. 5861-5862. As such, the evidence regarding Jeremy Brown's transportation of weapons, including firearms, to Washington, D.C., is relevant to establishing the availability and purpose of firearms at the QRF that supported the conspirators on January 6, as well as certain defendants' knowledge of this plan.

    iii.    <u>Co-Conspirator Statements and Conduct Between January 6-20, 2021</u>

With respect to statements and conduct of certain co-conspirators during the January 6-20 period, as explained in greater detail in the government's initial Notice, ECF No. 777, the government intends to introduce limited evidence that, in the weeks between the Certification and the Inauguration, Rhodes directed his followers to continue to oppose the incoming Biden Administration by force, and co-conspirators, to include Defendants Greene and Crowl, continued to engage with this plot.

Defendant Isaacs challenges the admissibility of this evidence as inadmissible hearsay and because he did not participate in or know about this conduct. ECF No. 801 at 4-5. These statements constitute co-conspirator statements, statements against penal interest, present sense impressions, and admissions by a party opponent, and are thus admissible under a hearsay exception or not hearsay at all. These statements and conduct after January 6 are also relevant evidence of the co-conspirators' plan and intent *prior* to January 6. *See Straker*, 800 F.3d at 590 ("Potential juror doubt about whether any of [the] defendants was somehow mistakenly swept up into activities he did not know were part of a criminal conspiracy is powerfully undermined by the evidence of

similar criminal teamwork with some of the same people, both before and after the [charged offenses]."). As discussed above, the fact that Isaacs did not participate in these statements and conduct is of no moment.

Defendant Greene disagrees with the government's characterization of the evidence and his conduct during this time period and contends it is simply not relevant. ECF No. 806 at 2-5. First, Defendant Greene contests that he was summoned to Texas by Rhodes in the days after January 6. The evidence at trial will show that on January 7, Stewart Rhodes texted Kellye SoRelle, "Text whip [Greene's moniker] and ask him to go there to, or to Texas. To Austin. Tell him he is needed." SoRelle later texted Greene, "May need to come to Texas." The fact that Rhodes summoned Greene to his side as he fled the D.C. area back to Texas shows the connection and relationship between Rhodes and Greene. *See supra Gaviria*, 116 F.3d at 1532-33.

Rhodes' messages in the days that followed, telling co-conspirators things like, "Get ready to rock and roll, shit's about to go down," and that those who were fit enough to move, shoot, and communicate should be organized and prepared to do so, show that he was continuing to encourage his co-conspirators to oppose by force the lawful transfer of power from President Trump to President Biden. Around this same time, on January 11, Greene sent text messages to a fellow Oath Keeper in which he stated, "But the rumor is that trump ia (sic) involving the insurrection act[.] Stewart thinks....... per kelly[.]" In other words, in the weeks after January 6, Greene kept in touch with Rhodes and continued to discuss the possibility that they would be called by President Trump to help use force to unlawfully stay in power.

Defendant Greene contends that this evidence "is not part of the charged offenses [and] does not facilitate the charged offenses against Defendant Greene." *Id.* at 3. As discussed above, however, these statements are evidence of Rhodes', Greene's, and other co-conspirator's intent

7

prior to January 6.

    iv.    <u>Unfair Prejudice from Late Filing Notice</u>

Finally, Defendant Greene contends this evidence should be excluded because the government filed its formal notice three weeks late. ECF No. 806 at 1-2. This evidence was largely referenced in the Indictment, and discovery of this evidence was provided months ago, if not earlier. The evidence was formally noticed in the related *Rhodes* case in July 2022. The formal notice in this case, while late, was still provided 45 days in advance of trial, on the deadline for motions *in limine.* By the time of trial, the defense will have had more than sufficient time to prepare to meet and challenge this evidence.

## Conclusion

Accordingly, for the foregoing reasons, the government respectfully requests that the Court permit at trial the introduction of the evidence proffered above, as evidence of the charged offenses or, in the alternative, pursuant to Federal Rule of Evidence 404(b).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/
Kathryn L. Rakoczy
Assistant United States Attorney
D.C. Bar No. 994559
Troy A. Edwards, Jr.
Louis Manzo
Jeffrey Nestler
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
601 D Street NW
Washington, D.C. 20530

8

                                       /s/
                          Alexandra Hughes
                          Trial Attorney
                          National Security Division,
                          United States Department of Justice
                          950 Pennsylvania Avenue NW
                          Washington, D.C. 20004