IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| v. ) | |
| CONNIE MEGGS, SANDRA PARKER, ) BENNIE PARKER, MICHAEL GREENE, LAURA STEELE, AND ) WILLIAM ISAACS, ) ) Defendant. ) | Case No. 1:21-cr-00028-APM |

### DEFENDANTS CONNIE MEGGS, MICHAEL GREENE, WILLIAM ISAACS, LAURA STEELE, AND BENNIE PARKER'S JOINT MOTION IN LIMINE

Defendants Connie Meggs, Michael Greene, William Isaacs, Laura Steele, Sandra and Bennie Parker, by and through the undersigned counsel, hereby jointly file this Motion in Limine, to bar statements by members of the Oath Keepers who have been acquitted of conspiracy under 18 U.S.C. §1512 in "key chats," and any communications identified by the government, without adoptive statements made by these Defendants, that therefore, such statements should not come in as co-conspirator statements, admission against interest statements, and, because they are hearsay, and highly prejudicial while not genuinely probative, and irrelevant, under FRE 403 and 404.  Defendants request oral argument.

### INTRODUCTION AND BACKGROUND

1. Defendants come now jointly and move *in limine* to bar the to exclude specific statements and evidence of "bad acts" by Stewart Rhodes, Thomas Caldwell and Kenneth Harrelson.

2. The Superseding Indictment in this case, at 21-cr-28, charges in Count One in relevant part:

> COUNT ONE (18 U.S.C. § 1512(k))
>
> <u>(Conspiracy to Obstruct an Official Proceeding)</u>
>
> 21. <u>From in and around December 2020</u>, through in and around January 2021, in the District of Columbia and elsewhere, the defendants,…
> did knowingly combine, conspire, confederate, and agree with each other and other persons known and unknown to the Grand Jury, to corruptly obstruct, influence, and impede an official proceeding, that is, the Certification of the Electoral College vote, in violation of Title 18, United States Code, Section 1512(c)(2).
>
> <u>Purpose of the Conspiracy</u>
> 22. The purpose of the conspiracy was to stop, delay, and hinder the Certification of the Electoral College vote.

3. The government further recently produced requests for Stipulations on admissibility of evidence it seeks to introduce including physical evidence retrieved by the FBI from Rhodes, Caldwell and Harrelson.

4. The government updated its statements it seeks to admit in this case at trial January 26, 2023 which includes statement throughout November 2020 through and into January 2020 by individuals including Stewart Rhodes, Thomas Caldwell and Kenneth Harrelson, messages from the "Key Chats" the government identified, but the government needs to show that these Defendants knowingly joined a criminal conspiracy with Rhodes, Caldwell and Harrelson, which as a matter of law, it cannot.

5. A trial began on September 26, 2022, culminating in a jury verdict on November 29, 2022. *U.S. v. Rhodes*, 1:22-cr-00015-APM. The jury acquitted Rhodes, Caldwell and Harrelson of Count 2, Conspiracy to Obstruct an Official Proceeding under 18 U.S.C. § 1512(k). *U.S. v. Rhodes,* ECF 410 at 1-3.

6. The Jury found Stewart Rhodes and Kelly Meggs guilty of Seditious Conspiracy with the object of Seditious Conspiracy "[t]o oppose by force the authority of the Government of the United States." *Id*. at 1-2. The jury did not find Rhodes and Meggs guilty of conspiring "[t]o use force to prevent, hinder, or delay the execution of any law of the United States." *Id*.

7. The jury in Rhodes I found only defendants Kelly Meggs and Jessica Watkins guilty of Count 2, Conspiracy to Obstruct an Official Proceeding. *Id.* at 3. In Rhodes 1, as evidenced by the jury's verdict, the government utterly failed to prove that there was an agreement between Stewart Rhodes and Kelly Meggs to use force to obstruct an official proceeding stop or delay the certification. *Id.* at 1-2.

8. The government cannot show that these Defendants, Connie Meggs, Michael Greene, William Isaacs, Laura Steele, or Bennie Parker joined a § 1512(k) conspiracy, knew of the illegal object of the alleged conspiracy -- to commit a crime -- and a knowing joinder in with either Stewart Rhodes or Thomas Caldwell or Kenneth Harrelson, seeking to bring about that objective with Defendants who have been acquitted of participating in § 1512(k) conspiracy.

9. Therefore, statements by Rhodes, Caldwell and Harrelson are inadmissible hearsay and their alleged "bad acts" are not admissible under FRE 404(b), as they cannot, as a matter of law, be in conspiracy with these defendants.

10. And to the extent that the North Carolina Oath Keeper chats by its members of the Oath Keepers should come into this trial, because Rhodes and Caldwell are not in a 1512(k) conspiracy, there is no Oath Keeper, who is an alleged co-conspirator, who communicated with the North Carolina members at the time leading up to January 6th.

I.  **LEGAL ARGUMENT**

Defendants, move in limine to bar messages from chats or other communications by Rhodes and Caldwell both inside and outside the period of conspiracy alleged in the Superseding Indictment because the Government has made clear that it may introduce these communications as evidence. The question for any such communication needs to be, "how is this statement in furtherance of the conspiracy to interfere with the official proceeding in Congress on January 6th?" The prosecutors cannot though they will try establish this by proffer. But Rhodes and Caldwell were both acquitted - found not guilty- of a 1512(k) conspiracy. Without this laying this foundation, this becomes inadmissible evidence that is further, not genuinely probative of intent while highly prejudicial.

   a.  **Non-Testifying alleged co-conspirator statements**

By way of background, the Supreme Court previously held that "However, such declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is *proof aliunde* that he is connected with the conspiracy. *Minner v. United States, 57 F.2d 506*; and see *Nudd v. Burrows*, 91 U.S. 426. Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." *Glasser v. United States*, 315 U.S. 60, 75, 62 S. Ct. 457, 467, 86 L. Ed. 680, 701 (1942). "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule.

There must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made "during the course and in furtherance of the conspiracy." *US v. Bourjaily*, 483 US 171.

Justice Stevens, in concurrence explained,

4

> "In my view, *Glasser* holds that a declarant's out-of-court statement is inadmissible against his alleged co-conspirators unless there is some corroborating evidence to support the triple conclusion that there was a conspiracy among those defendants, that the declarant was a member of the conspiracy, and that the statement furthered the objectives of the conspiracy. An otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility -- it cannot lift itself into admissibility entirely by tugging on its own bootstraps. It may, however, use its own bootstraps, together with other support, to overcome the objection. In the words of the Glasser opinion, there must be proof "aliunde," that is, evidence from another source, that together with the contents of the statement satisfies the preliminary conditions for admission of the statement. Id., at 74. 1

*Bourjaily v. United States*, 483 U.S. 171, 184-185, 107 S. Ct. 2775, 2783, 97 L. Ed. 2d 144, 158-159, (1987)(J. Stevens, concurring).

In *United States v. Beckham*, 968 F.2d 47, this District explained that "…the only evidence of conspiracy that existed - was the hearsay statement itself, Beckham's proximity to Monroe in the yard, and their apparent acquaintance. The hearsay statement may be considered in finding that a conspiracy existed, see id. at 181, but the statement may not be the sole basis for such a ruling. Under our precedent, there must be independent evidence of a conspiracy as well. *See United States v. Washington*, 952 F.2d 1402, 1407 (D.C. Cir. 1991); cf. *Bourjaily*, 483 U.S. at 181 (reserving question whether independent evidence is necessary)."  The Court instead concluded that the statement was admissible as "the exception for adoptive admissions set forth in Fed. R. Evid. 801(d)(2)(B). *Id*. at 51.

The *Williamson* court made clear that, '"[a]s with all evidence, such a statement, when offered for a permissible non-hearsay purpose, must be relevant to a "fact … of consequence" in the case. FED. R. EVID. 401; see also Sesay, 313 F.3d at 599-600; *United States v. Evans*, 342 U.S. App. D.C. 189, 216 F.3d 80, 87 (D.C. Cir. 2000) *cert. denied*, 531 U.S. 971, 148 L. Ed. 2d 317, 121 S. Ct. 411 (2000).  The Court in *Williams* further explained, "The *Evans* court rejected the argument that the testimony could be admitted to provide "background" information, because

5

whatever minimal value the testimony had for that purpose was outweighed by the danger that the jury would consider the evidence for its hearsay purpose. *See id*. at 87-89; *see also Sesay*, 313 F.3d at 599 (excluding testimony regarding an out-of-court statement because its only relevance was for its truth and because any value it may have had as background was substantially outweighed by the danger of prejudice). *Id*. at 964. The court further explained, "such a statement may be excluded, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. at 963-964 (citing FED. R. EVID. 403; *see also U.S. v. Evans*, 216 F.3d at 87-89).

In *United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003), the Court explained that "[a]s to using the recordings to establish context, the Government seems to be saying that all out-of-court statements offered for context do not constitute hearsay. However, that a statement provides context to other evidence does not mean that the statement is not hearsay. All relevant evidence provides context to the events underlying the charged crime. *See United States v. Bowie*, 344 U.S. App. D.C. 34, 232 F.3d 923, 928-29 (D.C. Cir. 2000). The question is whether the statement is offered for its truth." The Circuit Court found the recording statement as inadmissible hearsay where it went to the truth of the issue before the court, finding that 'the jury, using the statement, could infer that the defendant and his co-conspirators referred to "drugs as clothes" only from the fact that Defendant and his co-Conspirator referred to drugs as clothes - that is, through the statement's content.' Cf. *United States v. Sesay*, 354 U.S. App. D.C. 141, 313 F.3d 591, 599-600 (D.C. Cir. 2002). 'The statement thus was hearsay, and its admission was erroneous. See FED. R. EVID. 802.' *United States v. Stover*, 329 F.3d 859, 870 (D.C. 2003) (citing FED. R. EVID. 801(c); *United States v. Jordan*, 258 U.S. App. D.C. 143, 810 F.2d 262, 264 (D.C. Cir. 1987)[1].

---

[1] *Wilson*, a co-conspiracy drug case, is not on point in that it did not address the admission of statements of non-present alleged co-conspirators. *United States v. Wilson, 605 F.3d 985, 1017*

Furthermore, it is anticipated that the government, in the case at bar, seeks to admit these out-of-court statements by Rhodes and Caldwell as evidence despite the fact that they have been acquitted of a §1512 conspiracy.

"*Bruton* stands for the rule that, in a joint trial, the Confrontation Clause of the Sixth Amendment prohibits the admission of a defendant's confession against him if the confession inculpates a codefendant, unless the codefendant is given the opportunity to cross-examine the confesser." *United States v. Allgood*, 2022 U.S. Dist. LEXIS 42877, *15, 2022 WL 715222 (citing 391 U.S. at 126; see also Wilson, 605 F.3d at 1017.)  As the *Beckham* court found, "[f]or a defendant to adopt the statement of another, such that the statement is admissible against the defendant, the defendant "must have understood and unambiguously assented to [the statement], but his understanding and assent may be established through conduct as well as through words." *United States v. Beckham*, 968 F.2d 47, 52 (D.C. Cir. 1992) (alterations, quotation marks, and citations omitted).  The defendant must have "manifested an adoption or belief in its truth." *Id*. (quoting Fed. R. Evid. 801(d)(2)(B)).'

Moreover, the analysis for each alleged message sender as an alleged co-conspirator or other person, the question becomes is it one that constitutes *an adoptive admission* and to the extent its 'truly self-inculpatory," only those portions of the statement may be admitted: "[a] statement may be admitted under Rule 804(b)(3)'s hearsay exception for statements against interest if a reasonable person in the declarant's shoes would perceive the statement as detrimental to her own

---

*(D.C. Cir. 2010).*  It instead addressed statements made by counsel during opening or closing, and found that, the appellants did not have a *Bruton* claim because it was only about statements made by counsel, and not evidence to be admitted.  ("Indeed, although the appellants rely on *Bruton*, they have not identified any incriminating out-of-court statement made by Franklin that was admitted into evidence.") *Id*. at 1017.

7

penal interest. *See Williamson v. United States*, 512 U.S. 594, 599-603 (1994) (holding that a court may admit those portions of a declarant's statement under this rule if those statements are truly self-inculpatory).

Rhodes and Caldwell were acquitted of Count 2 in Rhodes I, Conspiracy to Obstruct an Official Proceeding—demonstrating the government failed to prove that they agreed to obstruct an official proceeding. ECF 410 at 3. The government failed to prove that any of Rhodes's actions amounted to a "substantial step" towards planning to obstruct the official proceeding. Rhodes's acts of standing outside the Capitol and talking to others simply does not evidence "a true commitment toward completing the crime." *Nitschke*, 843 F. Supp. 2d at 10 (D.D.C. 2011).

"It is well settled that mere presence at the scene of a crime and awareness that a crime is being committed is insufficient to support a conviction for aiding and abetting." *United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993); *see also United States v. Garguilo*, 310 F.2d 249, 253 (2d Cir. 1962) (a defendant's presence at the scene of the crime may be sufficient to support a conviction for aiding and abetting only if his presence "proved to have positively encouraged the perpetrator himself."). Accordingly—under any of liability—the evidence cannot sustain Rhodes's conviction for obstructing an official proceeding.

While there are overt acts that are legal at issue in this case, like attending the President's rally or wearing a helmet to a permitted protest, or standing around in a group -- there must first be evidence of an agreement to be involved in an illegal scheme. Involvement in overt acts that are otherwise legal is not independent evidence of participation in a conspiracy to commit a crime. Likewise, mere association with persons involved in a criminal venture or mere presence during the commission of an offense is insufficient. "[M]ere association, standing alone, is inadequate; an individual does not become a member of a conspiracy merely associating with conspirators

8

known to be involved in crime." *United States v. Gaskins*, 402 U.S. App. D.C. 262, 273 (D.C. Cir., 2012) ("The agreement is the sine qua non of a conspiracy, and this element is not supplied by mere knowledge of an illegal activity . . . , let alone by mere association with other conspirators." (internal quotation marks omitted)); *United States v. Diaz*, 637 F.3d 592, 602 (5th Cir. 2011) ("If all that was shown was a defendant's . . . 'close association with conspirators,' jurors would not be entitled to infer participation in the conspiracy." (internal quotation marks omitted)); *Nusraty*, 867 F.2d at 764 ("[M]ere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement."); (*see also United States v. Bailey*, 416 F.2d 1110, 1113 (D.C. Cir. 1969)).

In conclusion, Defendants move in limine to bar alleged co-conspirator anticipated statements identified as being made by Stewart Rhodes, Thomas Caldwell and Kenneth Harrelson, to include North Carolina OK chats, identified by the government, because to date there is no message reflecting adoptive statements made by these Defendants; such that therefore, these statements should not come in as co-conspirator statements. These statements are inadmissible hearsay, and further because of the lack of participation by these Defendants, are prejudicial under FRE 403, while not genuinely probative, and further irrelevant for the same reasons stated above, under FRE 404.

[signature next page]

Dated: February 2, 2023

Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*/s/ Juli Z. Haller\**
Juli Z. Haller, (D.C. Bar No.466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, N.W., Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

*Counsel for Connie Meggs*

\*and with permission to sign by counsel for Sandra Parker, Bennie Parker, William Isaacs, Laura Steele and Michael Greene.

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, with consequent service on all parties of record.

/s/ *Juli Haller*