IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 21-cr-28 (APM) |
| v. | : | |
| SANDRA PARKER, | : | |
| BENNIE PARKER, | : | |
| LAURA STEELE, | : | |
| CONNIE MEGGS, | : | |
| WILLIAM ISAACS, and | : | |
| MICHAEL GREENE, | : | |
| Defendants. | : | |

**GOVERNMENT'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS**

The government submitted its proposed jury instructions with the Joint Pretrial Statement submitted on January 12, 2023. ECF No. 823. The government hereby submits three supplemental proposed instructions: (1) one regarding the conspiracy theory of liability for the charge of destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361 and 2 (Count Four); (2) a proposed curative instruction to remedy public authority-type evidence elicited by the defense in the case to date; and (3) a proposed instruction regarding the Court's prior rulings that testifying agents generally are not permitted to interpret the messages they read into evidence.

I.   Conspiracy Theory of Liability for Destruction of Government Property

As the government stated at a pretrial conference, the jury ought to be instructed that the defendants can be found guilty of Count Four, destruction of government property, under a theory of co-conspirator liability. 2/7/23 Tr. at 17. So long as sufficient evidence has been introduced, the Court can instruct the jury on a *Pinkerton* theory of liability even if the defendants were not

specifically indicted on that theory. *See United States v. Washington*, 106 F.3d 983, 1011 (D.C. Cir. 1997) (holding that *Pinkerton* theory of liability need not be pleaded in the indictment); Redbook Instruction 7.103(B) (providing instruction for "when the government is proceeding on liability on an uncharged conspiracy"). Regardless, the defendants here were indicted on conspiracy charges: conspiring to obstruct the official proceeding (Count One) and conspiring to prevent Members of Congress from discharging their duties (Count Three).

The government respectfully submits that the damage to the Capitol's East Rotunda doors and Columbus doors was caused by rioters' forceful entry into the building, that those unnamed rioters conspired with themselves and the defendants to breach the building. The government further submits that the defendants in this case entered into conspiracies to obstruction the certification of the electoral college vote and to prevent members of Congress from discharging their duties with respect to that proceeding and to drive these members of Congress from the location where they were to perform these duties, and the destruction of government property sustained by the Capitol building on January 6, particularly at the East Rotunda Doors through which these defendants and their co-conspirators breached the building that day, was committed in furtherance of, and as a natural consequence of, this conspiracy.

The government therefore requests that the Court provide the following instruction as an alternate theory of liability for Count Four:

Proposed instruction:

In this case, the government further alleges that the defendants are guilty of the crime of destruction of government property as charged in Count Four based on co-conspirator liability. A defendant is responsible for an offense committed by another member of the conspiracy if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a natural consequence of, the conspiracy. In order to find a defendant guilty of destruction of government property as charged in Count Four, you must

find that the government proved beyond a reasonable doubt the following six requirements:

>First, the defendant knowingly joined a conspiracy;
>
>Second, the charged offense was committed by a member of that conspiracy;
>
>Third, that the defendant was a member of the conspiracy at the time the charged offense was committed;
>
>Fourth, that the charged offense was committed during the existence of the conspiracy;
>
>Fifth, that the charged offense was committed in furtherance of the conspiracy; and
>
>Sixth, that the charged offense was a reasonably foreseeable consequence of the conspiracy. It is not necessary that the crime was intended as part of the original plan, only that it was a reasonably foreseeable consequence of the original plan.

The principles governing conspiracy that I explained above apply here as well.

This instruction is consistent with the co-conspirator theory of liability on which the Court instructed the jury for the obstruction-of-an-official-proceeding count in the *Rhodes* and *Minuta* trials, *see, e.g.*, 22-cr-15, ECF No. 457 at 30, and the parties jointly proposed the same instruction for the same count here, *see* 21-cr-28, ECF No. 823, at 23.

II.     Curative Instruction Regarding Public Authority Defense

On December 16, 2022, the government moved *in limine* to preclude the defense from introducing evidence and arguments supporting a public-authority or entrapment-by-estoppel defense, observing that the defendants failed to provide notice for such a defense, as required under the Federal Rules of Criminal Procedure, and contending that such a defense was invalid as a matter of law. ECF No. 778. Only Defendant Isaacs opposed this motion, stating that although he did not intend to raise such a defense at trial, "Nonetheless, Mr. Isaacs objects to Motion *in Limine* because he should be permitted to introduce evidence of his reliance on statements made by Mr. Trump on January 6 and in the days, weeks, and months leading up to that day." ECF No.

3

802 at 2. At the Pretrial Conference, counsel for Defendant Isaacs suggested that he simply wanted to preserve his ability to argue that his autism impacted "his ability to understand a command, a direction, a suggestion," and "what President Trump said to him, the crowd at large [on January 6], greatly affected him," and to argue that those two factors negate his ability to form the requisite *mens rea* for the charged offenses. 1/20/23 Tr. at 56-59.

Since that time, several defense attorneys have highlighted the words spoken by President Trump during his speech on the Ellipse in the morning/early afternoon of January 6. For example, during cross-examination of Caleb Berry, counsel for Connie Meggs asked the following questions and received the following answers:

> Q. Do you recall some of the things President Trump said in his speech that day?
> A. Not a lot.
> Q. Do you recall him saying that you have to fight like hell?
> A. I do.
> Q. Do you recall him saying that he'd be right there with you?
> A. I don't.
> Q. That he would be walking to the Capitol with you?
> A. I do not.

2/17/23 Tr. at 2970. Similarly, during cross-examination of Special Agent Joanna Abrams, counsel for Defendant Isaacs posed the following questions and received the following answers:

> Q. Okay. Let's talk about the walk to the Capitol. Were you able to listen or watch President Trump's speech at the Ellipse on that day?
> A. No, I was not.
> Q. Are you aware that there was some fiery rhetoric, like "fight like H-E-L-L?"
> A. I believe so, yes.
> Q. And is it fair to say that after his comments and others who spoke, individuals at the Ellipse walked to the Capitol; correct?
> A. Yes. After he finished speaking, they did proceed toward the Capitol.

2/23/23PM Tr. at 4086.

The tone of these questions and the facts established through some of the answers risks the possibility of confusing the jury into thinking that the President's words constitute a defense to the

offenses charged herein. Accordingly, the government proposes the inclusion of an instruction along the following lines with the Court's final jury instructions:

> You heard testimony about certain statements made by President Trump on January 6, 2021. The President cannot lawfully try to prevent Congress from engaging in the constitutionally required proceeding of reviewing and certifying the results of a Presidential Election, nor is the President permitted by law to encourage others to do so on his behalf. In other words, even if you were to find that President Trump directed individuals to enter the Capitol grounds or building on January 6, those statements alone would not constitute a defense to the charges against the defendants in this case.

Such an instruction would parallel the language used by Chief Judge Howell in the recent matter of *United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021), in which she held:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. . . . Put simply, even if former President Trump in fact [explicitly directed the rioters' actions,] his statements would not immunize defendants charged with offenses arising from the January 6 assault on the Capitol from criminal liability.

Such an instruction would also be consistent with the case law regarding public authority defenses, addressed in greater detail in the government's pretrial motion *in limine* on this topic. ECF No. 778. *See also, e.g.*, *United States v. Sheppard*, No. 21-203 (JDB), 2022 WL 17978837, at *8 (D.D.C. Dec. 28, 2022) ("the Court can determine, without hearing evidence at trial, that Sheppard's public authority defense as he describes it will fail because former President Trump's statements did not amount to an express or implied statement of the law"). And cautionary instructions such as this one are appropriate "to focus the jury's attention on the 'essential issues' in the case" and to address potential jury confusion resulting from questioning by the defense. *United States v. Sanders*, 196 F.3d 910, 914 (8th Cir. 1999) (holding that curative instruction was

appropriate where district court "perceived that Sanders had confused the jury by asking witnesses repeatedly about the trailer taillights and the knife, as if to cast doubt on the legality of the stop and search").

III.  Curative Instruction Regarding Agent Witnesses Interpreting Messages

In this trial, as in the trials in the related matter of *United States v. Elmer Stewart Rhodes III, et al.*, Case No. 22-cr-15-APM, the Court has not permitted agents to interpret the text messages they read into evidence. *See, e.g.*, 2/14/23AM Tr. at 1842, line 2, through page 1843, line 12 (government asking special agent to read a message in which Defendant Michael Greene asked another person whether he wanted Defendant Greene to bring his "upper" to the Washington, D.C., area, for January 6, and the Court precluding the government from asking the agent to define an "upper" as a component of a firearm). During cross-examination, defense counsel have often asked agents to interpret messages and then have suggested error or wrongdoing where the agents have declined or been unable to interpret the messages. Accordingly, the government requests an instruction along the following lines be included with the Court's final jury instructions:

> You heard testimony from several FBI agents who read into evidence certain messages recovered from the electronic evidence in this case. These agents were not permitted to interpret the messages they read into evidence—that was my Order, consistent with the Rules of Evidence. You should not hold it against the witnesses if there were messages they did not interpret for you.

IV.  Conclusion

WHEREFORE, the United States respectfully request the Court include these supplemental instructions with its final jury instructions.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

6

By:   /s/
   Kathryn L. Rakoczy
   Assistant United States Attorney
   D.C. Bar No. 994559
   Troy A. Edwards, Jr.
   Louis Manzo
   Jeffrey Nestler
   Assistant United States Attorneys
   U.S. Attorney's Office for the District of Columbia
   601 D Street NW
   Washington, D.C. 20530

   /s/
   Alexandra Hughes
   Trial Attorney
   National Security Division,
   United States Department of Justice
   950 Pennsylvania Avenue NW
   Washington, D.C. 20004