**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**　　　　) | |
| ) | **Case No. 1:21-cr-00028-APM** |
| **v.**　　　　) | |
| ) | |
| **CONNIE MEGGS,**　　　　) | |
| ) | |
| **Defendant.**　　　　) | |
| ) | |

## <u>MOTION FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL</u>

Defendant Connie Meggs, by and through undersigned counsel, respectfully and formally moves this Court for a judgment of acquittal or, in the alternative, for a new trial, pursuant to Federal Rules of Criminal Procedure 29(c) and 33(b)(2), respectively.

### I.　INTRODUCTION

"Foot soldiers."  That is how the government described Mrs. Meggs and her codefendants.  Indeed, the sole basis for liability as to Mrs. Meggs and her coconspirators was that they joined the conspiracies of Mrs. Meggs's husband, Kelly Meggs.  The evidence adduced at trial, however, revealed that Mrs. Meggs had no knowledge of her husband's planning in advance of the events of January 6, 2021.  In no small part, that was because the evidence adduced at Mr. Meggs's trial revealed that there were no written communications of any plan to enter the Capitol to stop the certification of the electoral college on January 6, 2021.  As the government acknowledged in closing at the first trial of members of the Oath Keepers related to the events of January 6, 2021:  "Let me be clear on behalf of the United States of America, *we do not allege a specific plan to storm the United States Capitol*. We never have and we are not now. *We do not have to prove a plan*." Tr. 10296: 5-8, *United States v. Rhodes, III*, No. 22-cr-15,

(Nov. 21, 2022) (emphasis added).  The government's burden at trial was thus to prove, beyond a reasonable doubt, that when Mrs. Meggs followed her husband through the East Rotunda doors, that she had joined him in a conspiracy to stop the certification of the electoral college vote.  The government submits that it has done so despite no contemporaneous communications from Mrs. Meggs, or any written evidence of a plan to enter the Capitol Building for the purpose of stopping the electoral college certification.  Rather, the government largely relies on one text message sent by Mrs. Meggs hours after the events that day and despite Mrs. Meggs testifying in her own defense that she had no knowledge of any such plan.

## II.   PROCEDURAL BACKGROUND

On February 9, 2023, a trial by jury was commenced as against Mrs. Meggs and her co-defendants Sandra Parker, Bennie Parker, William Isaacs, Laura Steele, and Michael Greene.  On February 27, 2023, the government concluded its presentation of evidence and thus rested its case in chief.  At that time, Mrs. Meggs orally moved for judgment of acquittal, for which the Court deferred its ruling.  On March 8, 2023, the government concluded its presentation of evidence in rebuttal and again rested, thus concluding the presentation of evidence in the case. Mrs. Meggs orally renewed her motion for judgment of acquittal, for which the Court again deferred its ruling.

On March 21, 2023, the jury found Mrs. Meggs guilty of (Count 1) Conspiracy to Obstruct an official Proceeding (18 U.S.C. § 1512(k)); (Count 2) Obstruction of an Official Proceeding (18 U.S.C. § 1512(c)(2)); (Count 3) Conspiracy to Prevent an officer from Discharging Any Duties (18 U.S.C. § 372); (Count 4) Destruction of government Property (18 U.S.C. 1361); and (Count 5) Entering and Remaining in Restricted Building or Grounds (18. U.S.C. § 1752).  On April 3, 2023, within fourteen (14) days of the jury's verdict, Mrs. Meggs

filed a motion again preserving her objections to the verdict pursuant to Rule 29 of the Federal

Rules of Criminal Procedure, as well as for a new trial pursuant to Rule 33 of the same, and

requested the Court set a formal briefing schedule concerning the same.  Mot. (April 3, 2023)

(ECF No. 917).  On April 7, 2023, the Court issued a Scheduling Order governing the filing of

post-trial motions and setting the deadline for such motions to be filed on May 8, 2023.  Order

(April 7, 2023) (ECF No. 924).  By consent of the parties, that deadline was extended until May

17, 2023, Minute Order (May 8, 2023), and again until May 29, 2023.  Minute Order (May 15,

2023).

### III.   ARGUMENT

At bottom, this Court should enter a judgment of acquittal because the evidence adduced

at trial fails to prove, let alone beyond a reasonable doubt, that Mrs. Meggs joined any of the

conspiracies alleged by the government.  Her mere entry into the Capitol Building on January 6,

2021, is not sufficient to prove that she was aware of and consciously joined the conspiracy to

stop the certification of the electoral college vote alleged as against her husband, Kelly Meggs.

Specifically, Mrs. Meggs's Motion for Judgment of Acquittal must be granted because (i) the

government failed to prove that Mrs. Meggs obstructed an official proceeding and/or entered or

remained in a restricted building or grounds; (ii) the government failed to prove that Mrs. Meggs

acted with corrupt intent; (iii) the government failed to prove that Mrs. Meggs joined the alleged

conspiracies; or (iv) the government failed to prove that Mrs. Meggs injured, damaged, or

destroyed government property.

Alternatively, the Court should grant Mrs. Meggs a new trial because, [insert].

Finally, as the Court noted in its Scheduling Order concerning post-trial motions (April 7,

2023) (ECF No. 924), Mrs. Meggs does not repeat any post-trial arguments made in the Motions

for Judgment of Acquittal and/or for a New Trial submitted in the post-trial briefings in *United States v. Rhodes*, No. 22-cr-15 (ECF Nos. 426 & 434) and such argument are incorporated by reference.

### A.  Legal Standard

Rule 29(a) of the Federal Rules of Criminal Procedure provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  In considering a Rule 29 motion this Court must determine "whether upon the evidence, viewed 'in a light most favorable to the Government giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence and draw justifiable inference of fact,' a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989); *see United States v, Kayode*, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting *United States v. Harrington*, 108 F.3d 1460, 1464, (D.C. Cir. 1997)); *United States v. SaFavian*, 644 F. Supp. 2d 1, 7-8 (D.D.C. 2009); *United States v. Duran*, 884 F. Supp. 577, 583 (D.D.C. 1995), affd, 96 F.3d 1495 (D.C. Cir. 1996).

Although, the Court must "accord[] the government the benefit of all legitimate inferences," *see United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983), cert denied 465 U.S. 1027 (1984), and deny the motion if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *See United States v. Arrington*, 309 F.3d 40, 48 (D.C. Cir. 2002) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Although the evidence must be viewed in the light most favorable to the government, this Court is obligated to accord the government the benefit of only "legitimate inferences." *United States v. Singleton*, 702 F.2d 1159, 1163 (D.C.Cir. 1983).  Moreover, Rule 29 requires the

Court to view the evidence that the government deems must be evidence of guilt, but can otherwise be explained as equally innocent, in a balance.  *See Curley v. United States*, 160 F.2d 229, 233 (D.C. Cir. 1947) (if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained").  Thus, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in the evidence upon which that inference can arise. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989).

This Court must grant Defendant's motion for judgment of acquittal if it finds that the evidence, even if viewed in the light most favorable to the government, is such that a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime. *United States v. Durant*, 208 U.S. App. D.C. 374, 648 F.2d 747 (D.C. Cir. 1981); *see also United States v. Foster*, 251 U.S. App. D.C. 272, 783 F.2d 1087, 1088 (D.C. Cir. 1986). Finally, this Court "cannot let a case go to the jury unless there is evidence of some fact which to a reasonable mind fairly excludes the hypothesis of innocence."  *Curley*, 160 F.2d at 233.

Put another way, the Court must grant a motion for judgment of acquittal if "a reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt." *See United States v. Weisz*, 718 F.2d at 437 (emphasis in original) (citing *United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)). *See also United States v. Reese*, 561 F.2d 894, 898 (D.C. Cir. 1977); *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion [for judgment of acquittal] must be granted."), cert denied, 331 U.S. 837 (1947); *United States v. Jabr*, 2019 U.S. Dist. LEXIS 238718, *9-10, (D. D.C., May 16, 2019).

Pursuant to Federal Rule of Criminal Procedure 33, the Court "may vacate any judgment and grant a new trial if the interest of justice so requires."  When granting a new trial, "the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand" and "[t]his power should be . . . invoked only in those exceptional cases in which the evidence weighs heavily against the verdict."  *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.C.C. 2003)) (quoting *United States v. Edmonds*, 765 F. Supp. 1112, 1118 (D.D.C. 1991).  Moreover, a new trial should be allowed "only if the defendant has shown that the error . . . affected the defendant's substantial rights."  *United States v. Williams*, 825 F. Supp. 2d 128, 132 (D.D.C 2011).  Finally, "by contrast to a motion for a judgment of acquittal under Rule 29 due to the insufficiency of the evidence, a defendant 'seeking to obtain a new trial' under Rule 33 is asking the court to determine that the state of the evidence is only 'marginally sufficient' such that it 'calls for a new trial in the interest of justice."  *United States v. Young*, 2013 U.S. Dist. LEXIS 204453, *12 (D.D.C. 2013) (quoting *United States v. Wiley*, 517 F.2d 1212, 1217, n.24, 170 U.S. App. D.C. 382 (D.C. Cir. 1975).  Thus, "by contrast to the evaluation of the evidence required under Rule 29 [for a motion for a judgment of acquittal], the court's discretion whether to grant a motion for a new trial . . . is "much broader," since the court need not accept the evidence in the light most favorable to the government, and may weigh the testimony and consider the credibility of the witnesses."  *Young*, 2013 U.S. Dis. LEXIS at *12-13.

### B.  The Court Must Grant a Judgment of Acquittal

Mrs. Meggs's Motion for Judgment of Acquittal must be granted because (i) the government failed to prove that Mrs. Meggs obstructed an official proceeding and/or entered or remained in a restricted building or grounds; (ii) the government failed to prove that Mrs. Meggs acted with corrupt intent; (iii) the government failed to prove that Mrs. Meggs joined the alleged

conspiracies; or (iv) the government failed to prove that Mrs. Meggs injured, damaged, or destroyed government property.

        i.  *The Government Failed to Prove that Mrs. Meggs Obstructed an Official Proceeding and/or Entered or Remained in a Restricted Building or Grounds.*

To prove that Mrs. Meggs obstructed an official proceeding, 18 U.S.C. § 1512(c)(2) required the government to prove beyond a reasonable doubt that Mrs. Meggs:  (1) *actually obstructed or impeded* an official proceeding, (2) *intended* to obstruct or impede the official proceeding, (3) acted *knowingly*, with the awareness that the natural and probable effect of his or her conduct would be to obstruct or impede the official proceeding, and (4) acted *corruptly*.  Jury Instructions (April 3, 2023) (ECF No. 916).  To prove that Mrs. Meggs entered or remained in a restricted building or grounds, the government must prove beyond a reasonable doubt that Mrs. Meggs:  (1) entered or remained in a restricted building or grounds without lawful authority to do so; and (2) that the defendant did so knowingly.  *Id.*

Here, the government presented no evidence that Mrs. Meggs intended to obstruct and/or impede the certification of the electoral college vote, other than the mere fact that she entered the Capitol Building on January 6, 2021.  However, at the time that she entered the building, it had already been breached by thousands of protestors and the actual vote count had already been suspended.  Nor can the government assert that Mrs. Meggs presence prevented the proceeding from continuing insofar as she was but one person, present for less than twenty (20) minutes, and departed long before the majority of protestors had entered the building.

Nor is Mrs. Meggs's private text message the night of January 6 proof of any intent by Mrs. Meggs to stop the certification.  Her message – "everyone went to the capital [sic] to stop the vote and police attacked" – cannot reasonably be interpreted as evidencing her intent at the time she entered the Capitol.  Again, the government adduced a dearth of evidence at trial of

Mrs. Meggs's intent – including no testimony concerning anything she may have said on January 6, 2021, prior to her 11pm private text message.

Perhaps most persuasively, a juror for Mrs. Meggs's trial provided a rare look at what the jury actually considered during its deliberations.  As the juror – Ellen – revealed in her 100 minute interview, the only evidence that was required for Ellen to vote to convict Mrs. Meggs of Obstruction of an Official Proceeding was proof of the fact that Mrs. Meggs entered the Capitol Building, *irrespective of her intent.*  Booknotes+ Podcast:  Oath Keepers Trial Juror, *C-SPAN* (March 28, 2023), *available at* https://www.youtube.com/watch?v=p4oMQOPZzDM (last visited May 29, 2023).

Put differently, no reasonable juror could have concluded that the government proved beyond a reasonable doubt that Mrs. Meggs intended to obstruct the certification of the electoral college vote when she entered the Capitol on January 6, 2021 (18 U.S.C. § 1512(c)(2)). Similarly, no reasonable juror could have concluded that Mrs. Meggs knowingly entered or remained in a restricted building or grounds without lawful authority to do so (18 U.S.C. § 1752(a)(1)).

> ii.  *The Government Failed to Prove that Mrs. Meggs Acted with Corrupt Intent*

Mrs. Meggs testified that when she entered the Capitol, her "immediate thought was that, 'Oh my God. I'm in this Capitol, and I'm in trouble now.'  And I know I'm like – I know there's cameras in here and I'm not supposed to be in here."  Trial Tr. at 5101, ll. 9-12.  *However*, if anything this speaks to Mrs. Meggs's consciousness of wrongdoing as it relates to entering and remaining in a restricted building, *not* to obstructing an official proceeding.

As Judge Walker recently insisted, the term "corruptly" in 18 U.S.C. § 1512(c)(2) requires proof that the object of the alleged obstruction be an "unlawful benefit" to the defendant

or someone else.  *United States v. Fischer*, 64 F.4th 329, 351 (D.C. Cir. 2023) (Walker, J.,

concurring in part).  Judge Walker goes on to assert that his concurring is binding on this

District.  *Id.* at 362 n.10 (citing *Marks v. United States*, 430 U.S. 188, 193 (1977)).

In terms of the evidence presented against Mrs. Meggs, a majority if not all of the

evidence relevant to the conspiracy counts was evidence of actions and communications made by

her husband, Kelly Meggs.  The government did not admit any evidence that Mrs. Meggs

engaged in conversations that discussed the electoral college vote, nor did it admit evidence that

Mrs. Meggs expressed immense disdain with the election such that she would enter into a

conspiracy to obstruct the transfer of power.  Indeed, what the government did admit was that her

*husband* was engaging in conversations with other Oath Keepers and that Mrs. Meggs attended

events hosted by the Oath Keepers either with or at the request of her husband.  The government

built its entire case against Mrs. Meggs based on the actions and communications of her

husband.  However, that Mrs. Meggs attends events alongside or at the request of her husband

does not show that she harbored the requisite corrupt intent to obstruct an official proceeding.

### iii.   The Government Failed to Prove that Mrs. Meggs Joined the Alleged Conspiracies

To prove the existence of a criminal conspiracy, the government must show an agreement

or "meeting of the minds"—that two or more defendants actually "agreed to the same *type* of

conduct."  *United States v. Treadwell*, 760 F.2d 327, 336-37 (D.C. Cir. 1985).  As applied to

Mrs. Meggs, the government must prove: (1) that Mrs. Meggs conspired or agreed with at least

one other person; and (2) that Mrs. Meggs knowingly became a member of the conspiracy, with

the intent to, *inter alia*, obstruct or impede the certification of the electoral college vote on

January 6, 2021. *See United States v. Khan*, 461 F.3d 477, 487-88 (4th Cir. 2006), *cert. denied*

550 U.S. 956; *Smith v. United States*, 568 U.S. 106, 110 (2013).

The existence of an "agreement" is the first essential element of a statutory criminal conspiracy.  *Treadwell*, 760 F.2d at 336.  Although an "agreement" does not require the conspirators to agree on the details of their criminal scheme, the government *is* required to show the "essential nature of the plan." *Id.* (quoting *Blumenthal v. United States*, 332 U.S. 539, 557 (1947). This is because it is, "essential to determine what kind of agreement or understanding existed as to each defendant." *Id.* (quoting *United States v. Borelli*, 336 F.2d 376, 384 (2d. Cir. 1964). Thus, the government must show that the coconspirators, "agreed to the same *type* of conduct." *Id.* at 337 (emphasis in original).  And athough the law does not require that all members of a conspiracy meet directly or discuss their objectives between themselves for there to be a conspiracy, it does require proof beyond a reasonable doubt that at least two persons came to an implicit understanding to work together to achieve an unlawful common goal.  *Id.* at 336-37.

The issue of guilt or innocence in a conspiracy is always an individualized inquiry. *Kotteakos v. United States*, 328 U.S. 750, 772 (1946).  The government must prove the intent of each individual conspirator to enter into the conspiracy, knowing of its objectives, and agreeing to further its goals. Thus, two different types of intent are required to convict a defendant of conspiracy: "the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978).

Here, again the only evidence adduced at trial of Mrs. Meggs's intent to join any conspiracy was the fact that Mrs. Meggs entered the Capitol Building with her husband, Kelly Meggs.  But that fact – without the benefit of any evidence that Mrs. Meggs participated in a single text message between and among the Oath Keepers cannot by itself be sufficient proof of

one's intent to join a conspiracy to obstruct the certification.  To so hold would require courts in this District to conclude that *every* person who entered the Capitol Building on January 6 joined a conspiracy to obstruct the certification.

More specifically, the government submits that because Mrs. Meggs was among the group of Oath Keepers on January 6 who entered the Capitol building and they were wearing "the same uniforms," this was evidence of a conspiracy.  The government made this argument because there is no other evidence that Mrs. Meggs conspired or agreed to obstruct the electoral college vote.  However, as Mrs. Meggs testified, the clothes that she wore that day were given to her by her husband.  In other words, the fact that Mrs. Meggs wore a "uniform" that matched those worn by her husband and other Oath Keepers is not enough to show that she knowingly entered into a conspiracy or agreement.

If anything, the government's evidence against Mrs. Meggs proved her association with a member of a conspiracy.  As the Court cautioned the jury prior to deliberations, "a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place." Jury Instructions (April 4, 2023) (ECF No. 916).  Put simply, no evidence at Mrs. Meggs's trial suggests, let alone proves beyond a reasonable doubt, that Mrs. Meggs had knowledge of any alleged conspiracy.

Contrary to this logical conclusion, the government argued in its closing argument that Mrs. Meggs "knew," and that "[i]f she knows about the small things, she knows about the big things.  But she knew." Trial Tr. at 6906.  As evidence of Mrs. Meggs's knowledge of the alleged conspiracy, the government cites one private text message from Mrs. Meggs on the night of January 6, 2021, observing that "everyone went to the Capitol to stop the vote." Trial Tr. at

6912.  Nothing about the text, standing alone, suggests that Mrs. Meggs considered herself one of the "trumpets" who sought to stop the certification.  To the contrary, as Mrs. Meggs testified in her own defense, her text merely memorializes her observation of what happened that day as she and her husband were watching the news from their hotel room that night.

Even assuming, *arguendo*, Mrs. Meggs's knowledge of the conspiracy, knowledge alone is insufficient to prove membership in a conspiracy.  As the Court admonished in its jury instructions:  "mere knowledge of or acquiescence to the unlawful plan—without agreement in it—is not sufficient. Moreover, the fact that the acts of the defendant without knowledge merely happened to further the purposes or objectives of the conspiracy, does not make the defendant a member."  Jury Instructions (April 3, 2023) (ECF No. 916).  At most, Mrs. Meggs private text message on the evening of January 6, at best demonstrates an acknowledgement that some individuals entered the Capitol on January 6 to stop the certification of the electoral college, not that she joined any such conspiracy.  Ultimately, the government did not prove beyond a reasonable doubt that Mrs. Meggs "with an understanding of the unlawful nature of the conspiracy, intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering an illegal undertaking."  *Id.*

Accordingly, no reasonable juror could have concluded that Mrs. Meggs joined a conspiracy to obstruct an official proceeding (18 U.S.C. § 1512(k)) or a conspiracy to prevent an officer from discharging any duties (18 U.S.C. § 372).

> iv.  *The Government Failed to Prove Mrs. Meggs Injured, Damaged, or Destroyed Property.*

The government presented no evidence that Mrs. Meggs injured, damaged or destroyed property.  To prove that Mrs. Meggs destroyed government property (18 U.S.C. § 1361), the government was required to prove that Mrs. Meggs:  (1) injured, damaged, or destroyed

property; (2) wilfully; (3) that the property involved was the property of the United States; and (4) that the damage to the property in question exceeded $1,000.  Jury Instructions (April 3, 2023) (ECF No. 916).  Specifically, the only evidence of damage to the Capitol adduced by the government at trial related to the Columbus Doors and yet the evidence adduced at trial does not show that Mrs. Meggs touched the Columbus Doors let alone damaged, or attempted to damage, the doors.  Indeed, in the first nine (9) trials of Oath Keepers or persons affiliated with the Oath Keepers, related to the events of January 6, 2021, all nine defendants were acquitted of this charge.

### C.  The Court Must Grant Mrs. Meggs a New Trial

Two unique events require a mistrial in this case.  First, despite its obligation to avoid the same, the government provided the jury with exhibits this Court had excluded as unfairly prejudicial pursuant to Rule 403(b) of the Federal Rules of Evidence.  Thereafter, mere days after returning a verdict in this case, one juror gave a more than 110 minute interview concerning her experience as a juror, including the jury's reasoning for its verdict.  A lengthy public interview in such a high-profile case is nearly unheard of.  Importantly, the juror's interview makes clear that the jury was not capable of following the Court's instructions  - the only evidence that was required for the juror to vote to convict Mrs. Meggs was proof of the fact that Mrs. Meggs had entered the Capitol Building, *irrespective of her intent* – and  thus the jury's ultimate verdict was improper and a new trial is warranted.

#### i.  *Improper Submission to the Jury of Videos Not in Evidence*

Following the presentation of evidence and closing arguments, the jury was instructed concerning deliberations on Friday, March 10, 2023, and began its deliberations on Monday, March 13, 2023.  Prior to the commencement of deliberations, on Friday, March 10, 2023, the Court requested each of the parties provide copies their admitted exhibits to the Court promptly

on Monday morning, March 13, 2023.  The undersigned counsel was present outside Courtroom 10 promptly at 8:30am Monday, March 13, 2023, so that government counsel could review the same and so that they could be provided to the Court – the exact same process undertaken by government and defense counsel for the first Rhodes trial.

No other counsel were present outside Courtroom 10 at this time.  Rather, at 10:42am on Monday, March 13, 2023, government counsel wrote defense counsel to provide a copy of the government's final exhibit list and to advise that:  "We are also *making* you a copy of all the government's admitted exhibits and statements key."  (emphasis added).  Government counsel further advised that they had spoken to counsel for Sandra Parker, who, "and decided it would be easier to just do an exchange rather than sit and go through all the exhibits in court together."  This was the first time such a plan had been conveyed to undersigned counsel.

Although government counsel and the undersigned counsel endeavored to meet on Monday, March 13, 2023, they were unable to do so.  In the meantime, counsel for Mrs. Parker, Mr. Parker, and Mr. Isaacs, all requested copies of the government's exhibits.  The government provided only one copy of the same however, to the undersigned's former co-counsel, on Tuesday, March 14, 2023, at roughly 4:30pm.

The very next day, on Wednesday, March 15, 2023, at 2:09pm, former co-counsel identified several exhibits that she did not recall having been admitted as evidence.  In response, at 10:10pm, government counsel advised that they disagreed with any suggestion that exhibits had been improperly provided to the jury.  However, the next day, Friday, March 17, 2023, at 9:31am, government counsel again wrote to advise that they agreed certain exhibits *had* been provided to the jury that were not admitted in evidence (and had in fact been excluded as unfairly prejudicial by this Court).  Ex. A.  Later that day, Friday, March 17, 2023, at 2:22pm, after the

jury had been excused for the day, the government wrote the Court to advise that certain exhibits had been provided to the jury which had not been admitted into evidence. The government suggested the exhibits be deleted from the jury's thumb drive of exhibits and be told to disregard the exhibits. Ex. B.

In the interim, on Thursday, March 16, 2023, at 2:09pm, the jury submitted a note advising that it was, "deadlocked on a few counts, but have agreed on the majority" and asked, "what are next steps." Note from Jury (March 16, 2023) (ECF No. 897). Rather than direct the jury to return verdicts on those counts on which it had reached an agreement, the Court directed the jury to the Instruction advising that the jury may at any time return a verdict for one or more counts in the Indictment.

Thus, when counsel appeared before the Court on Monday morning, March 20, 2023, the government had to acknowledge that the jury had been provided with exhibits which the Court had previously excluded as unfairly prejudicial and which the jury could have relied upon in reaching a verdict as to multiple counts in the indictment. Accordingly, defense counsel moved for a mistrial, which was denied by the Court. Instead, the Court instructed the jury to ignore the exhibits, and, to the extent the Jury had relied on the exhibits in reaching unanimity with respect to any count or counts in the Indictment, instructed the jury to renew its deliberations as to those counts without relying on the exhibits.

The D.C. Circuit has held that, "[a] mistrial is a severe remedy—a step to be avoided whenever possible, and one to be taken only in circumstances manifesting a necessity therefor." *United States v. McLendon*, 378 F.3d 1109, 1112 (D.C. Cir. 2004) (quoting *United States v. Clarke*, 24 F.3d 257, 270 (D.C. Cir. 1994). However, "a mistrial is warranted if inadmissible evidence is erroneously presented to the jury that is so 'highly prejudicial' that the jury cannot

reasonably be expected to ignore it." *United States v. Crews*, 856 F.3d 91, 96 (D.C. Cir. 2017) (citing *United States v. Eccleston*, 961 F.2d 955, 961-62 (D.C. Cir. 1992).  When considering a motion for mistrial, "[t]he single most important consideration in ruling on a motion for a mistrial is the extent to which the defendant was unfairly prejudiced." *McLendon*, 378 F.3d at 1112.  Indeed, as the Sixth Circuit has held, "a court's 'primary concern' should be 'fairness to the defendant.'" *United States v. Lott*, 1998 U.S. App. LEXIS 13529, *7 (6th Cir. 1998) (quoting *United States v. Forrest*, 17 F.3d 916, 919 (6th Cir. 1994)).  Finally, while a curative instruction is "the preferred alternative to declaring mistrial," *United States v. Escalante*, 637 F.2d 1197, 1203 (9th Cir. 1980), and there is "normally [a presumption] that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it," an exception exists where "there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant."  *United States v. Foster*, 557 F.3d 650, 656 (D.C. Cir. 2009) (quoting *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)).

In circumstances where a jury reviewed improper exhibits during deliberations, the defendant properly moved for a mistrial but was subsequently denied the same, and the jury ultimately reached a guilty verdict, the Fourth Circuit has held that, "[i]f prejudicial evidence that was not introduced at trial comes before the jury, the defendant is entitled to a new trial."  *United States v. Greene*, 834 F.2d 86, 88 (4th Cir. 1987) (quoting *United States v. Barnes*, 747 F.2d 246, 250-51 (4th Cir. 1984)).  Furthermore, "[t]he general standard for determining if the evidence is prejudicial is whether there is 'a reasonable possibility that the jury's verdict was influenced by the material that improperly came before it." *Id*.  However, "[w]here a jury is exposed to unadmitted evidence, a presumption of prejudice arises" and "[t]he burden falls upon the

government to demonstrate the absence of prejudice." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 427 (4th Cir. 1996) (citing *United States v. Brooks*, 957 F.2d 1138, 1142 (4th Cir.), *cert. denied*, 505 U.S. 1228 (1992)).

While the burden rests with the government to prove that the improper evidence reviewed by the jury was harmless, the videos submitted to the jury were clearly prejudicial in nature and there is a reasonable probability that the jury's verdict was influenced by the videos. First, the videos improperly provided by the government depicted actions taken by unidentified individuals that were irrelevant to Mrs. Meggs. Not only were the individuals depicted in the footage not alleged to be co-conspirators, but they were also nowhere near the areas on the Capitol grounds that Mrs. Meggs was alleged to have been on January 6, 2021. Furthermore, the content of these videos had *already been excluded* by this Court. In *United States v. Rhodes*, III, 22-CR-00015 (2022), the government attempted to introduce the same footage as against Defendant Caldwell, who was alleged to have been nearby the tunnel on January 6 and therefore able to see the violence taking place inside the tunnel. However, this Court held that it was unlikely that Caldwell could see everything that was going on inside the tunnel, including the amount of violence occurring. Thus, the Court allowed only ten seconds of the clip depicting the tunnel to be played for the jury. However, the video provided to the jury in this case included all of the footage of the tunnel, beyond the ten seconds allowed by the Court.

The video footage that was provided to the jury was also inflammatory in nature. It depicted violence that took place in the tunnels beneath the Capitol building, violence that Mrs. Meggs was neither a part of nor aware of. Finally, the video footage was clearly prejudicial and devastating to Mrs. Meggs considering the guilty verdicts found against her. For these reasons,

and because a motion for mistrial was previously denied, the only adequate remedy for the jury receiving these exhibits is a new trial pursuant to Federal Rule of Criminal Procedure 33.

> ii.   *Juror Misconduct*

As noted, following the verdict in this case, one of the jurors agreed to be interviewed by C-SPAN, with whom she had previously worked, and who had a, "long history at C-SPAN," and during her interview recalled back to the jury selection process, remarking: "How could they allow a person from the media, who their staff was in the middle of the insurrection and various television equipment was being destroyed from other networks that could have been ours. I don't even know if it was or wasn't."  Kyle Cheney, Juror in Oath Keepers Trial Reveals Secrets From the Deliberation Room, Politico (March 28, 2023), *available at* https://www.politico.com/news/2023/03/28/juror-oath-keepers-trial-cspan-00089277.

The juror gave a lengthy interview, lasting an hour and forty-five minutes, in which she reflected on the trial and the deliberations.  Notably, the juror also commented on the posture of the other members of the jury, saying that some "did not seem to have followed every twist and turn of the trial" and that the jury consisted of "people who are mostly completely ill-equipped to understand what's going on."  Finally, the juror made statements indicating that they and other jurors did not follow the Court's instruction outlined above, noting that during the trial "you really couldn't [make up your mind] until you heard the defense put on a case, if they put on a case. You needed to hear the other side of it."  Booknotes+ Podcast:  Oath Keepers Trial Juror, *C-SPAN* (March 28, 2023), *available at* https://www.youtube.com/watch?v=p4oMQOPZzDM (last visited May 29, 2023).

The United States Supreme Court has held that "the presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice."  *Taylor v. Kentucky*, 436 U.S. 478, 479 (1978) (quoting *Estelle v. Williams*,

425 U.S. 501, 503 (1976).  Furthermore, the Supreme Court has long held that "[u]ndoubtedly, in criminal cases, the burden of establishing guilt rests on the prosecution from the beginning to the end of trial."  *Agnew v. United States*, 165 U.S. 36, 49-50 (1897).  Thus, at no point during trial does the burden of proof shift to the defendant such that she must prove her innocence, and to do so is a violation of her Sixth Amendment rights.

Consistent with this precept, the Court instructed the jury:

> Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he or she is guilty beyond a reasonable doubt. This burden never shifts throughout the trial. The law does not require the defendant to prove his or her innocence or to produce any evidence at all.

Jury Instructions (April 3, 2023) (ECF No. 916).

A complete review of the juror's interview makes clear that Mrs. Meggs was hardly innocent until proven otherwise – rather, it was incumbent upon her to prove to this jury that entry into the Capitol was for a reason other than obstructing the certification of the electoral college vote, rather than requiring the government to prove that purpose beyond a reasonable doubt.  Only a new trial will safeguard Mrs. Meggs's presumption of innocence.

[SIGNATURE ON NEXT PAGE]

Dated: May 29, 2023        Respectfully submitted,

              */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Brand Woodward Law, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Connie Meggs*

## <u>CERTIFICATE OF SERVICE</u>

On May 29, 2023, the undersigned hereby certifies that a true and correct copy of the

foregoing was electronically filed and served via the CM/ECF system, which will automatically

send electronic notification of such filing to all registered parties.

                        */s/ Stanley E. Woodward, Jr.*
            Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
            BRAND WOODWARD LAW, LP
            1808 Park Road, Northwest
            Washington, DC  20010
            202-996-7447 (telephone)
            202-996-0113 (facsimile)
            Stanley@BrandWoodwardLaw.com