UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:21-cr-00028-APM |
| | ) |
| CONNIE MEGGS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT CONNIE MEGGS MEMORANDUM IN AID OF SENTENCING**

Any sentencing is difficult. The sentencing of Defendant Connie Meggs is also difficult – despite the government's attempt to brand her as a member of a militia intent on overturning the results of the 2020 election, Connie Meggs is guilty of association – of traveling with her husband to Washington, DC on January 6, 2021, and of following him – without engaging in violence or otherwise damaging any property – into the Capitol Building on January 6, 2021. Yes, she engaged in rhetorical language and yes she went into the Capitol Building – facts she freely admitted at trial. But she did not "belong" to the Oath Keepers, was not aware of the propaganda propagated by its founder Stewart Rhodes, and was not aware of the husband's vitriolic speech in months, weeks, and days leading up to the events of January 6, 2021. The fact is, were Connie Meggs prosecuted alone, without the Scarlet Letter branded by the government's inclusion of her in a trial of Oath Keepers, her contemplated sentence would be significantly lower than that sought by government or recommended by the Probation Officer. Accordingly, for each of the offenses with which Mrs. Meggs has been convicted, Mrs. Meggs respectfully requests that the Court sentence her to not more than forty-five (45) days' incarceration (with

credit for time served),[1] eighteen (18) months of home confinement, and three (3) years of supervised release, to run concurrently.

**I.    FACTUAL BACKGROUND**

The events that occurred on January 6, 2021, at the United States Capitol are abhorrent, and defense counsel has no intention of relitigating the facts at issue or the events of that day at large. Rather, defense counsel will incorporate by reference the factual contents of Mrs. Meggs's Motion for Judgment of Acquittal or for a New Trial (May 29, 2023) (ECF No. 933).

To summarize, Mrs. Meggs's husband Kelly Meggs was a member of the Oath Keepers prior to and on the date of January 6, 2021. Unlike her husband, Mrs. Meggs was not a member of the Oath Keepers and, other than during the leadup to January 6, 2021, she rarely associated with the group. On January 5, 2021, Mrs. Meggs, her husband, and others affiliated with the Oath Keepers arrived in Washington, District of Columbia from Florida. On January 6, 2021, Mrs. Meggs, alongside her husband, attended the "Stop the Steal" rally in the District of Columbia; Mr. Meggs was engaged in security as a member of the Oath Keepers. After the rally, Mrs. Meggs, Mr. Meggs and members of the Oath Keepers escorted VIP individuals from the rally to the Capitol building. By the time Mrs. Meggs arrived at the Capitol, the Capitol building had already been breached by other unrelated and independent individuals. The evidence adduced at trial demonstrated that Mrs. Meggs followed her husband and members of the Oath Keepers into the Capitol building facing no resistance and without any sort of plan to engage in

---

[1] Mrs. Meggs advises she was detained for forty-five (45) days pretrial. The Probation Officer's Final Presentence Report notes that she was detained for thirty-seven (37) days – from February 17, 2021, until March 26, 2021. Defense counsel presumes Mrs. Meggs was not immediately released on March 26 and that some time elapsed while she was being processed, but will confirm. In the event that Mrs. Meggs was only detained for thirty-seven days, we would ask that this be her sentence of confinement.

any activities.[2] The evidence then shows that Mrs. Meggs, Mr. Meggs, and members of the Oath Keepers wandered aimlessly around the Capitol building and left once told to leave without engaging in any violence or destruction of property. After that, Mrs. Meggs and her husband returned to their hotel for the night and then left for Florida the next morning. Mrs. Meggs was arrested on February 17, 2021, along with her husband, and was released on personal recognizance with home incarceration on March 26, 2021, pending the trial in this matter.

II.   APPLICATION OF SECTION 3553(A) FACTORS

18 U.S.C. § 3553(a) requires the Court to, "impose a sentence sufficient, but not greater than necessary, to comply with" federal sentencing goals and guidelines. The section lists factors which intends to assist the Court in imposing a "sufficient, but not greater than necessary" sentence. Each factor is addressed in turn in the subsections below.

   a.   *Nature and circumstances of the offense.*

As already stated herein, the events that occurred at the Capitol on January 6, 2021 are abhorrent. Mrs. Meggs, like her husband and numerous others, will be sentenced for their individual participation in the events of the day. But as the evidence in these cases make clear, no one person is responsible for the entirety of events of that day. However, Mrs. Meggs's actions are uniquely moderate given the circumstances of the day: while so many individuals engaged in inexcusable violence and/or destruction of property, Mrs. Meggs and her group did not engage in any sort of violence or physical encounters with law enforcement agents.

Mrs. Meggs attended the rally prior to the breach of the Capitol building by unrelated individuals, led VIP's along with her husband and members of the Oath Keepers from the rally to

---

[2] The government in the first Oath Keepers trial admitted that the evidence did not establish the existence of any plan to storm the Capitol among the Oath Keepers. *See* Tr. 10296: 5-8, *United States v. Rhodes III*, No. 22-cr-15-APM (Nov. 21, 2022) ("Let me be clear on behalf of the United States of America, we do not allege a specific plan to storm the United States Capitol. We never have and we are not now. We do not have to prove a plan.").

3

the Capitol, and entered the Capitol without facing resistance after a breach had already been completed by unrelated individuals. Mrs. Meggs and her group found themselves near the House Speaker Suite, turned around to the leave the Capitol after about twenty minutes, and at least Mr. Meggs engaged in actions meant to assist Capitol Police in clearing others from the Capitol building as Mrs. Meggs, Mr. Meggs, and members of the Oath Keepers departed. Though the government has used Mr. Meggs's admittedly incensed and inappropriate texts about Nancy Pelosi (which reflected nothing more than misguided, unfortunate hyperbole) to imply a nefarious purpose for the group's brief presence at the House Speaker Suite, the evidence at trial demonstrates that the group merely prayed there briefly and left.

      b. *History and characteristics of the defendant.*

Mrs. Meggs is 61 years old and has been happily married to her husband, Kelly Meggs, for 24 years. They have raised two children, a 24-year-old son and a 33-year-old daughter from Mrs. Meggs's prior marriage. Mrs. Meggs is a grandmother of three, with her daughter having three children aged one, three, and twelve. Mr. and Mrs. Meggs and their children and grandchildren resided together, and Mr. Meggs was the sole earner in the household. Mrs. Meggs primarily has been a homemaker/stay at home mother and grandmother; she worked as a part-time server in the early-1990s and for a brief period in 2022, was a leasing agent for Wallace ford in the mid-1990's, and worked as a secretary at Illinois Bel in the early 1980s. Mrs. Meggs's son launched a fundraiser with the forum GiveSendGo to make up for the family's loss of its main financial provider, but the proceeds of same were exhausted by various legal fees.

In addition, seventeen (17) people wrote letters in support of Mrs. Meggs. These have been filed under seal concomitantly with the foregoing Sentencing Memorandum given the personal nature of their outreach. But consistently the loved ones – family, friends, neighbors,

coworkers, and religious stewards – describe Mrs. Meggs as a caring person. Caring of her family. Of her friends. Of her neighbors. Of her coworkers. And of her faith. Mrs. Meggs has propped up her family during what has been an incredibly challenging time and they have all come to rely on her. It is clear from this correspondence that imprisoning her will not benefit society – it will serve as a hinderance to all those who have come to rely on her throughout her community.

      c. *Seriousness of the offense, respect for the law, and just punishment.*

The nature of the offenses for which Mrs. Meggs has been convicted are serious, but these offenses do not reflect Mrs. Meggs's true character. Mrs. Meggs has no prior criminal history, and was not associated with the Oath Keepers outside of limited contact due to her husband's membership in the group. Similarly, Mrs. Meggs remained on home incarceration and personal recognizance for court appearances without any issue.

      d. *Deterrence to criminal conduct and protection from further crimes.*

As previously stated, Mrs. Meggs like her husband has never been arrested or been in any legal trouble before. Cumulatively more than 100 years of incarceration have been imposed against those who participated in the events of January 6, 2021, and the most incendiary or dangerous of those participants face significant time in prison. The events of January 6, 2021 were unique and unlikely to occur ever again, and nothing in Mrs. Meggs's history (or frankly, the conduct she was found guilty for) suggests she is of any risk to ever participate in any illegal conduct. Put simply, there is no reason to factor a future risk of criminal activity into Mrs. Meggs's sentencing.

e. *Need for treatment and training.*

Mrs. Meggs has been diagnosed with anxiety, hypertension, and arthritis. Mrs. Meggs describes herself as "not a drinker," other than consumption of alcohol on special social occasions and infrequent drinking of wine. *See* Draft Presentence Investigation Report, p. 37 ¶ 184 (June 30, 2023) (ECF No. 960). Mrs. Meggs has never used an illicit drug. Mrs. Meggs is mentally stable but, should she be incarcerated, would welcome engaging in therapy.

f. *Sentences available.*

The first offense of conviction, Conspiracy to Obstruct an Official Proceeding, carries a maximum sentence of 20 years imprisonment and a statutory fine not to exceed $250,000 pursuant to 18 U.S.C. § 1512(k); the second offense of conviction, Obstruction of an Official Proceeding and Aiding and Abetting, carries a maximum sentence of 20 years imprisonment and a statutory fine not to exceed $250,000 pursuant to 18 U.S.C. § 1512(c)(2); the third offense of conviction, Conspiracy to Prevent an Officer from Discharging Any Duties, carries a maximum sentence of 6 years imprisonment and a statutory fine not to exceed $250,000 pursuant to 18 U.S.C. § 372; the fourth offense of conviction, Destruction of Government Property and Aiding and Abetting, carries a maximum sentence of 10 years imprisonment and a statutory fine not to exceed $250,000 pursuant to 18 U.S.C. § 1361; the fifth offense of conviction, Entering and Remaining in a Restricted Building or Grounds, is a misdemeanor that carries a maximum sentence of 1 year imprisonment and a statutory fine not to exceed $100,000 pursuant to 18 U.S.C. § 1752(a)(1).

g. *Need to avoid sentencing disparities.*

The government has created a sentencing chart for individuals that have been convicted and sentenced in relation to the events of January 6.[3] While it is true that the longest sentence for a defendant whose most serious offense was 18 U.S.C. 1512(c)(2) is 90 months, this court has already sentenced a defendant convicted of § 1512(c)(2) to just twelve (12) months' home detention; 36 months' probation; 100 hours' community service; and $2,000.00. *See United States v. Wood*, No. 21-cr-223. The Court's sentence in *Wood* is much more proportionate than the Probation Officer's recommended between 70 and 87 months incarceration, which primarily relies upon misapplied criminal enhancements. Application of even the lowest suggested sentence (5 years) would result in severe disparity of treatment between Mrs. Megg and individuals convicted of similar conduct.

h. *Need to provide restitution.*

Although the Meggs family's financial situation is dire, Mrs. Meggs agrees to voluntarily pay the recommended restitution amount of $500.00.

**III.   STATUTORY AND GUIDELINE ANALYSIS**

18 U.S.C. § 3553(a)(4) requires a sentencing judge to refer to the, "kinds of sentence and sentencing range established for. . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines. . . "  However, section (b) of that statute notes that, "the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that

---

[3] https://www.justice.gov/file/1592231/download

7

described." It must be noted that charges and interpretation of Interference with an Official Proceeding statutes relating to the events of January 6, 2021, have been and are very likely to continue to be heavily questioned and litigated. *See generally United States v. Fischer*, 64 F.4th 329, 45-68 (D.C. Cir. 2023) (Walker, J., concurring) (reversing trial court's dismissal of 18 U.S.C. § 1512(c)(2), but leaving open the question of whether the government is required to prove that a defendant acted with the "corrupt" intent to, procure an unlawful benefit either for himself or for some other person[.]"). It is beyond dispute that when Congress enacted § 1512(c)(2), it did not comprehend the possibility of the events of January 6, 2021. It was an entirely unique and unpredictable situation.

      The government seeks to augment the § 1512(c)(2) charge with the enhancements that are typically available only to the traditional "obstruction of justice" offenses, even though the government itself chose a non-obstruction of justice statute for this prosecution. The Court's analysis should begin and end where the Probation Officer and government begin – by concluding that a base offense level of 14 applies to the charges, and, unless there is a downward departure for good time and/or acceptance of responsibility, a sentence between fifteen (15) and twenty-one (21) months is appropriate. However, the Probation Officer suggests that the application a two-level decrease pursuant to USSG § 3B1.2(b) for the fact that Mrs. Meggs's role in any criminal activity was minor. Therefore at most a level 12 should be applied, resulting in a recommended sentence of between ten (10) to sixteen (16) months, from which this Court should depart.

      a. *Section 2J1.2(b)(1)(B) Does Not Apply.*

      The Probation Officer recommends an eight (8) level enhancement pursuant to § 2J1.2(b)(1)(B), which calls for such an enhancement where: "[T]he offense involved causing or

threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." The recommendation is based upon the allegation that Mrs. Meggs joined, "a mob of rioters that caused damage to the Capitol Building's East Rotunda Doors and Columbus Doors, as well as caused injuries to Capitol Police officers guarding the doors to the building," and other behaviors that Mrs. Meggs was not involved with. Relevant commentary on § 2J1.2 states: "The inclusion of 'property damage' under subsection (b)(1)(B) is designed to address cases in which property damage is caused or threatened as a means of intimidation or retaliation (e.g., to intimidate a witness from, or retaliate against a witness for, testifying)." Similarly, Mrs. Meggs is not alleged to have injured anyone or engaged in violence on January 6, 2021. *See Stinson v. United States*, 508 U.S. 36, 44-45 (1993) (Supreme Court holding that commentary should, "be treated as an agency's interpretation of its own legislative rule."). *See also id.* at 38 (Supreme Court holding that commentary which, "interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.")

A plain reading of the commentary reveals the inapplicability of this section to Mrs. Meggs. Were the Court to adopt the government's interpretation, any defendant convicted of § 1512(c)(2) would automatically qualify for the eight (8) level enhancement and be subjected to an effective base offense level of twenty-two (22), with a minimum recommended imprisonment of 41-51 months. Again, this Court should not indulge the government's attempt to shoehorn these statutory offenses into Guidelines with significant enhancements the Sentencing Commission never contemplated applying to the events of January 6, 2021. Thus, the only conduct for which Mrs. Meggs should be held responsible is the conduct for which the jury found her responsible and not for the thousands of rioters who convened on January 6, 2021.

With respect to Mrs. Meggs's conduct, a plain reading of the Guideline confirms that its intent is not to apply to, "threatening to cause physical injury to [*any*] person." Rather, the Guideline is clearly intended to apply only to those persons who serve also as participants in the administration of justice, such as witnesses or judicial officers. As the commentary to § 2J1.2 makes clear, reference to "property damage" was added to subsection (b)(1)(B) to include cases where, for example, a witness's property is destroyed, or threatened to be destroyed, for the purpose of intimidation. Consider, for example, the 1991 Amendment to the Guideline which, "clarifies the types of circumstances to which §§ 2J1.2(b)(1) and 2J1.2(c)(1) apply" and for which each of the amendments clearly apply to participants in the proceeding. As the government has acknowledged, neither Mrs. Meggs nor any of the Oath Keepers codefendants had a plan to stop the certification of the electoral college, let alone threaten its participants.[4]

Finally, even were the Court to conclude that the offenses for which Mrs. Meggs was convicted, "involved . . . threatening to cause physical injury to a person . . . in order to obstruct the administration of justice," because the certification of the electoral college vote is not "the administration of justice," this enhancement may not be applied. The "administration of justice" is in fact a legal term of art, so much so that it is defined within Black's Law Dictionary: "The maintenance of right within a political community by means of the physical force of the state" and "the state's application of the sanction of force to the rule of right." A*dministration of Justice*, Black's Law Dictionary (11th ed. 2019), quoted in *United States v. Seefried*, 2022 U.S. Dist. LEXIS 196980, at *5 (D.D.C. Oct. 29, 2022). Similarly, "due administration of justice" is defined as "[t]he proper functioning and integrity of a court or other tribunal and the proceedings

---

[4] The government in the first Oath Keepers trial admitted that the evidence did not establish the existence of any plan to storm the Capitol among the Oath Keepers. See Tr. 10296: 5-8, *United States v. Rhodes III*, No. 22-cr-15-APM (Nov. 21, 2022) ("Let me be clear on behalf of the United States of America, we do not allege a specific plan to storm the United States Capitol. We never have and we are not now. We do not have to prove a plan.").

before it in accordance with the rights guaranteed to the parties." *Id.* Therefore, a plain reading of § 2J1.2(b)(1)(B) suggests that the enhancement applies only where the obstruction of a judicial or quasi-judicial tribunal has occurred.[5]

As the Court is aware, this was the conclusion reached by Judge McFadden in this District when the issue was similarly presented at sentencing. *See Seefried*, 2022 U.S. Dist. LEXIS 196980, at *31-32 ("If the Sentencing Commission had foreseen the Capitol breach, it may well have included 'official proceeding' in the text of § 2J1.2. But the Commission did not. Given that the Court should interpret the Guidelines using traditional tools of statutory interpretation, this Court declines to rewrite § 2J1.2 to say what it does not. If the Commission wishes to expand the text of the Guideline to include official proceedings such as the electoral certification, 'it may seek to amend the language of the guidelines by submitting the change for congressional review.'" (quoting *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018)). Rather than reiterate the basis for Judge McFadden's finding that § 2J1.2(b)(1)(B)'s eight-level enhancement does not apply to convictions arising from the events of January 6, 2021, Mrs. Meggs respectfully requests that rationale be incorporated herein by reference. Instead, Mrs. Meggs addresses the points articulated by this Court in declining to adopt Judge McFadden's rationale. *See United Staes v. Rhodes*, No. 21-cr-15 Tr. at 35-39 (Nov. 28, 2022), *United States v. Wood*, No. 21-cr-223 (Jan. 20, 2023) (ECF No. 64). First, the Court observed, Judge McFadden's focus on the definition of the legal term "administration of justice" ignores the fact that "obstructing the administration of justice" has its own entry, which refers to "perverting the administration of justice." That phrase, in turn, is defined as: "The skewing of

---

[5] The District of Columbia Court of Appeals has interpreted "due administration of justice" to primarily (if not exclusively) be used, "to describe the proper functioning and integrity of a court or hearing." *Wynn v. United States*, 48 A.3d 181, 191 (D.C. 2012).

11

legal proceedings, as by fabricating or destroying evidence, witness-tampering, or threatening or intimidating a judge." Black's Law Dictionary (11th ed. 2019).  Yet here too, the plain definition of the term of art referenced by the Court is limited to a legal proceeding – a judicial or quasi-judicial proceeding.  In its reasoning, however, the Court articulated that such a narrow definition of the phrase ought not be adopted given that § 2J1.2 is titled, "Obstruction of Justice" and encompasses guidelines for offenses pursuant to, for example, § 1001, which do not involve the interference of an official proceeding.  Tr. at 36 (Nov. 28, 2022), *United States v. Wood*, No. 21-cr-223 (Jan. 20, 2023) (ECF No. 64).  With respect, simply because some of § 2J1.2's enhancements may be limited to offenses involving judicial or quasi-judicial proceedings does not mean all of § 2J1.2 is so limited.[6]  As the Court notes, its reference to § 1001 offenses means that it clearly is not.  Indeed, the Background to § 2J1.2 provides:

> This section addresses offenses involving the obstruction of justice generally prosecuted under the above-referenced statutory provisions. Numerous offenses of varying seriousness may constitute obstruction of justice: using threats or force to intimidate or influence a juror or federal officer; obstructing a civil or administrative proceeding; stealing or altering court records; unlawfully intercepting grand jury deliberations; obstructing a criminal investigation; obstructing a state or local investigation of illegal gambling; using intimidation or force to influence testimony, alter evidence, evade legal process, or obstruct the communication of a judge or law enforcement officer; or causing a witness bodily injury or property damage in retaliation for providing testimony, information or evidence in a federal proceeding. The conduct that gives rise to the violation may, therefore, range from a mere threat to an act of extreme violence.

---

[6] Judge McFadden conducted an exhaustive review of the legal usage of the phrase and concluded: "[T]here is essentially no evidence that either judges, lawyers, or speakers more generally used the term 'administration of justice' to refer to legislative proceedings like the certification of the electoral count.  Instead, both professional and lay speakers overwhelmingly used this term to reference judicial proceedings or activities closely related to them." *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *20.

12

Specifically, there are five potential enhancements under § 2J1.2, only two of which reference the "administration of justice." Thus concluding that the "administration of justice" involves a judicial or quasi-judicial proceeding would not impact application of the majority of enhancements available under the Guideline. Moreover, several of the enhancements have their own unique conditions – both §§ 2J1.2(b)(1)(A) and (C) require convictions under §§ 1001 or 1505. Indeed, this Court has already acknowledged Congress's ability to employ specifically limiting language with respect to § 1505: "Section 1505 thus prohibits obstructive acts directed at a particular type of congressional proceeding: those involving the 'power of inquiry.'" Mem. Op. at 10, *United States v. Caldwell*, No. 21-cr-28 (Dec. 20, 2021) (ECF No. 558). Congress did so with respect to § 2J1.2 as well.

    b. *Section 2J1.2(b)(2) Does Not Apply.*

Nor does the three (3) level enhancement pursuant to § 2J1.2(b)(2) apply insofar as the certification of the electoral college is not a proceeding the interference of which constitutes the interference with the administration of justice.

    c. *Section 2J1.2(b)(3) Does Not Apply.*

The Probation Officer recommends a two-level enhancement pursuant to § 2J1.2(b)(3) because the offenses with which Mr. Meggs has been convicted were, "otherwise extensive in scope, planning, or preparation." Draft Presentence Investigation Report, p. 34 ¶ 154 (June 30, 2023) (ECF No. 960). However, even if such is true, the evidence adduced in trial does not establish that Mrs. Meggs had any role in any sort of extensive planning or preparation, and such a recommendation seems to merely be based on the fact that she is married to Kelly Meggs, someone who, even though the government conceded there was no plan and that the Signal chat evidence provided during Mr. Meggs's trial "does not contain any explicit references to a plan to

13

forcibly enter the U.S. Capitol on January 6, 2021[,]" the evidence about Mr. Meggs can arguable establish some sort of leadership role. That Mrs. Meggs is married to someone that the government claims planned some aspects of Oath Keepers's actions prior to and on January 6, 2021 does not establish any involvement in same.

    d. *Section 3C1.1 Does Not Apply.*

The Probation Officer suggests the addition of two levels for alleged deletion of texts messages material to the grand jury investigation and for alleged false testimony at trial. Mrs. Meggs objects to such an adjustment being applied due to its basis upon conduct alleged in the PSR which is materially and factually inaccurate.

## CONCLUSION

For the foregoing reasons, Mrs. Meggs respectfully requests this Court impose a sentence for each of the offenses with which she has been convicted of not more than forty-five (45) days' incarceration (with credit for time served), eighteen (18) months of home confinement, and three (3) years of supervised release, to run concurrently.

**[SIGNATURE ON NEXT PAGE]**

Dated: August 11, 2023     Respectfully submitted,

        */s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Defendant Connie Meggs*

**CERTIFICATE OF SERVICE**

On August 11, 2023, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, and subsequently electronically mailed to government counsel.

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 Fifth Street Northwest, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com